1  MARK R. MCDONALD (CA SBN 137001)
   MMcDonald@mofo.com
2  ROBERT B. HUBBELL (CA SBN 100904)
   RHubell@mofo.com
3  MATTHEW J. CAVE (CA SBN 280704)
   MCave@mofo.com
4  JOSEPH R. ROSNER (CA SBN 307126)
   JRosner@mofo.com
5  MORRISON & FOERSTER LLP
   707 Wilshire Blvd., Suite 6000
6  Los Angeles, California  90017-3543
   Telephone:  213.892.5200
7  Facsimile:   213.892.5454

8  Attorneys for Defendant
   BANC OF CALIFORNIA, INC.
9

10                 UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12

13  IN RE BANC OF CALIFORNIA            SACV 17-00118 AG (DFMx)
    SECURITIES LITIGATION               consolidated with
14                                      SACV 17-00138 AG (DFMx)

15                                      **DEFENDANT BANC OF
                                        CALIFORNIA'S NOTICE OF
16                                      MOTION AND MOTION TO
                                        DISMISS THE CONSOLIDATED
17                                      AMENDED COMPLAINT, AND
                                        MEMORANDUM OF POINTS AND
18                                      AUTHORITIES IN SUPPORT
                                        THEREOF**
19

20                                      Judge:   Honorable Andrew J. Guilford
                                        Date:    August 14, 2017
21                                      Time:    10:00 a.m.
                                        Place:   Department 10D
22

23

24

25

26

27

28

---

**ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 14, 2017, at 10:00 a.m., or at such later date and time as the Court may order, in the Courtroom of the Honorable Andrew J. Guilford, Courtroom 10D, United States District Court, Central District of California, located at 411 West 4th Street, Santa Ana, California, Defendant Banc of California, Inc. will and hereby does move for an Order dismissing the Consolidated Amended Complaint for Violation of the Federal Securities Laws dated May 31, 2017 ("Complaint"). This Motion is made pursuant to the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure 12(b)(6), on the grounds that the Complaint fails to state a claim upon which relief can be granted.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 23, 2017, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Defendants' Joint Request for Judicial Notice and for Incorporation of Documents by Reference, the Declaration of Mark R. McDonald and exhibits thereto, the Complaint, the Court's record in this matter, the arguments of counsel, and any other materials that the Court may consider prior to its decision on this Motion.

Respectfully submitted,

Dated:   June 30, 2017          MORRISON & FOERSTER LLP


By: ___*Mark R. McDonald*___
          Mark R. McDonald

Attorneys for Defendant Banc of California, Inc.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

    A.    The Parties.......................................................................................... 2

    B.    The October 18, 2016 *SeekingAlpha.com* Blog.................................. 3

    C.    The Company's October 18, 2016 Press Release ................................ 4

    D.    The Company's Disclosures After The Class Period Ends ................. 4

        1.    The Company's January 23, 2017 announcements ................... 5

        2.    The Company's February 9, 2017 announcement
             that WilmerHale had completed its investigation ..................... 6

        3.    The Company discloses material weaknesses in
             internal controls but no material misstatements ......................... 6

    E.    Plaintiff's Allegations ...................................................................... 6

ARGUMENT......................................................................................................... 7

I.    PLAINTIFF MUST SATISFY EXACTING PLEADING
    REQUIREMENTS ......................................................................................... 7

II.    PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS
    SUFFICIENT TO SHOW A MATERIAL
    MISREPRESENTATION OR OMISSION ...................................................... 8

    A.    Plaintiff Fails to Plead Particularized Facts Showing the
        Company Fraudulently Concealed Its Alleged
        "Associations with Jason Galanis" or Mr. Brownstein's
        Alleged Lack of Independence .......................................................... 8

        1.    Plaintiff improperly relies on the Blog to establish
             the Company's alleged "associations with Jason
             Galanis" and Mr. Brownstein's alleged lack of
             independence .............................................................................. 9

        2.    Plaintiff fails to plead facts showing the
             concealment of any alleged facts made any
             statement false or misleading ..................................................... 10

        3.    The purportedly concealed information was public
             and, therefore, immaterial, in any event ................................... 12

    B.    Plaintiff's Allegations Concerning the Material
        Weaknesses in Internal Controls Are Irrelevant ............................. 13

    C.    The Company Did Not Have a Duty to Disclose the
        Winston & Strawn Investigation....................................................... 13

ii

la-1353628

D.   Plaintiff Fails to Plead Particularized Facts Showing a *Materially* False Statement Regarding the Winston & Strawn Investigation .......................................................... 14

III.   PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO SHOW SCIENTER ......................................... 15

A.   Plaintiff Pleads No Facts Showing Any Defendant Acted with Scienter in "Concealing" the Alleged "Associations" between the Company and Galanis, or Mr. Brownstein's Alleged Lack of Independence ............................................. 16

B.   Plaintiff Pleads No Facts Showing Any Defendant Acted with Scienter in "Concealing" the Investigation by Winston & Strawn .................................................................. 17

C.   Plaintiff Pleads No Facts Showing Any Defendant Acted with Scienter with Respect to the October 18, 2016 Press Release ........................................................................ 18

D.   The Resignations of Mr. Sugarman, Mr. McKinney, and Mr. Brownstein Do Not Establish a Strong Inference of Scienter ........................................................................... 19

IV.   PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO SHOW LOSS CAUSATION ........................... 19

A.   The Blog Was Not a Corrective Disclosure ......................... 20

B.   Plaintiff Fails to Plead Particularized Facts Showing that the Company's January 23, 2017 Announcements Support Loss Causation ....................................................... 22

1.   The announcement of Mr. Sugarman's resignation does not support loss causation ................................. 22

2.   The announcement of the SEC's investigation does not support loss causation ....................................... 23

3.   The announcement regarding the October 18, 2016 press release does not support loss causation .......................... 24

V.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A) ........................................................................ 25

CONCLUSION ........................................................................ 25

la-1353628

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bach v. Amedisys, Inc.*,
  No. 10-395-BAJ, 2012 U.S. Dist. LEXIS 185986 (M.D. La. Jun.
  28, 2012) ........................................................................................................23

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................... 8, 14

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
  No. 15-cv-01795-WHO, 2016 WL 4585753 (N.D. Cal. Sept. 2,
  2016) ..............................................................................................................21

*Brodsky v. Yahoo! Inc.*,
  592 F. Supp. 2d 1192 (N.D. Cal. 2008).............................................................9

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ..........................................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
  Tech., Inc.*,
  856 F.3d (9th Cir. 2017) ..................................................................................11

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012).............................................................18

*Erickson v. Corinthian Colls., Inc.*,
  No. CV 13-7466-GHK, 2015 WL 12732435 (C.D. Cal. Apr. 22,
  2015) ..............................................................................................................16

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ........................................................................................15

*Glaser v. The 9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011) ..............................................................23

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014) .......................................................................................7

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ............................................................. 14

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ............................................................ 25

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
  980 F. Supp. 2d 565 (S.D.N.Y. 2013) ............................................... 12

