MARK R. MCDONALD (CA SBN 137001)
MMcDonald@mofo.com
ROBERT B. HUBBELL (CA SBN 100904)
RHubbell@mofo.com
MATTHEW J. CAVE (CA SBN 280704)
MCave@mofo.com
JOSEPH R. ROSNER (CA SBN 307126)
JRosner@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
BANC OF CALIFORNIA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BANC OF CALIFORNIA, INC. SECURITIES LITIGATION | Case No. SACV 17-00118 AG (DFMx) consolidated with SACV 17-00138 AG (DFMx) <br><br>**DEFENDANT BANC OF CALIFORNIA'S REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**<br><br>Judge: Honorable Andrew J. Guilford<br>Date: August 14, 2017<br>Time: 10:00 a.m.<br>Ctrm: Department 10D |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. THE COMPLAINT FAILS TO SHOW ANY MISLEADING STATEMENT .................................................................... 2

    A. The "Biographies" of Sugarman and Brownstein In The April 2015 Proxy Were Not False or Misleading ................................ 2

    B. The Bank's Related Party Transaction Disclosures Were Not False or Misleading .................................................................. 6

    C. Statements About The Bank's "Quality People," "Top Talent" and "Strong and Independent" Board Are Not Actionable ............................................................................................. 8

    D. The Statement That Harm To Reputation Was A Potential Risk Was Not False or Misleading ........................................................ 9

III. THE FAC FAILS TO RAISE A STRONG INFERENCE OF FRAUDULENT INTENT.................................................. 10

IV. THERE WAS NO "CORRECTIVE DISCLOSURE" REVEALING FRAUD .............................................................................. 12

    A. The October 18, 2016 Blog Was Not A Corrective Disclosure ............................................................................................. 12

    B. The January 23, 2017 Press Release Was Not A Corrective Disclosure ............................................................................................. 15

V. CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

Page

**Cases**

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ..................................................................................5

*Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp. (In re KBC Asset Mgmt. N.V.)*,
572 F. App'x 356 (6th Cir. 2014) ..........................................................................15

In *Public Emps Ret. Sys. of Miss. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) ..................................................................................15

*In re Calpine Corp. Secs. Litig.*,
288 F. Supp. 2d 1054 (N.D. Cal. 2003) ..................................................................9

*In re Copper Mountain Secs. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004) ....................................................................9

*In re Merck & Co., Inc. Secs. Litig.*,
432 F.3d 261 (3d Cir. 2005) ..................................................................................14

*Kelsey v. Allin*,
No. 14C7837, 2016 WL 825236 (N.D. Ill. Mar. 2, 2016) ......................................5

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ..............................................................................16

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ..........................................................................13, 16

*Mauss v. NuVasive, Inc.*, No. 13cv2005 JM (JLB),
2016 U.S. Dist. LEXIS 90412 (S.D. Cal. July 12, 2016) ......................................16

*Meyer v. Green*,
710 F.3d 1189 ............................................................................................12, 13, 14

*New Orleans Emps. Ret. Sys. v. Omnicom Grp., Inc. (In re Omnicom Grp., Inc. Sec. Litig.)*,
597 F.3d 501 (2d Cir. 2010) ..................................................................................14

*Newcal Industries, Inc. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008) ................................................................................9

*Ryan v. Armstrong*,
No. 12717-VCG, 2017 Del. Ch. LEXIS 80, (Ch. May 15, 2017) ..........................8

*Teachers' Ret. Sys. of La. v. Hunter*,
477 F.3d 162 (4th Cir. 2007) ................................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..............................................................................................11

# TABLE OF CONTENTS
## (continued)

**Statutes** ............................................................................................................ **Page**

