LATHAM & WATKINS LLP
   Manny A. Abascal (Bar No. 171301)
   *manny.abascal@lw.com*
   Kristen M. Tuey (Bar No. 252565)
   *kristen.tuey@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, CA  90071-1560
Tel:  (213) 485-1234
Fax:  (213) 891-8763

LATHAM & WATKINS LLP
   Michele D. Johnson (Bar No. 198298)
   *michele.johnson@lw.com*
   Andrew R. Gray (Bar No. 254594)
   *andrew.gray@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
Tel:  (714) 540-1235
Fax:  (714) 755-8290

Attorneys for Defendant
Steven A. Sugarman

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BANC OF CALIFORNIA SECURITIES LITIGATION | CASE NO. SACV 17-00118 AG (DFMx) consolidated with SACV 17-00138 AG (DFMx) |
| This Document Relates to:<br><br>   ALL ACTIONS, | **DEFENDANT STEVEN A. SUGARMAN'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Judge: Honorable Douglas F. McCormick<br>Date:   May 22, 2018<br>Time:  10:00 a.m.<br>Place:  Courtroom 6B |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

1

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 22, 2018 at 1:30 p.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Douglas F. McCormick, Courtroom 6B, United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California, defendant Steven A. Sugarman will and hereby does move for an Order compelling the production of documents improperly withheld as privileged responsive to Mr. Sugarman's First Set of Production of Documents served on defendant Banc of California, Inc. and Subpoena to Produce Documents served on non-party Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale").

This Motion is made following the conference of counsel required by Local Rule 37-1, which took place on February 26, 2018 and multiple dates thereafter, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Kristen Tuey in support and exhibits thereto, the record in this matter, including the Court's order dated April 16, 2018 (ECF No. 189) setting the briefing schedule for this Motion, the arguments of counsel, and any other materials the Court may consider prior to its decision on this Motion.

Dated:  May 4, 2018                         LATHAM & WATKINS LLP


                                            By: */s/ Manuel A. Abascal*
                                               Manuel A. Abascal
                                               *Attorneys for Defendant*
                                               *Steven A. Sugarman*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

1

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

# TABLE OF CONTENTS

**Page**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: ................................. 1

I.  INTRODUCTION ................................................................. 1

II.  BACKGROUND FACTS ............................................................ 3

   A.  The Winston Investigation, Mr. Sugarman's Biography, the Anonymous Blog, and October 18 Press Release ......................... 3

      1.  Winston Investigation ................................................. 3

      2.  Mr. Sugarman's Biography in the 2016 Proxy Statement ............................................................ 4

      3.  The Anonymous Blog and Banc's Press Release .................... 4

   B.  The KPMG 10A Letter, WilmerHale Investigation and Failure To Establish An Attorney-Client Privilege Relationship ........................................................ 4

      1.  WilmerHale Was Conflicted and Not Independent ................ 5

      2.  WilmerHale Did Not Structure Its Engagement to Be Privileged ......................................................... 6

         a.  WilmerHale Represented Only a Special Committee of Banc, the Parent Holding Company ......................................................... 6

         b.  WilmerHale Investigated Jointly with KPMG ................................................................ 7

         c.  WilmerHale Investigated Jointly with Counsel for Banc's Current and Former Chief Financial Officers ..................................... 8

         d.  WilmerHale Stated that Its Communications with Witnesses Were Not Privileged ................... 8

         e.  WilmerHale Disclosed to the SEC Communications with Its Own Client, the Special Committee ................................................. 9

   C.  Counsel for Insured Bank Raised Concerns about the Special Committee, Including Its Failure to Protect the Privilege ......................................................... 9

   D.  Banc and WilmerHale Waived Any Applicable Privileges by Selectively and Publicly Disclosing Details of the Investigation .............................................. 10

      1.  Banc Issued Two Press Releases Selectively

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

i

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

| | | | Disclosing WilmerHale's Conclusions and Communications | 11 |
| | | 2. | Banc Selectively Disclosed Purportedly Privileged Communications | 12 |
| | | | a. Banc Selectively Disclosed Mr. Michelman's Advice and WilmerHale's Findings in the Seabold Amended Answer | 12 |
| | | | b. WilmerHale and Banc Have Selectively Produced Certain Correspondence with Mr. Michelman | 13 |
| | E. | | The Selectively Withheld Documents Are Crucial to Mr. Sugarman's Defense | 14 |
| III. | | | PROCEDURAL HISTORY AND MEET AND CONFER EFFORTS | 14 |
| IV. | | | ARGUMENT | 15 |
| | A. | | Parties Waive Any Privilege by Failing to Produce a Privilege Log | 15 |
| | B. | | WilmerHale Did Not Structure or Conduct Its Investigation in the Manner Necessary to Establish Privilege | 16 |
| | | 1. | WilmerHale Included KPMG in Its Investigation, and KPMG Was Required to Conduct a Non-Privileged Investigation | 17 |
| | | 2. | WilmerHale's Intent to Share Its Investigation with the SEC Prevents the Attachment of Any Privilege | 18 |
| | | 3. | WilmerHale Shared Its Work with Other Third Parties, Defeating Any Claim of Privilege | 18 |
| | C. | | Any Privilege That May Have Existed Exist Has Been Waived | 19 |
| | D. | | Subject Matter Waiver Requires Production of All Documents Regarding WilmerHale's Investigation | 20 |
| | E. | | WilmerHale's Other Objections Are Flawed | 21 |
| V. | | | SPECIFIC RELIEF SOUGHT | 22 |
| | A. | | The Court Should Order the Following Categories of Documents to Be Produced | 22 |
| | B. | | The Court Should Order Redacted Documents to Be Unredacted | 23 |

LATHAM&WATKINS LLP  US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY

ii

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.    The Court Should Order that No Privilege Can Be
      Asserted in Depositions and Set Follow-Up Conferences
      to Enforce Its Order................................................................24

VI.   CONCLUSION ............................................................................25

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
237 F.R.D. 618 (N.D. Cal. 2006) .................................................... 19, 20, 21, 23

*Bensinger v. Denbury Res. Inc.*,
2012 WL 3062029 (E.D.N.Y. Jul. 25, 2012) .................................................... 18

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*,
408 F.3d 1142 (9th Cir. 2005) ................................................................ 2, 16, 23

*Calvin Klein Trademark Tr. v. Wachner*,
198 F.R.D. 53 (S.D.N.Y. 2000) .......................................................................... 17

*Compass North Indus. LLC v. Taylor*,
2014 U.S. Dist. LEXIS 84192 (D. Ariz. Jun. 19, 2014) .................................... 22

*DeFrees v. Kirkland*,
2012 WL 1356495 (C.D. Cal. Apr. 11, 2012) .................................................... 19

*Kilopass Tech., Inc. v. Sidense Corp.*,
2011 U.S. Dist. LEXIS 65610 (N.D. Cal. Jun. 21, 2011) .................................. 22