*In re Blue Earth, Inc. Sec. Class Action Litig.*,
  No. CV 14-08263-DSF, 2015 WL 12001274 (C.D. Cal. Nov. 3,
  2015) ............................................................................................. 21, 24

*In re Cirrus Logic Sec. Litig.*,
  946 F. Supp. 1446 (N.D. Cal. 1996) .............................................. 11, 12

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  355 F. Supp. 2d 1069 (N.D. Cal. 2005) .............................................. 19

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) ........................................................ 13, 15

*In re Downey Sec. Litig.*,
  No. CV 08-3261-JFW, 2009 WL 736802
  (C.D. Cal. Mar. 18, 2009) ................................................................. 19

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................... 15

*In re Herbalife, Ltd. Sec. Litig.*,
  No. CV 14-2850 DSF, 2015 WL 1245191
  (C.D. Cal. Mar. 16, 2015) ...................................................... 20, 21, 24

*In re HP Sec. Litig.*,
  No. C 12-05980 CRB, 2013 WL 6185529
  (N.D. Cal. Nov. 26, 2013) ................................................................. 14

*In re Impac Mortg. Holdings, Inc.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) ............................................... 16

*In re Intrexon Corp. Sec. Litig.*,
  No. 16-cv-02398-RS, 2017 WL 732952
  (N.D. Cal. Feb. 24, 2017) ............................................................ 19, 21

BANC OF CALIFORNIA'S MOTION TO DISMISS THE AMENDED COMPLAINT

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    910 F. Supp. 2d 561 (S.D.N.Y. 2012) ................................................. 10

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014) .................................................. 22

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ....................................................... 7, 25

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ...................................................... 1, 15

*In re Verisign, Inc. Deriv. Litig.*,
    531 F. Supp. 2d 1183 (N.D. Cal. 2007) .............................................. 22

*In re Yahoo! Inc. Sec. Litig.*,
    No. C 11-02732 CRB, 2012 WL 3282819
    (N.D. Cal. Aug. 10, 2012), *aff'd.* 611 F. App'x 387
    (9th Cir. 2015) ....................................................................... 14

*Lomingkit v. Apollo Educ. Grp. Inc.*,
    No. CV-16-00689-PHX-JAT, 2017 WL 633148
    (D. Ariz. Feb. 17, 2017) ............................................................. 10

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014) .......................................... 20, 21, 23, 24

*Luna v. Marvell Tech. Grp. Ltd.*,
    No. 15-cv-05447-RMW, 2016 WL 5930655
    (N.D. Cal. Oct. 12, 2016) ............................................................ 19

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ................................................................. 8, 10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ..................................................... 8, 11

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) .................................................. 21, 22

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ......................................................... 1

la-1353628

*Petrie v. Elec. Game Card, Inc.*,
   No. SACV 10-00252 .................................................................................... 17

*Primo v. Pac. Biosciences of Cal., Inc.*,
   940 F.Supp.2d 1105 (N.D. Cal. 2013) ...................................................... 11

*Reed v. Amira Nature Foods Ltd.*,
   CV 15-0957 .................................................................................................. 11

*Rok v. Identiv, Inc.*,
   No. 15-cv-5775-CRB, 2017 WL 35496
   (N.D. Cal. Jan 4, 2017) .............................................................................. 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................................... 16

*West v. Ehealth, Inc.*,
   No. 3:15-cv-00360-JD, 2016 WL 948116
   (N.D. Cal. Mar. 14, 2016) .......................................................................... 11

*White v. H&R Block, Inc.*,
   No. 02 Civ 8965(MBM), 2004 WL 1698628
   (S.D.N.Y. July 28, 2004) ............................................................................ 12

*Zucco Partners LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009), *aff'd*, No. 06-35758,
   2009 U.S. App. LEXIS 7025 (9th Cir. Feb. 10 2009) ............................ 9, 16, 19

**Statutes and Rules**

15 U.S.C. § 78u-4(b)(1) ......................................................................................... 7

15 U.S.C. § 78u-4(b)(2) ....................................................................................... 15

17 C.F.R. § 240.10-b-5(b) ...................................................................................... 8

Fed. R. Civ. P. 9(b) ......................................................................................... 7, 20

la-1353628

**INTRODUCTION**

In 1995, Congress passed the Private Securities Litigation Reform Act "to reduce the volume of abusive federal securities litigation by erecting procedural barriers to prevent plaintiffs from asserting baseless securities fraud claims." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999).  Plaintiff's Consolidated Amended Complaint ("Complaint") here does not come close to meeting the "exacting pleading standards" created by the PSLRA for multiple reasons. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014).

First, Plaintiff fails to plead a material misrepresentation or omission—much less with the particularity required by the PSLRA.  The Complaint is premised on the notion that Defendants had a duty to disclose, but failed to disclose, purported connections between Jason Galanis, a "notorious fraudster," and Defendant Banc of California ("Company"), its CEO, Defendant Steven Sugarman, and others at the Company.  However, Plaintiff's only source of information about those alleged connections with Galanis is an October 18, 2016 blog, published on *SeekingAlpha.com* ("the Blog") by an anonymous short-seller with the pen name "Aurelius," who expressed his opinion, based on "publicly available information," that Galanis somehow controlled the Company.  Aurelius was making "no representation as to the accuracy or completeness of the information set forth" in the Blog.  The Company, however, has never announced that Galanis had improper connections with the Company or any of its officers and directors.  To the contrary, two independent investigations into these alleged ties each found no evidence that Jason Galanis had any direct or indirect control or undue influence over the Company.  Courts agree that a blog by a short seller, as here, that merely packages publicly available information and expresses opinions based on that information does not constitute "true" facts that a company had a duty to disclose earlier.  In all events, Plaintiff does not show how the contents of the Blog—even if accurate,

1

which they weren't—rendered any prior affirmative statement by the Company false or misleading.  The Company had never made any statements that misleadingly suggested there were no such connections.

Further, because Aurelius admitted the Blog was based entirely on "publicly available" information, the information in the Blog was not material as a matter of law.

Second, Plaintiff fails to plead the required strong inference of scienter.  In attempting to do so, Plaintiff offers nothing more than "facts" lifted from the Blog—whose opinions have no indicia of reliability—and the resignations of the Individual Defendants (Steven Sugarman and James J. McKinney).  That is not sufficient.  Indeed, given nothing that was "revealed" in the Blog was "concealed," it makes no sense that any Defendant was attempting to mislead investors.

Third, Plaintiff fails to plead loss causation.  The Blog was not a corrective disclosure given it admittedly revealed only an *opinion* by a short seller, not the disclosure of the *truth*—and it is the revelation of a *truth* that is necessary to establish loss causation.  Other later disclosures on which Plaintiff relies are similarly insufficient to plead loss causation under settled, Ninth Circuit law.  In particular the disclosure that the SEC is conducting an investigation does not reveal that any prior statement by a company was false or misleading.  Because Plaintiff's loss causation allegations cannot be cured, dismissal with prejudice is warranted.

## BACKGROUND[1]

### A.    The Parties.

Lead Plaintiff, Iron Workers Local 25 Pension Fund ("Plaintiff"), purportedly purchased common stock of the Company during the Class Period

---

[1] The facts in this Background section are drawn from Plaintiff's allegations, as well as the documents incorporated by reference into the Complaint or subject to Banc of California's Request for Judicial Notice.