15 U.S.C. § 78u-4(b)(1) .......................................................................................... 1

17 C.F.R. § 229.401(e) ........................................................................................ 2, 5

## I. INTRODUCTION

Plaintiff's Opposition clarifies and concedes key points. Although Plaintiff's Consolidated Amended Complaint ("the Complaint") is 45 pages and 127 paragraphs, Plaintiff's Opposition contends only four statements are actionable: (1) the biographies in Banc of California, Inc.'s ("the Bank") April 2015 Proxy which listed CEO Steven Sugarman's and director Chad Brownstein's employment history; (2) the statements in the Bank's 10-Ks that it had "quality people," "top talent," and a "strong and independent" board of directors; (3) the Bank's discussion in the 10-Ks about how it assesses each of the risks, including risk to reputation, which its regulators (the Federal Reserve and the OCC) define for bank supervision purposes; and (4) the "related party transaction" footnote in the Bank's financial statements. Plaintiff does not argue that any of the four statements were false, but rather that they were misleading because they omitted that there were (1) "ties" alleged by the anonymous blogger in the October 18, 2016 blog ("Blog") between Jason Galanis on the one hand, and Sugarman and Brownstein on the other hand, or (2) "financial connections" alleged in the Blog between Brownstein and Sugarman. Importantly, Plaintiff does not argue that the blogger's "belie[f] [there is] a significant un-discounted risk that notorious criminals gained control over the $10 Billion taxpayer guaranteed Banc of California" reflects *facts* that needed to be disclosed during the class period or *facts* that were later disclosed in a "corrective disclosure" that caused the Bank's stock price to decline. The Complaint should be dismissed with prejudice for the reasons set forth in the Motions to Dismiss.

First, none of the statements Plaintiff addresses in the Opposition were misleading because they omitted alleged ties between Sugarman and Brownstein, and Galanis; or because the statements did not discuss any "financial connection" between Brownstein and Sugarman. There was no requirement to discuss those "omitted" facts "in order to make the statements made, in light of the circumstances under which they were made, not misleading." 15 U.S.C. § 78u-4(b)(1). Further,

the statements about such things as "top talent" and "strong and independent" board are too subjective to be actionable.

Second, the Complaint does not raise a "strong inference" that those alleged facts were omitted in order to defraud investors. Far more plausible is that those alleged facts were omitted because there was no reason or need to discuss them in light of the statements made.

Third, there is consensus that an analyst report or blog that repackages information that is already in the public domain cannot constitute a "corrective disclosure" for purposes of establishing loss causation.

## II. THE COMPLAINT FAILS TO SHOW ANY MISLEADING STATEMENT

### A. The "Biographies" of Sugarman and Brownstein In The April 2015 Proxy Were Not False or Misleading

SEC Regulation S-K, Item 401(e), 17 C.F.R. § 229.401(e) requires that a proxy statement identifying the nominees for board membership:

> Briefly describe the business experience during the past five years of each director, executive officer, person nominated or chosen to become a director or executive officer, and each person named in answer to paragraph (c) of Item 401, including: each person's principal occupations and employment during the past five years; the name and principal business of any corporation or other organization in which such occupations and employment were carried on; and whether such corporation or organization is a parent, subsidiary or other affiliate of the registrant.

17 C.F.R. § 229.401(e).

In compliance with that regulation, the Company's April 2015 Proxy included the following statement about Sugarman, who was nominated to serve

another term as a Director:

> Mr. Sugarman has served as Chief Executive Officer of the Company since September 21, 2012 (and for a month prior, acted as co-Chief Executive Officer of the Company). Mr. Sugarman was also appointed as President of the Company effective November 6, 2013 in addition to being appointed Chief Executive Officer and President of the Bank. Mr. Sugarman continues as the Chief Executive Officer and director of COR Securities Holdings Inc., the parent company of COR Clearing LLC, a national securities clearing firm, and remains the Managing Member of COR Capital LLC, a Southern California-based investment firm that was a lead investor in the November 2010 recapitalization of the Company wherein the Company agreed with COR Capital LLC to appoint Mr. Sugarman as a director following the transaction closing. Prior to that, Mr. Sugarman was a founding partner of GPS Partners LLC, a $2 billion investment firm. From 2004 through 2005, he worked at Lehman Brothers and previously founded and served as Chief Executive Officer of Sugarman Enterprises, Inc. and The Law Offices of Steven Sugarman, Inc. Mr. Sugarman began his career as a management consultant at McKinsey & Company and is a graduate of Yale Law School and Dartmouth College.