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
2009 WL 1067394 (C.D. Cal. July 8, 2009) ......................................... 17, 19, 23

*In re OM Sec. Litig.*,
226 F.R.D. 579 (N.D. Ohio 2008) ...................................................................... 19

*S.E.C. v. Roberts*,
254 F.R.D. 371 (N.D. Cal. 2008) ....................................................................... 17

*Soto v. Castlerock Farming & Transp., Inc.*,
282 F.R.D. 492 (E.D. Cal. 2012) ....................................................................... 22

*U.S. v. ChevronTexaco Corp.*,
241 F. Supp. 2d 1065 (N.D. Cal. 2002) ............................................................. 17

*United States v. Bergonzi*,
216 F.R.D. 487 (N.D. Cal. 2003) .................................................. 15, 16, 18, 23

LATHAM&WATKINS LLP US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY

iv

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

*United States v. Hussain*,
  2018 WL 1091083 (N.D. Cal. Feb. 28, 2018).............................................. 19, 21

*United States v. Ruehle*,
  583 F.3d 600 (9th Cir. 2009) ........................................................................ 15, 18

*Wadler v. Bio-Rad Labs*,
  212 F. Supp. 3d 829 (N.D. Cal. 2016)................................................................. 21

*Wormuth v. Lammersville Union Sch. Dist.*,
  2017 WL 2505195 (E.D. Cal. Jun. 9, 2017)........................................................ 16

## STATUTES

15 U.S.C. 78j-1 .................................................................................................... 17

Securities Exchange Act Section 10A .................................................................. 17

## RULES

Fed. R. Civ. P. 26(b)(5)(A) .................................................................................. 15

Fed. R. Civ. P. 45(e)(2)(A) .................................................................................. 15

Local Rule 79-5.2.2(b)............................................................................................ 2

## REGULATIONS

12 C.F.R. § 225.4(a) .............................................................................................. 6

LATHAM&WATKINS LLP US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY

v

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

# I.     INTRODUCTION

Mr. Sugarman seeks an Order compelling Banc of California, Inc. ("Banc") and WilmerHale to disclose specific information currently being withheld under claim of attorney-client privilege and work product for the following reasons:

- No privilege attaches because the documents were never intended to be kept, and were not kept, confidential to WilmerHale's client.
- The Special Committee waived any privilege or work product protections by its numerous detailed disclosures to third parties, including the SEC, courts, and the public.
- Banc and WilmerHale are selectively disclosing communications and findings of counsel to make certain arguments, while withholding communications on the same subject matter that would rebut these arguments.  Case law prohibits litigants from misusing the privilege as a "sword" and "shield" in litigation as is being done here.

Resolution of this issue is essential to Mr. Sugarman's defense.  Mr. Sugarman resigned because the Special Committee members prohibited him from following up on allegations of their misconduct, retaliated against him, and scapegoated him to avoid scrutiny of their own conduct.  Banc has taken a different position regarding Mr. Sugarman's resignation, and has selectively produced privileged documents that it believes supports its narrative while withholding as privileged documents that support Mr. Sugarman's position (which is true).

For example, Banc has produced some documents authored by Sanford Michelman, an attorney for Banc's federal insured subsidiary, and described Mr. Michelman's communications in public documents, while at the same time withholding as privileged other documents authored by Mr. Michelman relating to the same subject matter.  The documents being withheld would show that Mr. Sugarman sought to follow up on SOX controls concerns and whistleblower allegations of misconduct – including misconduct by Special Committee directors.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

1

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

The ones produced are being used by Banc (and now Plaintiff) to suggest Mr. Sugarman did not cooperate with the Special Committee investigation. Indeed, Banc is withholding a specific email string between Mr. Sugarman, Mr. Michelman and others (which previously was provided to this Court *in camera*) that conclusively shows Mr. Sugarman sought to resolve any claim of interference.

Similarly, Banc and WilmerHale have selectively disclosed WilmerHale's findings that its client – the Special Committee – did nothing wrong. These findings are contradicted by contemporaneous evidence, including information being withheld as privileged, yet Banc and WilmerHale have refused to produce any evidence supporting their self-serving findings. Banc and WilmerHale's positions are scapegoating Mr. Sugarman and concealing the Special Committee directors' misconduct. Similarly, the night before this Motion was due to be filed, Banc attempted to "claw back" a document that had been produced months ago and Mr. Sugarman believes will conclusively show he sought and obtained advice of counsel in connection with his April 2016 biography. Banc only did so after Mr. Sugarman informed it that he intended to exhibit the document in this Motion, pursuant to Local Rule 79-5.2.2(b). While Banc has represented that it is assessing its privilege claim, this late clawback illustrates Banc's strategic use of the privilege as a sword and shield.

Banc also has caused to be redacted numerous documents that are essential to Mr. Sugarman's defense, including audit documents explaining the "tone at the top" and internal controls findings referenced in Plaintiff's Complaint. Banc has not explained the basis for this redaction in any privilege log – in fact, it has not produced any log at all. This alone is a basis for finding that the privilege cannot be asserted. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1148 (9th Cir. 2005).

Mr. Sugarman requests that the Court enter a very specific order requiring production of documents, prohibiting the assertion of privilege in depositions, and

LATHAM&WATKINS LLP   US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY

2

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1  providing a mechanism to ensure prompt enforcement of that order in order to

2  avoid any party taking a second bite at the apple as occurred in prior motions.

3  **II. BACKGROUND FACTS**

4  The underlying facts have been discussed in prior briefs (*e.g.*, Sugarman's

5  Opening Br. Re: Omnibus Disc. Mot., ECF No. 114; Sugarman's Mots. Compel

6  Prod. Docs. Benett and Karish, ECF Nos. 190, 191) and are summarized below

7  with emphasis on newly discovered evidence from recently produced documents.

8  **A. The Winston Investigation, Mr. Sugarman's Biography, the

9  Anonymous Blog, and October 18 Press Release**

10  **1. Winston Investigation**

11  In October 2015, based on input from Mr. Sugarman and Banc director Chad

12  Brownstein, Banc's Joint Compensation, Nominating, and Corporate Governance

13  Committee of the Board of Directors ("Governance Committee") initiated an

14  investigation into Jason Galanis' ties to the Banc, Messrs. Sugarman and

15  Brownstein, and others. The investigation was conducted by Winston & Strawn,

16  which previously had represented Banc, Mr. Sugarman, and entities associated

17  with Mr. Sugarman. Mr. Sugarman disclosed Winston's prior representations in

18  writing to Banc's General Counsel and asked that the General Counsel ensure the

19  Board was aware of these facts. (Decl. Tuey Supp. Sugarman Mot. Compel Prod.

20  Docs. ("Tuey Decl."), Ex. C.) Mr. Sugarman believes the General Counsel may

21  deny this; in fact, ████████████████████████████████████████

22  ████ Banc falsely alleged in a public court filing that Mr. Sugarman did not fully

23  advise Banc of these facts. (*Id.* at Exs. D, E.)