1   (October 29, 2015 – January 20, 2017).  (¶ 1.)[2]

2         The Company, headquartered in Santa Ana, California, is a financial holding

3   company regulated by the Federal Reserve Board.  (¶ 19; Ex. 7 at 5.)  It provides

4   both deposit products and lending products.  (Ex. 7 at 5.)  Defendant Steven

5   Sugarman served as the Company's Chairman, President, and CEO until January

6   2017.  (¶ 20.)  Defendant James J. McKinney served as Chief Financial Officer

7   from November 2015 until September 20, 2016.  (¶ 21.)

8         **B.     The October 18, 2016 *SeekingAlpha.com* Blog**

9         On October 18, 2016, an anonymous *SeekingAlpha.com* blogger with the pen

10  name "Aurelius" published a blog entitled, "BANC: Extensive Ties to Notorious

11  Fraudster Jason Galanis Make Shares Un-Investible."  (Ex. 12.)  Aurelius

12  acknowledged in the Blog that it was "short" the Company's stock—that the

13  blogger profited if the Company's stock declined.  (*Id.* at 28.)  The Blog

14  characterized itself as a "research opinion," and stated that it "represent[ed] the

15  opinion of the author as of the date of" the Blog.  (*Id.*)  A "Disclaimer" included

16  with the Blog stated, "[a]ll information for this article was derived from publicly

17  available information."  (*Id.* at 2.)  The "Disclaimer" further added, "The author

18  makes no representation as to the accuracy or completeness of the information set

19  forth in this article . . . .  The author may also cover his/her short position at any []

20  time without providing notice."  (*Id.*)

21        The Blog claimed that based on a review of "publicly-available state, federal,

22  and international documents, . . . [o]ur research establishes that BANC's senior-

23  most officers and board members have a broad mosaic of extensive and

24  indisputable ties to Jason Galanis.  We believe this introduces a significant

25  undiscounted risk that notorious criminals gained control over the $10 Billion

26

27  _____

    [2] All references to "¶" are to the Complaint.  All references to numbered exhibits
28  are to those attached to the Declaration of Mark R. McDonald.

---

3

taxpayer guaranteed Banc of California." (*Id.* at 3.)  "Key research conclusions" of the Blog included claims that "Galanis controlled COR, Banc's founding shareholder," "an off-balance sheet lender controlled by Banc's senior-most officers financed Galanis," and "Banc's lead 'independent' director [Chad Brownstein] has strong ties to Galanis." (*Id.* at 4.)  After summarizing these "key research conclusions," the Blog reiterated that "*[a]ll information for this article was derived from publicly available information.  The author(s) have a short position in Banc Of California.  Investors are strongly encouraged to conduct their own due diligence into these factors.*" (*Id.* at 4 (emphasis in original).)

## C.    The Company's October 18, 2016 Press Release

Following publication of the Blog, on October 18, 2016, the Company released a press release in which it announced that "[t]he Company's Board of Directors has been aware of matters relating to Jason Galanis including certain claims he had made suggesting an affiliation with members of the Company, its Board, and/or its Executive team." (Ex. 1 at 1.)  The press release further stated that "[t]he Board, acting through its Disinterested Directors, immediately initiated a thorough independent investigation led by Winston & Strawn, and has received regular reports including related to regulatory and governmental communications over the past year." (*Id.*)  The press release explained that a "complaint filed by the Department of Justice against Mr. Galanis and others dated May 9, 2016 . . . clearly states that Mr. Galanis' claims to be affiliated with COR Capital were fraudulent." (*Id.*)

Plaintiff asserts that following the publication of the Blog, the Company's stock price dropped from $15.87 per share to $11.26 per share.  (¶ 7.)

## D.    The Company's Disclosures After The Class Period Ends

Although the class period ends on January 20, 2017, meaning any "fraud" ended by that date, the Complaint inexplicably includes allegations about disclosures after January 20, 2017.

### 1. The Company's January 23, 2017 announcements

On January 23, 2017, the Company issued a press release entitled, "Banc of California Board Provides Update on Independent Investigation; Plans Improvements to Corporate Governance Policies." (Ex. 2.) The press release discussed several topics.

First, the press release stated that the allegations contained in the Blog had become the subject of a Special Committee investigation and that the Special Committee had "retained WilmerHale, a law firm with no prior relationship with the Company, to conduct an independent investigation" into the allegations. (*Id.* at 1.) According to the press release, "[w]hile certain work remains to be completed, to date Wilmer Hale's inquiry has not found any violation of law. In addition, contrary to the claims in the Blog, the inquiry has not found evidence that Jason Galanis has any direct or indirect control or undue influence over the Company." (*Id.*)

Second, the press release noted that "the Special Committee has determined that a press release issued on October 18, 2016 contained inaccurate statements" with respect to three issues: (1) although the October 2016 press release stated that the Company's previous investigation into issues raised by the Blog was initiated by its Board of Directors, it was initiated by "Company management"; (2) although the October 2016 "press release characterized the investigation as 'independent,'" it did not "disclos[e] that the law firm conducting the investigation had previously represented both the Company and the Company's CEO individually"; and (3) the October 2016 press release "overstated both the degree to which the Company had been in contact with regulatory agencies about the subject matter referenced in the Blog, as well as the involvement of the directors in oversight or direction of the inquiry." (*Id.* at 1-2.)

Third, the press release disclosed that on January 12, 2017, the Securities and Exchange Commission ("SEC") "issued a formal order of investigation directed at

certain of the issues that the Special Committee is reviewing.  Also on January 12, 2017, the SEC issued a subpoena seeking certain documents from the Company, primarily relating to the October 18, 2016 press release and associated public statements."  (*Id.* at 2.)

On January 23, 2017, the Company issued a separate press release announcing the resignation of Steven Sugarman.  (Ex. 3.)

### 2.   The Company's February 9, 2017 announcement that WilmerHale had completed its investigation

On February 9, 2017, the Company issued a press release announcing that "WilmerHale has made a final report to the Special Committee . . . and has confirmed its earlier conclusion that the inquiry has not found any violation of law."  (Ex. 4.)  The press release further noted that "contrary to the claims in the Blog, WilmerHale did not find evidence that Jason Galanis has had any direct or indirect control or undue influence over the Company.  Furthermore, the inquiry did not find that any loan, related party transaction, or any other circumstance had impaired the independence of any director."  (*Id.*)

### 3.   The Company discloses material weaknesses in internal controls but no material misstatements

On March 1, 2017, the Company identified certain material weaknesses in its internal controls over financial reporting as of September 30, 2016.  (¶ 47.)  Nevertheless, "no material misstatement was identified in the financial statements" as a result of these material weaknesses.  (Ex. 7 at 192.)  The Company announced the adoption of various measures to remediate the material weaknesses that were identified.  (*Id.* at 193.)