(Compl. ¶ 68.)

The brief description of Brownstein's background stated:

> Mr. Brownstein is the Chief Executive Officer of Rocky Mountain Resource Holdings, where he is responsible for the corporate strategy and board oversight on all investments. Since 2008, Mr. Brownstein has been a partner at Rocky Mountain Resource Holdings and its predecessor affiliates, a natural resources operating and investment company. Mr. Brownstein is also the Chief Executive Officer and board member of RMR Industrials, a company focused on the acquisition of industrial minerals. Prior thereto, from 2009 to 2012, Mr. Brownstein was a principal member of Crescent Capital Group, an investment firm (formerly Trust Company of the West Leveraged Finance Group) focused on special situations. During 2008, Mr. Brownstein was a Senior Advisor at Knowledge Universe Ltd., a global education company, where he focused on turnaround operations. From 2000 to 2007, he was a Partner at ITU Ventures, a venture capital firm, making venture and growth investments with a specialization in corporate strategy. Mr. Brownstein began his career in 1996 at Donaldson Lufkin & Jenrette in the Merchant and Investment Banking divisions and is either a current or past member of the Cedars Sinai Board of Governors, Los Angeles Conservation Corps, and Prospect Global Resources. Mr. Brownstein attended Columbia Business School and received his B.A. from Tulane University.

(*C.f.*, Compl. ¶ 69.)

Plaintiff does not argue that there was anything false in those brief

4

descriptions. Nor were those "brief[] descri[ptions]" of Sugarman's and Brownstein's business experience misleading because they omitted a discussion of Sugarman's and Brownstein's purported "ties" to Galanis.

Regarding Sugarman, the Blog asserted that publicly available documents indicated that (1) Sugarman was a managing member of a business, COR Capital, which allegedly had connections with a third entity (Valor Group Ltd.), and (2) an SEC Complaint alleged that Galanis claimed an affiliation with Valor as well. Even if the Court were to accept the truth of the allegations in the Blog about Galanis and Sugarman's "ties," those alleged "ties" would not have needed to be disclosed in the brief description of Sugarman's business experience in the April 2015 Proxy to keep it from being misleading. The duty to include a "brief" discussion of a nominated director's business experience for the preceding five years does not require an exhaustive list of everyone with whom a prospective director may have some "ties." "To be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). The list of Sugarman's prior employment in the April 2015 Proxy did not create *any* impression about each person with whom Sugarman may have had some connection.

The one case that Plaintiff relies upon *Kelsey v. Allin*, No. 14C7837, 2016 WL 825236 (N.D. Ill. Mar. 2, 2016) does not support that 17 C.F.R. § 229.401(e) requires disclosure of a prospective director's "ties." In *Kelsey,* a CEO chose to include information that was not required to be disclosed, namely the CEO's employment history more than five years earlier. The CEO misleadingly listed all of his prior employment ***other than*** his immediately preceding job as CEO and CFO of a company (Patron) affiliated with "the Wolf of Wall Street," where "he was accused by Patron's auditor, Grant Thorton, LLP, of providing it false

1    information. Grant Thorton would later announce that it could no longer rely on
2    Patron's representations." *Id*., at *3, 4.  It was clearly misleading to list the CEO's
3    employment before and after Patron, but not the CEO's employment at Patron.  By
4    contrast, omitting information about Sugarman's alleged "ties" with Galanis did not
5    render the accurate list of Sugarman's employment misleading.

6    With respect to Brownstein, Plaintiff refers to the assertion in the Blog that
7    Galanis' wife and Galanis' "best friend" were investors in a company that
8    Brownstein founded.  Again, even if the Court were to accept those allegations,
9    those facts would not have needed to have been disclosed in the proxy to make the
10   brief description about Brownstein's prior employment not misleading.

11   In all events, at the time of the April 2015 Proxy, Galanis had not been
12   indicted, much less pleaded guilty to any crime.  Galanis was charged with
13   securities fraud in September 2015 and pleaded guilty to various charges in 2016
14   and 2017.  (Consolidated Am. Compl. 31.)  There was nothing to disclose about
15   Galanis in April 2015.