24  Winston found no evidence of wrongdoing. Mr. Sugarman believes the

25  evidence will show Winston made multiple reports to the Governance Committee

26  between November 2015 and October 2016. (*Id.* at Ex. F.) WilmerHale later

27  concluded that these reports were not "regular" (*id.* at Ex. G), but this finding is

28  contradicted by contemporaneous emails and other evidence (*e.g.*, *id.* at Ex. F).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

3

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

2.     Mr. Sugarman's Biography in the 2016 Proxy Statement

In April 2016, while Winston's investigation was ongoing, Banc issued a Proxy Statement that included Mr. Sugarman's biography.  Prior to Banc issuing the Proxy, Mr. Sugarman sent his biography to Banc's General Counsel and others.  At the time of that correspondence, the General Counsel and Board were well aware of the Winston investigation and purported Galanis ties.  (*E.g.*, *id.* at Ex. H.) The Board later extended Mr. Sugarman's employment contract.  (*Id.* at Ex. I.) Banc originally produced correspondence whereby Mr. Sugarman sent his biography to the General Counsel and others.  Mr. Sugarman believes this and similar correspondence will conclusively establish that he lacked scienter with respect to any alleged omissions in his biography and relied in good faith on legal advice in connection with it.  Last night, Banc for the first time asserted the attorney-client privilege over that correspondence, asked to claw it back, and demanded that Mr. Sugarman not file it in connection with this Motion.

3.     The Anonymous Blog and Banc's Press Release

On October 18, 2016, an anonymous blogger published a report falsely stating that Galanis controlled Banc.  In response, Banc put out a press release that described the Winston investigation.  Banc and the Board initially were proud of the press release, but when others – including KPMG and the Securities and Exchange Commission ("SEC") – began to scrutinize the press release, the General Counsel, directors, and others began disassociating themselves from it.

**B.     The KPMG 10A Letter, WilmerHale Investigation and Failure To Establish An Attorney-Client Privilege Relationship**

After the blog was posted, KPMG asked difficult questions of the General Counsel and Audit Committee Chair as to why they did not inform KPMG of the Winston investigation.  Despite the General Counsel and others' efforts to persuade KPMG not to do so, KPMG issued a 10A letter demanding an investigation.  (*Id.* at Ex. J.)  None of the correspondence relating to the 10A letter

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

4

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1  or the effort to prevent its issuance has been produced by KPMG, Banc or

2  WilmerHale.  It is clear that members of the Governance Committee were

3  concerned about the scrutiny over their conduct and Mr. Sugarman believes they

4  altered documents to protect themselves.  For example, ███████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ██████████████████████  (*Id.* at Ex. K.)

8       Banc, the holding company, created a "Special Committee" comprised of

9  five directors – Halle Benett, Jeffrey Karish, Jonah Schnel, Robert Sznewajs and

10  Eric Holoman (until his resignation) – to investigate the blog allegations.  The

11  Special Committee was *not* formed as a joint committee of the holding company

12  and its federally-insured subsidiary, Banc of California, N.A. ("Insured Bank"), but

13  rather existed only at the holding company level.  The Special Committee hired

14  WilmerHale to conduct the investigation, thereby excluding Insured Bank and its

15  officers, directors, and attorneys from the attorney-client relationship between the

16  Special Committee and WilmerHale.

17       WilmerHale and Banc are refusing to produce almost all documents relating

18  to the Special Committee, including correspondence regarding its creation,

19  membership, and hiring of counsel, as well as the most basic corporate governance

20  documents such as Special Committee meeting minutes, resolutions, and votes.

21  Such documents clearly are not privileged, yet Banc and WilmerHale have not

22  produced them or put them on a detailed privilege log.

23       1.   <u>WilmerHale Was Conflicted and Not Independent</u>

24       The Special Committee consisted of directors within the scope of the

25  investigation.  Two of the Special Committee members, Messrs. Schnel and

26  Holoman, were on the Governance Committee that oversaw the Winston

27  investigation.  (*E.g.*, *id.* at Exs. F, K.)  Another Special Committee member, Mr.

28  Karish, attended key Governance Committee meetings.  Several Special

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

5

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

Committee members also had their own ties to Galanis according to the blog and other evidence.  (*E.g.*, *id.* at Ex. L.)  Finally, all of the Special Committee members approved Banc's October 18, 2016 press release, October 19, 2016 Form 8-K, and retraction demand letter responding to the blog.  WilmerHale interviewed its own clients in the course of its investigation, further evidencing their status as conflicted fact witnesses in the investigation.  (*Id.* at Ex. M.)

The Special Committee's lack of independence and conflicts of interest were never disclosed to investors, and the Special Committee rejected Mr. Sugarman's concerns about their independence.  (*See* Decl. Sugarman Supp. Opening Br. Re: Omnibus Disc. Mot. ¶ 2, ECF No. 114-1.)  Indeed, Mr. Sugarman was advised that the Special Committee was adverse to and investigating Insured Bank.  Despite these conflicts, WilmerHale and Banc reported to the public that WilmerHale had "assessed the independence of the Special Committee members and concluded they were independent and disinterested in the investigation they were conducting." (*E.g.*, Tuey Decl. Ex. E at ¶ 32.)  How WilmerHale came to that conclusion and what factors it examined in conducting its "assessment" are unknown, since WilmerHale and Banc have asserted privilege over all documents relating to that assessment.

> ### 2. WilmerHale Did Not Structure Its Engagement to Be Privileged
>
> #### a. WilmerHale Represented Only a Special Committee of Banc, the Parent Holding Company

WilmerHale only represented a committee of the parent holding company's Board.  It did not represent any entity of Insured Bank, Banc's federally insured subsidiary, which actually performed the actions being investigated and which by law is required to have some independence from the parent holding company.  *See, e.g.*, 12 C.F.R. § 225.4(a).  Insured Bank was represented by Michelman & Robinson, which Mr. Sugarman believes warned WilmerHale, the Special Committee, and Insured Bank's Board that WilmerHale's failure to represent

LATHAM&WATKINS LLP  US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY

6

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1   Insured Bank's Board or a committee thereof – coupled with WilmerHale's

2   statement that the Special Committee was "adverse" to Insured Bank – made the

3   investigation unprotected by any attorney-client privilege.