### E.   Plaintiff's Allegations

The Complaint alleges that numerous statements during the Class Period were materially false and misleading because of (1) the alleged "concealment" of the Company's alleged associations with Jason Galanis (¶¶ 59, 61, 66, 72, 77 82);

6

(2) the alleged "concealment" of the purported lack of independence of Mr.

Brownstein, the Company's "Lead Independent Director" (*id.*); and (3) "Banc's

admitted material weaknesses in [] internal controls" that allowed Defendants to

"conceal" the alleged associations with Galanis (*id.*).

Based on these allegations, Plaintiff asserts claims under Section 10(b) of the

Securities and Exchange Act (the "Exchange Act") and Rule 10b-5 thereunder

against the Company, Mr. Sugarman, and Mr. McKinney (collectively,

"Defendants"). (¶¶ 121-125.) Plaintiff also asserts a claim against Defendants for

alleged violation of Section 20(a) of the Exchange Act. (¶¶ 126-127.)

## ARGUMENT

## I. PLAINTIFF MUST SATISFY EXACTING PLEADING REQUIREMENTS

To state a Section 10(b) claim, Plaintiff must plead particularized facts

showing: "(1) a material misrepresentation or omission by the defendant; (2)

scienter; (3) a connection between the misrepresentation or omission and the

purchase or sale of a security; (4) reliance upon the misrepresentation or omission;

(5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund,*

*Inc.*, 134 S. Ct. 2398, 2407 (2014) (citations omitted). In addition to the heightened

pleading requirements established by the PSLRA, each element of a Section 10(b)

claim is also subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).

*Apollo*, 774 F.3d at 605.

"Under the PSLRA, to properly allege falsity, a securities fraud complaint

must [] 'specify each statement alleged to have been misleading, the reason or

reasons why the statement is misleading, and, if an allegation regarding the

statement or omission is made on information and belief, . . . state with particularity

all facts on which that belief is formed.'" *In re Rigel Pharms., Inc. Sec. Litig.*, 697

F.3d 869, 877 (9th Cir. 2012) (quoting 15 U.S.C. § 78u-4(b)(1)). As the Ninth

Circuit has held: "A litany of alleged false statements, unaccompanied by the

pleading of specific facts indicating why those statements were false, does not meet this standard." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

Section 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011).  Disclosure is required under these provisions only when necessary "to make . . . statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10-b-5(b); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5.").

## II.   PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO SHOW A MATERIAL MISREPRESENTATION OR OMISSION

### A.   Plaintiff Fails to Plead Particularized Facts Showing the Company Fraudulently Concealed Its Alleged "Associations with Jason Galanis" or Mr. Brownstein's Alleged Lack of Independence

Relying on the Blog, Plaintiff alleges that numerous statements during the Class Period were false and misleading due to Defendants' purported concealment of (a) the Company's alleged associations with Jason Galanis and (b) Mr. Brownstein's alleged lack of independence.  (¶¶ 59, 61, 66, 72, 77 82.)  These allegations fail on multiple levels.

First, Plaintiff fails to establish any purported "associations" between the Company and Galanis, and likewise fails to establish Mr. Brownstein's lack of independence.  Second, even if Plaintiff were able to establish these underlying, threshold "facts," Plaintiff fails to show how even if such facts existed, the alleged concealment of the "facts" made any statement false or misleading when made.  Third, these fatal defects notwithstanding, because the allegedly "concealed" "facts" contained in the Blog—which is all Plaintiff relies upon—were "publicly available," they are immaterial as a matter of law and cannot form the basis of any Section 10(b) claim.

**1.    Plaintiff improperly relies on the Blog to establish the Company's alleged "associations with Jason Galanis" and Mr. Brownstein's alleged lack of independence**

In order to establish the Company's alleged "associations with Jason Galanis" and Mr. Brownstein's alleged lack of independence, Plaintiff relies wholly on the Blog.  (¶¶ 30-37, 44.)  This is improper because there are no facts demonstrating that the Blog's anonymous, short-selling author, "Aurelius," has any personal knowledge of the matters set forth in the Blog.

The Ninth Circuit has made clear that in order to surmount the exacting pleading requirements of the PSLRA, plaintiffs may not rely on unnamed sources unless they describe the sources "with sufficient particularity to establish their reliability and personal knowledge" of the facts alleged.  *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009), *aff'd*, No. 06-35758, 2009 U.S. App. LEXIS 7025 (9th Cir. Feb. 10 2009).  Where a complaint fails to "provide an adequate basis for determining that the witnesses in question have personal knowledge of the events they report," the allegations made by such witnesses may not be relied upon and are entitled to no weight.  *Id.*; *see also id.* at 996 (disregarding allegations of confidential witness who had "no firsthand knowledge of" facts alleged); *see also Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1202 (N.D. Cal. 2008) (statements by confidential witness who lacked "firsthand knowledge" of facts could not support allegations of fraud).

Here, Plaintiff pleads no facts to "provide an adequate basis for determining that [Auerelius has] personal knowledge of the events" reported in the Blog.  *See Zucco*, 552 F.3d at 995.  Nor could Plaintiff do so.  The Blog makes clear that it is merely a "research opinion" and "represents the opinion of the author as of the date of this article."  (Ex. 12 at 2.)  It further states that "[a]ll information for this article was derived from publicly available information," but "such information and sources cannot be guaranteed as to their accuracy or completeness.  *The author*

1    *makes no representation as to the accuracy or completeness of the information set*

2    *forth in this article . . . .*"  (*Id.* (emphasis added).)

3         Far from being reliable sources of information, "short sellers operate by

4    speculating that the price of a security will decrease" and therefore "they have an

5    obvious motive to exaggerate the infirmities of the securities in which they

6    speculate."  *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577

7    (S.D.N.Y. 2012).

8                    **2.    Plaintiff fails to plead facts showing the concealment of any**
                            **alleged facts made any statement false or misleading**
9

10        Assuming for the sake of argument that Plaintiff had sufficiently alleged that

11   there were "connections" between Galanis and the Company, Plaintiff fails to show

12   that any prior Company statements were misleading.

13        Section 10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose

14   any and all information, even if it is determined that the information in question is

15   material.  *Matrixx Initiatives,* 563 U.S. 27 at 44-45.  Instead, disclosure is required

16   only when necessary "to make . . . statements made, in the light of the

17   circumstances under which they were made, not misleading."  *Id.* (quoting 17

18   C.F.R. § 240.10b–5(b)).  "In other words, plaintiffs cannot simply allege that an

19   omission was material to properly allege falsity; rather, plaintiffs must show that

20   the omission actually renders other statements misleading."  *Lomingkit v. Apollo*

21   *Educ. Grp. Inc.*, No. CV-16-00689-PHX-JAT, 2017 WL 633148, at *11 (D. Ariz.

22   Feb. 17, 2017) (citing *Rigel Pharms.*, 697 F.3d at 880 n.8); *see also Brody v.*

23   *Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (Section 10(b)

24   "complaint must specify the reason or reasons why the statements made by [the

25   defendants] were misleading or untrue, not simply why the statements were

26   *incomplete*."(emphasis added)).