### B. The Bank's Related Party Transaction Disclosures Were Not False or Misleading

18   Plaintiff asserts that "Bank's SEC filings make clear that the transactions
19   were ratified and approved by its Board's 'disinterested directors,' which included
20   Brownstein as lead independent director and by the [Compensation, Nominations,
21   and Corporate Governance Committee,] which Brownstein chaired.  *See* Dkt. No
22   51, Ex. 8 at 65; 39-43."  Opp. at 17:28 to 18:3.  And Plaintiff suggests those filings
23   were misleading because they failed to disclose that Brownstein did not meet the
24   New York Stock Exchange's definition of an "independent" director.  Plaintiff's
25   argument fails for multiple reasons.

26   First, the Complaint does not allege that any of the Bank's public filings
27   stated that Brownstein was involved in approving any of the related party
28   transaction, nor that he voted to approve any related transaction in which he was not

"disinterested." Although Plaintiff asserts that the "Bank's SEC filings make clear" that all related party transactions were approved by the Board and the Governance Committee, Plaintiff's citation to "Dkt. No. 51, Ex. 8 at 65; 39-43," does not support that assertion. Financial Accounting Standard No. 57 requires that a company disclose the existence of "related party transactions," which the Bank did, but there is no requirement to disclose whether each related party transaction was approved by the board of directors, or which directors were involved in approving any particular related party transaction. And even where the Bank's 10-K states that a particular related party transaction was approved by the Board's "disinterested directors," the 10-K does not state that Brownstein was among the "disinterested directors" who voted to approve that transaction or that the transactions involved Steven Sugarman. To the contrary, the three related party transactions approved by the "disinterested directors" were not transactions with Sugarman. (*See*, Dkt. No. 51, Ex. 8 at 67-69.)

Second, Plaintiff confuses the concepts of director "independence" for purposes of the New York Stock Exchange director independence standards, and the concept of a director "disinterestedness" in connection with a related party transaction. Section 303A.01 of the NYSE Listed Company Manual provides that "Listed companies must have a majority of independent directors." (McDonald Supp. Decl., Ex. A at 4.) Section 303A.02(a)(i) provides that "No director qualifies as 'independent' unless the board of directors affirmatively determines that the director has no material relationship with the listed company (either directly or as a partner, shareholder or officer of an organization that has a relationship with the company)." (*Id.*) The Complaint does not allege that the Bank's Board failed to make the determination that Brownstein did not have a material relationship with the Bank (nor that Brownstein, in fact, had a material relationship with the Bank). Even if the allegation in the Blog that Brownstein had a "financial connection" with Sugarman were accepted, it would not mean that Brownstein was not an

"independent" director under NYSE standards because it would not constitute a material relationship with the Bank.

By contrast, the concept of director "disinterestedness" concerns whether the director has a personal interest in a transaction. "The recurring situation in which the court will consider a director interested arises when she stands to 'receive a personal financial benefit from a transaction that is not equally shared by the stockholders.'" *Ryan v. Armstrong*, No. 12717-VCG, 2017 Del. Ch. LEXIS 80, at *40 (Ch. May 15, 2017). Thus, even if Brownstein were deemed not to be an "independent director" under the NYSE standards, it would not mean that he lacked disinterestedness to vote on a particular related party transaction.

Summing up, Plaintiff's theory that it was misleading for the Bank to state that Brownstein was involved in approving each related party transactions without disclosing his "financial connections" with Sugarman makes no sense because (1) the Company did not state that Brownstein voted to approve each related party transaction, (2) Brownstein did not lack independence, and (3) even if he lacked independence, it would not render him "interested" in any, much less every, related party transaction.

### C. Statements About The Bank's "Quality People," "Top Talent" and "Strong and Independent" Board Are Not Actionable

Plaintiff asserts that the Bank's statements that it had "quality people," "top talent," and that its board was "strong and independent" were misleading. Those statements are non-actionable statements of opinion. *See, e.g.*, *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053-54 (9th Cir. 2008) (holding that general, subjective assertions that are not quantifiable and do not claim specific or absolute characteristics are non-actionable puffery); *In re Calpine Corp. Secs. Litig.*, 288 F. Supp. 2d 1054, 1088 (N.D. Cal. 2003) (holding that the words "strong," and "solid" were "far too vague to be actionable under the PSLRA"); *In re Copper Mountain Secs. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004)

(dismissing as "inactionable puffery" characterizations of business as "solid").