4                  b.      WilmerHale Investigated Jointly with KPMG

5        KPMG appears to have attended all witness interviews, had input into the

6   document review protocols established with witnesses (including Mr. Sugarman),

7   appears to have been included in communications with Banc and Insured Bank

8   employees, and may have been included on communications between WilmerHale

9   and its client, the Special Committee.  (*E.g.*, Tuey Decl. Ex. N.)  WilmerHale has

10  recognized KPMG's integral involvement in its investigation in filings by referring

11  to KPMG as a "functional employee" of Banc.  (*See* WilmerHale Mem. Law Re:

12  Omnibus Disc. Mot. 12, ECF No. 111.)  KPMG, however, was *not* working at

13  WilmerHale's direction to assist it in providing legal advice.

14        Rather, according to its own documents, KPMG acted as an independent

15  third party investigating to determine whether Banc had violated any laws.  (Tuey

16  Decl. Ex. J (KPMG was conducting its own separate investigation "to determine

17  … whether it is likely that an illegal act has occurred.").)  KPMG also stated in

18  writing that it was *not* within the Banc's attorney-client privilege: "[KPMG] will

19  not be subject to restrictions based on the assertion of attorney-client privilege in

20  those circumstances where we believe access to certain materials and information

21  is necessary for our purpose."  (*Id.*)  **WilmerHale itself has acknowledged that**

22  **sharing privileged information with KPMG waives the privilege**:  "The Special

23  Committee is empowered to waive attorney-client privilege … in sharing

24  information with KPMG and the SEC as necessary, the Special Committee is

25  acting in the interest of the Company [Banc] and the [Insured] Bank."  (*Id.* at Ex. K

26  6; *see also id.* at Ex. P ("[W]e're … keeping in mind that a fact-finder might

27  decide" KPMG's presence during interviews waives privilege).)

28

1    KPMG thus was not within the scope of the Special Committee's attorney-

2    client privilege.  Nevertheless, WilmerHale and Banc have refused to produce the

3    majority of communications exchanged with and information disclosed to KPMG,

4    and have directed KPMG to redact significant portions of its audit documents,

5    including sections regarding facts alleged in Plaintiff's Amended Complaint and

6    considered relevant by this Court.  (*Id.* at Exs. Q, R.)  WilmerHale has produced a

7    handful of communications with KPMG, but has not produced a detailed privilege

8    log and has offered no explanation for the communications it is withholding or

9    redacting, how they differ from what has been produced, or even the volume of

10   such documents.

           c.    WilmerHale Investigated Jointly with Counsel for Banc's
                 Current and Former Chief Financial Officers

13   WilmerHale also conducted its investigation along with O'Melveny and

14   Myers, which served as personal counsel for Banc's Chief Financial Officer

15   Francisco Turner, as well as personal counsel for Banc's former Chief Financial

16   Officer James McKinney, who no longer was a Banc employee as of November

17   18, 2016.  O'Melveny was present during interviews and was consulted regarding

18   investigative activity.  (*E.g.* Tuey Decl. Ex. S.)  WilmerHale has produced some

19   communications with O'Melveny, but has failed to explain what information and

20   documents it is withholding and continues to withhold documents even though

21   O'Melveny's participation in the investigation waives privilege.

           d.    WilmerHale Stated that Its Communications with
                 Witnesses Were Not Privileged

24   During its investigation, WilmerHale advised witnesses, including Mr.

25   Sugarman, that it believed communications with it were not protected by the

26   attorney-client privilege.  WilmerHale has produced a subset of communications

27   with witnesses and their counsel, but has not produced a detailed privilege log

28   explaining what additional communications are being withheld or on what basis.

LATHAM&WATKINS^LLP   US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY

8

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

e.    WilmerHale Disclosed to the SEC Communications with Its Own Client, the Special Committee

The limited discovery produced to date reveals that WilmerHale contacted the SEC within days of being retained in late October 2016, and maintained regular contact with the SEC throughout the investigation. (*E.g.*, Tuey Decl. Exs. T-Z.) On January 26, 2017, WilmerHale made a presentation to the SEC detailing its investigative procedure and disclosing details of its preliminary investigative findings. (*Id.* at Exs. Y, AA.) In February 2017, WilmerHale made a second presentation to the SEC disclosing its final findings and the remedial measures undertaken by Banc. (*Id.* at Exs. Z, BB.) WilmerHale also provided oral "downloads" and "debriefs" of its interviews to the SEC, *including its interviews of and communications with its own clients*. (*Id.* at Exs. M, CC, DD.) WilmerHale nevertheless contends its communications with the Special Committee remain privileged and its interview memoranda are protected by the work product doctrine. WilmerHale has offered no justification for this position, nor has it produced a detailed privilege log sufficient to evaluate the scope and basis for its assertions of privilege and work product protections.

**C.    Counsel for Insured Bank Raised Concerns about the Special Committee, Including Its Failure to Protect the Privilege**

Sanford Michelman represented Insured Bank, Banc's federally-insured subsidiary. He is a director of the Federal Reserve Board of San Francisco and familiar with banking regulations and practices. Mr. Michelman interacted with WilmerHale regarding documents, privilege, and corporate governance issues (*see id.* at Exs. EE, FF), and also was involved in efforts to enhance Insured Bank's control environment. Further, in late 2016, Mr. Michelman received a number of whistleblower complaints and other allegations relating to Special Committee directors and others.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

9

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1       Documents produced by Banc show that Mr. Michelman repeatedly raised

2  concerns that WilmerHale represented only a committee of the holding company's

3  Board and not a joint committee with Insured Bank's Board, thus making its work

4  not privileged.  (*Id.* at Ex. GG, 2.)  Mr. Michelman requested that WilmerHale take

5  steps to protect Insured Bank's attorney-client privilege, but WilmerHale refused

6  to do so.  (*Id.*)  Mr. Michelman also raised his concerns that the Special Committee

7  directors (who also were directors of Insured Bank) had potential conflicts of

8  interest to the extent WilmerHale took the position that the Special Committee's

9  investigation was adverse to Insured Bank.  Shortly thereafter, the Special

10  Committee and WilmerHale began accusing Mr. Sugarman of "not cooperating"

11  with their investigation by purportedly "directing" Mr. Michelman to take these

12  legal positions.  (*Id.*)

13       Mr. Michelman documented some of his concerns in two strongly worded

14  letters to WilmerHale, which WilmerHale, at Banc's direction, has selectively

15  produced presumably to illustrate Mr. Sugarman's alleged "non-cooperation."

16  (*Id.*; *id* at Ex. HH.)  Banc and WilmerHale, however, have withheld evidence that

17  would conclusively show Mr. Sugarman did not direct Mr. Michelman to interfere

18  with WilmerHale, including communications with Mr. Michelman and others

19  (some of which previously was provided to this Court *in camera*).  Banc and

20  WilmerHale also are withholding evidence corroborating Mr. Sugarman's reasons

21  for resigning, including Mr. Michelman's documentation of potential misconduct

22  by the Special Committee directors.

23     **D.**    **Banc and WilmerHale Waived Any Applicable Privileges by**
24           **Selectively and Publicly Disclosing Details of the Investigation**

25       Any potential privilege regarding WilmerHale or Mr. Michelman's work has

26  been waived by Banc's numerous and selective disclosures.