27        Plaintiff fails to do so here.  Plaintiff instead simply alleges that a litany of

28   statements made by Defendants concerning the Company's success going all the

la-1353628

1  way back to October 29, 2015 were false or misleading due to the alleged

2  concealment of the Company's associations with Jason Galanis.  (¶¶ 59, 61, 66, 72,

3  77, 82.)  But Plaintiff fails to offer any explanation regarding how any particular

4  statement was rendered false or misleading due to this alleged concealment.  *See*

5  *Metzler*, 540 F.3d at 1070 ("A litany of alleged false statements, unaccompanied by

6  the pleading of specific facts indicating why those statements were false, does not

7  meet [the PSLRA pleading] standard.").

8       Nor could Plaintiff do so.  The Company had not made any statements about

9  connections with Galanis, so the opinions in the Blog about Galanis' alleged ties

10  could not have shown any prior statements to be misleading.  While Plaintiff fails

11  to specifically identify which particular statements in the lengthy block quotes are

12  actually being challenged,[3] it is clear that many of the statements are non-

13  actionable, accurate statements of historical fact, *In re Cirrus Logic Sec. Litig.*, 946

14  F. Supp. 1446, 1471 (N.D. Cal. 1996), non-actionable, inherently subjective

15  puffery, *West v. Ehealth, Inc.*, No. 3:15-cv-00360-JD, 2016 WL 948116, at *7

16  (N.D. Cal. Mar. 14, 2016), or statements of opinion for which additional, necessary

17  allegations are lacking, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.*

18  *Align Tech., Inc.*, 856 F.3d at 605, 615-16 (9th Cir. 2017).

19       Plaintiff refers to the "risk disclosure" in the 3Q15 10-Q, which states that

20  "[m]anaging reputational risk is important to attracting and maintaining customers,

21  investors and employees."  (¶ 58.)  Plaintiff does not explain how that statement

22  was misleading, even if there had been ties between Galanis and the Company.

23  *See, e.g., Reed v. Amira Nature Foods Ltd.*, CV 15-0957 FMO (PJWx), 2016 WL

24  6571281, at *7 (C.D. Cal. July 18, 2016) (plaintiff failed to adequately allege an

25  actionable omission where it did "not provide any allegations as to why [an alleged

26  _____

   [3] This alone makes the Complaint an improper puzzle pleading that violates Rule 8

27  and the PSLRA, and for which dismissal is required.  *See, e.g.*, *Primo v. Pac.*
   *Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112-1113 (N.D. Cal. 2013).

28

1  omission] rendered [defendant's] statements materially false and misleading, rather

2  than merely incomplete.").

3       Plaintiff's allegations concerning Mr. Brownstein's purported lack of

4  independence fail for similar reasons.  Plaintiff alleges that the Company's financial

5  statements, which included a footnote describing "Related-Party Transactions,"

6  omitted that Mr. Brownstein was not independent.  (¶ 59(b).)  But the descriptions

7  of Related-Party Transactions did not mention Brownstein, his independence, or

8  whether he had any involvement in approving any of those transactions.  (Ex. 8 at

9  65.)  The Related-Party Transaction footnote merely provides accurate descriptions

10 of prior transactions.  *In re Cirrus Logic*, 946 F. Supp. at 1471(holding that accurate

11 statements of historical fact are not actionable.).

12        **3.**    **The purportedly concealed information was public and,**

13                **therefore, immaterial, in any event**

14      Even if Plaintiff could surmount the fatal defects already discussed, Plaintiff

15 would still be unable to allege falsity adequately with respect to any challenged

16 statement for another reason:  The allegedly "concealed" information regarding the

17 Company's alleged associations with Galanis, and Mr. Brownstein's alleged lack of

18 independence, was not concealed at all.  Instead, as stated in the Blog—on which

19 Plaintiff wholly relies—all of the information was *publicly available*.  (Ex 12 at 2

20 ("All information for this article was derived from publicly available

21 information.").)

22      Publicly available information—like that at issue her—is immaterial as a

23 matter of law.  *See, e.g.*, *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp.

24 2d 565, 577 (S.D.N.Y. 2013) ("Because the substance of the alleged omissions was

25 already in the public domain, the alleged omissions could not have altered 'the total

26 mix of information available' to the public and were also immaterial as a matter of

27 law." (citing *Basic*, 485 U.S. 224 at 231-32)), *aff'd*. 566 F. App'x 93 (2d Cir.

28 2014); *White v. H&R Block, Inc.*, No. 02 Civ. 8965(MBM), 2004 WL 1698628, at

la-1353628

1  *12 (S.D.N.Y. July 28, 2004) ("[T]he facts here show that all the information

2  plaintiffs claim was concealed by defendants was publicly available . . . and on

3  these facts the law renders defendants' purported misstatements immaterial.").

4  Materiality, of course, is a necessary aspect of falsity under Section 10(b).

5  Accordingly, Plaintiff fails to allege adequately that any of the allegedly

6  "concealed" information was "concealed" at all, and therefore fails to allege

7  adequately materiality.  This too is independently fatal to Plaintiff's claims

8  concerning Galanis and Mr. Brownstein.  *See, e.g.*, *In re Cutera Sec. Litig.*, 610

9  F.3d 1103, 1111 (9th Cir. 2010).

10  **B.    Plaintiff's Allegations Concerning the Material Weaknesses in**
11  **Internal Controls Are Irrelevant**

12      Although the Complaint refers to the Company's disclosure on March 1,

13  2017 that it had identified a material weakness in internal controls as of September

14  30, 2017, the Complaint does not explain how that disclosure—long after the end of

15  the Class Period—is relevant.  (*See* ¶¶ 92-93.)  It is not.  That disclosure did not

16  reveal any prior statement of the Company to be false or misleading.  To the

17  contrary, that discussion noted that "no material misstatement was identified in the

18  financial statements" as a result of these material weaknesses.  (Ex. 7 at 192.)

19  **C.    The Company Did Not Have a Duty to Disclose the Winston &**
20  **Strawn Investigation**

21      Plaintiff asserts that the Company violated the securities laws by failing to

22  disclose that it initiated an investigation into matters related to Galanis long before

23  the Blog was published on October 18, 2016.  (¶ 4.)  But Banc had no duty to

24  announce it was conducting an investigation.  As stated, a company has a duty not

25  to mislead, and Plaintiff does not claim that any prior statement was misleading

26  because the Company failed to disclose the Winston & Strawn investigation.

27      Further, the investigation by Winston & Strawn concluded that Galanis did

28  *not* control the Company.  (*See* Ex. 1.)  Plaintiff does not explain how it is

13

1  misleading to fail to disclose an investigation that turned up no wrongdoing and did

2  not result in any need to correct a prior statement.

3      Finally, even if the Winston & Strawn investigation had turned up improper

4  ties between Galanis and the Company, and the Company had disclosed its

5  findings, that would not mean the Company should have disclosed the initiation of

6  the investigation.  It is well-settled that "taking time to investigate a situation prior

7  to disclosing the situation to the investing public is not fraudulent." *In re Yahoo!*

8  *Inc. Sec. Litig.*, No. C 11-02732 CRB, 2012 WL 3282819, at *22 (N.D. Cal. Aug.