Even if the statement about the Board being "strong and independent" was not vague puffery, it would not be a false statement of fact. The Complaint questions the independence of only director, Chad Brownstein, so even if he lacked independence, it would not mean the Board was not "strong and independent." As stated, NYSE listed companies need only have a majority of independent directors.

### D. The Statement That Harm To Reputation Was A Potential Risk Was Not False or Misleading

Plaintiff's suggestion that the Bank's disclosures about the risks it faces, including "reputation risk," were misleading is likewise meritless.

Plaintiff's suggestion that the Bank began discussing "reputational risk" only because Sugarman joined the Bank is nonsense. The Office of the Comptroller of the Currency, the regulators of the Banc of California, N.A., "define[s] eight categories of risk for bank supervision purposes: credit, interest rate, liquidity, price, operational, compliance, strategic, and reputation." (McDonald Suppl. Decl. Ex. B, OCC Examiners Handbook [excerpted] at 8.) The Bank's 10-Ks state:

> The Company conducts its lending activities under a system of risk governance controls. Key elements of our risk governance structure include our risk appetite framework and risk appetite statement. . . The risk appetite framework utilizes a risk assessment process to identify inherent risks across the Company, gauges the effectiveness of our internal controls, and establishes tolerances for residual risk in each of the regulatory risk categories: credit, market (interest rate and price risks), liquidity, operational, compliance, strategic, and reputational.

(Banc of California, Inc. Annual Report (Form 10-K) (Feb. 18, 2016).)

Thus, the Bank's 10-K addresses "reputational" risk not because Sugarman became associated with the Bank but because the discussion about the Bank's risk assessment process addressed each of the eight categories of risk defined by the OCC.

Plaintiff refers to cases holding that it can be misleading to warn of the possibility that something *might* occur when, in fact, that something *had* occurred. (Opp'n at 17.) That is obviously not the case here. At the time the Bank warned that damage in the future to its reputation "may result in the loss of customers, investors and employees, costly litigation, a decline in revenues and increased governmental oversight," none of those things had occurred.

Plaintiff tries to obfuscate by asserting that, when the Bank was warning about risk to reputation, there were already "ties" between Galanis and Sugarman and Brownstein. But the Bank's disclosure about reputation risk did not represent that there were no "ties" between any Bank director or officer and anyone charged with or convicted of a crime, or that the Bank did not face the risk of reputational harm in the future.

### III. THE FAC FAILS TO RAISE A STRONG INFERENCE OF FRAUDULENT INTENT

The Complaint certainly does not raise a "strong inference" that information was omitted about the four statements at issue in order to defraud investors.

In determining whether there is a "strong inference" of scienter, the court must weigh competing inferences. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007) ("[A] court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."). The inference of scienter must be more than "merely reasonable . . . it must be cogent and compelling, thus strong in light of other explanations." *Id.* at 324. "[O]missions and ambiguities count against inferring scienter, for plaintiffs must 'state with particularity facts giving rise to a strong inference that the

defendant acted with the required state of mind.'" *Tellabs,* 551 U.S. at 326.

The fact that the April 2015 Proxy, which needed only to "briefly describe" Sugarman's and Brownstein's business experience, did not discuss "ties" with Galanis does not raise a strong inference of fraudulent intent. The more plausible explanation is that the Bank concluded that the requirement for a brief description of business experience did not necessitate a listing of each person who those proposed directors knew.

The suggestion that the Bank had the intent to defraud investors by referring to its "quality people," "top talent," and "strong and independent board" makes no sense. There are no facts alleged suggesting that the Bank did not believe it employed "quality people," with "top talent" or that its Board was not "strong and independent," and thus was trying to defraud investors by using those terms.