27

28

LATHAM&WATKINS<sup>LLP</sup>  US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY
             10
         CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1.   <u>Banc Issued Two Press Releases Selectively Disclosing WilmerHale's Conclusions and Communications</u>

Banc's January 23, 2017 press release regarding the WilmerHale investigation stated as follows:

> [WilmerHale's] inquiry has not found evidence that Jason Galanis has any direct or indirect control or undue influence over the Company. Furthermore, the inquiry has not found evidence establishing that any loan, related party transaction, or any other circumstance has impaired the independence of any director.
>
> Through the inquiry, however, the Special Committee has determined that a press release issued on October 18, 2016 contained inaccurate statements. In that press release, the Company stated that the "Board of Directors, acting through its Disinterested Directors" had, as of October 18, 2016, investigated issues raised in the blog post. This press release was inaccurate in certain respects. The review established that although an investigation had been conducted, it was not initiated by the Board of Directors; rather, it appears to have been directed by Company management rather than any subset of independent directors. In addition, the press release characterized the investigation as "independent" without disclosing that the law firm conducting the investigation had previously represented both the Company and the Company's CEO individually. Furthermore, the press release stated that the Board or a group of "Disinterested Directors" had received "regular reports including related to regulatory and governmental communications." This overstated both the degree to which the Company had been in contact with regulatory agencies about the subject matter referenced in the blog post, as well as the involvement of the directors in oversight or direction of the inquiry.

(*Id.* at Ex. G.)  Banc's February 9, 2017 press release similarly selectively disclosed WilmerHale's findings and communications, stating:  "WilmerHale has made a final report to the Special Committee and KPMG" confirming its earlier conclusions.  (*Id.* at Ex. II.)  There is substantial evidence contradicting WilmerHale's findings and communications, including evidence that was provided to WilmerHale during its investigation.  (*See id.* at Ex. F.)  WilmerHale is refusing to produce documents showing how it came to these "conclusions," or what evidence it considered – or disregarded – when doing so.

Banc and WilmerHale's selective disclosures clearly seek to absolve WilmerHale's client, the Special Committee directors, of any liability, and Plaintiff

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

11

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1  (and Banc) now are using these findings in this litigation.  Banc and WilmerHale

2  have produced no documents supporting these self-serving conclusions, which

3  were disclosed the same day Banc disclosed Mr. Sugarman's resignation and the

4  SEC investigation in a transparent attempt to scapegoat Mr. Sugarman and protect

5  the Special Committee directors from scrutiny.

6          2.      Banc Selectively Disclosed Purportedly Privileged

7                  Communications

8                  a.      Banc Selectively Disclosed Mr. Michelman's Advice and

9                          WilmerHale's Findings in the Seabold Amended Answer

10         On January 11, 2018, Banc filed a proposed Amended Answer in a lawsuit

11  filed against it by a former employee, Jeffrey Seabold (the "*Seabold* Amended

12  Answer").  (*Id.* at Ex. E.)  In that *Seabold* Amended Answer, Banc continued to

13  disclose selectively and characterize WilmerHale's findings in a manner that

14  disparaged Mr. Sugarman and protected the Special Committee members.

15  Attached as Exhibit A to the Declaration of Kristen Tuey is a chart detailing the

16  waivers in the *Seabold* Amended Answer and elsewhere.

17         Paragraph 42 of the *Seabold* Amended Answer gratuitously sets forth Banc's

18  entire narrative with respect to Mr. Sugarman's resignation, including alleging that

19  he was responsible for the initiation and oversight of the Winston investigation, the

20  drafting of and purported inaccuracies in the October 18, 2016 press release, delays

21  in the WilmerHale investigation, and the purported "interference" by Mr.

22  Michelman.  (*Id.* at Ex. E, 12:26-15:27.)  Banc and WilmerHale have withheld the

23  purported evidence (if any) of Mr. Sugarman "directing" Mr. Michelman and the

24  basis for concluding Mr. Michelman's positions were "meritless."  Indeed, Mr.

25  Sugarman understands that those positions related to the appropriate responses to

26  SOX controls concerns and whistleblower allegations of misconduct – the very

27  same issues that the Special Committee refused to allow Mr. Sugarman to address,

28  leading to his resignation.  Banc is withholding as privileged communications that

1 corroborate Mr. Sugarman's reasons for resigning while at the same time

2 disclosing selected communications and information in furtherance of its attempt

3 to scapegoat him.

4        Banc prepared and leaked to the media the *Seabold* Amended Answer to

5 help manage a negative story published that same day by the Los Angeles Times –

6 there was no colorable legal basis for filing that document in court.  (*Id.* at Ex. JJ.)

7 The *Seabold* Amended Answer contains numerous inaccuracies, from the mundane

8 (it states that the press release concerning WilmerHale's final conclusions was

9 issued on February 7 when it actually was issued on February 9) to the significant

10 (it falsely stated that Mr. Sugarman never informed the General Counsel or Board

11 that Winston previously had represented him).  (*Compare id.* at Ex. E, 12:15-20,

12 *and id.* at Ex. E, 14:22-25, *with id.* at Ex. II, *and id.* at Ex. C.)  Banc, however, has

13 provided no discovery regarding the *Seabold* Amended Answer, and neither Banc

14 nor WilmerHale have produced the purportedly privileged communications and

15 findings disclosed therein.  Mr. Sugarman has the right to rebut these selective

16 disclosures with discovery that currently is being shielded by the privilege.

17                 b.     WilmerHale and Banc Have Selectively Produced
                        Certain Correspondence with Mr. Michelman
18

19        WilmerHale, after consulting with Banc, produced two of Mr. Michelman's

20 letters that illustrate Mr. Michelman's conflict with WilmerHale, as well as a

21 handful of additional emails with Mr. Michelman.  Banc presumably disclosed

22 these communications to support its claim Mr. Sugarman interfered, but has

23 withheld documents showing the full and complete facts and context of these

24 communications.  Mr. Sugarman is aware of many more withheld documents that

25 undermine Banc's narrative.  For example, on December 28, 2016, Mr. Sugarman

26 in his individual capacity wrote an email to Mr. Michelman, Wachtell (counsel for

27 Banc and Insured Bank), and Latham (Mr. Sugarman's personal counsel), in an

28 attempt to resolve any dispute among counsel.  (*See* Decl. Sugarman Supp. Reply

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

13

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

US-DOCS\100581156.13

Br. Re: Omnibus Disc. Mot. ¶¶ 6-11.)  That email is conclusive evidence that Mr. Sugarman did not intend to interfere with WilmerHale's investigation, but Banc continues to withhold this and other documents as privileged.