9  10, 2012), *aff'd.* 611 F. App'x 387 (9th Cir. 2015); *see also In re HP Sec. Litig.*,

10  No. C 12-05980 CRB, 2013 WL 6185529, at *10 (N.D. Cal. Nov. 26, 2013)

11  (same); *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 761 (7th Cir. 2007)

12  ("Taking the time necessary to get things right is both proper and lawful.  Managers

13  cannot tell lies but are entitled to investigate for a reasonable time, until they have a

14  full story to reveal.").

15      **D.    Plaintiff Fails to Plead Particularized Facts Showing a *Materially***
16  **     *False* Statement Regarding the Winston & Strawn Investigation**

17      Plaintiff next asserts that the Company admitted on January 23, 2017 that its

18  October 18, 2016 press release "misled investors about the independence of its

19  investigation into the ties between Galanis and Banc insiders and had overstated the

20  degree of contact between Banc and regulators."  (¶ 88.)  As the release itself

21  makes clear, the Company merely relayed a Special Committee's conclusions and

22  made no such admissions.

23      The Complaint contains no allegations, however, demonstrating that any one

24  of these "inaccurate" statements was *materially* false, as is required in order for a

25  misrepresentation to be actionable.  A statement is materially false only if "there is

26  a substantial likelihood that the disclosure of the omitted fact would have been

27  viewed by a reasonable investor as having significantly altered the total mix of

28  information made available." *Basic*, 485 U.S. at 231-32 (internal quotation marks

and citation omitted).  "Although determining materiality in securities fraud cases should ordinarily be left to the trier of fact, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *Cutera*, 610 F.3d at 1108 (internal quotation marks and citation omitted).

Here, the Complaint offers *no* allegations concerning the materiality of these statements, and rests solely on the allegations that inaccurate statements were made. This is insufficient.  *See In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1161 (C.D. Cal. 2007) ("Simply alleging misstatements were made is a woefully insufficient basis for finding that the misrepresentations are 'material' as a matter of law.  If a misrepresentation is material simply because it is a misrepresentation, then the law's materiality requirement is altogether meaningless." (internal quotation marks and citation omitted)).

## III. PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO SHOW SCIENTER

Even if Plaintiff had alleged adequately a material false statement or omission—they did not—dismissal would still be required because Plaintiff has failed to allege adequately the required element of scienter.  "This is an independent basis" for dismissal.  *Apollo*, 774 F.3d at 607.

The PSLRA requires plaintiffs to allege "with particularity facts giving rise to a strong inference" that a defendant acted with "the required state of mind," 15 U.S.C. § 78u-4(b)(2), which is an "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  Under the PSLRA, an intent to deceive must be alleged "in great detail, [by] facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Sec. Litig.*, 183 F.3d at 974.  The "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as

1  compelling as any opposing inference of non-fraudulent intent." *Tellabs, Inc. v.*

2  *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

3      The Ninth Circuit has adopted a two-step analysis for reviewing scienter

4  allegations.  First, the Court must determine "whether any of the plaintiff's

5  allegations, standing alone, are sufficient to create a strong inference of scienter."

6  *Zucco*, 552 F.3d at 992.  Second, if no individual allegation is sufficient, the court

7  must "conduct a 'holistic' review of the same allegations to determine whether the

8  insufficient allegations combine to create a strong inference of intentional conduct

9  or deliberate recklessness."  *Id.*  Here, the Complaint does not come close to

10 meeting these "[e]xacting pleading requirements." *Tellabs*, 551 U.S. at 313.

11
12 **A.    Plaintiff Pleads No Facts Showing Any Defendant Acted with Scienter in "Concealing" the Alleged "Associations" between the Company and Galanis, or Mr. Brownstein's Alleged Lack of Independence**

13
14     "To establish that a corporate defendant, such as [the Company], acted with

15 scienter, a plaintiff must usually show that one or more of its directors or officers

16 acted with scienter." *Erickson v. Corinthian Colls., Inc.*, No. CV 13-7466-GHK

17 (PJWx), 2015 WL 12732435, at *3 (C.D. Cal. Apr. 22, 2015); *see also In re Impac*

18 *Mortg. Holdings, Inc.*, 554 F. Supp. 2d 1083, 1101 n.12 (C.D. Cal. 2008).

19 Moreover, "[w]here, as here, the Plaintiff[] seek[s] to hold individuals and a

20 company liable," it must "allege scienter with respect to each of the individual

21 defendants." *Apollo*, 774 F.3d at 607.

22     Plaintiff pleads no facts showing any Defendant acted with scienter in

23 "concealing" the alleged "associations" between the Company and Galanis, or Mr.

24 Brownstein's alleged lack of independence.  On this point, the Company refers also

25 to the separate briefs filed by Mr. McKinney and Mr. Sugarman.

26     With respect to Mr. McKinney, Plaintiff pleads no particularized facts

27 showing that he had knowledge of either alleged fact.  This alone makes it

28 impossible for Plaintiff to establish that Mr. McKinney acted with scienter in

la-1353628

"concealing" the information.  *See, e.g., Petrie v. Elec. Game Card, Inc.*, No. SACV 10-00252 DOC (RNBx), 2011 WL 13130015, at *7 (C.D. Cal. Oct. 19, 2011) (Defendant "could not have had the required scienter because he did not know of the [information] he was alleged to have omitted from his statements . . . . An absence of knowledge precludes a finding of scienter on the basis of that knowledge.").

With respect to Mr. Sugarman, while Plaintiff argues that knowledge may be inferred from the allegations in the Blog, "mere knowledge . . . does not automatically translate into the actual intent to defraud investors.  The important issue is . . . whether defendants knew or should have known that their failure to disclose those facts presented a danger of misleading buyers . . . ." *Id.* (quotation marks, citation and alterations omitted).  There are no such facts alleged here.  This is especially true given the information contained in the Blog was admittedly "publicly available."  Under such circumstances, it makes no sense that anyone could believe that "concealing" that information would mislead investors—there was no concealment to begin with.

### B.   Plaintiff Pleads No Facts Showing Any Defendant Acted with Scienter in "Concealing" the Investigation by Winston & Strawn

Plaintiff likewise pleads no facts showing any Defendant acted with scienter in "concealing" the Company's investigation of topics related to the Blog.  It makes no sense that Defendants were trying to mislead investors by not disclosing the mere existence of an investigation that ultimately concluded Galanis did not control the Company.

This is especially true given the Company had no duty to disclose the investigation in the first place.  *See supra* Section II.C.

1

### C.   Plaintiff Pleads No Facts Showing Any Defendant Acted with Scienter with Respect to the October 18, 2016 Press Release

2

3    Even if the Special Committee determined that it was inaccurate to refer to

4   the investigation by Winston & Strawn as "independent," without disclosing that

5   the firm had previously represented the Company and Mr. Sugarman, it does not

6   raise any inference—much less the requisite strong inference—that any Defendant

7   was trying to mislead investors by not disclosing these separate representations.