The Bank's related party transaction footnotes do not raise a strong inference of fraudulent intent by failing to disclose Brownstein's alleged "financial connection" with Sugarman. There was no need to include such information since the related party footnotes do not state that Brownstein had any role in approving any related party transaction, and any "financial connection" with Sugarman would not render Brownstein "interested" in any of the related party transactions in any event.

The fact that the Bank, in describing how it evaluated each of the risks that the OCC defined, including risk to the Bank's reputation, did not discuss "ties" between Galanis and Sugarman and Brownstein does not raise a strong inference of intent to defraud investors. At the time of those disclosures, there had not been any damage to Bank's reputation due to an anonymous blogger.

As discussed in the Bank's Motion and in Sugarman's briefs, the fact that Sugarman resigned in January 2017 does not raise any inference that any of the Bank's prior disclosures were made with the intent to defraud. Plaintiff has abandoned any claim based on McKinney's resignation.

## IV. THERE WAS NO "CORRECTIVE DISCLOSURE" REVEALING FRAUD

### A. The October 18, 2016 Blog Was Not A Corrective Disclosure

Plaintiff contends that it adequately alleges "loss causation" by alleging that the Bank's stock declined due to the Blog. That is insufficient. Plaintiff has to allege facts suggesting that the decline occurred due to a "corrective disclosure" that revealed new information to investors showing that prior statements of the Bank had been false or misleading. The Complaint fails to do so.

In the Motion, Defendants referred to numerous cases holding that an article which recites publicly available information cannot constitute a "corrective disclosure." (Bank's Mot. to Dismiss at 20-22.) The Eleventh Circuit explained why in *Meyer v. Green*, 710 F.3d 1189 (11th Cir. 2013). That case involved a detailed presentation by David Einhorn, a short seller, that undoubtedly moved the stock's price—the defendants' stock price declined 20% over the following two trading days:

> "The efficient market theory . . . posits that all publicly available information about a security is reflected in the market price of the security." Therefore, any information released to the public is immediately digested and incorporated into the price of a security. "A corollary of the efficient market hypothesis is that disclosure of confirmatory information—or information already known by the market—will not cause a change in the stock price." It follows that "[c]orrective disclosures must present facts to the market that are new, that is, publicly revealed for the first time."
>
> The Einhorn Presentation contained a disclaimer on the second slide of the presentation stating that all of the

12
BANC OF CALIFORNIA'S REPLY ISO MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

la-1355500

> information in the presentation was "obtained from publicly available sources.". . . . Because a corrective disclosure "obviously must disclose *new* information," the fact that the sources used in the Einhorn Presentation were already public is fatal to the Investors' claim of loss causation.

*Id.* at 1197-98.

In *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014), the Ninth Circuit expressly agreed with the 11th Circuit's reasoning in *Meyer*.

> "[In *Meyer v. Green*, t]he plaintiff attempted to establish loss causation by arguing that the defendant's accounting fraud was revealed to the market through (1) the analyst's [Einhorn's] presentation; (2) the disclosure of the SEC's informal inquiry; and (3) the announcement of the SEC's private order of investigation. [*Meyer v. Green*, 710 F.3d 1189] at 1197. The Eleventh Circuit rejected this theory. As to the presentation, the court explained that the analyst's information had been derived "entirely from public filings and other publicly available [sources]" of which the stock market was presumed to be aware. . . .
> We agree with the Eleventh Circuit's reasoning."

*Id.* at 889-890.

Other Circuits agree are that a negative article based solely on publicly available information cannot constitute a corrective disclosure, even though that article might well impact a stock's price. *New Orleans Emps. Ret. Sys. v. Omnicom Grp., Inc. (In re Omnicom Grp., Inc. Sec. Litig.)*, 597 F.3d 501, 512 (2d Cir. 2010) ("A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions.");

Case 8:17-cv-00118-AG-DFM   Document 61   Filed 08/04/17   Page 18 of 20   Page ID #:2001

*Teacher*s' *Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 187 (4th Cir. 2007) (explaining that the attribution of an improper purpose to previously disclosed facts is not a corrective disclosure); *In re Merck & Co., Inc. Secs. Litig.*, 432 F.3d 261, 270-71 (3d Cir. 2005) (holding that the Wall Street Journal's analysis of previously available information is not a corrective disclosure); *Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp. (In re KBC Asset Mgmt. N.V.)*, 572 F. App'x 356, 362 (6th Cir. 2014) ("Because the complaint does not identify sufficiently new evidence that was revealed to the market, KBC has not plausibly pled loss causation.").