Further, Mr. Sugarman is aware that multiple whistleblowers informed Mr. Michelman of misconduct committed by Special Committee members and others. Mr. Sugarman believes Mr. Michelman compiled that information into a communication with Banc, but that document appears to have been withheld as privileged (without a privilege log we cannot be certain).  Such evidence would strongly corroborate Mr. Sugarman's stated reasons for his resignation.  Similarly, Mr. Sugarman believes his reasons for resigning and the true context of the conflict between Mr. Michelman and WilmerHale would be supported by additional correspondence, including between Mr. Michelman, Wachtell, Kasowitz Benson Torres LLP, and Banc employees.

### E.   The Selectively Withheld Documents Are Crucial to Mr. Sugarman's Defense

Plaintiff has stated in open court that it is relying on the *Seabold* Amended Answer and Banc's other disclosures in its case against Mr. Sugarman.  In the February 13, 2018 Omnibus Hearing, Plaintiff and this Court noted that "whether or not he [Mr. Sugarman] was a[n] obstructionist with regard to the [S]pecial [C]ommittee" may support Plaintiff's claim that there were material omissions in his biography in the April 2016 Proxy.  (*Id.* at Ex. KK, 10:9-11.)  Plaintiff has explicitly stated that it intends to pursue this new theory, which is premised on Banc's selective disclosures.  (*Id.*)

## III.   PROCEDURAL HISTORY AND MEET AND CONFER EFFORTS

Mr. Sugarman has exchanged correspondence, met in person multiple times, and had multiple telephonic conferences with both WilmerHale and Banc.  Banc consistently has stated that it will not produce any documents responsive to Mr. Sugarman's Special Committee-related requests without a Court order or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

14

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

agreement from WilmerHale.  WilmerHale did not agree to produce a single document until its Reply in support of the Omnibus Discovery Motion.  Following the hearing on that Motion, WilmerHale has made four productions, including one yesterday.  As of today, neither Banc nor WilmerHale has produced a detailed privilege log regarding the documents being withheld.

WilmerHale has represented that its productions include (1) presentations to the SEC and DOJ and documents provided to the SEC and DOJ; and (2) some correspondence with certain third parties or their counsel, including KPMG, the CFOs and Mr. Michelman.  It appears WilmerHale is withholding other communications with those third parties, although WilmerHale has not explained in any detail what it has withheld or its basis for doing so.  Furthermore, Banc, WilmerHale, or both instructed KPMG to redact or withhold documents sought by Mr. Sugarman.  Mr. Sugarman has received no information as to the basis for the redactions or the universe of withheld documents.

Prior the filing of this Motion, the parties discussed a compromise on WilmerHale's work product – WilmerHale would produce interview memos if the parties waived all requests for other work product.  Mr. Sugarman asked for notes of the interviews and other work product but this was rejected.

## IV.   ARGUMENT

"Courts construe privileges narrowly because the privilege hinders the courts in the search for truth."  *United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003).  The party asserting privilege bears the burden of supporting its assertion. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). WilmerHale and Banc have not met that burden here.

### A.   Parties Waive Any Privilege by Failing to Produce a Privilege Log

A person who withholds information under an assertion of privilege or work product must describe the nature of the materials not produced in a manner that will enable other parties to assess the claim.  Fed. R. Civ. P. 26(b)(5)(A); Fed. R.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

15

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

Civ. P. 45(e)(2)(A).  Six months after receiving document requests, Banc and WilmerHale have not produced a detailed privilege log (although WilmerHale produced a categorical log two days ago).

The failure to produce a privilege log under similar facts has resulted in a waiver of the asserted privileged.  For example, in *Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1148, the Ninth Circuit held that the failure to serve a privilege log within five months of the discovery requests waived privilege.  While the delay was sufficient on its own, the Ninth Circuit further held that the producing party's status as a sophisticated litigant, the fact that the documents at issue already had been produced in a related matter, and the producing parties' evolving positions on privilege further supported a waiver.  *Id.*  These factors compel the finding of waiver on the similar facts here.  As was recently held in *Wormuth v. Lammersville Union Sch. Dist.*, 2017 WL 2505195, at *4 (E.D. Cal. Jun. 9, 2017), the failure to produce a privilege log detailing the number of documents, subject matter, author, recipient, and related information for documents withheld in the four months after discovery responses were due results in waiver even under a forgiving calculation.

## B.   WilmerHale Did Not Structure or Conduct Its Investigation in the Manner Necessary to Establish Privilege

It is undisputed that attorney-client privilege attaches only if a communication was made in confidence with the intention of being maintained as confidential.  *Bergonzi*, 216 F.R.D. at 493.  When documents are created with the intent to relay the information to parties outside of the privilege, the communications are not made in confidence and the privilege does not attach.  *Id.* at 493-494.  Here, WilmerHale intended to share, and contemporaneously shared, its investigation with KPMG, SEC, Banc, and Insured Bank – parties that were outside the scope of the Special Committee's privilege.  The intent to share and sharing with each of these entities, alone, prevents the creation of any privilege.  Furthermore, Banc is asserting privilege over numerous communications that none

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

16

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

of the participants believed to be privileged, including communications between Mr. Sugarman and Mr. Michelman, and Mr. Sugarman and Wachtell.

1.   <u>WilmerHale Included KPMG in Its Investigation, and KPMG Was Required to Conduct a Non-Privileged Investigation</u>

WilmerHale's investigation began only after KPMG issued a letter under Section 10A of the Securities Exchange Act to evaluate "whether it is likely that an illegal act has occurred" at Banc.  *See* 15 U.S.C. 78j-1.  KPMG is the *independent* auditor of Banc, and expressly stated that to fulfill its obligations it could not be restricted by Banc's attorney-client privilege.  WilmerHale acknowledged in writing that KPMG's involvement defeated any privilege claim.  (*See* Tuey Decl. Exs. J, O, P.)

When an auditor has identified potential illegal acts and investigates to meet its statutory obligation under Section 10A, no privilege exists and disclosure to auditors is a waiver of privilege and work product.  *See Middlesex Ret. Sys. v. Quest Software, Inc.*, 2009 WL 1067394, at *6 (C.D. Cal. July 8, 2009) (disclosure to an independent auditor acting in a "public watchdog function" waives work product protection); *see also U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1071 (N.D. Cal. 2002) (no privilege when auditor has purpose independent of securing legal advice); *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 54–55 (S.D.N.Y. 2000) (same).  KPMG's issuance of a 10A letter places this case in direct contrast to authorities previously cited by WilmerHale, where the auditor received a presentation regarding an investigation in connection with a regular audit.  *See S.E.C. v. Roberts*, 254 F.R.D. 371 (N.D. Cal. 2008).  Here, KPMG issued a 10A letter because Banc and the Governance Committee had not informed it of the prior investigation.  It therefore took on an adversarial public watchdog function, and did not share a common interest with the later-hired WilmerHale.