8   Given that the Special Committees' investigation, with the assistance of

9   WilmerHale, reached the same conclusion that Winston & Strawn reached

10   regarding Galanis, it is implausible that Defendants were trying to mislead about

11   the Winston investigation by omitting Winston's prior work.

12    Likewise, the fact that the Special Committee deemed it inaccurate to refer to

13   the Company's contact with regulators as "regular" does not suggest that

14   Defendants were trying to mislead investors.  Plaintiff does not even attempt to

15   explain why any investor would care whether "contacts" with regulators about the

16   Company's investigation regarding Galanis were "regular" rather than sporadic.

17    Regarding Mr. McKinney, there is no allegation that he knew about Winston

18   & Strawn's prior work or about the regularity of contact between the Company and

19   regulators, nor any allegation that Mr. McKinney made any of the "inaccurate"

20   statements in the press release.  *See, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper*

21   *Networks, Inc.*, 880 F. Supp. 2d 1045, 1070 (N.D. Cal. 2012) ("A defendant can be

22   held liable under § 10(b) for a false or misleading statement only if the defendant

23   'made' the statement.").  Nor does Plaintiff allege that Mr. Sugarman was involved

24   in the investigation in any way that would cause him to understand that any of the

25   statements in the press release were "inaccurate" when made.

26

27

28

la-1353628

1
2

**D.      The Resignations of Mr. Sugarman, Mr. McKinney, and Mr. Brownstein Do Not Establish a Strong Inference of Scienter**

3      Plaintiff argues that the resignations of Mr. Sugarman, Mr. McKinney, and

4   Mr. Brownstein are somehow indicative of scienter.  Plaintiff is incorrect.

5   "Resignations or terminations by themselves do not support a strong inference of

6   scienter."  *In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL

7   736802, at *10 (C.D. Cal. Mar. 18, 2009).  As, the Ninth Circuit has made clear,

8
9
10
11
12
13

> Absent allegations that the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances, the inference that the defendant corporation forced certain employees to resign because of its knowledge of the employee's role in the fraudulent representations will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons.

14   *Zucco*, 552 F.3d at 1002.  There are no such allegations here with respect to any of

15   the resignations.  *Luna v. Marvell Tech. Grp. Ltd.*, No. 15-cv-05447-RMW, 2016

16   WL 5930655, at *13 (N.D. Cal. Oct. 12, 2016) ("Plaintiff does not allege any facts,

17   other than the general timing of the departures, to suggest that they were connected

18   to any purported wrongdoing or fraudulent activity.") (internal quotation and

19   citations omitted)); *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F.

20   Supp. 2d 1069, 1093 (N.D. Cal. 2005) (finding that "notable departures" of

21   executives—whether they were terminated or resigned—"are not in and of

22   themselves evidence of scienter").

23   **IV.    PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO SHOW LOSS CAUSATION**

24

25      "[T]he absence of an adequate pleading of material misstatements or

26   omissions necessarily means Plaintiff has not alleged sufficient facts to show loss

27   causation."  *In re Intrexon Corp. Sec. Litig.*, No. 16-cv-02398-RS, 2017 WL

28

19

732952, at *7 (N.D. Cal. Feb. 24, 2017).  This fact notwithstanding, Plaintiff fails to allege loss causation adequately for a number of other reasons.

To allege loss causation adequately, Plaintiff "must plausibly allege that the defendant's fraud was '*revealed* to the market and *caused* the resulting losses.'" *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) (alterations in original) (citation omitted).  "The key is adequately alleging that the event or series, by revealing a previously unknown fraud, caused defendant's stock price to decline." *In re Herbalife, Ltd. Sec. Litig.*, No. CV 14-2850 DSF (JCGx), 2015 WL 1245191, at *1 (C.D. Cal. Mar. 16, 2015).  Plaintiff "must state with particularity the circumstances constituting" loss causation as required by Fed. R. Civ. P. 9(b). *Apollo*, 774 F.3d at 605.

Here, Plaintiff appears to allege its losses were caused by drops in the price of the Company's stock price following two "corrective disclosures": (1) the October 18, 2016 Blog and (¶ 7); and (2) the Company's January 23, 2017 announcements.  (¶ 90.)  However, no aspect of these disclosures is sufficient to establish loss causation.  Plaintiff's failure to allege loss causation adequately is independently fatal to the Complaint and alone requires its dismissal.

### A.    The Blog Was Not a Corrective Disclosure

The Blog was not a corrective disclosure and cannot support loss causation for at least two reasons.  First, the Blog itself states that it was based entirely on "public available information."  Second, the Blog itself also states that it merely reflects the author's "opinion."  On account of either of these facts, it is clear that the Blog did not—and could not—reveal any fraud.

The Blog states repeatedly that it was based entirely on "publicly available information."  (Ex. 12 at 2 ("All information for this article was derived from publicly available information."); *id.* at 4 (same)).  Numerous courts have made clear, however, that "the mere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure."

1    *Herbalife*, 2015 WL 1245191, at *4 n.7 (citations omitted); *see also In re Blue*

2    *Earth, Inc. Sec. Class Action Litig.*, No. CV 14-08263-DSF (JEMx), 2015 WL

3    12001274, at *2 (C.D. Cal. Nov. 3, 2015) (short seller report was not corrective

4    disclosure where it was "a compilation of publicly available information");

5    *Intrexon*, 2017 WL 732952 at *7 (short seller report was not corrective disclosure

6    where it "clearly attributes its findings to public filings, websites and other publicly

7    available documents"); *Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-cv-

8    01795-WHO, 2016 WL 4585753, at *5 (N.D. Cal. Sept. 2, 2016) (because short

9    seller report "only collected and opined on already public information, it does not

10   constitute disclosure of 'the truth' as required for a corrective disclosure" (citation

11   omitted)); *cf. Loos*, 762 F.3d at 889 (agreeing with reasoning of the Eleventh

12   Circuit that loss causation is not established when the information in an alleged

13   corrective disclosure "had been derived entirely from public filings and other

14   publicly available sources of which the stock market was presumed to be aware")

15   (citation omitted)).  The reason for this is clear: "[I]f the information relied upon in

16   forming an opinion was previously known to the market, the only thing actually

17   disclosed to the market when the opinion is released is the opinion itself, and such

18   an opinion, standing alone, cannot 'reveal[ ] to the market the falsity' of a

19   company's prior factual representations."  *Meyer v. Greene*, 710 F.3d 1189, 1199

20   (11th Cir. 2013).

21       Moreover, here, the Blog expressly acknowledges that it merely constitutes

22   Aurelius's opinion.  (Ex. 12 at 2 ("This articles represents the opinion of the author

23   as of the date of this article.").)  This too prevents the Blog from constituting a

24   corrective disclosure, since an opinion does not reveal a *truth*.  *See, e.g.*, *Loos*, 762

25   F.3d at 890 n.3 (corrective disclosure must "reveal to the market [a] pertinent truth"

26   (quotation omitted)); *see also Intrexon*, 2017 WL 732952, at *7 (short seller report

27   was not a corrective disclosure where it stated that it "'expresses [] research

28   opinions'"); *Bonanno*, 2016 WL 4585753, at *4 ("Plaintiffs have not adequately

1     pleaded how the [short seller report] constitutes 'true facts' rather than a mere

2     opinion." (citation omitted)).  This makes good sense.  "If every . . . short-seller's

3     opinion based on already-public information could form the basis for a corrective

4     disclosure, then every investor who suffers a loss in the financial markets could sue

5     under § 10(b) using [a short-seller's] negative analysis of public filings as a

6     corrective disclosure.  That cannot be—nor is it—the law."  *Meyer*, 710 F.3d at

7     1199.