Plaintiff asserts that the fact that information may "technically" be in the public domain does not mean that a later republication of that information could not have caused investor losses. (Opp'n at 22:19-21.) The cases Plaintiff cites do not support that argument. *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049 (9th Cir. 2008), did not concern the issue of whether an article that repeated information already publicly known could be a corrective disclosure. *Gilead* concerned whether a delay between a company's receipt of an FDA Warning Letter and the date a stock decline occurred precluded an argument that the Warning Letter was material. (*Id.* at 1058.) In *Public Emps Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 323 (5th Cir. 2014), the Fifth Circuit found that an article in the *Wall Street Journal* could be a corrective disclosure because it was based on a Yale professor's analysis of "complex economic data understandable only through expert analysis," although the data itself had previously been publicly available. The blogger here did not even identify himself, and does not claim to have performed any "expert analysis" of "complex economic data." Indeed the anonymous blogger will not even accept responsibility for the information he or she referenced in the Blog. The "Disclaimer" in the Blog states: "All information for this article was derived from publicly available information. . . . This article is based upon information reasonably available to the author and obtained from sources the author believes to be reliable; however, such information and sources cannot be guaranteed as to their


14
BANC OF CALIFORNIA'S REPLY ISO MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT
la-1355500

accuracy or completeness. The author makes no representation as to the accuracy or completeness of the information." (Dkt. No. 51, Ex. 12, at 3.)

### B. The January 23, 2017 Press Release Was Not A Corrective Disclosure

Plaintiff relies on *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016) to support its argument that the Bank's press release on January 23, 2017 that the SEC had initiated an investigation and that Sugarman had resigned as CEO constitutes a corrective disclosure. *Lloyd* shows the opposite. *Lloyd* reconfirmed the Ninth Circuit's holding in *Loos*, 762 F.3d at 890 n.3, that "the announcement of an investigation, 'standing alone and without any subsequent disclosure of actual wrongdoing, does not reveal to the market the pertinent truth of anything, and therefore does not qualify as a corrective disclosure.'" In *Lloyd*, however, "much more [was] alleged . . . . About a month after it announced the SEC subpoena, CVB disclosed that it was charging off millions in Garrett loans." *Lloyd*, 811 F.3d at 1210. Whereas in *Lloyd* there was a "subsequent disclosure of actual wrongdoing" a month after the disclosure of the SEC investigation, here the Bank has not subsequently disclosed any wrongdoing. *Mauss v. NuVasive*, No. 13cv2005 JM (JLB), 2016 U.S. Dist. LEXIS 90412 (S.D. Cal. July 12, 2016) is similar. There, the shareholder action was not commenced when the company announced it had received a DOJ subpoena, but was instead filed more than two years later, after "the DOJ announced that NuVasive had entered into a definitive agreement to pay the U.S. $13.5 million, plus fees, to resolve allegations that the company caused false claims to be submitted to Medicare and other federal health care programs." (*Id*. at *18.) Like *Lloyd*, the disclosure of an investigation was followed by a "subsequent disclosure of actual wrongdoing," which is absent here.

The announcement on January 23, 2017 that Sugarman had resigned is likewise not a corrective disclosure because it did not in any way reveal that any prior Bank disclosure had been false or fraudulent.

## V. CONCLUSION

The Complaint should be dismissed, and the dismissal should be with prejudice. Plaintiff does not argue that it could allege additional facts that were not already included in any of the four complaints that have been filed in this action.

Dated: August 4, 2017

MORRISON & FOERSTER LLP
MARK R. MCDONALD

By: *Mark R. McDonald*
Mark R. McDonald

Attorneys for Defendant
BANC OF CALIFORNIA, INC.