In an effort to keep documents from Mr. Sugarman, WilmerHale previously argued that KPMG operated as a "functional employee" of Banc.  That argument

LATHAM&WATKINSᴸᴸᴾ US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY

17

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

only potentially applies if KPMG had been hired as a consultant *to WilmerHale* to assist it in providing legal advice, as is the situation in the cases cited by WilmerHale.  *See Bensinger v. Denbury Res. Inc.*, 2012 WL 3062029 (E.D.N.Y. Jul. 25, 2012) (no waiver when accountant hired by a law firm to provide accounting services related to a merger).  Here, that was not the engagement – KPMG did not work for WilmerHale, but rather acted as Banc's independent auditor and investigated for itself whether there were any illegal acts at Banc.

       2.    <u>WilmerHale's Intent to Share Its Investigation with the SEC Prevents the Attachment of Any Privilege</u>

In *Bergonzi*, the investigating company and law firm made clear that they intended to share a report of their investigations with the government.  *Bergonzi*, 216 F.R.D. at 493.  The investigative report, back-up materials, communications between the law firm and company, and interview memoranda were held not to be privileged or protected by the work product doctrine because there was no intent to keep the investigation confidential.  *Id.* at 498.  Just as in *Bergonzi*, Banc publicly admitted that it "intends to fully cooperate with the SEC" and that "the Special Committee will share the results of its review with the SEC staff."  Indeed, WilmerHale maintained frequent contact with the SEC from the outset and "downloaded" the information it obtained directly to the SEC.  (Tuey Decl. Exs. M, DD.)  No privilege can attach to WilmerHale's investigation here.  *See Ruehle*, 583 F.3d at 607 (no privilege where the intention of the investigation was to disclose findings to external auditors and SEC).

       3.    <u>WilmerHale Shared Its Work with Other Third Parties, Defeating Any Claim of Privilege</u>

The failure to follow a process that establishes and maintains privilege is further demonstrated by WilmerHale's sharing of the investigation with Banc and the Governance Committee – the subjects of the investigation.  We do not know exactly what materials were shared with Banc because WilmerHale and Banc have

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

18

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1  refused to produce a privilege log.  But the minimal discovery produced to date

2  shows that counsel for one Banc executive and one former Banc executive – Mr.

3  Turner and Mr. McKinney, respectively – were involved in the investigation.

4  (Tuey Decl. Ex. S.)  Similarly, Mr. Sugarman was told that his interview was not

5  privileged.  Mr. Sugarman also understands that Banc's General Counsel and

6  Board were updated on the investigation.  Sharing the Special Committee's

7  investigation with Banc representatives who were not on the Special Committee

8  waives any privilege. *Middlesex*, 2009 WL 10673943, at *4-*5 (special committee

9  waived privilege by sharing materials with company's board or counsel); *In re OM*

10 *Sec. Litig.*, 226 F.R.D. 579, 593 (N.D. Ohio 2008) (audit committee waived

11 privilege by presenting finding to the full board); *see also*, *DeFrees v. Kirkland*,

12 2012 WL 1356495, at *1 (C.D. Cal. Apr. 11, 2012) (under California law,

13 privilege waived when committee's investigative findings shared with full board).

14    Furthermore, all of the members of the Special Committee were interviewed

15 as fact witnesses in the investigation.  (Tuey Decl. Ex. M.)  There can be no

16 privilege when the investigation itself was shared with the subjects of the

17 investigation who were facing personal liability for the matters being investigated,

18 and then used by those same subjects to publish a narrative that affirmatively

19 attempts to relieve them of any responsibility.

20    **C.    Any Privilege That May Have Existed Exist Has Been Waived**

21    Courts universally recognize that it is inherently unfair to permit an entity to

22 disclose certain "communications that support its position while simultaneously

23 concealing communications that do not." *Bd. of Trustees of Leland Stanford*

24 *Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006).

25 Disclosure of work product materials results in a similar subject matter waiver.

26 *United States v. Hussain,* 2018 WL 1091083 (N.D. Cal. Feb. 28, 2018). Not only

27 has WilmerHale disclosed the documents relating to all aspects of their

28 investigation to KPMG, the SEC, Banc, and the public, but Banc has selectively

disclosed the aspects of the investigation that are favorable to its narrative in the *Seabold* Amended Answer – a document that has become Plaintiff's theory of the case.  In the *Seabold* Amended Answer, Banc:

- Asserts that WilmerHale "assessed the independence of the Special Committee members and concluded they were independent and disinterested in the investigation they were conducting."  (Tuey Decl. Ex. E ¶¶ 32, 34, 35.)

- Falsely claims that "there were no allegations in the Blog that any of the directors on the Special Committee had relations with Galanis."  (*Id.* at Ex. E ¶ 33.)

- Denies "that any members of the Special Committee were hiding, or had, any conflicts of interest that caused them to lack independence in connection with the investigation the Special Committee was conducting."  (*Id.* at Ex. E ¶ 34.)

- Asserts that Sugarman had "resisted and attempted to prevent the formation of the Special Committee," "interfered with and delayed the Special Committee's investigation," "provided inaccurate information to the Special Committee's lawyers," "had directed an attorney, Sanford Michelman, … to take a number of meritless positions," "interfered with directors having direct communication with officers of the Company," "ordered the issuance of the October 18, 2016 press release despite knowing of its inaccuracies," and "knew that he had not informed the full board about any matters 'relating to Galanis.'" (*Id.* at Ex. E ¶ 42.)

- Asserts that "Sugarman's unacceptable personal and unprofessional conduct after the Blog was published and during the Special Committee's investigation causes a majority of the directors to lose confidence in Mr. Sugarman's ability to effectively lead the Company going forward."  (*Id.*)

## D.    Subject Matter Waiver Requires Production of All Documents Regarding WilmerHale's Investigation

Case law is clear that once the privilege has been waived, all documents relating to the subject matter must be produced.  *Roche Molecular Sys.*, 237 F.R.D. at 625.  This "broad mandate" is justified by the need for fairness where a party discloses materials supporting its position while concealing materials that do not.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

20

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

*Id.* To determine what constitutes the subject matter of a waiver, "courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Id.* When parties disclose purported conclusions from a review or investigation, courts hold that privilege and work product protections have been waived as to any matter referenced in the disclosure. *See, e.g.*, *Wadler v. Bio-Rad Labs*, 212 F. Supp. 3d 829, 851-52 (N.D. Cal. 2016) (disclosure of presentation resulted in waiver of attorney-client privilege as to any referenced communications); *Hussain,* 2018 WL 1091083 (subject matter waiver upon disclosure of work product).

Here, Banc has addressed every aspect of the WilmerHale investigation in a public assault on Mr. Sugarman. Banc makes claims regarding WilmerHale's assessment of the Special Committee members' independence, WilmerHale's receipt of "accurate" information, WilmerHale's interactions with Mr. Michelman and officers of Banc, WilmerHale's investigation of the parties' knowledge with respect to the October 18, 2016 press release, and the Special Committee's reasons for forcing Mr. Sugarman's resignation, among other things. (*E.g.*, Tuey Decl. Ex. E ¶ 42.) In order to fairly test these assertions, Mr. Sugarman is entitled to the information being withheld that relates to these conclusions.