8        Plaintiff's failure to allege adequately that the Blog was a corrective

9     disclosure is fatal to all claims relying on the Blog.

10
11    **B.**     **Plaintiff Fails to Plead Particularized Facts Showing that the Company's January 23, 2017 Announcements Support Loss Causation**

12
13        Plaintiff also alleges that the Company's announcements on January 23, 2017

14     show loss causation.  On that day, the Company announced, among other things:

15     (1) the resignation of Mr. Sugarman; (2) the SEC's issuance of "a formal order of

16     investigation" and subpoena to the Company concerning primarily the Blog "and

17     associated public statements"; and (3) inaccurate statements in the October 18,

18     2016 press release.  (¶ 88-89.)  Plaintiff fails to plead particularized facts showing

19     that any one of these disclosures supports loss causation.

20        **1.**     **The announcement of Mr. Sugarman's resignation does not support loss causation**

21        Plaintiff fails to plead particularized facts supporting loss causation with

22     respect to the announcement of Mr. Sugarman's resignation.  Resignations of a

23     company's executives do not support loss causation where "plaintiffs do not

24     explain the connection—if any—between the resignations and the alleged [fraud]."

25     *In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1183, 1208 (N.D. Cal. 2007).

26     Rather, Plaintiff must plead particularized facts indicating that the executives "had

27     resigned because they were involved in" the alleged fraud.  *Id.*  Without such

28     allegations, courts routinely hold that officer resignations are insufficient to plead

loss causation.  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 587 (S.D.N.Y. 2014) (plaintiffs failed to plead loss causation where they "did not allege that the announcement of [the executive's] resignation itself revealed any fraud"); *Bach v. Amedisys, Inc.*, No. 10-395-BAJ, 2012 U.S. Dist. LEXIS 185986, at *35 (M.D. La. Jun. 28, 2012) ("[T]he resignation must somehow reveal actual evidence of fraud for a corrective disclosure to occur."); *Glaser v. The 9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011) (requiring "independent facts [to] indicate that the resignation was somehow tied to the fraud alleged").

Here, the Complaint pleads no facts connecting Mr. Sugarman's resignation to the alleged fraud.  Nor could it.  The same day that Mr. Sugarman's resignation was announced, the Company also disclosed, with respect to the Special Committee's investigation into matters raised by the Blog: "[C]ontrary to the claims in the [Blog], the inquiry has not found evidence that Jason Galanis has any direct or indirect control or undue influence over the Company [or] that any loan, related party transaction, or any other circumstance has impaired the independence of any director."  (Ex. 2 at 1.)  Accordingly, Mr. Sugarman's resignation cannot support loss causation.

### 2.    The announcement of the SEC's investigation does not support loss causation

Plaintiff also fails to plead particularized facts supporting loss causation with respect to the announcement of the SEC investigation.  In *Loos*, the Ninth Circuit made clear that the announcement of an investigation is insufficient to establish loss causation:

> The announcement of an investigation does not "reveal" fraudulent practices to the market.  Indeed, at the moment an investigation is announced, the market cannot possibly know what the investigation will ultimately reveal. While the disclosure of an investigation is certainly an ominous event, it simply puts investors on notice of a potential future disclosure of fraudulent conduct. Consequently, any decline in a corporation's share price following the announcement of an investigation can only

23

1
2
3

> be attributed to market speculation about whether fraud has occurred. This type of speculation cannot form the basis of a viable loss causation theory. Accordingly, we hold that the announcement of an investigation, without more, is insufficient to establish loss causation.

4
5
6
7
8
9
10
11
12
13
14

762 F.3d at 890; *see also Herbalife*, 2015 WL 1245191, at *6 ("Disclosure of the investigation, unaccompanied by any contemporaneous or subsequent finding or admission of fraud, does not establish loss causation." (citing *Loos*, 762 F.3d at 888-91)); *Rok v. Identiv, Inc.*, No. 15-cv-5775-CRB, 2017 WL 35496, at *20 (N.D. Cal. Jan. 4, 2017) (relying on *Loos* and finding that t]he announcement of an investigation does not cause loss causation" because "it does not reveal fraud but only the risk of fraud").  Plaintiff does not allege anything "more" here.  There is no basis under which the disclosure of the SEC's investigation may support loss causation.

### 3. The announcement regarding the October 18, 2016 press release does not support loss causation

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Finally, Plaintiff fails to plead particularized facts supporting loss causation with respect to Banc's January 23, 2017 announcement regarding the October 18, 2016 statements.  (*See supra* Section IV.B.)  To plead loss causation, Plaintiff must allege facts showing "that the stock price was impacted by the specific disclosures" at issue as opposed to other "negative information" that was revealed the same day. *In re Blue Earth, Inc. Sec. Litig.*, 2015 WL 12001274, at *3 (citing *Loos*, 762 F.3d at 887; *Metzler*, 540 F.3d at 1062).  "While the fraudulent misrepresentation need not be the sole cause of the decreased stock price, plaintiff must still demonstrate that the fraudulent statement was a substantial or significant cause of the decline in price."  *Id.* (quotations omitted); *see also Identiv*, 2017 WL 35496, at *18 ("The SAC also fails to account for alternative explanations for the share price decreases in May 2015—for example, that delayed SEC filings could enhance [the

24

1   company's] risk of being delisted—thereby failing to adequately allege the requisite
2   causal connection.").  Plaintiff fails to meet that burden here.

3       There are no facts alleged in the Complaint demonstrating that the statements
4   concerning the October 18, 2016 statements were "a substantial or significant cause
5   of the decline in price" of the Company's stock, as opposed to other revelations
6   made the same day, including the announcements of Mr. Sugarman's resignation
7   and the SEC investigation.  Indeed, the Complaint itself alleges these
8   announcements caused some portion of the purported losses.  (¶ 108.)

9   **V.      PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A)**
10      To establish liability under Section 20(a), Plaintiff must first prove a primary
11  violation of the federal securities law, which Plaintiff has failed to do.  *Howard v.*
12  *Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  *See supra* Sections II-IV;
13  *see also, e.g.*, *Rigel Pharms.*, 697 F.3d at 886.

14                          **CONCLUSION**
15      For the foregoing reasons, the Complaint should be dismissed.  Moreover,
16  because the Complaint suffers from several deficiencies that cannot be cured,
17  dismissal should be with prejudice.

18

19  Dated:    June 30, 2017          MORRISON & FOERSTER LLP
                                     MARK R. MCDONALD
20

21                                   By:   *Mark R. McDonald*
                                            Mark R. McDonald
22
                                     Attorneys for Defendant Banc of
23                                   California, Inc.

24

25

26

27

28