Banc also has waived privilege with regard to correspondence with Mr. Michelman for reasons discussed *infra*. In addition, Banc waived privilege regarding communications with counsel regarding the April 2016 biography as part of its waiver regarding the Winston investigation, the Galanis matters, and the production of documents in this case.

### E.   WilmerHale's Other Objections Are Flawed

WilmerHale also objected based on relevance and burden. Its relevance objection is flawed because WilmerHale admits its investigation was used by Banc to attempt to force Mr. Sugarman's resignation, thus putting the full scope of WilmerHale's investigation at issue. (Tuey Decl. Ex. E.) The Court already has

LATHAM&WATKINS LLP   US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY

21

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1  ruled that the reasons for Mr. Sugarman's resignation are within the scope of

2  appropriate discovery.  (Order Re: Omnibus Disc. Mot. 2, ECF No. 146.)  Burden

3  is not at issue because Banc surely is indemnifying WilmerHale, no evidence has

4  been provided regarding the volume of documents, and many documents likely

5  already have been produced to the SEC.

6      WilmerHale also argues that it need not produce documents because all of

7  the documents are within Banc's possession.  This argument is factually incorrect

8  and in any event meritless – the availability of documents from other sources does

9  not relieve WilmerHale of its obligation to produce, especially because Banc too

10  has refused to produce.  *See Compass North Indus. LLC v. Taylor*, 2014 U.S. Dist.

11  LEXIS 84192, *7 (D. Ariz. Jun. 19, 2014) (possibility that documents are

12  otherwise available does not make the subpoena improper); *Soto v. Castlerock*

13  *Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (allowing

14  discovery from third party because defendant would not produce the same

15  documents); *Kilopass Tech., Inc. v. Sidense Corp.*, 2011 U.S. Dist. LEXIS 65610,

16  at *8-11 (N.D. Cal. Jun. 21, 2011) (allowing discovery despite duplicative

17  requests).

18  **V.    SPECIFIC RELIEF SOUGHT**

19      **A.    The Court Should Order the Following Categories of Documents**

20          **to Be Produced**

21      Mr. Sugarman's proposed order seeks to prohibit any continued claim of

22  privilege over the subject matters described above, and for the production of the

23  following documents, unredacted, from WilmerHale and, where indicated by a *,

24  Banc.

25      Category 1:  All documents provided or shown to any third party, including

26  without limitation the SEC, the Department of Justice ("DOJ"), KPMG, or counsel

27  for third parties, including collections of such documents and communications.

28      Category 2:  All correspondence with and documents shared with KPMG.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

22

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

Category 3:  All memoranda, notes, or other documents memorializing meetings with the SEC or DOJ.

Category 4:  All memoranda, notes, or other documents memorializing any interview conducted by WilmerHale, or where WilmerHale or Banc was present.

Category 5*:  All communications with any member of the Special Committee, including communications with and without third parties present.

Category 6:  All documents relating to any evaluation of the independence of the Special Committee directors, including communications and memoranda.

Category 7*:  All documents relating to any public disclosure or public statement, including the Banc's January 23 and February 9, 2017 press releases.

Category 8*:  All communications with or copying Sanford Michelman.

Category 9*:  All documents relating to the investigation of Mr. Sugarman's transfer of Banc warrants to his brother, Jason Sugarman.

Category 10*:  All communications regarding the Special Committee including, its creation, membership, selection of counsel, and investigation.

Category 11*:  All communications regarding the April 2016 biography.

**B.    The Court Should Order Redacted Documents to Be Unredacted**

Banc has redacted materials from KPMG's and WilmerHale's small productions to date, with no information to support their redactions.  Banc failed to establish any privilege over this matter by failing to produce a privilege log, *Burlington N. & Santa Fe Ry.*, 408 F.3d at 1148, lacked any expectation of confidentiality, *Bergonzi*, 216 F.R.D. at 493, and waived any privilege that did exist upon disclosure to third parties, *Middlesex*, 2009 WL 10673943, at *4-*5, or use in an assault against Mr. Sugarman, *Roche*, 237 F.R.D. at 625.  There are 92 pages in 18 documents in KPMG and WilmerHale's limited productions that have been improperly redacted.  These should be produced in unredacted form.

A list of priority documents that should be produced or produced in unredacted form is attached to the Declaration of Kristen Tuey as Exhibit B.  Mr.

LATHAM&WATKINS LLP   US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY
23
CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1  Sugarman requests a specific order requiring production of these documents in

2  unredacted form immediately to allow him to fairly defend himself.

3      **C.**    **The Court Should Order that No Privilege Can Be Asserted in**

4                **Depositions and Set Follow-Up Conferences to Enforce Its Order**

5      As the parties begin scheduling depositions, Mr. Sugarman also seeks an

6  order prohibiting Banc or Special Committee's counsel from instructing witnesses

7  not to testify on topics for which this Court has made a ruling that the topic

8  appropriate.  Alternatively, he proposes that a Special Master be present during

9  depositions to enforce this Court's ruling on privilege.  None of the parties other

10  than Mr. Sugarman have fully embraced the Court's Omnibus ruling, which has

11  disadvantaged Mr. Sugarman.  Mr. Sugarman expects Banc, WilmerHale, and

12  members of Banc's Special Committee will continue to take a third or fourth bite

13  at the apple by instructing witnesses not to testify based on scope, privilege, or

14  other objections that have been resolved already absent strict orders from the

15  Court.  Mr. Sugarman also requests a process for follow up status conferences, if

16  no Special Master is appointed, to submit additional specific document-by-

17  document requests if parties do not comply with Court order.

18      It has been over five months since Mr. Sugarman served his document

19  requests on Banc and his subpoena on WilmerHale.  Only a handful of documents

20  have been produced in response, depriving Mr. Sugarman of the opportunity to

21  follow up with additional targeted requests.  Banc and WilmerHale's purposeful

22  delays have prejudiced Mr. Sugarman's ability to defend himself against Plaintiff's

23  claims, and Mr. Sugarman reserves the right to seek an extension to the current

24  case deadlines, including the fact discovery cut-off and all subsequent deadlines.

25  //

26  //

27  //

28  //

LATHAM&WATKINS LLP   US-DOCS\100581156.13
ATTORNEYS AT LAW
ORANGE COUNTY

24

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED

1

## VI.    CONCLUSION

2      For the foregoing reasons, this Court should order that Banc and

3  WilmerHale produce the documents described above.

4  Dated:  May 4, 2018                    LATHAM & WATKINS LLP
                                           Manuel A. Abascal
5

6                                          By: */s/ Manuel A. Abascal*

7                                              Manuel A. Abascal
                                               *Attorneys for Defendant, Steven A.*
8                                              *Sugarman*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\100581156.13

25

CASE NO. SACV 17-00118 AG (DFMx)
MTC PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED