**EXHIBIT 1**

ORIGINAL

1  MARK R. MCDONALD (CA SBN 137001)
   mmcdonald@mofo.com
2  MATTHEW J. CAVE (CA SBN 280704)
   mcave@mofo.com
3  AMY LAWRENCE (CA SBN 311154)
   amylawrence@mofo.com
4  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
5  Los Angeles, California  90017-3543
   Telephone: 213.892.5200
6  Facsimile:  213.892.5454

7  Attorneys for Defendants
   BANC OF CALIFORNIA, INC.,
8  BANC OF CALIFORNIA, N.A.



FILED
Superior Court of California
County of Los Angeles

JAN 11 2018

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
        Nancy Alvarez

9

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   COUNTY OF LOS ANGELES

12  JEFFREY T. SEABOLD,                    Case No. BC674694

13              Plaintiff,

14        v.                              **DECLARATION OF MARK R. MCDONALD IN SUPPORT OF DEFENDANTS BANC OF CALIFORNIA, INC. AND BANC OF CALIFORNIA, N.A.'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER TO PLAINTIFF JEFFREY SEABOLD'S UNVERIFIED COMPLAINT FOR DAMAGES**
15  BANC OF CALIFORNIA, INC.; BANC OF
    CALIFORNIA, N.A.; and DOES 1-10,
16
                Defendants.
17

18

19
                                          Hearing Date:  March 29, 2018
20                                        Time:          8:30 a.m.

21                                        Complaint Filed: September 5, 2017
                                          Trial Date:    None
22

23                                        FES ID # 18011028044S
                                          0.30
24

25

26

27

28

la-1370138                       1

DECLARATION OF MARK R. MCDONALD

Exhibit S - Page 301

EXHIBIT 1
PAGE 7

1    I, Mark R. McDonald, declare:

2        1.      I am an attorney duly admitted to practice before all of the courts of the State of

3    California. I am a partner with Morrison & Foerster LLP, counsel of record for Defendants Banc

4    of California, Inc. and Banc of California, N.A. in the above-captioned action. I have personal

5    knowledge of each of the matters set forth below, and, if called as a witness, I could and would

6    testify to each of them under oath.

7        2.      Attached hereto as Exhibit A is Defendants' proposed First Amended Answer to

8    Plaintiff Jeffrey Seabold's Unverified Complaint for Damages.

9        3.      Attached hereto as Exhibit B is Defendants' Answer to Plaintiff Jeffrey Seabold's

10   Unverified Complaint for Damages, as filed on November 27, 2017.

11       4.      As set forth in detail in Defendants' Motion for Leave to File First Amended

12   Answer to Plaintiff Jeffrey Seabold's Unverified Complaint for Damages, the effect of the

13   amendments proposed in the First Amended Answer are to ensure that the Court and the trier of

14   fact have a complete understanding of the facts underlying Plaintiffs' claims and Defendants'

15   affirmative defenses, and to ensure that discovery regarding the claims and defenses are properly

16   framed by the pleadings.

17       5.      Defendants' proposed First Amended Answer is necessary and proper.  The

18   amendments will provide the Court and the trier of fact with a fuller picture of the facts and

19   sharpen the issues in this case, thereby making the tasks of the Court and the trier of fact simpler.

20   The amendments will also ensure that discovery regarding the claims and defenses are properly

21   framed by the pleadings.

22       6.      After filing the Answer on November 27, 2017, about a month and a half ago,

23   Defendants decided (for the reasons stated above and in Defendants' motion) to file an amended

24   answer responding specifically to each of Plaintiff's allegations, as opposed to the general denial

25   in Defendants' Answer.  As soon as Defendants made this decision, they began to prepare their

26   motion requesting leave to amend.

27   ///

28   ///

la-1370138                         2

DECLARATION OF MARK R. MCDONALD

Exhibit S - Page 302

EXHIBIT 1
PAGE 8



1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.  Executed on January 11, 2018, at Los Angeles, California.

4                                            Mark R. McDonald

la-1370138                                  3

DECLARATION OF MARK R. MCDONALD

Exhibit S - Page 303

EXHIBIT 1
PAGE 9

01416:2018

Exhibit S - Page 304

EXHIBIT A

EXHIBIT 1
PAGE 10

MARK R. MCDONALD (CA SBN 137001)
mmcdonald@mofo.com
MATTHEW J. CAVE (CA SBN 280704)
mcave@mofo.com
AMY LAWRENCE (CA SBN 311154)
amylawrence@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone:  213.892.5200
Facsimile:  213.892.5454

Attorneys for Defendants
BANC OF CALIFORNIA, INC.,
BANC OF CALIFORNIA, N.A.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JEFFREY T. SEABOLD,<br><br>Plaintiff,<br><br>v.<br><br>BANC OF CALIFORNIA, INC.; BANC OF CALIFORNIA, N.A.; and DOES 1-10,<br><br>Defendants. | Case No. BC674694<br><br>**DEFENDANTS BANC OF CALIFORNIA, INC. AND BANC OF CALIFORNIA, N.A.'S FIRST AMENDED ANSWER TO COMPLAINT**<br><br>Complaint Filed:  September 5, 2017 |

Defendants Banc of California, Inc. and Banc of California, N.A. (the "Bank" and together with Banc of California, Inc. the "Company" or "Defendants") hereby file this First Amended Answer to the Complaint of Plaintiff Jeffrey T. Seabold ("Seabold" or "Plaintiff"). By responding to each paragraph of the Complaint, or to each allegation in each paragraph of the Complaint, Defendants do not thereby concede that each paragraph or each allegation is relevant to the causes of action alleged in the Complaint. To the contrary, Defendants allege that the Complaint includes numerous allegations that are not relevant to the causes of action alleged, and that numerous allegations are included for improper reasons and to harass Defendants.

la-1365021

1

*EXB A*

EXHIBIT 1
PAGE 11

01/16/2018

1        1.        Defendants contend that Seabold's Complaint is in furtherance of a strategy by

2    Steven Sugarman, the Company's former CEO, to use Seabold and Sugarman's other proxies to

3    assert baseless or meritless allegations against those members of the Company's boards of

4    directors who Sugarman blames for demanding his resignation as CEO and a director of the

5    Company, to promote an inaccurate description of the reasons Sugarman's resignation was

6    demanded, to divert attention from Sugarman's and Seabold's own conduct, and to undermine the

7    Company's reputation and business.  Defendants deny the allegations in Paragraph 1, including

8    but not limited to the allegations that the Company's independent directors engaged in

9    "misconduct," had "conflicts of interest," sought to "solidify" their positions as directors, or

10   schemed to eliminate all Company employees who could interfere with allegedly illicit plans.

11   Defendants allege that Seabold refused to perform the job given to him by the acting CEO who

12   replaced Sugarman and filed this action before being fired by the Company for cause.

13       2.        Defendants deny the allegations in Paragraph 2, including but not limited to the

14   allegation that any of the Company's directors had a plan to "scapegoat[] top Banc executives,

15   including its founders, as well as vendors, consultants and attorneys."

16       3.        Defendants deny the allegations in Paragraph 3, and note that nowhere in

17   Seabold's Complaint does he identify any specific corporate opportunities that any director

18   improperly "usurped," any contracts between any director and any individuals that presented any

19   "conflict of interest," or any self-dealing transactions that any member of the board entered into.

20       4.        Defendants deny the allegations in Paragraph 4 and allege that Seabold while an

21   officer of the Company did not report any "violations of the Company's Corporate Governance

22   Policies, Sarbanes Oxley ("SOX") controls, and financial disclosure requirements," which as an

23   officer of the Company he had a duty to do had he in fact been aware of any such violations.

24   Defendants further deny that they "ignored" any "whistleblowers" or "dismissed" any employee

25   for reporting any violations of law or Company policy.

26       5.        Defendants deny the allegations in Paragraph 5, in particular that Seabold is a

27   "victim," and allege that at the time Seabold quit his job, the Company had notified Seabold that

28   it had grounds to terminate Seabold for cause because, among other reasons, Seabold refused to

la-1365021                                                 2

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 306

EXHIBIT 1
PAGE 12

1  report to work and do the work he had been assigned.

2      6.    Defendants allege that after they were presented with Seabold's demands to be

3  bought out of his employment agreement at an outlandish amount, they concluded it would be in

4  the Company's better interest for Seabold to continue as an employee.  However, when it became

5  clear that Seabold had no interest in performing work for the Company, the Company informed

6  Seabold it would terminate him for cause if he did not cure his conduct and perform his job

7  duties.  In response, Seabold quit and filed suit.  Defendants deny the remaining allegations in

8  Paragraph 6.

9      7.    Defendants deny the allegations in Paragraph 7.

10      8.    Defendants admit that Seabold was Vice Chairman of the Company, but deny that

11  Seabold "founded" the Company or that he was Executive Vice Chairman of the Company when

12  he quit.  Defendants lack sufficient information to admit the remaining allegations in Paragraph 8.

13      9.    Defendants admit the allegations in Paragraph 9, except that the Company's

14  headquarters is in Santa Ana, California rather than Irvine, California.

15      10.    Paragraph 10 recites legal conclusions that require no response.  The Company

16  otherwise denies each and every allegation in Paragraph 10.

17      11.    Paragraph 11 recites legal conclusions that require no response.  The Company

18  otherwise denies each and every allegation in Paragraph 11.

19      12.    Paragraph 12 recites legal conclusions that require no response.  The Company

20  otherwise denies each and every allegation in Paragraph 12.

21      13.    Defendants admit that venue is proper in Los Angeles County, but otherwise deny

22  the allegations in Paragraph 13.

23      14.    Defendants admit that in 2008 some businesses in the banking and mortgage

24  lending industries were suffering and many were going out of business.  Defendants lack

25  information sufficient to enable them to admit or deny what Seabold "recognized," or whether he

26  "shared his vision" with Sugarman, what Sugarman was "pursuing," or whether Sugarman

27  "embraced" the idea of "joining forces" with Seabold, and on that basis deny those allegations.

28  Defendants otherwise deny each and every allegation in Paragraph 14.

la-1365021

3

FIRST AMENDED ANSWER TO COMPLAINT

15.     Defendants admit that First PacTrust Bancorp ("PacTrust") was the predecessor entity to Banc of California, Inc., that it faced challenges, and that its success was not guaranteed. Defendants lack information sufficient to enable them to admit or deny the remaining allegations in Paragraph 15, and on that basis deny those allegations.

16.     Defendants admit that the Bank was recapitalized in or about November 2010 and that following that recapitalization, several new officers, including Greg Mitchell, and directors, including Sugarman, Chad Brownstein and Seabold, were appointed at about that time. Defendants lack information sufficient to enable them to admit or deny the remaining allegations in Paragraph 16, and on that basis deny those allegations.

17.     Defendants admit that in 2012, the boards asked Sugarman and Robert Franko to become the Chief Executive Officers of PacTrust and the Bank, respectively; that at that time, Tim Chrisman was the Chairman of the boards of the Bank and the Company; and that in December 2012 the Bank entered into a consulting agreement with Seabold.  Defendants deny that Chrisman, Schnel and Karish led any effort to offer Seabold a full time executive position. Defendants lack information sufficient to enable them to admit or deny the remaining allegations in Paragraph 17, and on that basis deny those allegations.

18.     Defendants admit that Seabold and the Bank entered into an employment agreement on or around May 13, 2013, to which the Company refers for a complete statement of its contents, and the Company later that year that acquired CS Financial, Inc. ("CS Financial"), a residential mortgage and commercial real estate brokerage company based in Southern California founded by Seabold and, on information and belief, partially owned by members of Sugarman's family.  Defendants lack information sufficient to enable them to admit or deny the remaining allegations in Paragraph 18, and on that basis deny those allegations.

19.     Defendants admit that Sugarman, signing for the Bank, executed an employment agreement with Seabold on or around May 13, 2013, to which the Company refers for a complete statement of its contents.  Defendants deny the remaining allegations of Paragraph 19.

20.     Defendants admit that Sugarman, signing for the Bank, executed an Amended and Restated Employment Agreement, dated April 1, 2015, with Seabold, to which the Company

la-1365021                                  4

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 308

EXHIBIT 1
PAGE 14

1  refers for a complete statement of its contents, and that the April 1, 2015 Amended Agreement

2  was later amended by a First Amendment to Amended and Restated Employment Agreement

3  dated as of January 1, 2016, to which the Company refers for a complete statement of its contents.

4  Defendants deny the remaining allegations of Paragraph 20.

5      21.     Defendants refer to the April 1, 2015 Amended and Restated Employment

6  Agreement, as amended, for a complete statement of its contents.  Defendants deny the remaining

7  allegations of Paragraph 21.

8      22.     Defendants admit that Seabold executed a "Consent to Material Changes in

9  Position, Authority, Duties and Responsibilities" dated July 26, 2016, to which Defendants refer

10  for a complete statement of its contents.  Defendants deny that the July 26, 2016 Consent ("July

11  26, 2016 Consent") reflects a "promotion" that Seabold received at that time.  Defendants allege

12  that at that time Seabold's position and duties were changed; specifically, Seabold's position was

13  changed from Executive Vice President and Chief Banking Officer to Executive Vice President

14  and Vice Chairman, and his duties and responsibilities would be what the Chief Executive Officer

15  determined they would be.  At that time, Sugarman also removed Seabold's operational

16  responsibilities, and Seabold's primary responsibility became to act as an advisor to Sugarman.

17  The Company sought and obtained Seabold's consent to those changes because those changes

18  could readily be construed as a demotion from Seabold's previous position, authority, duties and

19  responsibilities.  Defendants deny the remaining allegations of Paragraph 22.

20      23.     Defendants refer to the April 1, 2015 Amended and Restated Employment

21  Agreement, as amended, for a complete statement of its contents.  Defendants admit they did not

22  give written notice to Seabold of an intent not to renew the April 1, 2015 Amended and Restated

23  Employment Agreement, as amended.  Defendants deny the remaining allegations of Paragraph

24  23.

25      24.     Defendants admit that in July 2013, PacTrust was renamed as Banc of California,

26  N.A.; that the board of directors authorized new advertising; and that from time to time the

27  Company has sponsorship, consulting and business relationships with various people and entities.

28  Defendants further admit that the Company adopts a strategic plan each year that is approved by

FIRST AMENDED ANSWER TO COMPLAINT

1   the board of directors.  Defendants lack sufficient information to admit who "endorses" the

2   Company.  Defendants deny the remaining allegations of Paragraph 24.

3          25.     Defendants admit that the Company grew over time and that Forbes Magazine

4   ranked the Company as one of "America's Top Banks" in 2015 and 2016.  Defendants deny that

5   Sugarman and Seabold deserve the credit for the Company's success during that time.

6   Defendants deny the remaining allegations of Paragraph 25.

7          26.     Defendants admit that the Company had pre-tax profit of over $200 million in

8   2016, and had more than $11 billion in assets in 2016.  Defendants deny that Sugarman and

9   Seabold deserve the credit for the Company's success during that time.  Defendants deny the

10   remaining allegations of Paragraph 26.

11         27.     Defendants admit that the Company had and has high employee morale and a

12   strong public perception in the community.  Defendants contend that Sugarman and Seabold have

13   tried to undermine the Company's reputation within the Company and the community since they

14   left the Company.  Defendants believe that Sugarman and Seabold are motivated to undermine

15   the Company's reputation to rewrite the history of their own actions, and also to recruit the

16   Bank's customers and employees to a new financial services business founded by Sugarman and

17   Seabold in 2017.  Defendants lack information sufficient to enable them to admit or deny the

18   remaining allegations in Paragraph 27, and on that basis deny those allegations.

19         28.     Defendants admit that, on October 18, 2016, an anonymous blogger published an

20   article under the pseudonym "Aurelius" making a number of false allegations about the Company

21   on the website *Seeking Alpha* (the "Blog"), including the allegation that the Company was

22   controlled by Jason Galanis, an individual who had been indicted on September 24, 2015 for

23   securities fraud in connection with a scheme known as the Gerova Financial fraud, and who was

24   indicted a second time for the Indian Tribal Bonds fraud in May 2016.  Defendants further admit

25   and allege that the allegation in the Blog that Galanis had gained control of the Company was

26   false and that Galanis' only relationship to the Company was that entities with which he was

27   associated opened two deposit accounts with the Bank.  Defendants lack information sufficient to

28   enable them to admit or deny the remaining allegations in Paragraph 28, and on that basis deny

01/16/2018

FIRST AMENDED ANSWER TO COMPLAINT

1   those allegations.

2       29.     Defendants admit and allege that, following the publication of the Blog, Sugarman

3   drafted a proposed press release, and that the final version of the press release that Sugarman

4   drafted and authorized to be issued on October 18, 2016 stated:

> Banc of California, Inc. (NYSE: BANC) today announced it is
> aware of allegations posted in a financial blog.  The Company's
> Board of Directors has been aware of matters relating to Jason
> Galanis including certain claims he had made suggesting an
> affiliation with members of the Company, its Board, and/or its
> Executive team.  The Board, acting through its Disinterested
> Directors, immediately initiated a thorough independent
> investigation led by Winston & Strawn, and has received regular
> reports including related to regulatory and governmental
> communications over the past year.

> The complaint filed by the Department of Justice against Mr.
> Galanis and others dated May 9, 2016, which is found here, clearly
> states that Mr. Galanis' claims to be affiliated with COR Capital
> were fraudulent.  See paragraphs 40 and 41 of the Sworn Statement
> of the Special Agent of the Federal Bureau of Investigation which
> states:

> "40.  Based on my conversation with a representative of COR
> Capital, I have learned that, contrary to the representations made in
> the June 3, 2014 email sent by JASON GALANIS, the defendant,
> to MICHELE MORTON, the defendant, (referenced in paragraph
> 39c above), Burnham, CORFA and Wealth-Assurance AG were not
> affiliates of COR Capital.

> 41.  Based on my review of documents, I have learned that on June
> 3, 2014, JASON GALANIS, the defendant, sent an email to
> BEVAN COONEY, the defendant, which forwarded the email
> JASON GALANIS sent to MICHELLE MORTON, the defendant,
> earlier that same day, attaching the description of COR Capital
> which fraudulently asserted that certain entities were affiliates of
> COR Capital.  In JASON GALANIS's email to COONEY, JASON
> GALANIS wrote 'whoring it out shamelessly[.]  thank you [first
> name of COR Capital representative.]"

> Banc of California and its Disinterested Directors will make further
> facts publicly available as appropriate.

Sugarman did not provide a draft of that press release to the boards of directors or all of their

members before he ordered it issued.  Although Sugarman shared a draft of the press release with

the Company's General Counsel and Winston & Strawn, the law firm Sugarman referenced in the

press release, both the General Counsel and Winston & Strawn advised Sugarman against the

1   issuance of the press release Sugarman had drafted. Despite their advice, Sugarman instructed

2   that the press release be sent to the newswire for publication approximately 40 minute before a

3   telephonic board meeting was scheduled to begin.

4       30.    The Company denies that there was a meeting of the Executive Committee on

5   October 18, 2016, or that the Executive Committee received a copy of the press release Sugarman

6   drafted before he ordered it sent to the newswire, or that the Executive Committee approved of

7   the press release before Sugarman ordered it issued. The Company further denies that Sugarman

8   presented or read the press release during the October 18, 2016 telephonic board meeting that

9   occurred shortly after he ordered the press release issued. The Company denies that the

10  Company's General Counsel "reaffirmed" the October 18, 2016 press release during the earnings

11  call that occurred on October 19, 2016. The General Counsel repeated during the earnings call

12  information that Sugarman had told the General Counsel, including that (i) Sugarman had advised

13  the boards of directors in 2015 about the circumstances associated with Jason Galanis' indictment

14  on September 24, 2015, including certain claims attributed to Galanis that he was affiliated in

15  some manner with the Company, or members of the Company's boards of directors, or

16  management, and (ii) the board had determined to retain outside counsel to conduct an

17  investigation into the matters raised. During the earnings call, the Company's General Counsel

18  also repeated information that he had learned from Winston & Strawn after the Blog was

19  published about its investigation.

20      31.    The Company denies that the October 18, 2016 press release "quelled" the

21  problems the Company faced due to the issuance of the Blog, and denies that the board of

22  directors created the Special Committee as part of an "effort by four Board Members to deflect

23  any scrutiny, with regard to the press release, onto others." The Company alleges that the Special

24  Committee was formed upon the vote of all directors, with Sugarman and Brownstein abstaining,

25  to investigate the matters alleged in the Blog about Galanis' alleged control of the Company. The

26  Company further alleges that Seabold was not a member of the board at that time or the Special

27  Committee and has no personal knowledge about the Special Committee or its investigation.

28  Defendants contend that Sugarman is the source for the allegations in Paragraph 31, and that the

la-1365021                                    8

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 312

EXHIBIT 1
PAGE 18

1   Complaint repeats Sugarman's attacks on the members of the board whom Sugarman blames for

2   later demanding his resignation.  The Company also alleges that the suggestion in Paragraph 31

3   of the Complaint that the Special Committee investigation was unnecessary repeats statements

4   Sugarman made at the time the Special Committee was created and thereafter.  Defendants deny

5   the remaining allegations in Paragraph 31.

6          32.     Defendants admit that Sugarman and Brownstein could not properly serve on the

7   Special Committee because the Special Committee was delegated the authority to investigate the

8   allegations in the Blog about Galanis' alleged control of the Company, including allegations that

9   Sugarman and Brownstein had relationships with Galanis.  Defendants further admit that the

10   board appointed directors Eric Holoman, Jonah Schnel, Jeff Karish, Halle Benett, and Bob

11   Sznewajs to the Special Committee.  Defendants deny that the Special Committee was formed to,

12   or could be used to, "manufacture an excuse to oust top management" or to "sweep[] their own

13   misconduct and conflicts of interest under the rug."  Defendants further allege that WilmerHale,

14   the law firm retained by the Special Committee to assist in the investigation, assessed the

15   independence of the Special Committee members and concluded they were independent and

16   disinterested in the investigation they were conducting.  Defendants deny the remaining

17   allegations in Paragraph 32.

18          33.     Defendants deny that the Company's board of directors assigned to the Special

19   Committee the job of investigating "potential conflicts of interest and related party transactions"

20   generally.  Rather, Defendants contend that the Special Committee was charged with

21   investigating the allegations in the Blog about Galanis' alleged control of the Company, which

22   included allegations, among others, about Galanis' alleged relationships with Sugarman, Seabold,

23   and Brownstein. The Company admits that the Special Committee thus investigated alleged

24   connections between Galanis, Seabold, Sugarman and Brownstein.  The board did not instruct the

25   Special Committee to investigate the members of the Special Committee themselves because

26   there were no allegations in the Blog that any of the directors on the Special Committee had

27   relations with Galanis.  Defendants further deny that there were "numerous individuals raising

28   allegations" about conflicts of interests among the Special Committee members.  The only

1   director who raised any such allegations was Sugarman, who first raised allegations about

2   director Benett in about December 2016, after Sugarman began engaging in conduct to try to

3   interfere with the Special Committee's investigation.

4         34.    Defendants deny that any of the members of the Special Committee were hiding,

5   or had, any conflicts of interest that caused them to lack independence in connection with the

6   investigation the Special Committee was conducting.  Defendants further allege that WilmerHale,

7   the law firm retained by the Special Committee to assist in the investigation, assessed the

8   independence of the Special Committee members and concluded they were independent and

9   disinterested in the investigation they were conducting.  Defendants deny that Holoman resigned

10  as a director two months after the Special Committee was formed and allege that he served as a

11  director until his term ended in June 2017.  Defendants admit that Holoman resigned from the

12  Special Committee but lack sufficient information or belief to state the reasons Holoman chose to

13  resign as a member of the Special Committee becuase Holoman did not give any reason for his

14  resignation.

15        35.    Defendants deny that the Special Committee applied a "double standard" because,

16  as alleged above, the Special Committee was not charged with investigating the members of the

17  Special Committee since they were delegated the duty to investigate themselves by the board.

18  Defendants further allege that WilmerHale, the law firm retained by the Special Committee to

19  assist in the investigation, assessed the independence of the Special Committee members and

20  concluded they were independent and disinterested in the investigation they were conducting.

21        36.    Defendants admit that Benett has served as a director of the Bank since 2013 and

22  as a director of the Company since 2014.  Defendants deny the remaining allegations in

23  Paragraph 36.

24        37.    Defendants deny that a Company director is required to give notice to the board

25  whenever a director takes a new position with the director's existing employer, and they deny that

26  Benett was required to advise the board in 2014, the year in which he was elected as a director of

27  PacTrust, that his job title had changed at Keefe, Bruyette & Woods ("KBW").  Defendants

28  further allege that Benett met his obligation to keep the Company informed of his business

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 314

EXHIBIT 1
PAGE 20

1    activities so that his independence could be properly evaluated and, despite no specific obligation

2    to do so, did disclose that he was Co-Head of the Diversified Financials Group at KBW, which

3    was disclosed in the Company's April 2014 Proxy.  Defendants deny the remaining allegations in

4    Paragraph 37.

5        38.    Defendants are unaware of any "corporate opportunities" that Benett "usurped" for

6    himself that he was required first to offer to the Company, and are informed and believe there

7    were none.  Defendants deny that Seabold ever raised any concerns about Benett usurping

8    corporate opportunities  Defendants further allege that Sugarman did not raise any concerns about

9    Mr. Benett usurping corporate opportunities until about December 2016, after Sugarman began

10   engaging in conduct to attempt to interfere with the Special Committee's

11   investigation.  Defendants are informed and believe, and on that basis allege, that Benett resigned

12   from KBW in August 2016, long before Sugarman began his attack on Benett, and that Benett did

13   not resign from KBW in order to address concerns that had been raised that Benett had usurped

14   corporate opportunities or to eliminate any claimed conflicts of interest.  Defendants deny the

15   remaining allegations in Paragraph 38.

16       39.    Defendants admit that in about December 2016, after Sugarman raised concerns

17   about the creation of the Special Committee and the investigation it was conducting into the

18   allegations in the Blog about Sugarman and his affiliated companies, Sugarman proposed that the

19   board investigate whether Benett should have tendered his resignation as a director; and that

20   Sugarman's allegations were referred to the board's Governance Committee, which consisted of

21   the chair Chad Brownstein, the vice-chair Eric Holoman, and Jonah Schnel.  Mr. Schnel was

22   never the chair of the Governance Committee, contrary to Seabold's allegation.  After review and

23   consideration of the matter, the Governance Committee unanimously agreed that there was no

24   reason to request Benett's resignation as a director.  Further, Defendants are informed and believe

25   that Schnel did not state that director Karish was in the same position as Benett and would have to

26   be investigated. Defendants deny the remaining allegations in Paragraph 39.

27       40.    Defendants admit that Benett announced in December 2016 his intent not to run

28   for re-election to the board of directors for personal reasons, based upon his assessment of the

la-1365021                                          11

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 315

EXHIBIT 1
PAGE 21

1    demands of his business activities and employment.  Defendants are informed and believe that at

2    the time Benett announced he would not run for re-election, he intended not to run for re-election.

3    Defendants are informed and believe that, after the demands associated with being a member of

4    the Special Committee lessened, Benett later re-evaluated his position and decided to remain a

5    director in part to oversee, in his capacity as chair of the Governance Committee and

6    Nominations Committee, the corporate governance changes and board recruitment efforts that

7    were underway.  Defendants deny the remaining allegations in Paragraph 40.

8        41.    The Company admits that it issued a press release on January 23, 2017 and refers

9    to that press release for a complete statement of its contents.  The Company admits that that press

10   release stated, among other things, that "[w]hile certain work remains to be completed, to date

11   WilmerHale's inquiry has not found any violation of law.  In addition, contrary to the claims in

12   the blog post, the inquiry has not found evidence that Jason Galanis has any direct or indirect

13   control or undue influence over the Company.  Furthermore, the inquiry has not found evidence

14   establishing that any loan, related party transaction, or any other circumstance has impaired the

15   independence of any director."  Defendants also admit that on February 7, 2017, the Company

16   "announced that the Special Committee of its Board of Directors (the 'Board') has received the

17   final report of the independent investigation into previously disclosed blogger allegations.  The

18   report concludes that there was no violation of law and that Jason Galanis had no indirect or

19   direct control or undue influence over the Company."  Defendants refer to the January 23, 2017

20   and February 7, 2017 press releases for a complete statement of their contents.  Defendants deny

21   that the Company ever disclosed or concluded that "no justification for any for cause terminations

22   had been uncovered" or that it was part of the Special Committee's mandate to make such a

23   determination.  Defendants also deny that the "the Special Committee manufactured an excuse to

24   oust Mr. Sugarman" or that the Special Committee took any action related to Sugarman's

25   employment status.  Defendants deny the remaining allegations in Paragraph 41.

26       42.    The Company admits that on January 23, 2017, it issued a second press release and

27   refers to that press release for a complete statement of its contents.  The Company admits that that

28   press release stated, among other things, that Sugarman was resigning as CEO and as a director of

la-1365021                                    12

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 316

EXHIBIT 1
PAGE 22

1   the Company.  Defendants deny that Sugarman has any basis to claim he resigned because

2   members of the Special Committee "would not allow him to implement an appropriate SOX

3   control environment including ensuring adequate disclosures, including of their own conflicts."

4   Defendants allege that on Friday, January 20, 2017, Sugarman was informed through counsel that

5   members of the board would raise at a board meeting on Sunday, January 22, 2017 the issue

6   whether Sugarman should be terminated as CEO for cause if he did not resign as both the CEO

7   and a director before that meeting.  On January 22, 2017, the Company provided Sugarman with

8   notice of grounds for termination with cause, including that Sugarman had resisted and attempted

9   to prevent the formation of the Special Committee and, once the Special Committee was formed,

10  he interfered with and delayed the Special Committee's investigation; Sugarman had provided

11  inaccurate information to the Special Committee's lawyers about the responsibility for the

12  October 18, 2016 press release; Sugarman had raised – before later abandoning – a number of

13  baseless objections to his turning over to the Special Committee his Company-issued devices,

14  which delayed the Committee's review of those devices by weeks; Sugarman had directed an

15  attorney, Sanford Michelman, purportedly acting on behalf of the Company to take a number of

16  meritless positions, purportedly on behalf of the Company, objecting to the Company's

17  production of documents requested by the Special Committee, causing further delay; Sugarman

18  had caused a long delay in the production of materials requested by the Special Committee that

19  Sugarman claimed were controlled by the COR entities – entities over which he had control;

20  Sugarman had instructed others at the Company to delay resolving a potential default by the

21  Company on a credit line in order to put pressure on the Special Committee to conclude its

22  investigation; Sugarman had interfered with directors having direct communication with officers

23  of the Company, and indicated to officers that it could be a violation of law if there were direct

24  communication between directors and officers; and Sugarman had ordered the issuance of the

25  October 18, 2016 press release despite knowing of inaccuracies, which the Company referenced

26  in a January 23 press release.  Defendants contend that Sugarman should have known that the

27  statement in the October 18, 2016 press release he drafted that "[t]he Company's Board of

28  Directors has been aware of matters relating to Jason Galanis including certain claims he had

la-1365021                                          13

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 317

EXHIBIT 1
PAGE 23

1   made suggesting an affiliation with members of the Company, its Board, and/or its Executive

2   team" was inaccurate.  Defendants allege that Sugarman knew that he had not informed the full

3   board about any matters "relating to Jason Galanis including certain claims he had made

4   suggesting an affiliation with members of the Company, its Board, and/or its Executive team" and

5   that Sugarman himself was made the decision that Winston & Strawn should conduct an

6   investigation regarding Galanis and any connections he might have to the Company.  Defendants

7   further contend that Sugarman then contacted the Company's General Counsel and told the

8   General Counsel that "the board" wanted to conduct an investigation, although at that time the

9   full board had not been advised about Galanis, any connections Galanis might have with the

10   Company, with Sugarman, or anyone else, or that Galanis had been indicted in September 2015.

11   Defendants contend that Brownstein and Winston & Strawn then contacted the Company's

12   General Counsel, reiterated that the board wanted to conduct an investigation, and asked whether

13   the Company's Governance Committee was the appropriate committee to receive reports about

14   the Winston & Strawn investigation.  Defendants further contend that Sugarman should have

15   known that the statement he had written that "[t]he Board, acting through its Disinterested

16   Directors, immediately initiated a thorough independent investigation led by Winston & Strawn"

17   was inaccurate because Sugarman knew that Sugarman himself initiated the investigation by

18   Winston & Strawn.  Sugarman also should have known that his statement that the board had

19   received reports "related to regulatory and governmental communications over the past year"

20   overstated both the degree to which the Company had been in contact with regulatory agencies

21   about the subject matter referenced in the Blog, as well as the involvement of the directors in

22   overseeing or directing Winston & Strawn's' investigation.   Also, neither the board of directors

23   nor the Company's General Counsel was fully aware on October 18, 2016 of all the various

24   matters where Winston & Strawn had individually and separately represented Sugarman

25   personally, or his family members personally, or the non-Company entities Sugarman controlled.

26   On October 18, 2016, the board also did not know that the "representative of COR" that

27   Sugarman referenced in the October 18, 2016 press release he drafted was Sugarman himself.  As

28   of October 18, 2016, Sugarman had also not informed the board that he had been interviewed by

la-1365021                                        14

FIRST AMENDED ANSWER TO COMPLAINT

1   the Department of Justice regarding possible connections between Galanis and Sugarman's COR

2   entities or any other topics.   On January 22, 2017, Sugarman's attorneys sent a letter raising

3   allegations regarding other board members, which allegations have been repeated by Seabold and

4   Sugarman's other proxies who have since filed suit against the Company, further evidencing the

5   collaboration between Sugarman, Seabold, and the other persons who have filed suit against the

6   Company.  Defendants content that, at the board meeting on January 22, 2017, one of the Bank's

7   directors stated that Sugarman had asked that that director oversee the attorney, Sanford

8   Michelman, who had objected, purportedly on behalf of the Bank to the Special Committee's

9   request for documents from the Bank, and that director refused to do as Sugarman asked.  At the

10  board meeting on January 22, 2017, a majority of the board stated that they had lost confidence in

11  Sugarman and that, if Sugarman did not resign as CEO and a director, they would proceed to a

12  vote on whether to terminate Sugarman for cause.  Sugarman's unacceptable personal and

13  unprofessional conduct after the Blog was published and during the Special Committee's

14  investigation caused a majority of the board of directors to lose confidence in Mr. Sugarman's

15  ability to effectively lead the Company going forward.  Defendants assert that, notwithstanding

16  Sugarman's obstructionist conduct, the Special Committee was able to complete its investigation

17  and conclude that it found no evidence that Galanis controlled the Company or that there had

18  been any violation of law.  Defendants believe that, after receiving the notice of grounds of

19  termination and listening to the other directors on January 22, 2017, Sugarman realized that he

20  would be terminated as CEO for cause if he did not resign.  Sugarman thereafter decided to

21  resign.  The terms of his resignation were negotiated on January 22, 2017 and agreed upon in a

22  written Separation Agreement, which Defendants refer to for a complete statement of its contents.

23  Among other provisions in the Separation Agreement, the parties agreed to mutual releases.

24  Pursuant to those releases Sugarman released the Company, its officers and directors, and others

25  from any and all claims.  Defendants contend that Sugarman has used Seabold and others to

26  allege claims that Sugarman himself released.  Sugarman's resignation was publicly announced

27  on the morning of January 23, 2017.  Defendants deny the remaining allegations in Paragraph 42.

28      43.    Defendants deny that Sugarman's resignation allowed Benett to remain a board

la-1365021                                    15

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 319

EXHIBIT 1
PAGE 25

1   member because, among other reasons, the Governance Committee had already concluded that

2   there was no reason to request Benett to resign as a board member.  Defendants also deny that

3   Benett has been able to "grab power" since he is only one member of a nine person board.

4   Defendants admit and allege that Sugarman was the only director who alleged that Benett had

5   conflicts of interest, which allegations were raised only after Sugarman was unable to prevent the

6   creation of the Special Committee and the retention of WilmerHale to conduct the investigation.

7   Defendants deny that Benett or the other directors who indicated that they favored the resignation

8   of Sugarman sought to "cash in on substantial Board fees."  Defendants allege that compensation

9   for all directors was in fact reduced in March 2017 upon the recommendation of the

10  Compensation Committee, which consisted of directors Karish, Sznewajs, and Benett.

11  Defendants deny the remaining allegations in Paragraph 43.

12         44.     Defendants deny that Karish was required to, but failed to, disclose "to the Banc

13  and investors" any information alleged in Paragraph 44.  Defendants allege on information and

14  belief that Mr. Karish personally bought and sold approximately $3,000 worth of publicly traded

15  shares in Chad Brownstein's prior public company.  Other than that investment, Mr. Karish has

16  no financial interest in and did not initiate, or have control over, any investment decision in Chad

17  Brownstein's company."  On information and belief, Defendants deny the remaining allegations

18  in Paragraph 44.

19         45.     Defendants deny that Karish was required to, but failed to, disclose any

20  information alleged in Paragraph 45.  Defendants otherwise lack sufficient information to admit

21  or deny the allegations in Paragraph 45.

22         46.     Defendants deny that the Company's "SOX signatories required that Mr. Karish's

23  conflicts be reviewed, and, as appropriate, disclosed to investors" or that Karish objected to any

24  review of any alleged conflicts of interest.  Defendants deny the remaining allegations in

25  Paragraph 46.

26         47.     Defendants are informed and believe that Mr. Sznewajs did not as Audit

27  Committee chair approve the hiring of any firm where his son was employed to underwrite a

28  Company offering.  Defendants deny that they ever hired one of Mr. Sznewajs' family members.

la-1365021                                      16

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 320

EXHIBIT 1
PAGE 26

1    Defendants deny the remaining allegations in Paragraph 47.

2        48.    Defendants deny that any of the directors on "the Special Committee

3    manipulate[d] the Special Investigation to achieve their desired ends [of] removing Mr. Sugarman

4    from the Company and assuming control." Defendants allege that the members of the Special

5    Committee do not have "control" of the Company. Defendants deny the remaining allegations in

6    Paragraph 48.

7        49.    Defendants admit that they wanted to sell pools of commercial and/or residential

8    loans, per their then-existing business model. Defendants deny that the purpose of those sales

9    was to ensure that the Company met analyst's consensus operating EPS for the first quarter 2017.

10   Defendants deny the remaining allegations in Paragraph 49.

11       50.    Defendants deny that they "resorted to manufacturing earnings" or that such a

12   phrase has any meaning. Defendants also deny that any spokesperson for the Company issued, or

13   failed to refute, guidance for 2017 earnings that the person did not believe was appropriate given

14   the information at the time. Defendants deny the remaining allegations in Paragraph 50.

15       51.    Defendants deny that the Company eliminated transparency from the financial

16   reporting and budgeting processes. Defendants further deny that the Company "reassessed"

17   bonus "accruals" for 2016 in 2017, but admit that in March 2017 the Compensation Committee

18   and the board determined the amount of bonuses that would be paid in March 2017 for fiscal year

19   2016 would be at a level lower than had been accrued for as of December 31, 2016, as the

20   Compensation Committee and board were within their rights to do. Defendants allege that the

21   bonuses paid to Seabold and other executives for fiscal year 2016 were discretionary and not

22   contractual, and were always subject to a final and binding decision by the Compensation

23   Committee and the board. Defendants deny that Seabold was entitled to a "guaranteed" bonus for

24   fiscal year 2016. While a good faith bonus accrual estimate was made at year end 2016 for

25   accounting purposes, the actual amounts paid were not finally determined or paid until March

26   2017. At that time, the Compensation Committee and board decided to reduce the 2016 bonus

27   pool, appropriately taking into consideration the extraordinary events of late 2016 and early 2017,

28   and the nature of the Company's net income in 2016, which included many non-recurring, one-

la-1365021                                         17

FIRST AMENDED ANSWER TO COMPLAINT

1    time income items. The decision had nothing to do with shifting income between 2016 and 2017.

2    The accounting treatment for the bonus reduction was determined by the Company's accounting

3    department to be a change in accounting estimate under generally accepted accounting principles

4    (GAAP). GAAP required that the change in estimate be recorded in 2017, the period in which the

5    change in estimate was made. Defendants deny the remaining allegations in Paragraph 51.

6         52.     Defendants deny that the Company "reassessed" bonus "accruals" for 2016 in

7    2017, but admit that in March 2017 the Compensation Committee and the board determined the

8    amount of bonuses that would be paid in March 2017 for fiscal year 2016 would be at a level

9    lower than had been accrued for as of December 31, 2016, as the Compensation Committee and

10   board were within their rights to do. Defendants allege that the bonuses paid to Seabold and other

11   executives for fiscal year 2016 were discretionary and not contractual, and were always subject to

12   a final and binding decision by the Compensation Committee and the board. Defendants deny

13   that Seabold was entitled to a "guaranteed" bonus for fiscal year 2016. While a good faith bonus

14   accrual estimate was made at year end 2016 for accounting purposes, the actual amounts paid

15   were not finally determined or paid until March 2017. At that time, the Compensation Committee

16   and board decided to reduce the 2016 bonus pool, appropriately taking into consideration the

17   extraordinary events of late 2016 and early 2017, and the nature of the Company's net income in

18   2016, which included many non-recurring, one-time income items. The decision had nothing to

19   do with shifting income between 2016 and 2017. The accounting treatment for the bonus

20   reduction was determined by the Company's accounting department to be a change in accounting

21   estimate under generally accepted accounting principles (GAAP). GAAP required that the

22   change in estimate be recorded in 2017, the period in which the change in estimate was made.

23   Defendants deny the remaining allegations in Paragraph 52.

24        53.     Defendants admit that Heather Endresen, another former employee aligned with

25   Sugarman and who was disappointed not to receive a larger bonus for fiscal year 2016, raised the

26   issue about the 2016 bonus accruals referenced in Paragraphs 51 and 52 of the Complaint.

27   Defendants contend that Endresen at a minimum received assistance from Sugarman in

28   formulating the complaint she raised about the 2016 bonus accrual. Defendants admit that

1    Endresen insisted on having one of the Company's newly appointed, non-management directors

2    involved in hearing and responding to her allegations and employment concerns.  The Company

3    accommodated this extraordinary demand by asking director Richard Lashley, who was

4    appointed to the board in early 2017, to become involved.  The Company spent a significant

5    amount of time and effort listening to and investigating Ms. Endresen's allegations and concerns.

6    Ultimately, Ms. Endresen's allegations were either factually incorrect or no corroborating

7    evidence was found.  The Company explained in detail the information set out above in

8    Paragraphs 51 and 52 of this Amended Answer, but Ms. Endresen nonetheless included in her

9    subsequent complaint the same meritless claim that she was "owed" a bonus in the amount that

10   the Company accrued for in 2016. Defendants deny the remaining allegations in Paragraph 53.

11        54.    Defendants admit that they issued a press release on January 23, 2017 to which

12   Defendants refer for a complete statement of its contents.  Defendants deny that the press release

13   stated that the Company "was under investigation by the Securities and Exchange Commission."

14   Defendants further deny that the press release "explained that the SEC was demanding

15   information related to the Company's October 18 press release responding to the *Seeking Alpha*

16   allegations that the Company was connected to, and possibly controlled by, Jason Galanis."

17   Rather, the Company's press release stated, in pertinent part, that "on January 12, 2017, the

18   Securities and Exchange Commission ("SEC") issued a formal order of investigation directed at

19   certain of the issues that the Special Committee is reviewing.  Also on January 12, 2017, the SEC

20   issued a subpoena seeking certain documents from the Company, primarily relating to the

21   October 18, 2016 press release and associated public statements.  The Company intends to fully

22   cooperate with the SEC; in addition, the Special Committee will share the results of its review

23   with the SEC staff."  Defendants deny the remaining allegations in Paragraph 54.

24        55.    Defendants lack information sufficient to enable them to admit or deny the

25   allegations in Paragraph 55, and on that basis deny those allegations.

26        56.    Defendants deny that they have any concern that Seabold's testimony to the SEC

27   "could expose the Board members' conflicts and financial misconduct," provided that Seabold

28   provided honest and accurate testimony.  Defendants further deny that the Company made any

FIRST AMENDED ANSWER TO COMPLAINT

1    effort to undermine his testimony before the SEC, or that the Company disparaged or discredited

2    him.  The Company, which did not accede to Seabold's employment demands, made no effort to

3    influence Seabold's testimony.  Defendants deny the remaining allegations in Paragraph 56.

4    57.    Defendants admit that the Company's most recent 10-K dated March 31, 2017, to

5    which Defendants refer for a complete statement of its contents, includes a report from the

6    Company's independent auditor, which stated: "a material weakness related to inadequate tone at

7    the top regarding the importance of internal control over financial reporting, which adversely

8    impacted a number of processes resulting in an ineffective risk assessment process, ineffective

9    monitoring activities, and insufficient resources or support and caused the Company to experience

10    an increase in the number of control deficiencies across multiple processes has been identified

11    and included in the accompanying Management's Report on Internal Control over Financial

12    Reporting."  Defendants further allege that the auditor's report stated that "[t]his material

13    weakness was considered in determining the nature, timing, and extent of audit tests applied in

14    our audit of the 2016 consolidated financial statements, and this report does not affect our report

15    dated March 1, 2017, which expressed an unqualified opinion on those consolidated financial

16    statements."  Defendants further allege that as of the date that material weakness was identified,

17    December 31, 2016, Sugarman was the CEO of the Company.  Defendants deny the remaining

18    allegations in Paragraph 57.

19    58.    Defendants refer to PCAOB Auditing Standard No. 5, Appendix A – Definitions

20    for a complete statement of its contents.

21    59.    Defendants deny that they have promoted the persons at the Company who were

22    responsible for setting an inappropriate "tone at the top regarding the importance of internal

23    control over financial reporting."  Defendants allege that demanding, and procuring, the

24    resignation of Sugarman was an important component of the remediation plan the Company put

25    in place to correct the material weakness referenced in the Company's 2016 Form 10-K.

26    Defendants deny the remaining allegations in Paragraph 59.

27    60.    Defendants admit that the Company's 2016 10-K, which was filed on March 1,

28    2017, and to which Defendants refer for a complete statement of its contents, includes the quoted

la-1365021                                    20

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 324

EXHIBIT 1
PAGE 30

1   passage. Defendants deny the remaining allegations in Paragraph 60.

2       61.   Defendants deny the allegations in Paragraph 61. As the Company found, as of

3   December 31, 2016, there was an inadequate "tone at the top regarding the importance of internal

4   control over financial reporting," which would include Sugarman and Seabold. Defendants deny

5   the remaining allegations in Paragraph 61.

6       62.   Defendants admit that the Company terminated the former Senior Vice President

7   of SOX, and the former Executive Vice President, Chief of Staff. Defendants deny the remaining

8   allegations in Paragraph 62.

9       63.   Defendants admit that the Company, with a new CEO and five directors who were

10  not on the board at the end of 2016, has altered its business model since Sugarman resigned.

11  Defendants deny that directors Benett, Karish, Schnel and Sznewajs "control" the Company.

12  Defendants deny the remaining allegations in Paragraph 63.

13      64.   Defendants deny the allegations in Paragraph 64.

14      65.   Defendants admit that they learned information indicating that Seabold had

15  misused the Company's expense account; refused and continues to refuse to return to the

16  Company devices owned by the Company provided to him in his capacity as an employee and

17  officer which substantially delayed the Special Committee's investigation; traded the Company's

18  stock on margin in violation of Company policy; and improperly loaned money to an independent

19  contractor of a Bank subsidiary. Based on that conduct, on about March 14, 2017, the Company

20  informed Seabold that it had grounds to terminate Seabold for cause, and it placed Seabold on

21  administrative leave while it attempted to work out the terms of Seabold's potential separation

22  through Seabold's attorneys. Defendants deny the remaining allegations in Paragraph 65.

23      66.   Defendants are informed and believe that Sugarman is the person who made the

24  alleged statements to Seabold. Defendants lack sufficient information to admit or deny what

25  some unnamed person may have said to Seabold. Defendants deny the remaining allegations in

26  Paragraph 66.

27      67.   Defendants allege that Seabold engaged in misconduct which warranted

28  termination for cause. Defendants deny the remaining allegations in Paragraph 67.

la-1365021                                21

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 325

EXHIBIT 1
PAGE 31

1       68.    Defendants deny that they ever concluded, or stated, that the Company lacked

2 grounds to terminate Seabold for cause. Defendants admit that, after hearing the extraordinary

3 demands Seabold made if he were to agree to resign from the Company, the Company concluded

4 it was in the better interests of the Company and shareholders to advise Seabold to return to work

5 in a position where his prior misconduct could not recur. Pursuant to the July 26, 2016 Consent,

6 the Company's CEO had the right to assign Seabold whatever duties and responsibilities the CEO

7 saw fit to assign. Based on this authority (to which Seabold had expressly agreed in writing), the

8 Company's CEO assigned Seabold certain duties and responsibilities which the CEO hoped

9 Seabold could fulfill to the benefit of the Company, while ensuring that Seabold's prior

10 misconduct could not recur. Rather than perform the job assigned to him, Seabold opted to resign

11 and commence this action. Defendants deny the remaining allegations in Paragraph 68.

12       69.    Defendants admit that Seabold refused to return to work and perform the job

13 assigned to him, and that Seabold demanded that the Company reinstate all the perquisites that

14 Seabold had been given by Sugarman, including his access to an expense account and staff, and

15 also demanded an increased or guaranteed bonus for 2016. Defendants deny that Seabold had

16 any right to an increased or guaranteed bonus, for the reasons alleged above. Defendants deny

17 the remaining allegations in Paragraph 69.

18       70.    Defendants admit that, pursuant to the July 26, 2016 Consent, the Company's

19 CEO could assign Seabold whatever duties and responsibilities the CEO saw fit to assign. The

20 Company's CEO assigned Seabold certain duties and responsibilities which the CEO hoped

21 Seabold could fulfill to the benefit of the Company, while ensuring that Seabold's prior

22 misconduct could not recur. Defendants deny the remaining allegations in Paragraph 70.

23       71.    Defendants admit that Seabold asked the Company employees who previously

24 reported to him for a meeting after the time those persons had been reassigned and given new

25 responsibilities and reports. Defendants also admit that Seabold was given new duties and

26 responsibilities by the CEO, as was expressly permitted under the July 26, 2016 Consent.

27 Defendants deny the remaining allegations in Paragraph 71.

28       72.    Defendants admit that Seabold was given new duties and responsibilities by the

la-1365021                22

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 326

EXHIBIT 1
PAGE 32

1    CEO, as was expressly permitted under the July 26, 2016 Consent. Defendants deny the

2    remaining allegations in Paragraph 72.

3        73.     Defendants admit that Seabold was given new duties and responsibilities by the

4    CEO, as was expressly permitted under the July 26, 2016 Consent, and that thereafter he was not

5    an executive officer as defined in Securities and Exchange Commission rules. Defendants deny

6    the remaining allegations in Paragraph 73.

7        74.     Defendants admit that Seabold was given new duties and responsibilities by the

8    CEO, as was expressly permitted under the July 26, 2016 Consent. Defendants deny the

9    remaining allegations in Paragraph 74.

10       75.     Defendants refer to the Amended Employment Agreement for a complete

11    statement of its contents.

12       76.     Defendants deny that Seabold could not be assigned new or different duties and

13    responsibilities if Seabold did not like or approve of those new or different duties and

14    responsibilities. Pursuant to the July 26, 2016 Consent, the Company's CEO could assign

15    Seabold the duties and responsibilities the CEO saw fit to assign. Defendants deny the remaining

16    allegations in Paragraph 76.

17       77.     Defendants admit that in April 2017 the Company adopted a Performance Unit

18    Agreement (the "PUA"), which set forth goals for Seabold going forward based on his then

19    current duties and responsibilities, as the Company had a right to do. Defendants refer to the

20    PUA for a complete statement of its contents. Defendants deny the remaining allegations in

21    Paragraph 77.

22       78.     Defendants admit that in April 2017 the Company adopted a Performance Unit

23    Agreement (the "PUA"), as the Company had a right to do, which set forth goals for Seabold

24    going forward based on his then current duties and responsibilities, and which took into account

25    the target bonus Seabold was eligible to earn. Defendants refer to the PUA for a complete

26    statement of its contents. Defendants deny that the goals set forth in the PUA were unachievable

27    had Seabold sought to meet them. Defendants deny the remaining allegations in Paragraph 78.

28       79.     Defendants deny that the Company had an obligation to pay Seabold more as a

la-1365021            23

FIRST AMENDED ANSWER TO COMPLAINT

1     bonus for 2016 than the Company paid.  Defendants allege that the bonuses paid to Seabold and

2     other executives for fiscal year 2016 were discretionary and not contractual.   While a good faith

3     bonus accrual estimate was made at year end 2016 for accounting purposes, the actual amounts

4     paid were not finally determined or paid until March 2017.  The 2016 bonuses were always

5     subject to a final and binding decision by the Compensation Committee and the board.  The

6     Compensation Committee's and Board's decision in March 2017 to reduce the 2016 bonus pool

7     appropriately took into consideration the extraordinary events of late 2016 and early 2017, and

8     the nature of the Company's net income in 2016, which included many non-recurring, one time

9     income items.  Defendants deny the remaining allegations in Paragraph 79.

10         80.      Defendants admit, that on about July 18, 2017, the Company, through counsel,

11     advised Seabold that in addition to the grounds for termination for cause provided to Seabold on

12     March 14, 2017, the Company had additional grounds to terminate Seabold's employment

13     because he refused to perform the duties and responsibilities assigned to him.  Defendants deny

14     the remaining allegations in Paragraph 80.

15         81.      Defendants admit that on about May 10, 2017 Seabold's attorneys purported to

16     give notice of Seabold's right to resign for good reason pursuant to the Amended Employment

17     Agreement.  Defendants deny that Seabold had the right to resign for good reason, as defined in

18     the Amended Employment Agreement.  Defendants deny the remaining allegations in Paragraph

19     81.

20         82.      Defendants refer to the indemnity agreement with Seabold for a complete

21     statement of its contents.  Defendants deny that they have breached that agreement.  Defendants

22     deny the remaining allegations in Paragraph 82.

23         83.      Defendants refer to the indemnity agreement with Seabold for a complete

24     statement of its contents.  Defendants deny that they have breached that agreement.  Defendants

25     deny the remaining allegations in Paragraph 83.

26         84.      Paragraph 84 does not allege facts that Defendants have any duty to answer.

27     Defendants incorporate their answer to each of the foregoing paragraphs.

28         85.      Defendants deny the allegations in Paragraph 85.

la-1365021                         24

FIRST AMENDED ANSWER TO COMPLAINT

1    86.    Defendants admit that the Bank entered into an employment agreement dated

2    March 13, 2013, which was amended and restated on April 1, 2015, and further amended on

3    January 1, 2016, and which was modified by the July 26, 2016 Consent.  Defendants deny the

4    remaining allegations in Paragraph 86.

5    87.    Defendants deny the allegations in Paragraph 87.

6    88.    Defendants deny the allegations in Paragraph 88.

7    89.    Defendants deny the allegations in Paragraph 89.

8    90.    Defendants deny the allegations in Paragraph 90.

9    91.    Defendants refer to the Amended Employment Agreement for a complete

10   statement of its contents.  Defendants allege that, pursuant to the Amended Employment

11   Agreement, the Company has no obligation to pay Seabold's attorneys fees and costs unless

12   Seabold prevails on his claims in this action.

13   92.    Paragraph 92 does not allege facts that Defendants have any duty to answer.

14   Defendants incorporate their answer to each of the foregoing paragraphs.

15   93.    Defendants deny the allegations in Paragraph 93.

16   94.    Defendants admit that the Bank entered into an employment agreement dated

17   March 13, 2013, which was amended and restated on April 1, 2015, and further amended on

18   January 1, 2016, and which was modified by the July 26, 2016 Consent.  Defendants deny the

19   remaining allegations in Paragraph 94.

20   95.    Defendants deny the allegations in Paragraph 95.

21   96.    Defendants deny the allegations in Paragraph 96.

22   97.    Defendants deny the allegations in Paragraph 97.

23   98.    Defendants refer to the Amended Employment Agreement for a complete

24   statement of its contents.  Defendants allege that, pursuant to the Amended Employment

25   Agreement, the Company has no obligation to pay Seabold's attorneys fees and costs unless

26   Seabold prevails on his claims in this action.

27   99.    Paragraph 99 does not allege facts that Defendants have any duty to answer.

28   Defendants incorporate their answer to each of the foregoing paragraphs.

la-1365021                              25

FIRST AMENDED ANSWER TO COMPLAINT

1    100.    Defendants admit that the Bank entered into an employment agreement dated

2    March 13, 2013, which was amended and restated on April 1, 2015, and further amended on

3    January 1, 2016, and which was modified by the July 26, 2016 Consent.  Defendants deny the

4    remaining allegations in Paragraph 100.

5    101.    Defendants deny the allegations in Paragraph 101.

6    102.    Defendants deny the allegations in Paragraph 102.

7    103.    Defendants deny the allegations in Paragraph 103.

8    104.    Paragraph 104 does not allege facts that Defendants have any duty to answer.

9    Defendants incorporate their answer to each of the foregoing paragraphs.

10    105.    Defendants admit that Seabold was an employee of the Company.

11    106.    Defendants deny that they terminated Seabold's employment.  Defendants'

12    decision to give Seabold notice of grounds to terminate Seabold's employment for cause had

13    nothing to do with the fact that he had been subpoenaed to testify by the SEC or that the

14    Company feared he would report violations of law to the SEC when he testified.  Seabold's

15    allegation makes no sense.  Defendants never "constructively terminated" Seabold.  Defendants

16    do not know when the SEC subpoenaed Seabold and note that Seabold did not resign until long

17    after February 3, 2017, the date he alleges he received a subpoena from the SEC.  Defendants

18    deny the remaining allegations in Paragraph 106.

19    107.    Defendants deny the allegations in Paragraph 107.

20    108.    Defendants lack knowledge that Seabold ever "report[ed] a reasonably suspected

21    violation of the law to a government or law enforcement agency."  Defendants deny the

22    remaining allegations in Paragraph 108.

23    109.    Defendants deny the allegations in Paragraph 109.

24    110.    Defendants deny the allegations in Paragraph 110.

25    111.    Defendants deny the allegations in Paragraph 111.

26    112.    Paragraph 112 does not allege facts that Defendants have any duty to answer.

27    Defendants incorporate their answer to each of the foregoing paragraphs.

28    113.    Defendants deny the allegations in Paragraph 113.

FIRST AMENDED ANSWER TO COMPLAINT

1  114. Defendants deny the allegations in Paragraph 114.

2  115. Defendants deny the allegations in Paragraph 115.

3  116. Defendants deny the allegations in Paragraph 116.

4  117. Paragraph 117 does not allege facts that Defendants have any duty to answer.

5 Defendants incorporate their answer to each of the foregoing paragraphs.

6  118. Defendants deny the allegations in Paragraph 118.

7  119. Defendants deny the allegations in Paragraph 119.

8  120. Defendants deny the allegations in Paragraph 120.

9  121. Defendants deny the allegations in Paragraph 121.

10  122. Defendants deny the allegations in Paragraph 122.

11

12        **AFFIRMATIVE DEFENSES**

13  Defendants state below the separate and independent additional defenses to the Complaint

14 and each purported cause of action and allegation thereof.  Defendants, however, do not assume

15 the burden of proof on any such defense except as required by applicable law with respect to the

16 particular defense asserted.  Defendants reserve the right to assert additional affirmative and other

17 defenses and otherwise to supplement this answer upon discovery of facts or evidence rendering

18 such action appropriate.

19

20

21        **FIRST AFFIRMATIVE DEFENSE**

22        **(Failure to State a Cause of Action)**

23  As a separate and independent affirmative defense, Defendants allege that the Complaint

24 and each purported cause of action contained therein fail to state facts sufficient to constitute a

25 cause of action.

26        **SECOND AFFIRMATIVE DEFENSE**

27        **(Full Performance)**

28  As a separate and independent affirmative defense, Defendants allege that they performed

1    all conditions, covenants, and promises required on their part to be performed pursuant to any

2    agreement with Plaintiff.

3    <center>**THIRD AFFIRMATIVE DEFENSE**</center>

4    <center>**(Justification)**</center>

5    As a separate and independent affirmative defense, Defendants allege that the conduct by

6    Defendants was fully justified or privileged and supported by good cause.

7    <center>**FOURTH AFFIRMATIVE DEFENSE**</center>

8    <center>**(Breach of Contract)**</center>

9    As a separate and independent affirmative defense, Defendants allege that the Complaint

10    is barred due to Plaintiff's breach of contract.

11    <center>**FIFTH AFFIRMATIVE DEFENSE**</center>

12    <center>**(Good Faith)**</center>

13    As a separate and independent affirmative defense, Defendants allege that they did not

14    breach the covenant of good faith and fair dealing because at all times relevant and material

15    herein, Defendants acted in good faith and had reasonable grounds for believing they did not

16    violate the Employment Agreement or interfere with Plaintiff's rights thereunder.

17    <center>**SIXTH AFFIRMATIVE DEFENSE**</center>

18    <center>**(Plaintiff's Other Conduct)**</center>

19    As a separate and independent affirmative defense, Defendants allege that the Complaint

20    and each purported cause of action therein are barred to the extent any alleged damages were

21    caused by the negligence, failure to perform, or other conduct of Plaintiff.

22    <center>**SEVENTH AFFIRMATIVE DEFENSE**</center>

23    <center>**(Failure to Comply With Policies)**</center>

24    As a separate and independent affirmative defense, Defendants allege that the Complaint

25    and each purported cause of action contained therein are barred to the extent Plaintiff did not

26    comply with Defendants' policies.

27    <center>**EIGHTH AFFIRMATIVE DEFENSE**</center>

28    <center>**(Waiver)**</center>

As a separate and independent affirmative defense, Defendants allege that the Complaint and each cause of action contained therein are barred because Plaintiff waived any claim he had against Defendants by his actions, to the extent Plaintiff had any such claim (which Defendants deny).

## NINTH AFFIRMATIVE DEFENSE

### (Consent)

As a separate and independent affirmative defense, Defendants allege that the Complaint and each cause of action contained therein are barred to the extent Plaintiff consented to the alleged conduct of Defendants.

## TENTH AFFIRMATIVE DEFENSE

### (Estoppel)

As a separate and independent affirmative defense, Defendants allege that the Complaint and each cause of action contained therein are barred because any conduct of Defendants that is alleged to be unlawful was taken as a result of conduct by Plaintiff, and he is thus estopped to assert any cause of action against Defendants.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

As a separate and independent affirmative defense, Defendants allege that Plaintiff's remedies are limited to the extent Plaintiff has unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE

### (All Obligations Fulfilled)

As a separate and independent affirmative defense, Defendants allege that, to the extent that Defendants had any obligations to Plaintiff as a result of any alleged promises or statements made to Plaintiff, which Defendants deny, Defendants fulfilled any and all such obligations, except to the extent that any such obligations were excused, waived, or otherwise not legally required.

## THIRTEENTH AFFIRMATIVE DEFENSE

la-1365021

29

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 333

EXHIBIT 1
PAGE 39

**(Speculative Damages)**

As a separate and independent affirmative defense, Defendants allege that the Complaint and each cause of action contained therein are barred because Plaintiff's damages, if any, are vague, uncertain, imaginary, and speculative.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Punitive Damages)**

As a separate and independent affirmative defense, Defendants allege that the Complaint and each and every such cause of action contained therein, fails to state facts sufficient to warrant punitive and/or exemplary damages.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

As a separate and independent affirmative defense, Defendants allege that Plaintiff's damages should be reduced by the amount he could have or did earn from other employment.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Offset)**

As a separate and independent affirmative defense, Defendants allege that any damages claimed by Plaintiff should be reduced to the extent they are subject to an offset, representing amounts improperly obtained from Defendants or which would constitute unjust enrichment of Plaintiff.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Performance Excused or Prevented)**

As a separate and independent affirmative defense, Defendants allege that the Complaint is barred by performance of duties excused or prevented.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(No Adverse Employment Action)**

As a separate and independent affirmative defense, Defendants allege that Plaintiff is barred from any recovery on the Complaint because Plaintiff resigned and was not constructively terminated, and the alleged acts about which Plaintiff complains do not constitute adverse

la-1365021

30

FIRST AMENDED ANSWER TO COMPLAINT

1    employment actions under applicable law.

2                        **NINETEENTH AFFIRMATIVE DEFENSE**

3                          **(Good Cause for Adverse Action)**

4           As a separate and independent affirmative defense, Defendants allege even if Plaintiff was

5    subjected to an adverse action (which Defendants deny), Plaintiff is barred from any recovery on

6    the Complaint because any action that Plaintiff contends was an adverse action was taken for

7    good cause.

8                   **TWENTIETH SEPARATE AND ADDITIONAL DEFENSE**

9                                **(Paid All Sums)**

10          The Complaint and the Fifth Cause of Action is barred because Plaintiff has been paid all

11   sums due to him by virtue of his employment.

12                 **TWENTY-FIRST SEPARATE AND ADDITIONAL DEFENSE**

13                              **(No Penalty Award)**

14          Plaintiff is not entitled to any penalty award under Labor Code section 203 because at all

15   times relevant and material herein, Defendants acted in good faith and had reasonable grounds for

16   believing they did not violate any wage provisions of the Labor Code or the Industrial Welfare

17   Commission Order promulgated thereunder.

18                       **TWENTY-SECOND AFFIRMATIVE DEFENSE**

19                          **(No Unfair or Unlawful Practice)**

20          As a separate and independent affirmative defense, Defendants allege that Plaintiff's Sixth

21   Cause of Action is barred because Defendants have not engaged in any conduct that comes within

22   the meaning of Business & Professions Code section 17200 et seq.

23                        **TWENTY-THIRD AFFIRMATIVE DEFENSE**

24                            **(Adequate Legal Remedy)**

25          As a separate and independent affirmative defense, Defendants allege that Plaintiff's Sixth

26   Cause of Action for the purported violation of Business & Professions Code section 17200 et

27   seq., or any cause of action seeking restitution, disgorgement, or any other form of equitable

28   relief, is barred because Plaintiff has an adequate remedy at law, and because any harm he

la-1365021                                           31

FIRST AMENDED ANSWER TO COMPLAINT

1   allegedly suffered (Defendants allege there was none) is not irreparable.

2                      **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

3                              **(No Fundamental Public Policy)**

4            As a separate and independent affirmative defense, Defendants allege that Plaintiff's

5   Fourth Cause of Action is barred because it is not carefully tethered to fundamental policies that

6   are delineated in constitutional or statutory provisions.

7                       **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

8                               **(No Right to Jury Trial)**

9            To the extent Plaintiff demands a jury trial on the Sixth Cause of Action for the purported

10  violation of Business & Professions Code section 17200 et seq., such demand is barred because

11  there is no right to a jury trial in civil proceedings under section 17200, which is an equitable

12  action triable only to a court.

13                      **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

14                               **(Unjust Enrichment)**

15           As a separate and independent affirmative defense, Defendants allege that Plaintiff would

16  be unjustly enriched, to Defendants' detriment, if Plaintiff were awarded the damages sought

17  under the Complaint.

18                              **PRAYER FOR RELIEF**

19           WHEREFORE, Defendants pray for judgment as follows:

20       1.       That Plaintiff take nothing by virtue of this action;

21       2.       That the Court dismiss Plaintiff's Complaint against Defendants with prejudice;

22       3.       That the Court award Defendants its reasonable expenses and costs, including but

23  not limited to, reasonable attorneys' fees; and

24       4.       That the Court grant Defendants such other and further relief as the Court deems

25  just and proper.

26

27

28

la-1365021                                   32

1    Dated:  January 11, 2018                    MORRISON & FOERSTER LLP

2

3                                                

4                                        By: _____

5                                                MARK R. MCDONALD

                                                 Attorneys for Defendants
6                                                BANC OF CALIFORNIA, INC. AND
                                                 BANC OF CALIFORNIA, N.A.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

la-1365021                              33

FIRST AMENDED ANSWER TO COMPLAINT

Exhibit S - Page 337

EXHIBIT 1
PAGE 43

Exhibit S - Page 338

**EXHIBIT B**

EXHIBIT 1
PAGE 44

1  MARK R. MCDONALD (CA SBN 137001)
   mmcdonald@mofo.com
2  TRITIA M. MURATA (CA SBN 234344)
   tmurata@mofo.com
3  MATTHEW J. CAVE (CA SBN 280704)
   mcave@mofo.com
4  AMY LAWRENCE (CA SBN 311154)
   amylawrence@mofo.com
5  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
6  Los Angeles, California  90017-3543
   Telephone:  213.892.5200
7  Facsimile:  213.892.5454

8  Attorneys for Defendants
   BANC OF CALIFORNIA, INC.,
9  BANC OF CALIFORNIA, N.A.

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 27 2017

Sherri R. Carter, executive Officer/Clerk

By: _____, Deputy
Moses Soto

10

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                   COUNTY OF LOS ANGELES

13  JEFFREY T. SEABOLD,                    Case No. BC674694

14            Plaintiff,

15       v.                               **DEFENDANTS BANC OF
                                          CALIFORNIA, INC. AND BANC OF
16  BANC OF CALIFORNIA, INC.; BANC OF     CALIFORNIA, NA.'S ANSWER TO
    CALIFORNIA, N.A.; and DOES 1-10,      PLAINTIFF JEFFREY SEABOLD'S
17                                        UNVERIFIED COMPLAINT FOR
            Defendants.                   DAMAGES**
18

19

20                                        Complaint Filed:  September 5, 2017

21

22       Defendants Banc of California, Inc. and Banc of California, N.A. ("Banc" or

23  "Defendants") hereby answer the allegations of Plaintiff Jeffrey T. Seabold's ("Plaintiff")

24  unverified Complaint as follows:

25                          **GENERAL DENIAL**

26

27       Pursuant to California Code of Civil Procedure Section 431.30(d), Defendants deny

28  generally each and every allegation of the Complaint in this action and, without waiving the

la-1365021                              1
                               ANSWER TO COMPLAINT

EX B B                    Exhibit S - Page 339

EXHIBIT 1
PAGE 45

1   foregoing, specifically deny that Plaintiff has suffered any injury or damages of any kind

2   attributable in any way to an act or omission of Defendants.

### AFFIRMATIVE DEFENSES

4   Defendants state below the separate and independent additional defenses to the Complaint

5   and each purported cause of action and allegation thereof.  Defendants, however, do not assume

6   the burden of proof on any such defense except as required by applicable law with respect to the

7   particular defense asserted.  Defendants reserve the right to assert additional affirmative and other

8   defenses and otherwise to supplement this answer upon discovery of facts or evidence rendering

9   such action appropriate.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

12   As a separate and independent affirmative defense, Defendants allege that the Complaint

13   and each purported cause of action contained therein fail to state facts sufficient to constitute a

14   cause of action.

### SECOND AFFIRMATIVE DEFENSE

### (Full Performance)

17   As a separate and independent affirmative defense, Defendants allege that they performed

18   all conditions, covenants, and promises required on their part to be performed pursuant to any

19   agreement with Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

### (Justification)

22   As a separate and independent affirmative defense, Defendants allege that the conduct by

23   Defendants was fully justified or privileged and supported by good cause.

### FOURTH AFFIRMATIVE DEFENSE

### (Breach of Contract)

26   As a separate and independent affirmative defense, Defendants allege that the Complaint

27   is barred due to Plaintiff's breach of contract.

28

la-1365021

2

ANSWER TO COMPLAINT

Exhibit S - Page 340

EXHIBIT 1
PAGE 46

1

## FIFTH AFFIRMATIVE DEFENSE

2

### (Good Faith)

3      As a separate and independent affirmative defense, Defendants allege that they did not

4  breach the covenant of good faith and fair dealing because at all times relevant and material

5  herein, Defendants acted in good faith and had reasonable grounds for believing they did not

6  violate the Employment Agreement or interfere with Plaintiff's rights thereunder.

7

## SIXTH AFFIRMATIVE DEFENSE

8

### (Plaintiff's Other Conduct)

9      As a separate and independent affirmative defense, Defendants allege that the Complaint

10  and each purported cause of action therein are barred to the extent any alleged damages were

11  caused by the negligence, failure to perform, or other conduct of Plaintiff.

12

## SEVENTH AFFIRMATIVE DEFENSE

13

### (Failure to Comply With Policies)

14      As a separate and independent affirmative defense, Defendants allege that the Complaint

15  and each purported cause of action contained therein are barred to the extent Plaintiff did not

16  comply with Defendants' policies.

17

## EIGHTH AFFIRMATIVE DEFENSE

18

### (Waiver)

19      As a separate and independent affirmative defense, Defendants allege that the Complaint

20  and each cause of action contained therein are barred because Plaintiff waived any claim he had

21  against Defendants by his actions, to the extent Plaintiff had any such claim (which Defendants

22  deny).

23

## NINTH AFFIRMATIVE DEFENSE

24

### (Consent)

25      As a separate and independent affirmative defense, Defendants allege that the Complaint

26  and each cause of action contained therein are barred to the extent Plaintiff consented to the

27  alleged conduct of Defendants.

28

la-1365021                                3

ANSWER TO COMPLAINT

Exhibit S - Page 341

EXHIBIT 1
PAGE 47

1

<div align="center">

**TENTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

</div>

As a separate and independent affirmative defense, Defendants allege that the Complaint and each cause of action contained therein are barred because any conduct of Defendants that is alleged to be unlawful was taken as a result of conduct by Plaintiff, and he is thus estopped to assert any cause of action against Defendants.

<div align="center">

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

</div>

As a separate and independent affirmative defense, Defendants allege that Plaintiff's remedies are limited to the extent Plaintiff has unclean hands.

<div align="center">

**TWELFTH AFFIRMATIVE DEFENSE**

**(All Obligations Fulfilled)**

</div>

As a separate and independent affirmative defense, Defendants allege that, to the extent that Defendants had any obligations to Plaintiff as a result of any alleged promises or statements made to Plaintiff, which Defendants deny, Defendants fulfilled any and all such obligations, except to the extent that any such obligations were excused, waived, or otherwise not legally required.

<div align="center">

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Speculative Damages)**

</div>

As a separate and independent affirmative defense, Defendants allege that the Complaint and each cause of action contained therein are barred because Plaintiff's damages, if any, are vague, uncertain, imaginary, and speculative.

<div align="center">

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Punitive Damages)**

</div>

As a separate and independent affirmative defense, Defendants allege that the Complaint and each and every such cause of action contained therein, fails to state facts sufficient to warrant punitive and/or exemplary damages.

la-1365021

4

<div align="center">

ANSWER TO COMPLAINT

</div>

<div align="right">

Exhibit S - Page 342

</div>

EXHIBIT 1
PAGE 48

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

As a separate and independent affirmative defense, Defendants allege that Plaintiff's damages should be reduced by the amount he could have or did earn from other employment.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Offset)

As a separate and independent affirmative defense, Defendants allege that any damages claimed by Plaintiff should be reduced to the extent they are subject to an offset, representing amounts improperly obtained from Defendants or which would constitute unjust enrichment of Plaintiff.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Performance Excused or Prevented)

As a separate and independent affirmative defense, Defendants allege that the Complaint is barred by performance of duties excused or prevented.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (No Adverse Employment Action)

As a separate and independent affirmative defense, Defendants allege that Plaintiff is barred from any recovery on the Complaint because Plaintiff resigned and was not constructively terminated, and the alleged acts about which Plaintiff complains do not constitute adverse employment actions under applicable law.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Good Cause for Adverse Action)

As a separate and independent affirmative defense, Defendants allege even if Plaintiff was subjected to an adverse action (which Defendants deny), Plaintiff is barred from any recovery on the Complaint because any action that Plaintiff contends was an adverse action was taken for good cause.

la-1365021

5

ANSWER TO COMPLAINT

Exhibit S - Page 343

EXHIBIT 1
PAGE 49

# TWENTIETH SEPARATE AND ADDITIONAL DEFENSE

## (Paid All Sums)

The Complaint and the Fifth Cause of Action is barred because Plaintiff has been paid all sums due to him by virtue of his employment.

# TWENTY-FIRST SEPARATE AND ADDITIONAL DEFENSE

## (No Penalty Award)

Plaintiff is not entitled to any penalty award under Labor Code section 203 because at all times relevant and material herein, Defendants acted in good faith and had reasonable grounds for believing they did not violate any wage provisions of the Labor Code or the Industrial Welfare Commission Order promulgated thereunder.

# TWENTY-SECOND AFFIRMATIVE DEFENSE

## (No Unfair or Unlawful Practice)

As a separate and independent affirmative defense, Defendants allege that Plaintiff's Sixth Cause of Action is barred because Defendants have not engaged in any conduct that comes within the meaning of Business & Professions Code section 17200 et seq.

# TWENTY-THIRD AFFIRMATIVE DEFENSE

## (Adequate Legal Remedy)

As a separate and independent affirmative defense, Defendants allege that Plaintiff's Sixth Cause of Action for the purported violation of Business & Professions Code section 17200 et seq., or any cause of action seeking restitution, disgorgement, or any other form of equitable relief, is barred because Plaintiff has an adequate remedy at law, and because any harm he allegedly suffered (Defendants allege there was none) is not irreparable.

# TWENTY-FOURTH AFFIRMATIVE DEFENSE

## (No Fundamental Public Policy)

As a separate and independent affirmative defense, Defendants allege that Plaintiff's Fourth Cause of Action is barred because it is not carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions.

la-1365021                                    6

ANSWER TO COMPLAINT

Exhibit S - Page 344

EXHIBIT 1
PAGE 50

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

As a separate and independent affirmative defense, Defendants allege that Plaintiff would be unjustly enriched, to Defendants' detriment, if Plaintiff were awarded the damages sought under the Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment as follows:

1.      That Plaintiff take nothing by virtue of this action;

2.      That the Court dismiss Plaintiff's Complaint against Defendants with prejudice;

3.      That the Court award Defendants its reasonable expenses and costs, including but not limited to, reasonable attorneys' fees; and

4.      That the Court grant Defendants such other and further relief as the Court deems just and proper.

Dated: November 27, 2017          MORRISON & FOERSTER LLP

By: _____
          MARK R. MCDONALD
          Attorneys for Defendants
          BANC OF CALIFORNIA, INC. AND
          BANC OF CALIFORNIA, N.A.

la-1365021                              7

ANSWER TO COMPLAINT

Exhibit S - Page 345

EXHIBIT 1
PAGE 51

## PROOF OF SERVICE

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 707 Wilshire Boulevard, Los Angeles, California 90017-3543. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on November 27, 2017, I served a copy of:

**DEFENDANTS BANC OF CALIFORNIA, INC. AND BANC OF CALIFORNIA, N.A.'S ANSWER TO PLAINTIFF JEFFREY SEABOLD'S UNVERIFIED COMPLAINT FOR DAMAGES**

☒ **BY U.S. MAIL [Code Civ. Proc sec. 1013(a)]** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 707 Wilshire Boulevard, Los Angeles, California 90017-3543 in accordance with Morrison & Foerster LLP's ordinary business practices. I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited with the United States Postal Service on the same date that it (they) is (are) placed at Morrison & Foerster LLP with postage thereon fully prepaid for collection and mailing.

James R. Asperger
jimasperger@quinnemanuel.com
Kristin Tahler
kristintahler@quinnemanuel.com
Ali Moghaddas
alimoghaddas@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: 213-443
Facsimile: 213-443-3100

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Los Angeles, California, this 27th day of November 2017.

| | |
|---|---|
| Melissa M. Mendoza | _Melissa M. Mendoza_ |
| (typed) | (signature) |

la-1363858

PROOF OF SERVICE

Exhibit S - Page 346

EXHIBIT 1
PAGE 52

**EXHIBIT 2**

1  MARK R. MCDONALD (CA SBN 137001)
   MMcDonald@mofo.com
2  ROBERT B. HUBBELL (CA SBN 100904)
   RHubbell@mofo.com
3  JULIUS J. NAM (CA SBN 288961)
   JNam@mofo.com
4  MORRISON & FOERSTER LLP
   707 Wilshire Blvd., Suite 6000
5  Los Angeles, California  90017-3543
   Telephone:  213.892.5200
6  Facsimile:   213.892.5454

7  Attorneys for Defendant
   BANC OF CALIFORNIA, INC.

8

9                 UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12  IN RE BANC OF CALIFORNIA          SACV 17-00118 AG (DFMx)
    SECURITIES LITIGATION             consolidated with
13                                    SACV 17-00138 AG (DFMx)

14

15                                    **DEFENDANT BANC OF**
                                      **CALIFORNIA'S RESPONSES TO**
16                                    **LEAD PLAINTIFF'S SECOND**
                                      **SET OF REQUESTS FOR**
16                                    **ADMISSIONS**

17

18

19

20  PROPOUNDING PARTY:       LEAD PLANTIFF

21  RESPONDING PARTY:        BANC OF CALIFORNIA, INC.

22  SET NO.:                 TWO

23

24

25

26

27

28

BANC OF CALIFORNIA'S RESPONSES TO REQUESTS FOR ADMISSIONS, SET TWO
la-1394692

EXHIBIT 2
PAGE 53

1    Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure,

2  defendant Banc of California ("Banc") responds to Lead Plaintiff Iron Workers

3  Local No. 25 Pension Fund's ("Plaintiff") Second Set of Requests for Admissions

4  (the "Requests") as follows:

5    **PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

6    Banc makes the following General Objections to Plaintiffs' Requests, which

7  apply to each Request therein regardless of whether a General Objection is

8  specifically incorporated into a response to a particular Request.

9    1.    Banc objects to each Request to the extent it seeks information that is

10  more efficiently and appropriately obtained through some other form of discovery.

11    2.    Banc objects to the Requests to the extent they request information not

12  relevant to a claim or defense in this action or are not reasonably calculated to lead

13  to the discovery of admissible evidence.

14    3.    Nothing in these responses is an admission by Banc of the relevance or

15  admissibility of any information provided in response to these Requests.  Banc

16  reserves all objections and other questions as to competency, relevance, materiality,

17  privilege, or admissibility related to the use of its responses and any document or

18  thing identified in connection with its responses as evidence for any purpose

19  whatsoever in any subsequent proceeding in this trial or any other action.

20    4.    Banc's discovery and investigation in connection with this litigation

21  are continuing.  As a result, Banc's responses are limited to information obtained to

22  date, and are given without prejudice to Banc's right to amend or supplement its

23  responses after considering information obtained through further discovery or

24  investigation.

25    5.    Banc objects to each Request to the extent it seeks information already

26  in Plaintiffs' possession or available to Plaintiffs from public sources for which the

27  burden of obtaining such information is the same or less for Plaintiffs as it is for

28  Banc.

6.      To the extent the Requests may be construed as calling for the
disclosure of information subject to the attorney-client privilege, work product
immunity, joint defense or common interest privilege or any other applicable
protection from discovery, Banc hereby claims such privileges and immunities and
objects to any Requests on such grounds.  Banc does not waive, intentionally or
otherwise, any attorney-client privilege, work product immunity, joint defense or
common interest privilege or any other privilege, immunity, or other protection that
may be asserted to protect any information from disclosure.

7.      Banc objects to each Request to the extent it is overbroad, unduly
burdensome, and not proportional to the needs of the case.

## RESPONSES TO REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 13:**

Admit that Mark R. McDonald, Esq. drafted and signed the McDonald Letter
on behalf of Banc.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Banc incorporates by reference its Preliminary Statement and General
Objections.  Banc objects to this Request on the grounds that it seeks information
that is not relevant to any party's claim or defense, especially given the narrow
scope of what remains of Plaintiff's complaint.  Banc further objects that the term
"draft" is vague and ambiguous.

Subject to the foregoing objections but without waiving them, Banc responds
as follows: admit.

**REQUEST FOR ADMISSION NO. 14:**

Admit that the McDonald Letter was sent to Sugarman on or around January
22, 2017.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Banc incorporates by reference its Preliminary Statement and General
Objections.  Banc objects to this Request on the grounds that it seeks information

3

EXHIBIT 2
PAGE 55

1  that is not relevant to any party's claim or defense, especially given the narrow

2  scope of what remains of Plaintiff's complaint.

3       Subject to the foregoing objections but without waiving them, Banc responds

4  as follows: Banc admits that the letter was sent to Sugarman's counsel, Manuel

5  Abascal, on January 22, 2017.

6  **REQUEST FOR ADMISSION NO. 15:**

7       Admit that Banc reviewed the contents of the McDonald Letter before it was

8  sent to Sugarman.

9  **RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

10      Banc incorporates by reference its Preliminary Statement and General

11  Objections.  Banc objects to this Request on the grounds that it seeks information

12  that is not relevant to any party's claim or defense, especially given the narrow

13  scope of what remains of Plaintiff's complaint.  Banc further objects to this Request

14  on the grounds that it is vague and ambiguous regarding how Banc, an entity, can

15  review a document.

16      Subject to the foregoing objections but without waiving them, Banc responds

17  as follows: Banc admits that one or more directors or officers of Banc were

18  provided the contents of the McDonald Letter before it was sent to Sugarman's

19  counsel, Manuel Abascal.

20  **REQUEST FOR ADMISSION NO. 16:**

21      Admit that, on or around January 11, 2018, the Seabold Answer was filed on

22  behalf of Banc in the *Seabold* Action.

23  **RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

24      Banc incorporates by reference its Preliminary Statement and General

25  Objections.  Banc objects to this Request on the grounds that it seeks information

26  that is not relevant to any party's claim or defense, especially given the narrow

27  scope of what remains of Plaintiff's complaint.

28      Subject to the foregoing objections but without waiving them, Banc responds

4

EXHIBIT 2
PAGE 56

1  as follows: Banc admits that it filed the proposed amended answer as Exhibit A to

2  the declaration of Mark McDonald in the *Seabold* Action on January 11, 2018.

3  **REQUEST FOR ADMISSION NO. 17:**

4      Admit that Banc reviewed the contents of the Seabold Answer before it was

5  filed in the *Seabold* Action.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

7      Banc incorporates by reference its Preliminary Statement and General

8  Objections.  Banc objects to this Request on the grounds that it seeks information

9  that is not relevant to any party's claim or defense, especially given the narrow

10  scope of what remains of Plaintiff's complaint.  Banc further objects to this Request

11  on the grounds that it is vague and ambiguous regarding how an entity can review a

12  document.

13      Subject to the foregoing objections but without waiving them, Banc responds

14  as follows: Banc admits that one or more directors or officers of Banc reviewed the

15  proposed amended answer before it was filed as Exhibit A to the declaration of

16  Mark McDonald in the *Seabold* Action on January 11, 2018.

17  **REQUEST FOR ADMISSION NO. 18:**

18      Admit that Sugarman "was almost solely responsible" for the decision to

19  issue the October Press Release and its contents, BOC_000065373-76 at 74.

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

21      Banc incorporates by reference its Preliminary Statement and General

22  Objections.  Banc objects to this Request on the grounds that it is seeks information

23  that is not relevant to any party's claim or defense, especially given the narrow

24  scope of what remains of Plaintiff's complaint.  Banc further objects that the

25  Request is compound to the extent it seeks an admission of multiple distinct facts.

26      Subject to the foregoing objections but without waiving them, Banc responds

27  as follows: Banc admits that Sugarman was almost solely responsible for the

28  decision to issue the October 18, 2018 press release and for its contents.

<div align="center">5</div>

BANC OF CALIFORNIA'S RESPONSES TO REQUESTS FOR ADMISSIONS, SET TWO
la-1394692

EXHIBIT 2
PAGE 57

1 | **REQUEST FOR ADMISSION NO. 19:**

2 |      Admit that Banc possesses documents and/or communications demonstrating

3 | that Sugarman "was almost solely responsible" for the decision to issue the October

4 | Press Release and its contents. *Id*.

5 | **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

6 |      Banc incorporates by reference its Preliminary Statement and General

7 | Objections.  Banc objects to this Request on the grounds that it seeks information

8 | that is not relevant to any party's claim or defense, especially given the narrow

9 | scope of what remains of Plaintiff's complaint.  Banc further objects that the

10 | Request is compound to the extent it seeks an admission of multiple distinct facts.

11 | Banc further objects that the concept of possessing a communication is vague and

12 | ambiguous.  Banc further objects that this Request calls for a legal conclusion.

13 |      Subject to the foregoing objections but without waiving them, Banc responds

14 | as follows: Banc admits that there are documents and witnesses with knowledge

15 | relevant to whether Sugarman was almost solely responsible for the decision to

16 | issue the October 18, 2016 press release and for its contents.

17 | **REQUEST FOR ADMISSION NO. 20:**

18 |      Admit that the October Press Release "contained several inaccurate

19 | statements." *Id*.

20 | **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

21 |      Banc incorporates by reference its Preliminary Statement and General

22 | Objections.  Banc objects to this Request on the grounds that it seeks information

23 | that is not relevant to any party's claim or defense, especially given the narrow

24 | scope of what remains of Plaintiff's complaint.

25 |      Subject to the foregoing objections but without waiving them, Banc responds

26 | as follows: Banc admits that the October 18, 2016 press release contained several

27 | inaccurate statements that were not material.

28 |

<div align="center">6</div>

EXHIBIT 2
PAGE 58

1   **REQUEST FOR ADMISSION NO. 21:**

2      Admit that the investigation conducted by Winston & Strawn "was not

3   initiated by the Board of Directors or any subset of the Board" but rather it was

4   "directed" by Sugarman. *Id.*

5   **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

6      Banc incorporates by reference its Preliminary Statement and General

7   Objections. Banc objects to this Request on the grounds that it seeks information

8   that is not relevant to any party's claim or defense, especially given the narrow

9   scope of what remains of Plaintiff's complaint. Banc further objects that the

10   Request is compound to the extent it seeks an admission of multiple distinct facts.

11      Subject to the foregoing objections but without waiving them, Banc responds

12   as follows: Banc admits that the Winston & Strawn investigation was not initiated

13   by the Board of Directors or any subset of the Board; rather, it was directed by Mr.

14   Sugarman.

15   **REQUEST FOR ADMISSION NO. 22:**

16      Admit that Banc possesses documents and/or communications demonstrating

17   that the investigation conducted by Winston & Strawn "was not initiated by the

18   Board of Directors or any subset of the Board" but rather it was "directed" by

19   Sugarman. *Id.*

20   **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

21      Banc incorporates by reference its Preliminary Statement and General

22   Objections. Banc objects to this Request on the grounds that it seeks information

23   that is not relevant to any party's claim or defense, especially given the narrow

24   scope of what remains of Plaintiff's complaint. Banc further objects that the

25   concept of possessing a communication is vague and ambiguous. Banc further

26   objects that the Request is compound to the extent it seeks an admission of multiple

27   distinct facts. Banc further objects that this Request calls for a legal conclusion.

28      Subject to the foregoing objections but without waiving them, Banc responds

7

EXHIBIT 2
PAGE 59

1    as follows: Banc admits that there are documents and witnesses with knowledge

2    relevant to whether the Winston & Strawn investigation was initiated by the Board

3    of Directors or any subset thereof, and whether it was directed by Mr. Sugarman.

4    **REQUEST FOR ADMISSION NO. 23:**

5        Admit that the October Press Release "overstated both the degree to which

6    the Company had been in contact with regulatory agencies" about the subject

7    matter referenced in the Article "as well as the involvement of the directors in

8    oversight or direction of the inquiry." _Id_.

9    **RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

10       Banc incorporates by reference its Preliminary Statement and General

11    Objections.  Banc objects to this Request on the grounds that it seeks information

12    that is not relevant to any party's claim or defense, especially given the narrow

13    scope of what remains of Plaintiff's complaint.  Banc further objects that the

14    Request is compound to the extent it seeks an admission of multiple distinct facts.

15       Subject to the foregoing objections but without waiving them, Banc responds

16    as follows: Banc admits that the October 18, 2016 press release overstated both the

17    degree to which the Company had been in contact with regulatory agencies about

18    the subject matter referenced in the blog post as well as the involvement of the

19    directors in oversight or direction of the inquiry.

20    **REQUEST FOR ADMISSION NO. 24:**

21        Admit that Sugarman knew that the October Press Release contained

22    inaccurate statements.

23    **RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

24       Banc incorporates by reference its Preliminary Statement and General

25    Objections.  Banc objects to this Request on the grounds that it seeks information

26    that is not relevant to any party's claim or defense, especially given the narrow

27    scope of what remains of Plaintiff's complaint.  Banc further objects to this Request

28    on the ground that it seeks information that is outside Banc's custody or control.

<div align="center">8</div>

EXHIBIT 2
PAGE 60

1    Subject to the foregoing objections but without waiving them, Banc responds

2  as follows: Banc admits that it believes that Sugarman knew the October 18, 2016

3  press release contained inaccurate statements.

4  **REQUEST FOR ADMISSION NO. 25:**

5    Admit that Banc possesses documents and/or communications demonstrating

6  that Sugarman knew that the October Press Release contained inaccurate

7  statements.

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

9    Banc incorporates by reference its Preliminary Statement and General

10  Objections.  Banc objects to this Request on the grounds that it seeks information

11  that is not relevant to any party's claim or defense, especially given the narrow

12  scope of what remains of Plaintiff's complaint.  Banc further objects that the

13  concept of possessing a communication is vague and ambiguous.  Banc further

14  objects that this Request calls for a legal conclusion.

15    Subject to the foregoing objections but without waiving them, Banc responds

16  as follows: Banc admits that there are documents and witnesses with knowledge

17  relevant to whether Sugarman knew that certain statements in the October 18, 2016

18  press release were false.

19  **REQUEST FOR ADMISSION NO. 26:**

20    Admit that Sugarman ordered the issuance of the October Press Release.

21  **RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

22    Banc incorporates by reference its Preliminary Statement and General

23  Objections.  Banc objects to this Request on the grounds that it is overbroad and

24  seeks information that is not relevant to any party's claim or defense, especially

25  given the narrow scope of what remains of Plaintiff's complaint.

26    Subject to the foregoing objections but without waiving them, Banc responds

27  as follows: Banc admits that Sugarman ordered the issuance of the October 18,

28  2016 press release.

9

1    **REQUEST FOR ADMISSION NO. 27:**

2         Admit that Banc possesses documents and/or communications demonstrating

3    that Sugarman ordered the issuance of the October Press Release.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

5         Banc incorporates by reference its Preliminary Statement and General

6    Objections.  Banc objects to this Request on the grounds that it is overbroad and

7    seeks information that is not relevant to any party's claim or defense, especially

8    given the narrow scope of what remains of Plaintiff's complaint.  Banc further

9    objects that the concept of possessing a communication is vague and ambiguous.

10   Banc further objects that this Request calls for a legal conclusion.

11        Subject to the foregoing objections but without waiving them, Banc responds

12   as follows: Banc admits that there are documents and witnesses with knowledge

13   relevant to whether Sugarman ordered the issuance of the October 18, 2016 press

14   release.

15   **REQUEST FOR ADMISSION NO. 28:**

16        Admit that Sugarman "improperly resisted and attempted to prevent the

17   formation of a Special Committee and, once the Special Committee was formed, he

18   interfered with and delayed the Special Committee's investigation." *Id.*

19   **RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

20        Banc incorporates by reference its Preliminary Statement and General

21   Objections.  Banc objects to this Request on the grounds that it is overbroad and

22   seeks information that is not relevant to any party's claim or defense, especially

23   given the narrow scope of what remains of Plaintiff's complaint.  Banc further

24   objects that the Request is compound to the extent it seeks an admission of multiple

25   distinct facts.

26        Subject to the foregoing objections but without waiving them, Banc responds

27   as follows: Banc admits that Sugarman improperly resisted and attempted to

28   prevent the formation of a Special Committee and, once the Special Committee was

                                          10

1    formed, he interfered with and delayed the Special Committee's investigation.

2    **REQUEST FOR ADMISSION NO. 29:**

3         Admit that Banc possesses documents and/or communications demonstrating

4    that Sugarman "improperly resisted and attempted to prevent the formation of a

5    Special Committee and, once the Special Committee was formed, he interfered with

6    and delayed the Special Committee's investigation." _Id_.

7    **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

8         Banc incorporates by reference its Preliminary Statement and General

9    Objections.  Banc objects to this Request on the grounds that it is overbroad and

10   seeks information that is not relevant to any party's claim or defense, especially

11   given the narrow scope of what remains of Plaintiff's complaint.  Banc further

12   objects that the Request is compound to the extent it seeks an admission of multiple

13   distinct facts.  Banc further objects that this Request calls for a legal conclusion.

14        Subject to the foregoing objections but without waiving them, Banc responds

15   as follows: Banc admits that there are documents and witnesses with knowledge

16   relevant to whether Sugarman improperly resisted and attempted to prevent the

17   formation of a Special Committee and, once the Special Committee was formed,

18   interfered with and delayed the Special Committee's investigation.

19   **REQUEST FOR ADMISSION NO. 30:**

20        Admit that Sugarman "provided inaccurate information to the Special

21   Committee." BOC_000065373-76 at 74-75.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

23        Banc incorporates by reference its Preliminary Statement and General

24   Objections.  Banc objects to this Request on the grounds that it is overbroad and

25   seeks information that is not relevant to any party's claim or defense, especially

26   given the narrow scope of what remains of Plaintiff's complaint.

27        Subject to the foregoing objections but without waiving them, Banc responds

28   as follows: Banc admits that Sugarman provided inaccurate information to the

EXHIBIT 2
PAGE 63

1   Special Committee.

2   **REQUEST FOR ADMISSION NO. 31:**

3       Admit that Banc possesses documents and/or communications demonstrating

4   that Sugarman "provided inaccurate information to the Special Committee." *Id.*

5   **RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

6       Banc incorporates by reference its Preliminary Statement and General

7   Objections.  Banc objects to this Request on the grounds that it is overbroad and

8   seeks information that is not relevant to any party's claim or defense, especially

9   given the narrow scope of what remains of Plaintiff's complaint.  Banc further

10   objects that the concept of possessing a communication is vague and ambiguous.

11   Banc further objects that this Request calls for a legal conclusion.

12       Subject to the foregoing objections but without waiving them, Banc responds

13   as follows: Banc admits that there are documents and witnesses with knowledge

14   relevant to whether Sugarman provided inaccurate information to the Special

15   Committee.

16   **REQUEST FOR ADMISSION NO. 32:**

17       Admit that Sugarman "raised – before later abandoning – a number of

18   baseless objections to his turning over to the Special Committee his Bank issued

19   devises, which delayed the Committee's review of those devices by weeks."

20   BOC_000065373-76 at 75.

21   **RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

22       Banc incorporates by reference its Preliminary Statement and General

23   Objections.  Banc objects to this Request on the grounds that it is overbroad and

24   seeks information that is not relevant to any party's claim or defense, especially

25   given the narrow scope of what remains of Plaintiff's complaint.  Banc further

26   objects that the Request is compound to the extent it seeks an admission of multiple

27   distinct facts.

28       Subject to the foregoing objections but without waiving them, Banc responds

<center>12</center>

EXHIBIT 2
PAGE 64

1    as follows: Banc admits that Sugarman raised – before later abandoning – a number

2    of baseless objections to his turning over to the Special Committee his Bank issued

3    devices, which delayed the Committee's review of those devices by weeks.

4    **REQUEST FOR ADMISSION NO. 33:**

5       Admit that Banc possesses documents and/or communications demonstrating

6    that Sugarman "raised – before later abandoning – a number of baseless objections

7    to his turning over to the Special Committee his Bank issued devises, which

8    delayed the Committee's review of those devices by weeks." *Id.*

9    **RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

10      Banc incorporates by reference its Preliminary Statement and General

11    Objections.  Banc objects to this Request on the grounds that it is overbroad and

12    seeks information that is not relevant to any party's claim or defense, especially

13    given the narrow scope of what remains of Plaintiff's complaint.  Banc further

14    objects that the concept of possessing a communication is vague and ambiguous.

15    Banc further objects that the Request is compound to the extent it seeks an

16    admission of multiple distinct facts.

17      Subject to the foregoing objections but without waiving them, Banc responds

18    as follows: Banc admits that there are documents and witnesses with knowledge

19    relevant to whether Sugarman raised – before later abandoning – a number of

20    baseless objections to his turning over to the Special Committee his Bank issued

21    devices and whether that delayed the Committee's review of those devices by

22    weeks.

23    **REQUEST FOR ADMISSION NO. 34:**

24      Admit that Sugarman "was responsible for the positions taken" by Sanford

25    Michelman "who took a number of adversarial positions, purportedly on behalf of

26    the Bank, in response to the Special Committee's requests for documents from the

27    Bank." *Id.*

28

13

BANC OF CALIFORNIA'S RESPONSES TO REQUESTS FOR ADMISSIONS, SET TWO
la-1394692

EXHIBIT 2
PAGE 65

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Banc incorporates by reference its Preliminary Statement and General Objections. Banc objects to this Request on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense, especially given the narrow scope of what remains of Plaintiff's complaint. Banc further objects that the Request is compound to the extent it seeks an admission of multiple distinct facts.

Subject to the foregoing objections but without waiving them, Banc responds as follows: Banc admits that it concluded that Sugarman was responsible for the positions taken by Sanford Michelman, an attorney with Michelman & Robinson, who took a number of adversarial positions, purportedly on behalf of the Bank, in response to the Special Committee's requests for documents from the Bank.

**REQUEST FOR ADMISSION NO. 35:**

Admit that Banc possesses documents and/or communications demonstrating that Sugarman "was responsible for the positions taken by" Sanford Michelman "who took a number of adversarial positions, purportedly on behalf of the Bank, in response to the Special Committee's requests for documents from the Bank." *Id.*

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Banc incorporates by reference its Preliminary Statement and General Objections. Banc objects to this Request on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense, especially given the narrow scope of what remains of Plaintiff's complaint. Banc further objects that the concept of possessing a communication is vague and ambiguous. Banc further objects that the Request is compound to the extent it seeks an admission of multiple distinct facts. Banc further objects that this Request calls for a legal conclusion.

Subject to the foregoing objections but without waiving them, Banc responds as follows: Banc admits that there are documents and witnesses with knowledge

14

EXHIBIT 2
PAGE 66

1   relevant to whether Sugarman was responsible for the positions taken by Sanford

2   Michelman.

3   **REQUEST FOR ADMISSION NO. 36:**

4        Admit that Sugarman "caused a long delay in the production of materials

5   requested by the Special Committee" that Sugarman "claimed were in the sole

6   possession, custody and control of the COR entities." *Id.*

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

8        Banc incorporates by reference its Preliminary Statement and General

9   Objections.  Banc objects to this Request on the grounds that it is overbroad and

10  seeks information that is not relevant to any party's claim or defense, especially

11  given the narrow scope of what remains of Plaintiff's complaint.  Banc further

12  objects that the Request is compound to the extent it seeks an admission of multiple

13  distinct facts.

14       Subject to the foregoing objections but without waiving them, Banc responds

15  as follows: Banc admits that Sugarman caused a long delay in the production of

16  materials requested by the Special Committee that Sugarman claimed were in the

17  sole possession, custody and control of the COR entities.

18  **REQUEST FOR ADMISSION NO. 37:**

19       Admit that Banc possesses documents and/or communications demonstrating

20  that Sugarman "caused a long delay in the production of materials requested by the

21  Special Committee" that Sugarman "claimed were in the sole possession, custody

22  and control of the COR entities." *Id.*

23  **RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

24       Banc incorporates by reference its Preliminary Statement and General

25  Objections.  Banc objects to this Request on the grounds that it is overbroad and

26  seeks information that is not relevant to any party's claim or defense, especially

27  given the narrow scope of what remains of Plaintiff's complaint.  Banc further

28  objects that the concept of possessing a communication is vague and ambiguous.

15

EXHIBIT 2
PAGE 67

1   Banc further objects that the Request is compound to the extent it seeks an

2   admission of multiple distinct facts.  Banc further objects that this Request calls for

3   a legal conclusion.

4        Subject to the foregoing objections but without waiving them, Banc responds

5   as follows: Banc admits that there are documents and witnesses with knowledge

6   relevant to whether Sugarman caused a long delay in the production of materials

7   requested by the Special Committee that Sugarman claimed were in the sole

8   possession, custody and control of the COR entities.

9   **REQUEST FOR ADMISSION NO. 38:**

10       Admit that Sugarman "facilitated Winston & Strawn's access to documents

11  at COR" and "provided no such assistance when the Special Committee sought

12  access to documents." *Id*.

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

14       Banc incorporates by reference its Preliminary Statement and General

15  Objections.  Banc objects to this Request on the grounds that it is overbroad and

16  seeks information that is not relevant to any party's claim or defense, especially

17  given the narrow scope of what remains of Plaintiff's complaint.  Banc further

18  objects that the Request is compound to the extent it seeks an admission of multiple

19  distinct facts.

20       Subject to the foregoing objections but without waiving them, Banc responds

21  as follows: Banc admits that Sugarman facilitated Winston & Strawn's access to

22  documents at COR and provided no such assistance when the Special Committee

23  sought access to documents.

24  **REQUEST FOR ADMISSION NO. 39:**

25       Admit that Banc possesses documents and/or communications demonstrating

26  that Sugarman "facilitated Winston & Strawn's access to documents at COR" and

27  "provided no such assistance when the Special Committee sought access to

28  documents." *Id*.

16

BANC OF CALIFORNIA'S RESPONSES TO REQUESTS FOR ADMISSIONS, SET TWO
la-1394692

EXHIBIT 2
PAGE 68

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

2      Banc incorporates by reference its Preliminary Statement and General

3  Objections.  Banc objects to this Request on the grounds that it is overbroad and

4  seeks information that is not relevant to any party's claim or defense, especially

5  given the narrow scope of what remains of Plaintiff's complaint.  Banc further

6  objects that the Request is compound to the extent it seeks an admission of multiple

7  distinct facts.  Banc further objects that this Request calls for a legal conclusion.

8      Subject to the foregoing objections but without waiving them, Banc responds

9  as follows: Banc admits that there are documents and witnesses with knowledge

10  relevant to whether Sugarman facilitated Winston & Strawn's access to documents

11  at COR and provided no such assistance when the Special Committee sought access

12  to documents.

13  **REQUEST FOR ADMISSION NO. 40:**

14      Admit that, as of the date of the McDonald Letter, Banc concluded that

15  Sugarman "was responsible for, or at least involved in, the decision to have outside

16  counsel for COR object for weeks to production of documents, before finally

17  agreeing to allow access to the documents." _Id_.

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

19      Banc incorporates by reference its Preliminary Statement and General

20  Objections.  Banc objects to this Request on the grounds that it is overbroad and

21  seeks information that is not relevant to any party's claim or defense, especially

22  given the narrow scope of what remains of Plaintiff's complaint.  Banc further

23  objects that the Request is compound to the extent it seeks an admission of multiple

24  distinct facts.

25      Subject to the foregoing objections but without waiving them, Banc responds

26  as follows: Banc admits that as of the date of the McDonald Letter, Banc had

27  concluded that Sugarman was responsible for, or at least involved in, the decision

28  to have outside counsel for COR object for weeks to production of documents,

17

EXHIBIT 2
PAGE 69

1   before finally agreeing to allow access to the documents.

2   **REQUEST FOR ADMISSION NO. 41:**

3      Admit that Banc possesses documents and/or communications demonstrating

4   that, as of the date of the McDonald Letter, Banc concluded that Sugarman "was

5   responsible for, or at least involved in, the decision to have outside counsel for

6   COR object for weeks to production of documents, before finally agreeing to allow

7   access to the documents." *Id*.

8   **RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

9      Banc incorporates by reference its Preliminary Statement and General

10  Objections.  Banc objects to this Request on the grounds that it is overbroad and

11  seeks information that is not relevant to any party's claim or defense, especially

12  given the narrow scope of what remains of Plaintiff's complaint.  Banc further

13  objects that the concept of possessing a communication is vague and ambiguous.

14  Banc further objects that the Request is compound to the extent it seeks an

15  admission of multiple distinct facts.  Banc further objects that this Request calls for

16  a legal conclusion.

17      Subject to the foregoing objections but without waiving them, Banc responds

18  as follows: Banc admits that there are documents and witnesses with knowledge

19  relevant to whether, as of the date of the McDonald Letter, Banc concluded that

20  Sugarman was responsible for, or at least involved in, the decision to have outside

21  counsel for COR object for weeks to production of documents, before finally

22  agreeing to allow access to the documents.

23  **REQUEST FOR ADMISSION NO. 42:**

24      Admit that "Sugarman took actions that delayed completion for the Special

25  Committee's investigation." *Id*.

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

27      Banc incorporates by reference its Preliminary Statement and General

28  Objections.  Banc objects to this Request on the grounds that it is overbroad and

<div align="center">18</div>

EXHIBIT 2
PAGE 70

1  seeks information that is not relevant to any party's claim or defense, especially

2  given the narrow scope of what remains of Plaintiff's complaint.

3       Subject to the foregoing objections but without waiving them, Banc responds

4  as follows: Banc admits that Sugarman took actions that delayed completion for the

5  Special Committee's investigation.

6  **REQUEST FOR ADMISSION NO. 43:**

7       Admit that Banc possesses documents and/or communications demonstrating

8  that "Sugarman took actions that delayed completion for the Special Committee's

9  investigation." _Id_.

10 **RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

11      Banc incorporates by reference its Preliminary Statement and General

12 Objections.  Banc objects to this Request on the grounds that it is overbroad and

13 seeks information that is not relevant to any party's claim or defense, especially

14 given the narrow scope of what remains of Plaintiff's complaint.  Banc further

15 objects that the concept of possessing a communication is vague and ambiguous.

16 Banc further objects that this Request calls for a legal conclusion.

17      Subject to the foregoing objections but without waiving them, Banc responds

18 as follows: Banc admits that there are documents and witnesses with knowledge

19 relevant to whether Sugarman took actions that delayed completion for the Special

20 Committee's investigation.

21 **REQUEST FOR ADMISSION NO. 44:**

22      Admit that Sugarman "interfered with directors having direct communication

23 with officers of the Company and Bank specifically contrary to the Company's

24 Corporate Governance Guidelines, and indicated to officers that it could be a

25 violation of law if there were direct communication between directors and officers."

26 BOC_000065373-76 at 75-76.

27 **RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

28      Banc incorporates by reference its Preliminary Statement and General

<div align="center">19</div>

---

BANC OF CALIFORNIA'S RESPONSES TO REQUESTS FOR ADMISSIONS, SET TWO
la-1394692

EXHIBIT 2
PAGE 71

1    Objections.  Banc objects to this Request on the grounds that it is overbroad and

2    seeks information that is not relevant to any party's claim or defense, especially

3    given the narrow scope of what remains of Plaintiff's complaint.  Banc further

4    objects that the Request is compound to the extent it seeks an admission of multiple

5    distinct facts.

6        Subject to the foregoing objections but without waiving them, Banc responds

7    as follows: Banc admits that Sugarman interfered with directors having direct

8    communication with officers of the Company and Bank specifically contrary to the

9    Company's Corporate Governance Guidelines, and indicated to officers that it

10    could be a violation of law if there were direct communication between directors

11    and officers.

12    **REQUEST FOR ADMISSION NO. 45:**

13        Admit that Banc possesses documents and/or communications demonstrating

14    that Sugarman "interfered with directors having direct communication with officers

15    of the Company and Bank specifically contrary to the Company's Corporate

16    Governance Guidelines, and indicated to officers that it could be a violation of law

17    if there were direct communication between directors and officers." *Id*.

18    **RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

19        Banc incorporates by reference its Preliminary Statement and General

20    Objections.  Banc objects to this Request on the grounds that it is overbroad and

21    seeks information that is not relevant to any party's claim or defense, especially

22    given the narrow scope of what remains of Plaintiff's complaint.  Banc further

23    objects that the concept of possessing a communication is vague and ambiguous.

24    Banc further objects that the Request is compound to the extent it seeks an

25    admission of multiple distinct facts.  Banc further objects that this Request calls for

26    a legal conclusion.

27        Subject to the foregoing objections but without waiving them, Banc responds

28    as follows: Banc admits that there are documents and witnesses with knowledge

<div align="center">20</div>

EXHIBIT 2
PAGE 72

1  relevant to whether Sugarman interfered with directors having direct
2  communication with officers of the Company and Bank specifically contrary to the
3  Company's Corporate Governance Guidelines, and indicated to officers that it
4  could be a violation of law if there were direct communication between directors
5  and officers.

6  **REQUEST FOR ADMISSION NO. 46:**

7      Admit that, as of the date of the McDonald Letter, there were "numerous
8  witnesses who would provide testimony and evidence supporting a for Cause
9  termination" of Sugarman.  BOC_000065373-76 at 76.

10  **RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

11      Banc incorporates by reference its Preliminary Statement and General
12  Objections.  Banc objects to this Request on the grounds that it is overbroad and
13  seeks information that is not relevant to any party's claim or defense, especially
14  given the narrow scope of what remains of Plaintiff's complaint.

15      Subject to the foregoing objections but without waiving them, Banc responds
16  as follows: Banc admits that as of January 22, 2017, there would have been
17  numerous witnesses who would provide testimony and evidence supporting a for
18  Cause termination.

19  **REQUEST FOR ADMISSION NO. 47:**

20      Admit that Banc possesses documents and/or communications demonstrating
21  that, as of the date of the McDonald Letter, there were "numerous witnesses who
22  would provide testimony and evidence supporting a for Cause termination" of
23  Sugarman. *Id.*

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

25      Banc incorporates by reference its Preliminary Statement and General
26  Objections.  Banc objects to this Request on the grounds that it is overbroad and
27  seeks information that is not relevant to any party's claim or defense, especially
28  given the narrow scope of what remains of Plaintiff's complaint.  Banc further

21

BANC OF CALIFORNIA'S RESPONSES TO REQUESTS FOR ADMISSIONS, SET TWO
la-1394692

EXHIBIT 2
PAGE 73

1  objects that the concept of possessing a communication is vague and ambiguous.

2  Banc further objects that this Request calls for a legal conclusion.

3       Subject to the foregoing objections but without waiving them, Banc responds

4  as follows: Banc admits that there are documents and witnesses with knowledge

5  relevant to whether, as of the date of the McDonald Letter, there were "numerous

6  witnesses who would provide testimony and evidence supporting a for Cause

7  termination" of Sugarman.

8  **REQUEST FOR ADMISSION NO. 48:**

9       Admit that prior to October 18, 2016, Banc never mentioned and/or

10  referenced Galanis in a published press release or publicly filed document.

11  **RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

12       Banc incorporates by reference its Preliminary Statement and General

13  Objections.  Banc objects to this Request on the grounds that it is overbroad and

14  seeks information that is not relevant to any party's claim or defense, especially

15  given the narrow scope of what remains of Plaintiff's complaint.

16       Subject to the foregoing objections but without waiving them, Banc responds

17  as follows: admit.

18

19

20  Dated:  October 11, 2018        MORRISON & FOERSTER LLP

21

22                             */s/Mark R. McDonald*

23                            MARK R. MCDONALD

24                        Attorneys for Defendant

25                        BANC OF CALIFORNIA, INC.

26

27

28

EXHIBIT 2
PAGE 74

1                             **PROOF OF SERVICE**

2       I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 707 Wilshire Boulevard, Los Angeles, California 90017-3543. I

3 am not a party to the within cause, and I am over the age of eighteen years.

4       I further declare that on October 11, 2018, I served a copy of:

5                **DEFENDANT BANC OF CALIFORNIA'S**
               **RESPONSES TO LEAD PLAINTIFF'S SECOND**
6                **SET OF REQUESTS FOR ADMISSIONS**

7   ☒   **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6; CRC**

8       **2.251]** by electronically mailing a true and correct copy through

      Morrison & Foerster LLP's electronic mail system to the email
9
      address(es) set forth below, or as stated on the attached service list.
10

11

12     Laurie L. Largent                Manny A. Abascal
    Matthew I. Alpert              LATHAM & WATKINS LLP
13     ROBBINS GELLER RUDMAN     355 South Grand Avenue, Suite
        & DOWD LLP             100
14     655 West Broadway, Suite 1900   Los Angeles, CA 90071-1560
    San Diego, CA 92101           Manny.Abascal@lw.com
15     Telephone: 619/231-1058      Kristen.Tuey@lw.com
    Facsimile: 619/231-7423       brian.glennon@lw.com
16     LLargent@rgrdlaw.com        john.eastly@lw.com
    MAlpert@rgrdlaw.com
17     EOliver@rgrdlaw.com
    NHorstman@rgdlaw.com        *Attorneys for Defendant*
18                                    *Steven A. Sugarman*

    *Lead Counsel for Plaintiff*
19

20       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

21       Executed at Los Angeles, California, this 11th day of October, 2018.

22

23

24

25       Janis Price                          *Janis Price*
       (typed)                            (signature)
26

27

28

BANC OF CALIFORNIA'S RESPONSES TO REQUESTS FOR ADMISSIONS, SET TWO
la-1394692

EXHIBIT 2
PAGE 75

**EXHIBIT 3**

1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  SPENCER A. BURKHOLZ (147029)
   LAURIE L. LARGENT (153493)
3  ROBERT R. HENSSLER JR. (216165)
   MATTHEW I. ALPERT (238024)
4  ERIKA OLIVER (306614)
   655 West Broadway, Suite 1900
5  San Diego, CA  92101
   Telephone:  619/231-1058
6  619/231-7423 (fax)
   spenceb@rgrdlaw.com
7  llargent@rgrdlaw.com
   bhenssler@rgrdlaw.com
8  malpert@rgrdlaw.com
   eoliver@rgrdlaw.com
9
   Lead Counsel for Plaintiff
10
                    UNITED STATES DISTRICT COURT
11
                  CENTRAL DISTRICT OF CALIFORNIA
12
                        SOUTHERN DIVISION
13
   In re BANC OF CALIFORNIA          )  No. SACV 17-00118 AG (DFMx)
14  SECURITIES LITIGATION            )  consolidated with
                                     )  SACV 17-00138 AG (DFMx)
15  _____  )
                                     )
16  This Document Relates To:        )  CLASS ACTION
                                     )
17      ALL ACTIONS.                 )  LEAD PLAINTIFF IRON WORKERS
                                     )  LOCAL NO. 25 PENSION FUND'S
18  _____  )  AMENDED RESPONSES TO
                                        DEFENDANT STEVEN A.
19                                      SUGARMAN'S FIRST SET OF
                                        REQUESTS FOR ADMISSION TO
20                                      LEAD PLAINTIFF NUMBERS 13-14,
                                        16 AND 23
21

22

23

24

25

26

27

28

EXHIBIT 3
PAGE 76

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Central District of California (the "Local Civil Rules"), Lead Plaintiff Iron Workers Local No. 25 Pension Fund ("Lead Plaintiff" or "Iron Workers"), by and through its counsel of record, hereby submits its amended responses and objections to Defendant Steven A. Sugarman's ("Sugarman") First Set of Requests for Admission to Lead Plaintiff Numbers 13-14, 16 and 23 dated December 14, 2018 ("Requests") as follows:

## I.   GENERAL OBJECTIONS

1.      Plaintiff incorporates by reference the General Objections as set forth in its initial response to the Requests.

2.      Plaintiff reserves its rights to supplement its Objections and Responses based on depositions that have not yet occurred or to the extent Sugarman interprets the scope of any Request to be different from that which Plaintiff has set forth herein.

## II.   SPECIFIC OBJECTIONS AND RESPONSES

REQUEST FOR ADMISSION NO. 13:

Admit that there were no ties between GALANIS and MR. SUGARMAN at the time of the alleged omission from MR. SUGARMAN'S biography in the April 2016 Proxy Statement.

RESPONSE TO REQUEST FOR ADMISSION NO. 13:

Plaintiff incorporates each and every General Objection and Objections made to Request No. 13 as set forth in its initial response to the Requests.  Plaintiff objects to the term "ties" as undefined and subject to multiple interpretations.

Subject to and without waiving the foregoing objections, and based on its understanding of this Request, Plaintiff responds as follows: Denied.

REQUEST FOR ADMISSION NO. 14:

Admit that the GOVERNANCE COMMITTEE was responsible for ensuring the Director Nominations section of the April 2016 Proxy Statement provided all appropriate disclosures.

- 1 -

EXHIBIT 3
PAGE 77

RESPONSE TO REQUEST FOR ADMISSION NO. 14:

Plaintiff incorporates each and every General Objection and Objections made to Request No. 14 as set forth in its initial response to the Requests. Plaintiff objects to the phrase "responsible for ensuring" as undefined and subject to multiple interpretations.

Subject to and without waiver of the foregoing objections, and based on its understanding of this Request, Plaintiff responds as follows: Plaintiff made reasonable inquiry and the information known or readily obtainable is insufficient to enable Plaintiff to admit or deny this request and, on that basis, Plaintiff denies this Request.

REQUEST FOR ADMISSION NO. 16:

Admit that MR. SUGARMAN abstained from the BANC Board vote regarding approval of the sections of the April 2016 Proxy Statement relating to his nomination.

RESPONSE TO REQUEST FOR ADMISSION NO. 16:

Plaintiff incorporates each and every General Objection and Objections made to Request No. 16 as set forth in its initial response to the Requests. Plaintiff objects to the phrase "BANC Board vote" as undefined and subject to multiple interpretations.

Subject to and without waiving the foregoing objections, and based on its understanding of this Request, Plaintiff responds as follows: Denied.

REQUEST FOR ADMISSION NO. 23:

Admit that John Grosvenor had a conflict of interest with respect to the subject matters being investigated by the SPECIAL COMMITTEE.

RESPONSE TO REQUEST FOR ADMISSION NO. 23:

Plaintiff incorporates each and every General Objection and Objections made to Request No. 23 as set forth in its initial response to the Requests. Plaintiff objects to the phrases "conflict of interest" and "matters being investigated" as undefined and subject to multiple interpretations.

Subject to and without waiver of the foregoing objections, and based on its understanding of this Request, Plaintiff responds as follows: Plaintiff made reasonable

- 2 -

EXHIBIT 3
PAGE 78

1  inquiry and the information known or readily obtainable is insufficient to enable

2  Plaintiff to admit or deny this request and, on that basis, Plaintiff denies this Request.

3  DATED:  February 22, 2019

ROBBINS GELLER RUDMAN
& DOWD LLP
SPENCER A. BURKHOLZ
LAURIE L. LARGENT
ROBERT R. HENSSLER JR.
MATTHEW I. ALPERT
ERIKA OLIVER

MATTHEW I. ALPERT

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

- 3 -

EXHIBIT 3
PAGE 79

1

## **DECLARATION OF SERVICE BY EMAIL**

2

3

I, CAROLINE ROSINI, not a party to the within action, hereby declare that on

4

February 22, 2019, I served the attached LEAD PLAINTIFF IRON WORKERS

5

LOCAL NO. 25 PENSION FUND'S AMENDED RESPONSES TO DEFENDANT

6

STEVEN A. SUGARMAN'S FIRST SET OF REQUESTS FOR ADMISSION TO

7

LEAD PLAINTIFF NUMBERS 13-14, 16 and 23 on the parties in the within action

8

by email addressed as follows:

9

## **COUNSEL FOR PLAINTIFFS:**

10

| NAME | EMAIL | PARTY NAME |
|------|-------|------------|
| Spencer A. Burkholz<br>Laurie L. Largent<br>Robert R. Henssler Jr.<br>Matthew I. Alpert<br>Erika Oliver<br>ROBBINS GELLER<br> RUDMAN & DOWD LLP<br>655 West Broadway<br>Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br>Facsimile:  (619) 231-7423 | spenceb@rgrdlaw.com<br>llargent@rgrdlaw.com<br>bhenssler@rgrdlaw.com<br>malpert@rgrdlaw.com<br>eoliver@rgrdlaw.com | Iron Workers Local<br>No. 25 Pension Fund |

11

12

13

14

15

16

17

18

## **COUNSEL FOR DEFENDANTS:**

19

| NAME | EMAIL | PARTY NAME |
|------|-------|------------|
| Mark R. McDonald<br>Robert B. Hubbell<br>Ashleigh K. Landis<br>Jennifer L. Zheng<br>Alexandra M. Ward<br>Stephanie Lenkey<br>Tina Hinson<br>MORRISON & FOERSTER,<br>LLP<br>707 Wilshire Boulevard<br>Suite 6000<br>Los Angeles, CA 90017-3543<br>Telephone: (213) 892-5200<br>Facsimile:  (213) 892-5454 | mmcdonald@mofo.com<br>rhubbell@mofo.com<br>alandis@mofo.com<br>jzheng@mofo.com<br>alexandraward@mofo.com<br>slenkey@mofo.com<br>Thinson@mofo.com | Banc of California,<br>Inc. |

20

21

22

23

24

25

26

27

28

- 4 -

EXHIBIT 3
PAGE 80

| NAME | EMAIL | PARTY NAME |
|---|---|---|
| Manuel A. Abascal<br>Brian T. Glennon<br>Kristen M. Tuey<br>Joseph L. De Leon<br>LATHAM & WATKINS LLP<br>355 South Grand Avenue<br>Suite 100<br>Los Angeles, CA 90071-1560<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763 | manny.abascal@lw.com<br>brian.glennon@lw.com<br>kristen.tuey@lw.com<br>joseph.deleon@lw.com | Steven A.<br>Sugarman |
| Michele D. Johnson<br>Andrew R. Gray<br>Mazamir Yousefi<br>Ryan A. Walsh<br>LATHAM & WATKINS LLP<br>650 Town Center Drive<br>20th Floor<br>Costa Mesa, CA 92626-1925<br>Telephone: (714) 540-1235<br>Facsimile: (714) 755-8290 | michele.johnson@lw.com<br>andrew.gray@lw.com<br>mazamir.yousefi@lw.com<br>ryan.walsh@lw.com | |
| Whitney B. Weber<br>LATHAM & WATKINS LLP<br>505 Montgomery Street<br>Suite 2000<br>San Francisco, CA 94111<br>Telephone: (415) 391-0600<br>Facsimile: (415) 395-8095 | whitney.weber@lw.com | |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 22, 2019, at San Diego, California.

_____
CAROLINE ROSINI

- 5 -

EXHIBIT 3
PAGE 81

**EXHIBIT 4**

# EXHIBIT 4

# CONDITIONALLY FILED UNDER SEAL

**EXHIBIT 5**

1

2

3                          UNITED STATES DISTRICT COURT

4                        CENTRAL DISTRICT OF CALIFORNIA
                              SOUTHERN DIVISION

5

6

7    IN RE:                        )
                                   )  SA CV 17-00118-AG(DFMX)
8                                  )  JANUARY 4, 2019
                                   )  SANTA ANA, CALIFORNIA
9    BANC OF CALIFORNIA            )  (10:06 A.M. TO 10:52 A.M.)
     SECURITIES LITIGATION         )
10                                 )
                                   )
11   _____)

12

13                          DISCOVERY CONFERENCE

14          BEFORE THE HONORABLE DOUGLAS F. MC CORMICK
                   UNITED STATES MAGISTRATE JUDGE

15

16   APPEARANCES:              SEE NEXT PAGE

17   COURT REPORTER:           RECORDED; COURT SMART

18   COURTROOM DEPUTY:         MS. VO

19   TRANSCRIBER:              DOROTHY BABYKIN
                               COURTHOUSE SERVICES
20                             1218 VALEBROOK PLACE
                               GLENDORA, CALIFORNIA  91740
21                             (626) 963-0566

22

23
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
24   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

25

EXHIBIT 5
PAGE 164

2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:

 3            ROBBINS GELLER RUDMAN & DOWD LLP
             BY:  LAURIE LARGENT
 4                ERIKA OLIVER
                  ROBERT RUSSELL HENSSLER, JR.
 5                ATTORNEYS AT LAW
             655 WEST BROADWAY
 6           SUITE 1900
             SAN DIEGO, CALIFORNIA  92101
 7           (TELEPHONICALLY)

 8
     FOR DEFENDANT BANC OF CALIFORNIA, INC.:
 9
             MORRISON & FOERSTER LLP
10           BY:  ROBERT B. HUBBELL
                  ATTORNEY AT LAW
11           707 WILSHIRE BOULEVARD
             SUITE 6000
12           LOS ANGELES, CALIFORNIA  90017

13
     FOR DEFENDANT STEVEN A. SUGARMAN:
14
             LATHAM & WATKINS LLP
15           BY:  MANUEL A. ABASCAL
                  ATTORNEY AT LAW
16           355 SOUTH GRAND AVENUE
             SUITE 100
17           LOS ANGELES, CALIFORNIA  90071

18           LATHAM & WATKINS LLP
             BY:  RACHEL MC CARTHY BOSLEY
19                ATTORNEY AT LAW
             650 TOWN CENTER DRIVE
20           20TH FLOOR
             COSTA MESA, CALIFORNIA  92626
21

22

23

24

25
```

EXHIBIT 5
PAGE 165

28

1    LAYING A FOUNDATION.

2            WHAT I TRIED TO DO BECAUSE OF THE DIFFICULT PRIVILEGE

3    ISSUES I GEARED THE WHOLE EXAMINATION AROUND WHAT WAS PRODUCED.

4    SO, I SHOWED HIM A LETTER BECAUSE I KNEW THAT THAT -- THEY HAD

5    CONCLUDED WASN'T PRIVILEGED.  AND I SAID WHO TOLD YOU TO WRITE

6    THE LETTER.

7            SHOWED THEM THE INTERROGATORIES AND SAID, IS THIS

8    TRUE?

9            SO, WHAT I TRIED TO DO IS INSTEAD OF LAYING A BROADER

10   FOUNDATION WHERE I KNEW THERE WAS DIFFICULT PRIVILEGE ISSUES

11   AND IT WOULD BURDEN THE DEPOSITION, I FIGURED, WELL, LET ME

12   START WITH WHAT I KNOW THEY -- THEY HAVE CONCLUDED IS NOT

13   PRIVILEGED.  SHOW THEM THAT.  AND START FROM THERE.

14           THE COURT:  RIGHT.

15           MR. ABASCAL:  AND THAT'S -- AND THAT'S WHAT I THOUGHT

16   WOULD BE THE MOST EFFECTIVE WAY IF WE DO RESUME IS INSTEAD OF

17   STARTING BROADLY AND GETTING, YOU KNOW, A BUNCH OF INSTRUCTIONS

18   NOT TO ANSWER WAS GO WHERE I THINK THEY'VE CONCLUDED IT'S NOT

19   PRIVILEGED AND JUST START FROM THERE.

20           AND I'M NOT PLAYING -- TRYING TO PLAY "GOTCHA."  I

21   KNOW THAT -- I'M NOT TRYING TO GET -- AND I MADE IT CLEAR IN

22   THIS MOTION -- I'M NOT TRYING TO REVISIT THE BROAD SUBJECT

23   MATTER WAIVER.

24           I JUST WANT FOR WHAT WAS PRODUCED TO TEST THE BANC'S

25   ASSERTIONS ABOUT THOSE ISSUES.

EXHIBIT 5
PAGE 166

29

1        MR. HUBBELL:  YOUR HONOR, IF I MIGHT JUST ADD ONE --

2    ONE POINT.

3        IT SOUNDS LIKE YOU'RE GOING TO REFLECT ON THIS A

4    LITTLE BIT MORE IN LIGHT OF THE ARGUMENT.

5        I WANT TO JUST MAKE ONE THING CLEAR.

6        I GUESS I SHOULD START BY SAYING IN 37 YEARS OF

7    PRACTICE, THIS IS THE MOST COMPLICATED PRIVILEGE CASE I HAVE

8    EVER DEALT WITH.

9        THE COURT:  WELL, YOU KNOW, THAT'S GOOD.  BECAUSE I

10   THINK -- I THINK IN A RECENT CONVERSATION WITH MY COLLEAGUE MR.

11   RUMPER OVER HERE, I CONFESSED TO HIM THAT IN MY FIVE-PLUS YEARS

12   I SAID THAT I'VE -- I'VE RARELY READ BRIEFS AND HAD LESS OF A

13   NOTION OF WHAT -- WHAT REALLY IS GOING ON THAN I DID HERE.

14       AND IT REALLY TOOK, YOU KNOW, ME READING AND

15   RE-READING AND GOING BACK OVER AND THINKING ABOUT OVER AND OVER

16   AGAIN TO SORT OF EVEN COME TO GET A HANDLE ON -- ON WHAT --

17   WHAT WE WERE TALKING ABOUT.

18       THE ONLY OTHER TIME I FELT LIKE THAT IS WHEN SOME --

19   WHEN SOMEBODY IN A PATENT CASE WAS TALKING TO ME ABOUT

20   ELECTRONICS.  AND THEN -- AND THEN I WAS JUST LIKE, WELL, I'M

21   NOT SUPPOSED TO KNOW.  I WAS A SOCIAL ECOLOGY MAJOR.

22       (LAUGHING.)

23       THE COURT:  GO AHEAD.

24       MR. HUBBELL:  SO, IF I MIGHT CONTINUE, WE'VE ALL

25   STRUGGLED WITH THESE ISSUES.  THE BANC HAS.  MR. SUGARMAN HAS.

EXHIBIT 5
PAGE 167

30

1    IT SOUNDS LIKE THE COURT HAS AS WELL.

2            THE ONE THING THAT THE BANC HAS BEEN CLEAR ABOUT AT

3    EVERY STEP IS IT HAS ATTEMPTED TO PROTECT THE PRIVILEGE.

4            THESE ARE DIFFICULT QUESTIONS.  SOME OF THEM HAVE

5    BEEN MADE ON THE FLY.

6            IF WE GOT IT WRONG, WE WOULD LIKE THE OPPORTUNITY TO

7    REVISIT BECAUSE WE -- THE LAST THING WE WANT TO DO IS TO

8    INADVERTENTLY WAIVE THE PRIVILEGE TO MAKE A SELECTIVE

9    DISCLOSURE.

10           YOU KNOW, I HEAR MR. ABASCAL SAY, WELL, YOU KNOW,

11   THEY SHOULD CLAW-BACK THESE DOCUMENTS.  WE THINK WE MADE THE

12   RIGHT JUDGMENT AND THAT WE SHOULDN'T HAVE TO.  BUT IF WE MADE

13   IT WRONG -- IF -- IF THE COURT DISAGREES AND THINKS THAT IN

14   MAKING THOSE JUDGMENTS SOMEHOW WE'VE STEPPED OVER THE LINE IN

15   THE HEAT OF A DEPOSITION, WE'D LIKE THE OPPORTUNITY TO REFLECT

16   ON WHETHER OR NOT, YOU KNOW, WE GOT IT RIGHT AND WHETHER WE

17   SHOULD TAKE SOME OTHER ACTION TO PROTECT THE PRIVILEGE.

18           THE COURT:  I DON'T -- I DON'T THINK -- I DON'T THINK

19   THERE'S REALLY MUCH -- I THINK ONE OF THE -- YOU KNOW, BEDROCK

20   CORNERSTONES AS WE LOOK AT THIS ISSUE THAT WE CAN ALL AGREE ON

21   IS THAT THE MICHELMAN LETTERS TO WILMER HALE, THERE'S --

22   THERE'S NOT A COMPELLING PRIVILEGE ARGUMENT FOR THOSE.  THAT--

23   THEY'RE NOT -- THEY'RE NOT ATTORNEY-CLIENT PRIVILEGED

24   COMMUNICATIONS.  THEY DON'T MEET THE EIGHT-FACTOR NINTH CIRCUIT

25   TEST.

EXHIBIT 5
PAGE 168

41

1

2                              C E R T I F I C A T E

3

4

              I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
5    FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
     ABOVE-ENTITLED MATTER.

6

7

     /S/ DOROTHY BABYKIN                         1/9/19
8    _____            _____
     FEDERALLY CERTIFIED TRANSCRIBER             DATED
9    DOROTHY BABYKIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 5
PAGE 169

**EXHIBIT 6**

**Joseph Deleon**
Direct Dial:  (213) 891-8317
joseph.deleon@lw.com

355 South Grand Avenue, Suite 100
Los Angeles, California  90071-1560
Tel: +1.213.485.1234  Fax: +1.213.891.8763
www.lw.com

# LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Seoul |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

February 22, 2019

**VIA EMAIL**

Morrison & Foerster LLP
Robert B. Hubbell
RHubbell@mofo.com
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017-3543

Re:   In re Banc of California Sec. Lit., No. 8:17-cv-00118-AG-DFM

Dear Rob,

On February 11, 2019, the Court ordered that Banc "supplement its descriptions to support the claims of privilege as to communications with Sanford Michelman that took place between December 30, 2016 and January 10, 2017."  (Dkt. 513 at 3).  Accordingly, on February 13, 2018, Banc amended its descriptions for the following documents in its August 29 and September 3, 2018 Privilege Logs:

- **August 29, 2018:** Nos. 185 ("Letter concerning interview of counsel for Special Committee investigation"), 200 ("Email responding to request for assistance with document requests for Special Committee investigation")

- **September 3, 2018:**  Nos. 748 ("Email concerning counsel's assistance with document requests for Special Committee investigation"), 756 ("Email responding to request for assistance with document requests for Special Committee investigation"), 759 ("Email responding to request for assistance with document request for Special Committee investigation"), 1175 ("Email responding to request for assistance with document requests for Special Committee investigation"), 1176 (Email responding to request for assistance with document request for Special Committee investigation")

However, these amended descriptions still fail to address how within a span of six days, Mr. Michelman switches from acting adverse to the Banc (December 30, 2016), to acting on behalf of Banc's interest (January 1, 2017), to then again acting adverse to the Banc (January 2, 2017), and finally acting on behalf of Banc's interest (January 3 and January 4, 2017).  *See also* Dkt. 513 at 3 ("[I]t is unclear from the log why Banc has marked as non-privileged certain letters

EXHIBIT 6
PAGE170

**February 22, 2019**
**Page 2**

LATHAM&WATKINS LLP

between Michelman and Lee (e.g., letters on December 30, 2016 and January 2, 2017), while treating as privileged other communications between them from the same time period.")

In addition, the Court ordered Banc to amend its August 29, 2019 privilege log entries (MR 980-1009) to address Mr. Sugarman's assertion that these documents reflect reports Mr. Michelman received from whistleblowers about director misconduct. (Dkt. 513 at 3). Banc amended its descriptions in the following documents:

- **August 29, 2018:** MR000980 ("Document regarding transition of legal matters from counsel"), MR000981 ("Document regarding transition of legal matters from counsel"), MR001011 ("Email regarding transition of legal matters from counsel")

Banc asserts that these documents are "not whistleblower reports" but rather communications "regarding the transition of legal matters from Mr. Michelman." (Dkt. 521 at 2). While these documents may be related to the transition of legal matters, Mr. Sugarman maintains that these communications, at least in part, discuss reports Mr. Michelman received from whistleblowers.

We would like to resolve these issue promptly. Please let us know when you are available for a telephone call to discuss these issues. Please respond no later than February 27, 2019 – or we will seek assistance from the Court. We appreciate your prompt attention to this matter.

Best regards,

/s/ Joseph De Leon
Joseph De Leon
of LATHAM & WATKINS LLP

EXHIBIT 6
PAGE171

**EXHIBIT 7**

1   LATHAM & WATKINS LLP
      Manny A. Abascal (Bar No. 171301)
2     *manny.abascal@lw.com*
      Brian Glennon (Bar No. 211012)
3     *Brian.glennon@lw.com*
      Kristen M. Tuey (Bar No. 252565)
4     *kristen.tuey@lw.com*
    355 South Grand Avenue, Suite 100
5   Los Angeles, CA 90071-1560
    Tel:  (213) 485-1234
6   Fax:  (213) 891-8763

7   LATHAM & WATKINS LLP
      Michele D. Johnson (Bar No. 198298)
8     *michele.johnson@lw.com*
      Andrew R. Gray (Bar No. 254594)
9     *andrew.gray@lw.com*
    650 Town Center Drive, 20th Floor
10  Costa Mesa, CA  92626-1925
    Tel:  (714) 540-1235
11  Fax:  (714) 755-8290

12  Attorneys for Defendants
    Steven A. Sugarman

13

14                  UNITED STATES DISTRICT COURT

15                  CENTRAL DISTRICT OF CALIFORNIA

16

17  IN RE BANC OF CALIFORNIA          CASE NO. SACV 17-00118 AG (DFMx)
    SECURITIES LITIGATION             consolidated with
18                                    SACV 17-00138 AG (DFMx)

19                                    **DEFENDANT STEVEN A.
20                                    SUGARMAN'S FIFTH REQUEST
                                      FOR PRODUCTION OF
21  This Document Relates to:         DOCUMENTS TO DEFENDANT
                                      BANC OF CALIFORNIA**
22      ALL ACTIONS
                                      Judge:      Hon. Andrew J. Guilford
23                                    Courtroom:  10D

24                                    Trial Date:  October 22, 2019

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 172

1  PROPOUNDING PARTY:      Defendant Steven A. Sugarman

2  RESPONDING PARTY:       Defendant Banc of California

3  SET NUMBER:             Five

4       Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure,

5  Defendant Steven A. Sugarman hereby requests that, within thirty (30) days of

6  service, Defendant Banc of California ("Banc") produce the documents,

7  electronically stored information, and tangible things specified herein at the offices

8  of Latham & Watkins LLP, c/o Michele D. Johnson, Esq., 650 Town Center Drive,

9  20th Floor, Costa Mesa, California 92626-1925.  Such production should be made

10  in accordance with the Definitions and Instructions set forth below.

11       These Document Requests incorporate by reference all definitions and rules

12  of construction set forth in Rule 34 of the Federal Rules of Civil Procedure and

13  supplement them with the following Definitions and Instructions, which apply to

14  each Request set forth herein.

15                          **<u>DEFINITIONS</u>**

16       1.    "Action" shall mean the present lawsuit, *In re Banc of California*

17  *Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the

18  United States District Court for the Central District of California.

19       2.    "Affiliate" shall mean a person that directly, or indirectly through one

20  or more intermediaries, controls or is controlled by, or is under common control

21  with, the person specified.

22       3.    "And" and "or" shall be construed either disjunctively or

23  conjunctively, as necessary by the context, to bring within the scope of the

24  Definition, Instruction, or Request all responses that might otherwise be construed

25  to be outside of its scope by any other construction.

26       4.    "All," "any," and "each" shall each be construed as encompassing any

27  and all.

28       5.     "Banc," "you," or "your" shall collectively refer to Defendant Banc

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW

2

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 173

of California, Inc., Banc of California, N.A., and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf. As used herein, "you" and "your" shall be construed either disjunctively or conjunctively, to include Banc of California, Inc. individually as well as collectively with Banc of California, N.A. or any other affiliate, including The Palisades Group, and as necessary by the context, to bring within the scope of the definition, instruction, or Request all responses that might otherwise be construed to be outside of its scope by any other construction.

6.     "Board" and "Boards" shall mean individually and collectively the Board of Directors of Banc of California, Inc. and Banc of California, N.A.

7.     "Communication" or "communications" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) in any form, including without limitation e-mail, text message, and letters (including attachments).

8.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

9.     "Document" or "documents" is defined to mean all documents, electronically stored information, electronic data, and tangible things in the broadest sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean anything that can be read, viewed, heard, or otherwise understood. Subject to and in accordance with the Instructions herein, "document" shall not be limited in any way with respect to medium, embodiment, or process of creation, generation, or reproduction; "document" shall include, without limitation, all preliminary, intermediate, and final versions thereof, as well as any notations, comments, and marginalia (handwritten or otherwise) appearing thereon or therein; "document" shall include originals (or high quality duplicates), all non-identical copies or drafts, and all attachments, exhibits, or similar items. Any document

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

3

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 174

1  bearing on any sheet or side thereof, any marks, including, without limitation,

2  initials, notations, comments, or marginalia of any character which are not part of

3  the original text or reproduction thereof, shall be considered a separate document.

4  Document or documents shall include without limitation any and all

5  Communications.

6       10.    "Electronic data" refers to any original and any non-identical copies

7  (whether non-identical because of notes made on copies or attached comments,

8  annotations, marks, transmission notations, or highlighting of any kind),

9  mechanical, facsimile, electronic, magnetic, digital, or other programs (whether

10  private, commercial, or work-in-progress), programming notes or instructions,

11  activity listings of electronic mail or "e-mail" receipts or transmittals, output

12  resulting from the use of any software program, including word processing

13  documents, spreadsheets, database files, charts, graphs, and outlines, electronic

14  mail, operating systems, source code of all types, programming languages, linkers

15  and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files,

16  crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous

17  files or file fragments, regardless of the media on which they reside and regardless

18  of whether said electronic data consists of an active file, backup file, deleted file,

19  or file fragment.  "Electronic data" also includes, without limitation, any items

20  stored on computer memory or memories, hard drives, zip drives, CD-ROM discs

21  or in any other vehicle for electronic or digital data storage or transmittal, files,

22  folder tabs, or containers and labels appended to or associated with any physical

23  storage device associated with each original and each copy.

24       11.    "Galanis" shall mean Jason W. Galanis and any of his agents,

25  representatives, consultants, attorneys, or any other person acting on his behalf.

26       12.    "Global Relay" shall mean the Global Relay Archive program

27  maintained or operated by YOU to organize or archive emails, documents, and

28  other data.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 175

13.     "Governance Committee" shall mean the Banc's Joint Compensation, Nominating and Corporate Governance Committee.

14.     "Governance Committee Investigation" shall mean the Banc's investigation led by Winston & Strawn initiated in October 2015.

15.      "Person" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

16.     "Reputational Risk Factor" shall refer to Banc's disclosure in its Form 10-K for the fiscal year ended December 31, 2015, filed with the SEC on February 18, 2016, that "Managing reputational risk is important to attracting and maintaining customers, investors and employees" and "Threats to our reputation can come from many sources, including adverse sentiment about financial institutions generally, unethical practices, employee misconduct, failure to deliver minimum standards of service or quality, compliance deficiencies and questionable or fraudulent activities of our customers. We have policies and procedures in place to promote ethical conduct and protect our reputation. However, these policies and procedures may not be fully effective.  Negative publicity regarding our business, employees, or customers, with or without merit, may result in the loss of customers, investors and employees, costly litigation, a decline in revenues and increased governmental oversight."

17.     "Response to Plaintiff's RFA" shall refer to Banc's Responses to Lead Plaintiff's Second Set of Requests for Admissions, dated October 11, 2018.

18.      "*Salas* Arbitration" shall mean the arbitration captioned *Salas v. Banc of California, et al.*, AAA Case No. 01-18-0000-6461, commenced on May 20, 2018 and pending before the American Arbitration Association.

19.     "SEC" shall mean the United States Securities and Exchange Commission, including all present or former officers, directors, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 176

20.     "Short-Swing Profit" shall mean Section 16(b) of the Securities Exchange Act of 1934.

21.     "Winston & Strawn" shall mean the law firm Winston & Strawn LLP, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf.

22.     The use of the singular form of any word shall include the plural form of the same and vice versa.

## **INSTRUCTIONS**

1.     The Requests herein cover all documents within your possession, custody, or control, regardless of whether they are currently in your possession, including, but not limited to, all documents within the possession, custody, or control of persons acting on your behalf or at your instruction.  For any requested document no longer in your possession, custody, or control, state what disposition was made of the document and the date of such disposition and identify all persons having knowledge of the document's contents.  For any requested document that has been destroyed, state what document has been destroyed, when the document was destroyed, why it was destroyed, and all persons who participated in or were involved in the decision to destroy.

2.     All documents shall be produced:  (a) as they are kept in the ordinary course of business, complete with the original file folders, binders, containers, or other devices in which they are stored (or legible copies of the labels or other identifying information from those folders, binders, containers, or devices), or (b) organized according to the Request to which they respond.  If you elect the latter mode of production, each document from a particular file, binder, container, or other device shall be accompanied by a legible copy of the label or other identifying information from that, file, binder, container, or device or some other reliable indicator of the location, file, binder, container, or device from which it

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

6

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 177

1   was taken.

2       3.    All documents that are in paper form or that constitute other physical

3   objects from which information may be visually read or viewed, as well as audio or

4   video tapes and similar recordings, shall be produced in their original form or in

5   copies that are exact duplicates of the originals.

6       4.    All electronic documents, electronic data, or other Electronically

7   Stored Information ("ESI") shall be produced as single-page, Group IV, 300 DPI

8   TIFF images with the exception of audio, video, slideshow presentation-type files

9   including, but not limited to, Microsoft PowerPoint, and spreadsheet-type files

10   including, but not limited to Microsoft Excel, which should be produced in native

11   format.  All ESI should be produced with a delimited, database load file that

12   includes metadata—the parties shall meet and confer to determine the appropriate

13   metadata fields to include.  An .opt image cross-reference file should also be

14   provided for all TIFF images.  TIFF images should show any and all text and

15   images which would be visible to the reader using the native software that created

16   the document.  For example, TIFF images of e-mail messages should include the

17   BCC line.  If a document is produced in native format, a single-page Bates-

18   stamped TIFF image slip-sheet containing text stating the document has been

19   produced in native format should also be provided.  Each native file should be

20   named according to the Bates number it has been assigned, and should be linked

21   directly to its corresponding record in the load file using the NATIVELINK field.

22   Removal of duplicate documents should only be done on exact duplicate

23   documents (based on MD5 or SHA-1 hash values, at the family level).

24   Attachments should not be eliminated as duplicates for purposes of production,

25   unless the parent e-mail and all attachments are also duplicates.  An email that

26   includes content in the BCC or other blind copy field should not be treated as a

27   duplicate of an email that does not include content in those fields, even if all

28   remaining content in the e-mail is identical.  Removal of near-duplicate documents

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

7

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 178

1   and email thread suppression is not acceptable.  The documents should be

2   produced on CD-ROM, DVD, external hard drive (with standard PC compatible

3   interface), File Transfer Protocol (for document production under 10GB), or such

4   other readily accessible computer or electronic media as the parties may hereafter

5   agree upon.

6        5.      If you object to any portion of any Request herein, identify the portion

7   of the Request to which you object, state the reason for your objection with

8   specificity, and answer the remainder of the Request.  If any Request calls for a

9   document or communication for which you claim any privilege or work product

10   protection for all or any portion of such document or communication, provide a

11   privilege log containing the information required by Rule 26(b)(5)(A) of the

12   Federal Rules of Civil Procedure.

13        6.      The Requests herein are continuing so that any additional documents

14   responsive to the Requests herein that you acquire or discover, up to and including

15   the time of trial, shall be furnished through prompt supplemental responses.  Fed.

16   R. Civ. P. 26(e).  This paragraph shall not be construed to alter your obligations to

17   comply with all other instructions herein.

18        7.      Unless otherwise specified, the Requests cover the time period

19   September 2015 to the present.

20        **REQUESTS FOR PRODUCTION**

21   REQUEST FOR PRODUCTION NO. 98:

22        All of the following DOCUMENTS, and if the DOCUMENT is an email,

23   any and all additional emails in the email chain and attachments thereto:

24   • December 17, 2015 email between John Grosvenor and David Aronoff with

25        subject "RE: Galanis," including but not limited to the DOCUMENT

26        produced by Winston & Strawn at W&S_BOC_00007792 and all other

27        emails in the email chain;

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
ORANGE COUNTY

8

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 179

- May 11, 2016 email from Mr. Sugarman to Hugh Boyle and Gary Kausmeyer, copying John Grosvenor, David Aronoff and Jeff Seabold, with subject "AC PRIV," including but not limited to the DOCUMENT produced by Winston & Strawn at W&S_BOC_00004688;
- May 12, 2016 emails between Steven Sugarman and Halle Bennet;
- May 19, 2016 email from John Grosvenor regarding account closures, including but not limited to the DOCUMENT produced by Winston & Strawn at W&S_BOC_00004515;
- October 18, 2016 email from John Grosvenor to Matt Guest and David Aronoff, copying Angelee Harris, with subject "draft PR," including but not limited to the DOCUMENTS produced by Winston & Strawn at W&S_BOC_00004136 and W&S_BOC_00008426;
- October 18, 2016 email from Tim Sedabres to Angelee Harris and Mr. Sugarman, copying Matt Guest, Francisco Turner, Hugh Boyle, John Grosvenor, and David Aronoff, with subject "draft PR," including but not limited to the DOCUMENT produced by Winston & Strawn at W&S_BOC_00002718;
- October 18, 2016 email among Chad Brownstein, David Aronoff, John Grosvenor, and Scott Fishwick, among others, regarding draft letter, including but not limited to the DOCUMENT produced by Winston & Strawn at W&S_BOC_00004042;
- October 18, 2016 emails between or among Fran Turner, John Grosvenor, Hugh Boyle, Terrin Enssle, and Steven Sugarman, among others, with subject "Contingent Funding Plan – Activation," including any additional emails in the email string and attachments thereto;
- October 18, 2016 emails between or among Gaylin Anderson, Steven Sugarman, Jeff Seabold, Hugh Boyle, Fran Turner, and Carlos Salas with

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

9

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 180

1    subject "Lanco Account $26MM," including any additional emails in the

2    email string and attachments thereto;

3   • October 19, 2016 email from Terrin Enssle to Hugh Boyle, Steven

4     Sugarman, Fran Turner, Jeff Seabold and John Grosvenor, among others,

5     with subject "Contingency Funding Plan – Updated EOD 10/19/16,"

6     including any additional emails in the email string and attachments thereto;

7   • October 19, 2016 emails between or among David Aronoff and John

8     Grosvenor with subject "Proposed Introductory Remarks," including but not

9     limited to the DOCUMENTS produced by Winston & Strawn at

10    W&S_BOC_00009528, W&S_BOC_00009523, and

11    W&S_BOC_00003936; and

12   • October 23, 2016 email from David Aronoff to John Grosvenor with subject

13     "AC Privilege," including but not limited to the DOCUMENT produced by

14     Winston & Strawn at W&S_BOC_00009109.

15 **REQUEST FOR PRODUCTION NO. 99:**

16     For the time period September 1, 2015 to March 31, 2017, all calendar items

17 or entries for John Grosvenor, Jonah Schnel, Eric Holoman, Chad Brownstein, Jeff

18 Karish, Bob Sznewajs, and Halle Bennet.

19 **REQUEST FOR PRODUCTION NO. 100:**

20     For the time period September 1, 2015 to January 23, 2017, all handwritten

21 or electronic notes taken at any BOARD or GOVERNANCE COMMITTEE

22 meeting, including without limitation notes taken by John Grosvenor or Angelee

23 Harris.

24 **REQUEST FOR PRODUCTION NO. 101:**

25     All emails sent or received by John Grosvenor, Hugh Boyle, Tim Sedabres,

26 Jim McKinney, David Herbst, Michael Sitrick, or any Board member on October

27 18, 2016 and October 19, 2016.

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

10

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 181

REQUEST FOR PRODUCTION NO. 102:

All draft and final minutes of any BOARD or GOVERNANCE COMMITTEE meeting, including without limitation meta-data sufficient to show when the draft and/or final minutes were created, revised, and by whom.

REQUEST FOR PRODUCTION NO. 103:

All DOCUMENTS CONCERNING the BOARD's approval or ratification of any minutes of the BOARD after the October 18, 2016 Board of Directors meeting.

REQUEST FOR PRODUCTION NO. 104:

All DOCUMENTS and COMMUNICATIONS from October 18, 2016 that refer, reflect, or relate to a draft or final press release, including without limitation all drafts and the final version of the October 18, 2016 Press Release.

REQUEST FOR PRODUCTION NO. 105:

All drafts of the October 18, 2016 Press Release, including without limitation the final version that was released to the public and further including without limitation (a) meta-data sufficient to identify who created and revised each document, and (b) on whose computer the document resided.

REQUEST FOR PRODUCTION NO. 106:

All COMMUNICATIONS that refer, reflect, or relate to any draft or final press release occurring on October 18, 2016 or October 19, 2016.

REQUEST FOR PRODUCTION NO. 107:

All drafts and the final version of the statement made by John Grosvenor during Banc's October 19, 2016 investor call and communications relating thereto.

REQUEST FOR PRODUCTION NO. 108:

For the time period October 19, 2016 to October 25, 2016, all DOCUMENTS drafted or edited by John Grosvenor CONCERNING BANC's October 18, 2016 press release or the GOVERNANCE COMMITTEE INVESTIGATION.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

11

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 182

REQUEST FOR PRODUCTION NO. 109:

All phone records reflecting calls made, received or missed on October 18, 2016 and October 19, 2016 on any mobile or hard line telephone for the following people:  Steven Sugarman, John Grosvenor, Tim Sedabres, Francisco Turner, and Hugh Boyle.

REQUEST FOR PRODUCTION NO. 110:

All DOCUMENTS CONCERNING the decision by the BOARD, GOVERNANCE COMMITTEE, and/or YOU not to pay, or not to approve The Palisades Group to pay, Jason Sugarman a bonus in or around 2016, including without limitation (a) DOCUMENTS CONCERNING accruals to Jason Sugarman, (b) DOCUMENTS CONCERNING any accounting memoranda justifying not paying Jason Sugarman a bonus, and (c) DOCUMENTS CONCERNING any recommendation regarding this matter by Winston & Strawn based on the ongoing GOVERNANCE COMMITTEE INVESTIGATION.

REQUEST FOR PRODUCTION NO. 111:

All COMMUNICATIONS with Jason Sugarman CONCERNING any bonus payment, including without limitation the decision whether to pay any bonus to Jason Sugarman, in or around 2016.

REQUEST FOR PRODUCTION NO. 112:

All COMMUNICATIONS between David Aronoff, Gayle Jenkins, or anyone from Winston & Strawn, on the one hand, and John Grosvenor, Jonah Schnel, Eric Holoman, Chad Brownstein, Jeffrey Karish, Robert Sznewajs, or Halle Benett, on the other hand, between the time period September 1, 2015 and December 31, 2016.

REQUEST FOR PRODUCTION NO. 113:

All COMMUNICATIONS between or among John Grosvenor, Jonah Schnel, Eric Holoman, Chad Brownstein, Jeffrey Karish, Robert Sznewajs, or Halle Benett CONCERNING Winston & Strawn, David Aronoff, Gayle Jenkins,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

12

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 183

1  Jason Galanis, Hugh Dunkerley, the GOVERNANCE COMMITTEE, Dominion

2  Advisory Group, Jason Sugarman, or Bloomberg for the time period September 1,

3  2015 through December 31, 2016.

4  REQUEST FOR PRODUCTION NO. 114:

5       All DOCUMENTS sufficient to identify the cost center(s) to which Winston

6  & Strawn's invoices for the GOVERNANCE COMMITTEE INVESTIGATION

7  were billed.

8  REQUEST FOR PRODUCTION NO. 115:

9       For the quarterly period ended December 31, 2015 and for the full calendar

10 year in 2016, all BOARD quarterly reports or presentations by the Chief Legal

11 Officer CONCERNING the cost center allocation, accounting, budgeting, or any

12 other explanation relating to the cost of the GOVERNANCE COMMITTEE

13 INVESTIGATION.

14 REQUEST FOR PRODUCTION NO. 116:

15      For the quarterly period ended December 31, 2015 and for the full calendar

16 year in 2016, all BOARD "Value-Based Management" quarterly reports or

17 presentations CONCERNING the cost center allocation, accounting, budgeting, or

18 any other explanation relating to the cost of the GOVERNANCE COMMITTEE

19 INVESTIGATION.

20 REQUEST FOR PRODUCTION NO. 117:

21      All COMMUNICATIONS regarding the drafting and inclusion in SEC

22 filings of the Reputational Risk Factor.

23 REQUEST FOR PRODUCTION NO. 118:

24      All DOCUMENTS sufficient to identify all persons who requested or

25 approved Winston & Strawn's access to Banc's Global Relay system or archives,

26 including but not limited to the documents produced by Winston & Strawn at

27 W&S_BOC_00010829 and W&S_BOC_00013807.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

13

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 184

1  REQUEST FOR PRODUCTION NO. 119:

2      YOUR policy regarding access to YOUR GLOBAL RELAY system and

3  archives.

4  REQUEST FOR PRODUCTION NO. 120:

5      All DOCUMENTS sufficient to identify the person(s) who reviewed or

6  approved payment for each of Winston & Strawn's invoices relating to the

7  GOVERNANCE COMMITTEE INVESTIGATION.

8  REQUEST FOR PRODUCTION NO. 121:

9      Any and all notes from Hugh Boyle's notebook for the time period October

10  2015 to January 23, 2017.

11  REQUEST FOR PRODUCTION NO. 122:

12      Any and all notes from Hugh Boyle relating to: (a) the events of October 18,

13  2016, (b) Mr. Boyle's November 26, 2016 presentation to the BOARD, and (c) the

14  risk management enhancement project in November and December 2016

15  (including Mr. Boyle's December 17, 2016 meeting with Jonah Schnel and the

16  December 23, 2016 BOARD and/or GOVERNANCE COMMITTEE meeting).

17  REQUEST FOR PRODUCTION NO. 123:

18      All COMMUNICATIONS among or between Hugh Boyle, Steven

19  Sugarman, Jonah Schnel, Cynthia Abercrombie, and/or others relating to the risk

20  management enhancement project for the time period December 15, 2016 through

21  December 30, 2016.

22  REQUEST FOR PRODUCTION NO. 124:

23      All DOCUMENTS relating to Mr. Boyle's November 26, 2016 presentation

24  to the BOARD from or concerning John Grosvenor or any BOARD member.

25  REQUEST FOR PRODUCTION NO. 125:

26      All DOCUMENTS sufficient to show the date and time any person logged

27  in to Onehub.com or BoardVantage to review materials CONCERNING any

28  meeting of the BOARD or any BOARD subcommittee, how long the person was

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

14

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 185

1  logged in, and for what purpose, including without limitation access logs relating

2  to GOVERNANCE COMMITTEE meetings and calls, for the time period

3  September 1, 2015 to March 31, 2017, including without limitation

4  GOVERNANCE COMMITTEE meetings held on December 22, 2015, January 26,

5  2016, April 2016, and May 19, 2016, as well as BOARD meetings held on October

6  18 and 19, 2016.

7  REQUEST FOR PRODUCTION NO. 126:

8      For the time period January 1, 2016 to December 31, 2016, all

9  COMMUNICATIONS CONCERNING SHORT-SWING PROFIT and trading by

10  persons covered by Section 16 of the Securities Exchange Act of 1934, including

11  Mr. Sugarman.

12  REQUEST FOR PRODUCTION NO. 127:

13      The transcripts of any and all depositions taken in the *Salas* Arbitration.

14  REQUEST FOR PRODUCTION NO 128:

15      All DOCUMENTS produced in the *Salas* Arbitration.

16  REQUEST FOR PRODUCTION NO. 129:

17      All DOCUMENTS and COMMUNICATIONS referenced by Banc in its

18  Response to Plaintiff's RFA No. 19 admitting that "there are documents and

19  witnesses with knowledge relevant to whether Sugarman was almost solely

20  responsible for the decision to issue the October 18, 2016 press release and for its

21  contents."

22  REQUEST FOR PRODUCTION NO. 130:

23      All DOCUMENTS and COMMUNICATIONS referenced by Banc in its

24  Response to Plaintiff's RFA No. 21 admitting that "the Winston & Strawn

25  investigation was not initiated by the Board of Directors or any subset of the

26  Board; rather, it was directed by Mr. Sugarman."

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

15

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 186

1    REQUEST FOR PRODUCTION NO. 131:

2         All DOCUMENTS and COMMUNICATIONS referenced by Banc in its

3    Response to Plaintiff's RFA No. 22 admitting that "there are documents and

4    witnesses with knowledge relevant to whether the Winston & Strawn investigation

5    was initiated by the Board of Directors or any subset thereof, and whether it was

6    directed by Mr. Sugarman."

7    REQUEST FOR PRODUCTION NO. 132:

8         All DOCUMENTS and COMMUNICATIONS referenced by Banc in its

9    Response to Plaintiff's RFA Nos. 24 and 25 admitting that Banc believes

10   Sugarman knew that certain statements in the October 18, 2016 press release were

11   false.

12   REQUEST FOR PRODUCTION NO. 133:

13        All DOCUMENTS and COMMUNICATIONS referenced by Banc in its

14   Response to Plaintiff's RFA Nos. 28 and 29 admitting that "Sugarman improperly

15   resisted and attempted to prevent the formation of a Special Committee and, once

16   the Special Committee was formed, he interfered with and delayed the Special

17   Committee's investigation."

18   REQUEST FOR PRODUCTION NO. 134:

19        All DOCUMENTS and COMMUNICATIONS referenced by Banc in its

20   Response to Plaintiff's RFA Nos. 30 and 31 admitting that "Sugarman provided

21   inaccurate information to the Special Committee."

22   REQUEST FOR PRODUCTION NO. 135:

23        All DOCUMENTS AND COMMUNICATIONS referenced by Banc in its

24   Response to Plaintiff's RFA Nos. 34 and 35 admitting that "Sugarman was

25   responsible for the positions taken by Sanford Michelman."

26   REQUEST FOR PRODUCTION NO. 136:

27        All COMMUNICATIONS between or among YOU and Sanford

28   Michelman for the time period October 2016 to January 2017, including without

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

16

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 187

1 | limitation DOCUMENTS showing anyone giving direction to Mr. Michelman or

2 | the basis for any positions taken by Mr. Michelman.

3 | REQUEST FOR PRODUCTION NO. 137:

4 |     All DOCUMENTS and COMMUNICATIONS referenced by Banc in its

5 | Response to Plaintiff's RFA Nos. 40 and 41 admitting that "Sugarman was

6 | responsible for, or at least involved in, the decision to have outside counsel for

7 | COR object for weeks to production of documents."

8 | REQUEST FOR PRODUCTION NO. 138:

9 |     All DOCUMENTS that refer, reflect, or relate to COMMUNICATIONS

10 | between or among YOU, on the one hand, and/or Brian Blais, Tejal D. Shah,

11 | and/or Nancy Brown, on the other hand.

12 | REQUEST FOR PRODUCTION NO. 139:

13 |     All DOCUMENTS that refer, reflect, or relate to Marti P. Murray.

14 | REQUEST FOR PRODUCTION NO. 140:

15 |     All COMMUNICATIONS involving YOU (including

16 | COMMUNICATIONS involving Banc's outside counsel), on the one hand, and

17 | any PERSON (excluding Banc's employees, directors or outside counsel), on the

18 | other hand, CONCERNING any discovery request issued by Mr. Sugarman

19 | relating to this Action, including but not limited to offers to help oppose discovery

20 | requests as shown in Exhibit 1.

21 | REQUEST FOR PRODUCTION NO. 141:

22 |     All DOCUMENTS that refer, reflect, or relate to any personal security

23 | services, risks, and/or threats to Mr. Sugarman and his family for the time period

24 | October 18, 2016 to January 23, 2017.

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

17

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 188

Dated:  October 25, 2018

LATHAM & WATKINS LLP
Manuel A. Abascal


By: */s/ Manuel A. Absacal*
    Manuel A. Abascal

*Attorneys for Defendant, Steven A. Sugarman*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

18

Exhibit 1

EXHIBIT 7
PAGE 190

| | |
|---|---|
| **From:** | Tim Coffey <TCoffey@figpartners.com> |
| **Sent:** | Tuesday, August 28, 2018 10:13 AM |
| **To:** | Geoffrey M. Hodgson |
| **Subject:** | FW: BANC |

Geoff –

BANC just called me. The CFO talked to his general counsel and we're (obviously) not the only ones to receive a subpoena from Sugarman in the last couple of days. BANC is offering to help all of us coordinate a response to the subpoena, if we are interested. The bank's attorney is Mark McDonald at Morrison & Foerster and his contact info is below.

Tim

**Timothy N. Coffey**
*Vice President, Research*
**FIG Partners LLC**

Direct: (925) 393-5204
Mobile: (415) 244-8396

700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94596

*We are dedicated to Community Banks and we exist to be the Trusted Advisor for Community Banks and their Investors.*
**Please learn more at www.figpartners.com**

E-mail sent through the Internet is not secure.  The information contained herein has been prepared from sources and data we believe to be reliable but we make no representation as to its accuracy or completeness.  The opinions expressed herein are our own unless otherwise noted and are subject to change without notice.  Past performance is no guarantee of future results.  This email is solely for information purposes and should not be construed as an offer to buy or sell, or a solicitation of an offer to buy or sell, any security.  The securities discussed herein are not suitable for everyone; each investor should assess his or her own particular financial condition and investment objectives before making any investment decisions.  FIG Partners, LLC and/or their officers may from time to time acquire, hold or sell a position in the securities discussed herein or may have a corporate finance relationship with such companies or in the case of employees or officers, may sit on the boards of such companies.  FIG Partners, LLC may be a market marker, act as principal for its own account or as agent for both buyer and seller in connection with the purchase or sale of any security discussed herein.

**From:** John Bogler [mailto:John.Bogler@bancofcal.com]
**Sent:** Tuesday, August 28, 2018 10:11 AM
**To:** Tim Coffey <TCoffey@figpartners.com>
**Subject:** BANC

MARK MCDONALD
Partner | Morrison & Foerster LLP
707 Wilshire Boulevard | Los Angeles, CA 90017-3503
P: +1 (213) 892.5810 | F: +1 (323) 210.1137 | C: +1 (213) 327.8659
mofo.com | LinkedIn | Twitter

**John Bogler**

1

FIG00093165

EXHIBIT 7
PAGE 191

Chief Financial Officer

 **BANC OF CALIFORNIA**

3 MacArthur Place
Santa Ana, CA 92707
Office:949-236-5400
Cell:   949-554-9043
Fax:    978-367-8502
John.Bogler@bancofcal.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail at john.bogler@bancofcal.com or by telephone at 949-236-5400, and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

FIG00093166

EXHIBIT 7
PAGE 192

1

## PROOF OF SERVICE

2

     I am employed in the County of Orange, State of California.  I am over the age of 18 years and not a party to this action.  My business address is Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071-1560.

3

4

5

     On **October 25, 2018**, I served the following document described as:

6

**DEFENDANT STEVEN A. SUGARMAN'S FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT BANC OF CALIFORNIA**

7

8

by serving a true copy of the above-described document in the following manner:

9

## BY EMAIL

10

     The above-described document was transmitted via electronic mail to the following parties on October 25, 2018:

11

12

     Email:   MMcDonald@mofo.com
              RHubbell@mofo.com

13

              ALandis@mofo.com
              JLevine@mofo.com

14

              SLenkey@mofo.com
              THinson@mofo.com

15

              WHerbert@mofo.com
              ASenseman@mofo.com

16

              EOliver@rgrdlaw.com
              HectorM@rgrdlaw.com

17

              LLargent@rgrdlaw.com
              MAlpert@rgrdlaw.com

18

19

     I declare that I am employed in the office of a member of the Bar of California, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

20

21

22

     Executed on **October 25, 2018**, at Los Angeles, California.

23

24

     */s/ John M. Eastly*
                   John M. Eastly

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

19

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIFTH SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 7
PAGE 193

**EXHIBIT 8**

**Andrew R. Gray**
Direct Dial: 714.755.8017
andrew.gray@lw.com

## LATHAM&WATKINS LLP

November 5, 2018

Mark R. McDonald
Robert B. Hubbell
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
mmcdonald@mofo.com
rhubbell@mofo.com

650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Tel: +1.714.540.1235  Fax: +1.714.755.8290
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Seoul |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

Re:  *In re Banc of California Securities Litigation*, Case No. 8:17-cv-00118-
     AG-DFM

Dear Mark and Robert,

I write regarding Steven A. Sugarman's Requests for Production of Documents to Banc
of California, Inc. ("Banc") and the May 30, 2018 Stipulation and Order Regarding Banc of
California, Inc.'s Responses to Steven Sugarman's First Request for Production of Documents
(the "Stipulation and Order"). ECF No. 233.

As you know, Paragraph 7 of the Stipulation and Order requires Banc to produce
documents "in response to reasonable individual requests for specifically identified documents."
On August 24, 2018, Mr. Sugarman requested via electronic mail that Banc produce nine
specific documents. Mr. Sugarman asked for an additional four documents on August 29. We
received Banc's production dated October 19, nearly two months after Mr. Sugarman's requests.
Although your letter states that Banc is not responding to those portions of Mr. Sugarman's
requests which seek "all other documents around [the specifically identified] date on the same
subject matter," please note that Banc has a continuing obligation to produce <u>all</u> relevant
materials it locates or is aware of that are responsive to any of the requests for production Mr.
Sugarman has thus far propounded.

Additionally, Banc has redacted various pages in its October 19 production. *See, e.g.*,
BOC_000462677-85; BOC_000462878-86; BOC_000462888-90; BOC_000462916-25. Please
provide a privilege log justifying these redactions by November 16, 2018.

US-DOCS\103706566.5

EXHIBIT 8
PAGE 194

November 5, 2018
Page 2

**LATHAM&WATKINS**LLP

In accordance with the procedures set forth in Paragraph 7 of the Stipulation and Order, Mr. Sugarman now requests that Banc produce the following additional specific documents:

14. Emails between Steven Sugarman and Halle Benett from May 9 through May 12, 2016, with the subject line "no subject," and all additional emails in this email string (*e.g.*, forwards or replies).

15. Memorandum from Winston & Strawn LLP to the Board of Directors of Banc of California, dated November 20, 2015 and titled "Internal Investigation re Jason Galanis," (produced by Winston & Strawn at W&S_BOC_00006876), a version of the same document that appears to have been created on December 7, 2015 (produced by Winston & Strawn at W&S_BOC_00006940).

16. Memorandum from KPMG for the period ending 9/30/2016 and 12/31/2016 and titled "Banc of California—2016—October 2016 and January 2017 Instablog Allegations" (produced by KPMG at KPMG-BANC-SEC-000827).

17. Email from David Aronoff to Steven Sugarman on October 9, 2015 at around 12:58 am, with no apparent subject line (produced by Winston & Strawn at W&S_BOC_00018095), and all additional emails in this email string (*e.g.*, forwards or replies).

18. Document titled "BANC Board Call 12/22/15 – Internal Investigation re: Jason Galanis (produced by Winston & Strawn at W&S_BOC_00017771).

19. Document titled "PRIVILEGED INVESTIGATION BY COUNSEL REQUESTED BY DIRECTORS REGARDING JASON GALANIS," dated January 25, 2016 (produced by Winston & Strawn at W&S_BOC_00006520).

20. Document titled "(Special) Telephonic Meeting of the Joint Compensation, Nominating and Corporate Governance Committee of the Board of Directors," dated May 19, 2016.

21. Document titled "Banc of California Enterprise Anti-Money Laundering (AML) Financial Intelligence (FININT) Operations Standard Form_SAR Narrative Initial 2-2016_Approved for Use," referencing an account "in the name of MKA Real Estate Opportunity Fund LTD, Brian Walter Wagoner, and George Clifford Baker (produced by Winston & Strawn at W&S_BOC_00022574).

22. Untitled document that begins "Banc of California, NA ("Bank") initiated an investigation of the banking activity of Bank customers Hugh D. Dunkerley (Dunkerley), COR Fund Advisors, LLC (CORFA) and Thorsdale Fiduciary and Guaranty Company, LTD (Thorsdale)….," (produced by Winston & Strawn at W&S_BOC_00006520).

US-DOCS\103706566.5

EXHIBIT 8
PAGE 195

November 5, 2018
Page 3

**LATHAM&WATKINS**LLP

23. Email from John Grosvenor to Matthew Guest and Steven Sugarman, on October 18, 2016 at around 1:53 pm, with the subject line "Re: Are you available for a call?," and all additional emails in this email string (*e.g.*, forwards or replies).

24. Email from Chad Brownstein to Steven Sugarman and John Grosvenor, on October 18, 2016 at around 12:15 pm, with the subject line "lets have a call" (produced by Wilmer Hale at WH-BANC-SEC-003697) and all additional emails in this email string (*e.g.*, forwards or replies).

25. Email from Chad Brownstein to David Aronoff, John Grosvenor, and Steven Sugarman, on October 18, 2016 at around 4:36 pm, with the subject line "RE: RE:"(produced from Winston & Strawn at W&S_BOC_00004064-66) and all additional emails in this email string (*e.g.,* forwards or replies).

26. Email from Chad Brownstein to Rachel Fisher, Jeff Karish, Jonah Schnel, Eric Holoman, Robert Sznewajs, Halle Benett, Cynthia Abercrombie, Steven Sugarman, John Grosvenor, and Angelee Harris, on October 18, 2016 at around 3:06 pm, with the subject line "RE: Special (Telephonic) Board Meeting Tonight") (produced by Wilmer Hale at WH-BANC-SEC-003576) and all additional emails in this email string (*e.g.*, forwards or replies).

27. Email from Chad Brownstein to John Grosvenor, Scott Fishwick, David Aronoff, Steven Sugarman, and Sallie Hofmeister, on October 18, 2016 at around 6:25 pm, with the subject line "RE: RE: RE: RE:" (produced by Winston & Strawn at W&S_BOC_00004042) and all additional emails in this email string (*e.g.*, forwards or replies).

28. Email from Steven Sugarman to Francisco Turner, Hugh Boyle, Terrin Enssle, Brian Kuelbs, Jim McKinney, and John Grosvenor, on October 18, 2016 at around 2:28 pm, with the subject line "Re: Contingent Funding Plan – Activation," and all additional emails in this email string (*e.g.*, forwards or replies).

29. Emails between Steven Sugarman to Tim Sedabres, Francisco Turner, Angelee Harris, Matt Guest, David Aronoff, Hugh Boyle, and John Grosvenor, on October 18, 2016 at around 2:59 pm, with the subject line "draft PR" (produced by Winston & Strawn at W&S_BOC_00004137-38 and W&S_BOC_00008426 and W&S_BOC_00002718) and all additional emails in this email string (*e.g.*, forwards or replies).

30. Transcript of Banc of California, Inc.'s FQ03 2016 Earnings Call, occurring on October 19, 2016, all versions of Mr. Grosvenor's statements for that call (including the final version he used during the call), and all emails to and from Mr. Grosvenor regarding his draft and final statement including any emails sent to himself or to a family member.

US-DOCS\103706566.5

EXHIBIT 8
PAGE 196

LATHAM&WATKINSᴸᴸᴾ

31. Document titled "Banc of California, Inc. Presentation of Findings of the Special Committee of Independent Directors," dated February 2017 (produced by Wilmer Hale at WH-BANC-SEC-000021) and emails attaching such document or any version of such document.

32. Email from David Aronoff to Steven Sugarman, Tim Sedabres, Francisco Turner, John Grosvenor, and Matt Guest on October 18, 2016 at around 3:36 pm, with the subject line "no subject," and all additional emails in this email string (*e.g.*, forwards or replies).

33. Email from Steven Sugarman to Greg Garrabrants and David Aronoff on October 18, 2016 at around 2:22 pm, with the subject line "Re: If you," and all additional emails in this email string (*e.g.*, forwards or replies).

34. Email from Steven Sugarman to Hugh Boyle and Gary Kausmeyer, copying John Grosvenor, David Aronoff and Jeff Seabold on May 11, 2016 at around 10:55 am with the subject line "AC PRIV," (produced by Winston & Strawn at W&S_BOC_00004688-89), and all additional emails in this email string (*e.g.*, forwards or replies)

35. Emails between or among Gaylin Anderson, Steven Sugarman, Jeff Seabold, Hugh Boyle, Fran Turner, and Carlos Salas on October 18, 2016, with the subject line "Lanco Account $26MM," and all additional emails in this email string (*e.g.*, forwards or replies).

36. Emails between Terrin Enssle, Hugh Boyle, Steven Sugarman, Fran Turner, Jeff Seabold and John Grosvenor, among others, on October 19, 2016 with the subject line "Contingency Funding Plan – Updated EOD 10/19/16," and all additional emails in this email string (*e.g.*, forwards or replies).

37. Emails between or among David Aronoff and John Grosvenor on October 19, 2016, with the subject line "Proposed Introductory Remarks" (produced by Winston & Strawn at W&S_BOC_00009528, W&S_BOC_00009523, and W&S_BOC_00003936), and all additional emails in this email string (*e.g.*, forwards or replies).

38. Email from David Aronoff to John Grosvenor on October 23, 2016, at around 8:32 am, with the subject line "AC Privilege" (produced by Winston & Strawn at W&S_BOC_00009109) and all additional emails in this email string (*e.g.*, forwards or replies).

39. Email from Halle Benett sent in late December 2016 in which he addresses the representations made in his December 15, 2016 email, which was previously produced by Banc at BOC_000462316-319, and all additional emails in the string (*e.g.*, forwards or replies).

40. Email from John Grosvenor to Chad Brownstein, Jeff Karish, Jonah Schnel,

US-DOCS\103706566.5

EXHIBIT 8
PAGE 197

November 5, 2018
Page 5

**LATHAM&WATKINS**LLP

Robert Sznewajs, Eric Holoman, Steven Sugarman, Cynthia Abercrombie, and
Angelee Harris, on January 4, 2017, at around 2:06 pm, with the subject line
"PRIVILEGED AND CONFIDENTIAL: Halle Benett." and all additional emails
in this email string (*e.g.*, forwards or replies), including, but not limited to the
reply emails from Steven Sugarman on January 4, 2017 at around 7:15pm, the
reply email from Angelee Harris on January 5, 2017 at around 11:03 am, the reply
email from John Grosvenor on January 5, 2017 at around 11:09 am, and the reply
email from Angelee Harris on January 6, 2017 at around 12:52 pm.

Please produce these documents, and the documents responsive to our prior requests
numbered 8 and 13 by November 12.

Sincerely,

Andrew R. Gray
of LATHAM & WATKINS LLP

US-DOCS\103706566.5

EXHIBIT 8
PAGE 198

**EXHIBIT 9**

LATHAM & WATKINS LLP
  Manny A. Abascal (Bar No. 171301)
  *manny.abascal@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Tel:  (213) 485-1234
Fax:  (213) 891-8763

LATHAM & WATKINS LLP
  Michele D. Johnson (Bar No. 198298)
  *michele.johnson@lw.com*
  Andrew R. Gray (Bar No. 254594)
  *andrew.gray@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
Tel:  (714) 540-1235
Fax:  (714) 755-8290

Attorneys for Defendants
Steven A. Sugarman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BANC OF CALIFORNIA SECURITIES LITIGATION | CASE NO. SACV 17-00118 AG (DFMx) consolidated with SACV 17-00138 AG (DFMx) |
| | **DEFENDANT STEVEN A. SUGARMAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT BANC OF CALIFORNIA** |
| This Document Relates to: ALL ACTIONS | Judge:      Hon. Andrew J. Guilford Courtroom:   10D Trial Date:   October 22, 2019 |

US-DOCS\95332007.3

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 199

PROPOUNDING PARTY:       Defendant Steven A. Sugarman

RESPONDING PARTY:       Defendant Banc of California

SET NUMBER:              One

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Steven A. Sugarman hereby requests that, within thirty (30) days of service, Defendant Banc of California ("Banc") produce the documents, electronically stored information, and tangible things specified herein at the offices of Latham & Watkins LLP, c/o Michele D. Johnson, Esq., 650 Town Center Drive, 20th Floor, Costa Mesa, California 92626-1925.  Such production should be made in accordance with the "DEFINITIONS" and "INSTRUCTIONS" set forth below.

These document requests incorporate by reference all definitions and rules of construction set forth in Rule 34 of the Federal Rules of Civil Procedure and supplement them with the following definitions and instructions, which apply to each Request set forth herein.

**<u>DEFINITIONS</u>**

1.      "Affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.

2.      "And" and "or" shall be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or request all responses that might otherwise be construed to be outside of its scope by any other construction.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      "Audit Committee" shall mean the Audit Committee of the BOARD.

5.      As used herein, "Aurelius" shall mean the author listed on the byline of the blog post entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible," posted on the website *SeekingAlpha.com* on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
US-DOCS\95332007.3

2

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 200

1    October 18, 2016.

2         6.      "Banc," "you," or "your" shall collectively refer to Defendant Banc of

3    California, Inc., Banc of California, N.A., and, without limitation, its predecessors,

4    successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals,

5    trustees, agents, representatives, consultants, attorneys, or any other person acting

6    on their behalf.  As used herein, "you" and "your" shall be construed either

7    disjunctively or conjunctively, to include Banc of California, Inc. individually as

8    well as collectively with Banc of California, N.A. or any other affiliate, and as

9    necessary by the context, to bring within the scope of the definition, instruction, or

10   request all responses that might otherwise be construed to be outside of its scope

11   by any other construction.

12        7.      "Board" or "Boards" shall mean collectively the Board of Directors of

13   Banc of California, Inc. and Banc of California, N.A.

14        8.      As used herein, "Blog" refers to the blog post entitled "BANC:

15   Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible,"

16   posted on the website *SeekingAlpha.com* by "Aurelius" on October 18, 2016.

17        9.      As used herein, "Communication" or "communications" shall mean

18   the transmittal of information (in the form of facts, ideas, inquiries, or otherwise)

19   in any form, including without limitation e-mail, text message, and letters

20   (including attachments).

21        10.     As used herein, "CONCERNING" means relating to, referring to,

22   describing, evidencing, or constituting.

23        11.     As used herein, "Document" or "documents" is defined to mean all

24   documents, electronically stored information, and tangible things in the broadest

25   sense under Rule 34 of the Federal Rules of Civil Procedure, and shall mean

26   anything that can be read, viewed, heard, or otherwise understood.  Subject to and

27   in accordance with the Instructions herein, "document" shall not be limited in any

28   way with respect to medium, embodiment, or process of creation, generation, or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

3

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 201

1   reproduction; "document" shall include, without limitation, all preliminary,

2   intermediate, and final versions thereof, as well as any notations, comments, and

3   marginalia (handwritten or otherwise) appearing thereon or therein; "document"

4   shall include originals (or high quality duplicates), all non-identical copies or

5   drafts, and all attachments, exhibits, or similar items.  Any document bearing on

6   any sheet or side thereof, any marks, including, without limitation, initials,

7   notations, comments, or marginalia of any character which are not part of the

8   original text or reproduction thereof, shall be considered a separate document.

9   Document or documents shall include without limitation any and all

10  Communications.

11       12.   "Dominion" shall mean the Dominion Advisory Group and, without

12  limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions,

13  directors, officers, principals, trustees, agents, representatives, consultants,

14  attorneys, or any other person acting on their behalf.

15       13.   As used herein, "Electronic data" refers to any original and any non-

16  identical copies (whether non-identical because of notes made on copies or

17  attached comments, annotations, marks, transmission notations, or highlighting of

18  any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs

19  (whether private, commercial, or work-in-progress), programming notes or

20  instructions, activity listings of electronic mail or "e-mail" receipts or transmittals,

21  output resulting from the use of any software program, including word processing

22  documents, spreadsheets, database files, charts, graphs, and outlines, electronic

23  mail, operating systems, source code of all types, programming languages, linkers

24  and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files,

25  crosswalks, code keys, pull down tables, logs, file layouts, or any miscellaneous

26  files or file fragments, regardless of the media on which they reside and regardless

27  of whether said electronic data consists of an active file, backup file, deleted file,

28  or file fragment.  "Electronic data" also includes, without limitation, any items

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

4

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 202

1  stored on computer memory or memories, hard drives, zip drives, CD-ROM discs

2  or in any other vehicle for electronic or digital data storage or transmittal, files,

3  folder tabs, or containers and labels appended to or associated with any physical

4  storage device associated with each original and each copy.

5        14.    "Evidence, refer, reflect, or relate to" and similar terms, used together

6  or alone, shall mean all information, facts, or documents that directly, indirectly, or

7  in any other way support, concern, negate, bear upon, touch upon, incorporate,

8  affect, include, pertain to, or are otherwise connected with the subject matter about

9  which the request is made.

10       15.    "FRB" shall mean the Federal Reserve Board, including all present or

11  former officers, directors, employees, agents, attorneys, advisors, accountants,

12  consultants, and all other persons acting or purporting to act on its behalf.

13       16.    "Galanis" shall mean Jason W. Galanis and any of his agents,

14  representatives, consultants, attorneys, or any other person acting on his behalf.

15       17.    "Alleged Galanis Entity" shall mean Gerova Financial Group, Ltd.,

16  Hughes Capital Management, LLC, Atlantic Asset Management LLC, Burnham

17  Securities, Inc., Burnham Financial Group, Burnham Asset Management

18  Corporation, BAM Holdings, LLC, Thorsdale Fiduciary and Guaranty Company

19  Ltd., Valor Group Ltd., Valorlife, Wealth Assurance Holdings Ltd., Wealth-

20  Assurance AG, Wealth Assurance Private Client Corporation, Valorlife

21  Lebensversicherungs AG, Holmby Capital Group, IP Global Investors Ltd.,

22  Prospect Global Resources, Inc., Private Equity Management LLC, Malaga Asset

23  Management, LLC, Stanwich Absolute Return, Ltd., Bel Air LLC, Emerging

24  Markets Global Hedge Ltd., Little Giggles LLC, Galanis Family Trust, Rosemont

25  Seneca Bohai LLC, BOE Capital LLC, BFG Socially Responsible Investing

26  Limited, GMT Duncan LLC, COR Fund Advisors, and COR International,

27  including, without limitation, any of their predecessors, successors, parents,

28  subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

5

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 203

1    representatives, consultants, attorneys, or any other person acting on their behalf.

2    Nothing in this definition shall admit, concede, or suggest that Jason Galanis had

3    any control over such entities.

4         18.    "Governance Committee" shall mean the Banc's Joint Compensation,

5    Nominating and Corporate Governance Committee.

6         19.    "Investigations" shall mean the WilmerHale Investigation and the

7    Winston & Strawn Investigation, collectively.

8         20.    "KPMG" shall mean KPMG US LLP and, without limitation, its

9    predecessors, successors, parents, subsidiaries, affiliates, divisions, directors,

10   officers, principals, trustees, agents, representatives, consultants, attorneys, or any

11   other person acting on their behalf.

12        21.    "OCC" shall mean the Office of the Comptroller of the Currency,

13   including all present or former officers, directors, employees, agents, attorneys,

14   advisors, accountants, consultants, and all other persons acting or purporting to act

15   on its behalf.

16        22.    "PCAOB" shall mean the Public Company Accounting Oversight

17   Board, including all present or former officers, directors, employees, agents,

18   attorneys, advisors, accountants, consultants, and all other persons acting or

19   purporting to act on its behalf.

20        23.    "Person" shall mean any natural person or any legal entity, including,

21   without limitation, any business or governmental entity or association.

22        24.    "Purchase or sell" shall mean purchase, sell, trade, convert, otherwise

23   acquire, or otherwise dispose, whether for your own account or benefit, or for the

24   account or benefit of any other person.

25        25.    "SEC" shall mean the United States Securities and Exchange

26   Commission, including all present or former officers, directors, employees, agents,

27   attorneys, advisors, accountants, consultants, and all other persons acting or

28   purporting to act on its behalf.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

6

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 204

26.     "Securities" shall have the meaning set forth in the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

27.     "SOX" shall mean the Sarbanes-Oxley Act of 2002 (Pub.L. 107-204, 116 Stat. 745, enacted July 30, 2002), and any regulations promulgated thereunder.

28.     "Special Committee" shall mean the committee of Banc directors formed after the October 18, 2016 Blog post which retained WilmerHale.

29.     "Sugarman" shall mean Steven A. Sugarman and any of his agents, representatives, consultants, attorneys, or any other person acting on his behalf.

30.     "This action" shall mean the present lawsuit, *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 AG (DFMx), pending in the United States District Court for the Central District of California.

31.     "Transactions" shall mean any purchases, acquisitions, sales, dispositions, tenders, donations, receipt, gifts, transfers, puts, call, short sales, or any other means by which you, whether for your own account or benefit or for the account or benefit of any other person, acquired or disposed of any interest in securities.

32.     "WilmerHale" shall mean the law firm WilmerHale, and, without limitation, its predecessors, successors, parents, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, agents, representatives, consultants, attorneys, or any other person acting on their behalf.

33.     "WilmerHale Investigation" shall mean the Banc's investigation, initiated by the Special Committee, led by WilmerHale initiated on or around October 30, 2016.

34.     "Winston & Strawn Investigation" shall mean the Banc's investigation led by Winston & Strawn initiated in October 2015.

35.     "Workplace Misconduct" shall include any and all forms of director, officer, or employee misconduct, including fraud; conflicts of interest; breaches of duties; failures to disclose; accounting errors; misstatements; or fraud; improper or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

7

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 205

1   offshore financial transactions; alcohol or drug use; ownership or interests in

2   organizations that sell drugs or other illicit merchandise; insider trading; sexual

3   harassment or related misconduct; or other violations of BANC policies and

4   procedures.

5       36.   The use of the singular form of any word shall include the plural form

6   of the same and vice versa.

7   **INSTRUCTIONS**

8       1.    The requests herein cover all documents within your possession,

9   custody, or control, regardless of whether they are currently in your possession,

10  including, but not limited to, all documents within the possession, custody, or

11  control of persons acting on your behalf or at your instruction.  For any requested

12  document no longer in your possession, custody, or control, state what disposition

13  was made of the document and the date of such disposition and identify all persons

14  having knowledge of the document's contents.  For any requested document that

15  has been destroyed, state what document has been destroyed, when the document

16  was destroyed, why it was destroyed, and all persons who participated in or were

17  involved in the decision to destroy.

18      2.    All documents shall be produced:  (a) as they are kept in the ordinary

19  course of business, complete with the original file folders, binders, containers, or

20  other devices in which they are stored (or legible copies of the labels or other

21  identifying information from those folders, binders, containers, or devices), or

22  (b) organized according to the request to which they respond.  If you elect the latter

23  mode of production, each document from a particular file, binder, container, or

24  other device shall be accompanied by a legible copy of the label or other

25  identifying information from that, file, binder, container, or device or some other

26  reliable indicator of the location, file, binder, container, or device from which it

27  was taken.

28      3.    All documents that are in paper form or that constitute other physical

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

8

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 206

1   objects from which information may be visually read or viewed, as well as audio or

2   video tapes and similar recordings, shall be produced in their original form or in

3   copies that are exact duplicates of the originals.

4          4.      All electronic documents or other Electronically Stored Information

5   ("ESI") shall be produced as single-page, Group IV, 300 DPI TIFF images with the

6   exception of audio, video, slideshow presentation-type files including, but not

7   limited to, Microsoft PowerPoint, and spreadsheet-type files including, but not

8   limited to Microsoft Excel, which should be produced in native format.  All ESI

9   should be produced with a delimited, database load file that includes metadata—

10  the parties shall meet and confer to determine the appropriate metadata fields to

11  include.  An .opt image cross-reference file should also be provided for all TIFF

12  images.  TIFF images should show any and all text and images which would be

13  visible to the reader using the native software that created the document.  For

14  example, TIFF images of e-mail messages should include the BCC line.  If a

15  document is produced in native format, a single-page Bates-stamped TIFF image

16  slip-sheet containing text stating the document has been produced in native format

17  should also be provided.  Each native file should be named according to the Bates

18  number it has been assigned, and should be linked directly to its corresponding

19  record in the load file using the NATIVELINK field.  Removal of duplicate

20  documents should only be done on exact duplicate documents (based on MD5 or

21  SHA-1 hash values, at the family level).  Attachments should not be eliminated as

22  duplicates for purposes of production, unless the parent e-mail and all attachments

23  are also duplicates.  An email that includes content in the BCC or other blind copy

24  field should not be treated as a duplicate of an email that does not include content

25  in those fields, even if all remaining content in the e-mail is identical.  Removal of

26  near-duplicate documents and email thread suppression is not acceptable.  The

27  documents should be produced on CD-ROM, DVD, external hard drive (with

28  standard PC compatible interface), File Transfer Protocol (for document

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

9

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 207

1  production under 10GB), or such other readily accessible computer or electronic

2  media as the parties may hereafter agree upon.

3       5.     If you object to any portion of any request herein, identify the portion

4  of a request to which you object, state the reason for your objection with

5  specificity, and answer the remainder of the request.  If any request calls for a

6  document or communication for which you claim any privilege or work product

7  protection for all or any portion of such document or communication, provide a

8  privilege log containing the information required by Rule 26(b)(5)(A) of the

9  Federal Rules of Civil Procedure.

10       6.     The requests herein are continuing so that any additional documents

11  responsive to the requests herein that you acquire or discover, up to and including

12  the time of trial, shall be furnished through prompt supplemental responses.  Fed.

13  R. Civ. P. 26(e).  This paragraph shall not be construed to alter your obligations to

14  comply with all other instructions herein.

15       7.     Unless otherwise specified, the requests cover the time period

16  September 2015 to the present.

17                 **REQUESTS FOR PRODUCTION**

18  REQUEST FOR PRODUCTION NO. 1:

19       All DOCUMENTS which refer, reflect, or relate to Mr. Sugarman's

20  biography as published in the Banc's April 15, 2016 Proxy Statement, including

21  without limitation all DOCUMENTS CONCERNING the drafting of the Proxy

22  Statement.

23  REQUEST FOR PRODUCTION NO. 2:

24       All DOCUMENTS which refer, reflect, or relate to materials that were used

25  by YOU or anyone else to prepare the Banc's April 15, 2016 Proxy Statement.

26  REQUEST FOR PRODUCTION NO. 3:

27       All DOCUMENTS which refer, reflect or relate to the WINSTON &

28  STRAWN INVESTIGATION.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

10

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 208

REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS which refer, reflect or relate to WILMERHALE or the WILMERHALE INVESTIGATION.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS provided, sent, or made available to the SEC or any other government agency in connection with any of the INVESTIGATIONS.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS which refer, reflect or relate to statements made by John Grosvenor on YOUR October 19, 2016 Q3 investor call relating to any of the INVESTIGATIONS.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS which refer, reflect or relate to statements, interviews, testimony, or depositions given by John Grosvenor CONCERNING the INVESTIGATIONS, the BLOG, AURELIUS or MR. SUGARMAN's employment.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS which refer, reflect or relate to statements, interviews, or depositions given by any member of the SPECIAL COMMITTEE in connection with any of the INVESTIGATIONS, the BLOG, AURELIUS, or MR. SUGARMAN'S employment.

REQUEST FOR PRODUCTION NO. 9:

All DOCUMENTS which refer, reflect or relate to the SPECIAL COMMITTEE.

REQUEST FOR PRODUCTION NO. 10:

All DOCUMENTS which refer, reflect or relate to meetings of YOUR BOARDs CONCERNING or at which any of the following matters were discussed:  the INVESTIGATIONS, WILMERHALE, WINSTON & STRAWN, SPECIAL COMMITTEE, MR. SUGARMAN's EMPLOYMENT, BLOG,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

11

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 209

1   AURELIUS, GALANIS, any GALANIS ENTITY, any allegations of

2   WORKPLACE MISCONDUCT by any member of management or any director,

3   or internal controls.

4   REQUEST FOR PRODUCTION NO. 11:

5        All DOCUMENTS which refer, reflect or relate to the GOVERNANCE

6   COMMITTEE of YOUR BOARD, including without limitation concerning any

7   GOVERNANCE COMMITTEE meetings from October 2015 to February 2016.

8   REQUEST FOR PRODUCTION NO. 12:

9        All DOCUMENTS which refer, reflect or relate to whether, when and for

10   how long members of the GOVERNANCE COMMITTEE accessed

11   GOVERNANCE COMMITTEE meetings materials, including without limitation

12   Onehub.com and BoardVantage access logs for online documents reflecting

13   whether the materials were read, by whom, and if so for how long.

14   REQUEST FOR PRODUCTION NO. 13:

15        All DOCUMENTS which refer, reflect or relate to whether, when and for

16   how long members of the SPECIAL COMMITTEE accessed SPECIAL

17   COMMITTEE meetings materials, including without limitation Onehub.com and

18   BoardVantage access logs access logs for online documents reflecting whether the

19   materials were read, by whom, and if so for how long.

20   REQUEST FOR PRODUCTION NO. 14:

21        All DOCUMENTS which refer, reflect or relate to whether, when and for

22   how long members of the BOARDS accessed BOARD meetings materials for the

23   time period October 17, 2016 to January 30, 2017, including without limitation

24   Onehub.com and BoardVantage access logs access logs for online documents

25   reflecting whether the materials were read, by whom, and if so for how long.

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

12

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 210

REQUEST FOR PRODUCTION NO. 15:

All DOCUMENTS which refer, reflect or relate to self-assessments, surveys, or reviews of the performance of YOUR BOARDs, the SPECIAL COMMITTEE, or the GOVERNANCE COMMITTEE.

REQUEST FOR PRODUCTION NO. 16:

All DOCUMENTS which refer, reflect or relate to compensation (including CAMELS and KPIs) for members of YOUR BOARDs, including disclosure to investors of such compensation and whether such disclosures accurately reflected changes to such compensation.

REQUEST FOR PRODUCTION NO. 17:

All DOCUMENTS which refer, reflect or relate to draft minutes, changes to minutes, and final minutes of meetings of the following:  (a) YOUR BOARDs, (b) the SPECIAL COMMITTEE, or (c) the Audit Committees, for meetings that occurred during the time period October 1, 2016 to February, 2017.

REQUEST FOR PRODUCTION NO. 18:

All DOCUMENTS which refer, reflect or relate to draft minutes, changes to minutes, and final minutes of meetings of the GOVERNANCE COMMITTEE that occurred during the time period October 1, 2015 to February, 2017.

REQUEST FOR PRODUCTION NO. 19:

All DOCUMENTS which refer, reflect or relate to GALANIS.

REQUEST FOR PRODUCTION NO. 20:

All DOCUMENTS which refer, reflect or relate to any GALANIS ENTITY.

REQUEST FOR PRODUCTION NO. 21:

All DOCUMENTS which refer, reflect or relate to DOMINION, including COMMUNICATIONS with DOMINION and work performed by DOMINION

REQUEST FOR PRODUCTION NO. 22:

All DOCUMENTS which refer, reflect or relate to employee COMMUNICATIONS, including without limitation Town Hall videos, letters and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

13

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 211

1   e-mails, CONCERNING the INVESTIGATIONS, the BLOG, AURELIUS, MR.

2   SUGARMAN, securities disclosures, material weaknesses, internal controls, tone

3   at the top, or the internal audit function.

4   REQUEST FOR PRODUCTION NO. 23:

5          All DOCUMENTS which refer, reflect or relate to any material weaknesses

6   identified or disclosed.

7   REQUEST FOR PRODUCTION NO. 24:

8          All DOCUMENTS which refer, reflect or relate to YOUR bonus accruals

9   for the calendar or fiscal year 2016.

10   REQUEST FOR PRODUCTION NO. 25:

11          All DOCUMENTS which refer, reflect or relate to YOUR accounting for

12   Class B share valuation.

13   REQUEST FOR PRODUCTION NO. 26:

14          All DOCUMENTS which refer, reflect or relate to YOUR tax reporting to

15   employees for bonuses and Class B shares.

16   REQUEST FOR PRODUCTION NO. 27:

17          All DOCUMENTS which refer, reflect or relate to YOUR review, collection

18   of information, or analysis of related parties for the purpose of making any related

19   party disclosures, including without limitation all DOCUMENTS CONCERNING

20   Directors and Officers questionnaires for all members of the BOARDS.

21   REQUEST FOR PRODUCTION NO. 28:

22          All DOCUMENTS which refer, reflect or relate to any disclosures regarding

23   any children of Director Robert Sznewajs.

24   REQUEST FOR PRODUCTION NO. 29:

25          All DOCUMENTS which refer, reflect or relate to any disclosures regarding

26   Melody Capital Management, LLC, Melody Capital Partners, LP, Melody Capital

27   Management, LLC, or any of their respective AFFILIATES.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

14

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 212

REQUEST FOR PRODUCTION NO. 30:

All DOCUMENTS which refer, reflect or relate to any of YOUR business relationships with, potential conflict of interest with, or disclosures concerning, the following firms or any AFFILIATES thereof:  Opes Advisors Inc.; Flagstar Bancorp, Inc.; Richard Merkin; any entity owned, controlled or managed by Mr. Merkin; Keefe, Bruyette & Woods, Inc.; Digitial Turbine; Stifel Financial Corp.; Impac Mortgage Corp.; or CashCall Mortgage.

REQUEST FOR PRODUCTION NO. 31:

All DOCUMENTS which refer, reflect or relate to any leave of absence or disciplinary action taken against any employee of KPMG.

REQUEST FOR PRODUCTION NO. 32:

All DOCUMENTS which refer, reflect or relate to any conflict of interest, or other violation of KPMG policies or procedures, by any employee of KPMG.

REQUEST FOR PRODUCTION NO. 33:

All DOCUMENTS which refer, reflect or relate to COMMUNICATIONS between KPMG and Carlos Salas.

REQUEST FOR PRODUCTION NO. 34:

All DOCUMENTS which refer, reflect or relate to COMMUNICATIONS with KPMG relating to the INVESTIGATIONS, GALANIS, MR. SUGARMAN, internal controls, disclosures, or any WORKPLACE MISCONDUCT for the time period October 17, 2016 to the present.

REQUEST FOR PRODUCTION NO. 35:

All DOCUMENTS which refer, reflect or relate to any deficiencies or failures found during any PCAOB audit of YOUR auditors.

REQUEST FOR PRODUCTION NO. 36:

All DOCUMENTS which refer, reflect or relate to any deficiencies or failures found during any Internal Audit review.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

15

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 213

REQUEST FOR PRODUCTION NO. 37:

For the time period January 1, 2015 to the present, all DOCUMENTS which refer, reflect, or relate to instances, allegations, investigations, or findings of WORKPLACE MISCONDUCT, whistleblower complaints, threatened or actual litigation, settlement demands, SOX deficiencies, or third party complaints, by or against any member of YOUR BOARD, senior management team (including Doug Bowers, Hugh Boyle, Francisco Turner), or legal department employees (including John Grosvenor, Angelee Harris, Marisa Merchant), including without limitation allegations, reports or investigations concerning:  (a) Halle Benett's employment, (b) Jeffrey Karish's employment and alleged frauds, (c) conflicts of interest arising from Robert Sznewajs' children, (d) WORKPLACE MISCONDUCT by Francisco Turner, or (e) third party investigations commissioned or directed by Hugh Boyle.

REQUEST FOR PRODUCTION NO. 38:

All DOCUMENTS which refer, reflect or relate to any separation, resignation, release or other employment agreement with Francisco Turner, including without limitation any undisclosed or confidential side letters or other agreements or understandings regarding indemnity or advancement of legal fees.

REQUEST FOR PRODUCTION NO. 39:

All DOCUMENTS that refer, reflect or relate to Mr. Sugarman's employment and resignation for the time period October 1, 2016 to the present, including without limitation any COMMUNICATIONS with Mr. Holoman and Ms. Abercrombie on this topic.

REQUEST FOR PRODUCTION NO. 40:

All DOCUMENTS which refer, reflect, or relate to COMMUNICATIONS, solicitations, advertisements, or other efforts to recruit third parties to apply to be YOUR Chief Executive Officer.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

16

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 214

1    REQUEST FOR PRODUCTION NO. 41:

2        All COMMUNICATIONS between any member of YOUR BOARDS and

3    Heather Endreson, including any recordings thereof.

4    REQUEST FOR PRODUCTION NO. 42:

5        All DOCUMENTS which refer, reflect or relate to any investigation or

6    report relating to Heather Endreson.

7    REQUEST FOR PRODUCTION NO. 43:

8        All COMMUNICATIONS between any member of YOUR BOARDS and

9    Michael Gelormino.

10   REQUEST FOR PRODUCTION NO. 44:

11       All DOCUMENTS which refer, reflect or relate to any investigation or

12   report relating to Michael Gelormino.

13   REQUEST FOR PRODUCTION NO. 45:

14       All notebooks and notes in YOUR possession authored by Michael

15   Gelormino.

16   REQUEST FOR PRODUCTION NO. 46:

17       All COMMUNICATIONS which refer, reflect or relate to David Park and

18   also refer, reflect or relate to any allegation, investigation or report relating to

19   Workplace Misconduct.

20   REQUEST FOR PRODUCTION NO. 47:

21       All DOCUMENTS which refer, reflect or relate to YOUR public disclosures

22   CONCERNING the BLOG, the INVESTIGATIONS, GALANIS, Mr. Sugarman,

23   the SPECIAL COMMITTEE, control deficiencies, or the compositions of YOUR

24   BOARDS (including those relating to Mr. Benett's service on and reelection to the

25   BOARD).

26   REQUEST FOR PRODUCTION NO. 48:

27       All DOCUMENTS, including COMMUNICATIONS, with Abernathy

28   Macgregor from October 2016 to the present.

LATHAM&WATKINS LLP   US-DOCS\95332007.3
ATTORNEYS AT LAW
ORANGE COUNTY

17

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 215

1  REQUEST FOR PRODUCTION NO. 49:

2      All DOCUMENTS which refer, reflect or relate to Vectis Strategies from

3  January 1, 2017 to present.

4  REQUEST FOR PRODUCTION NO. 50:

5      All DOCUMENTS which refer, reflect or relate to Eric Holoman's service

6  as a member of the or any subcommittee thereof, including without limitation

7  CONCERNING his decision to resign from any such positions.

8  REQUEST FOR PRODUCTION NO. 51:

9      All DOCUMENTS which refer, reflect or relate to Cynthia Abercrombie's

10  service as a member of YOUR BOARD or any subcommittee thereof, including

11  without limitation CONCERNING her decision to resign from any such positions.

12  REQUEST FOR PRODUCTION NO. 52:

13      All DOCUMENTS which refer, reflect or relate to any consideration by

14  YOU or YOUR BOARDS regarding the making or filing of any complaint,

15  allegation or grievance relating to PL Capital, LLC.

16  REQUEST FOR PRODUCTION NO. 53:

17      All DOCUMENTS which refer, reflect or relate to any suspected or actual

18  suspicious activities by PL Capital, LLC, including without limitation relationships

19  with offshore individuals and entities, sources of capital, and relationships to

20  individuals or entities accused, suspected, or convicted of fraud.

21  REQUEST FOR PRODUCTION NO. 54:

22      All COMMUNICATIONS between any member of YOUR BOARD, on the

23  one hand, and any employee, agent or representative of PL Capital, LLC, on the

24  other hand.

25  REQUEST FOR PRODUCTION NO. 55:

26      All COMMUNICATIONS between any member of YOUR BOARD, on the

27  one hand, and any employee, agent or representative of Patriot Capital, on the

28  other hand.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

18

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 216

1    REQUEST FOR PRODUCTION NO. 56:

2        All COMMUNICATIONS between any member of YOUR BOARD, on the

3    one hand, and any employee, agent or representative of Basswood Capital

4    Management LLC, on the other hand.

5    REQUEST FOR PRODUCTION NO. 57:

6        All COMMUNICATIONS between any member of YOUR BOARD, on the

7    one hand, and any employee, agent or representative of Wellington Management,

8    on the other hand.

9    REQUEST FOR PRODUCTION NO. 58:

10       All COMMUNICATIONS between any member of YOUR BOARD, on the

11   one hand, and any employee, agent or representative of Endicott Management

12   Company, on the other hand.

13   REQUEST FOR PRODUCTION NO. 59:

14       All DOCUMENTS which refer, reflect or relate to any relationship,

15   association or affiliation between Jeffrey Karish and any of the following

16   individuals or entities or affiliates thereof:  Mark Burnett, Terry Semel, Greg

17   Garrabrants, Digitial Turbine (APPS) or any other person or entity associated with

18   the BLOG, AURELIUS, or WILMERHALE.

19   REQUEST FOR PRODUCTION NO. 60:

20       All DOCUMENTS which refer, reflect or relate to any disclosures or

21   potential disclosures relating to NCM Holdings, LLC or any AFFILIATE of NCM

22   Holdings, LLC.

23   REQUEST FOR PRODUCTION NO. 61:

24       All DOCUMENTS which refer, reflect or relate to any disclosures or

25   potential disclosures relating to NCM Fund Management or any AFFILIATE of

26   NCM Fund Management.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

19

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 217

REQUEST FOR PRODUCTION NO. 62:

All DOCUMENTS which refer, reflect or relate to any allegations of misconduct by, or disclosures or potential disclosures relating to, Michael Santulli or any AFFILIATE of Michael Santulli.

REQUEST FOR PRODUCTION NO. 63:

All DOCUMENTS which refer, reflect or relate to Reed Dickens, including without limitation CONCERNING the GOVERNANCE COMMITTEE, the AUDIT COMMITTEE, Bloomberg News, or KPMG, from October 1, 2015 to present.

REQUEST FOR PRODUCTION NO. 64:

All DOCUMENTS which refer, reflect, or relate to any investigation of the identity of AURELIUS.

REQUEST FOR PRODUCTION NO. 65:

All DOCUMENTS which refer, reflect, or relate to memoranda prepared by Michelman & Robinson CONCERNING YOUR BOARD, the INVESTIGATIONS, or MR. SUGARMAN.

REQUEST FOR PRODUCTION NO. 66:

All DOCUMENTS which refer, reflect, or relate to allegations in the *Seabold v. Banc of California, Inc.*, et al. Complaint, Case No. BC674694, filed in the Superior Court of the State of California, County of Los Angeles.

REQUEST FOR PRODUCTION NO. 67:

All DOCUMENTS which refer, reflect, or relate to allegations in the *Salas v. Banc of California, Inc.*, et al. Complaint, Case No. BC672208, filed in the Superior Court for the State of California, County of Los Angeles.

REQUEST FOR PRODUCTION NO. 68:

All DOCUMENTS which refer, reflect or relate to the employment, potential employment, retention as a consultant or potential retention as a consultant, and termination of Carlos Salas.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

20

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 218

REQUEST FOR PRODUCTION NO. 69:

All DOCUMENTS which refer, reflect or relate to the employment, potential employment, retention as a consultant or potential retention as a consultant, and termination of Jeffrey Seabold.

FREQUEST FOR PRODUCTION NO. 70:

All DOCUMENTS which refer, reflect, or relate to the terminations of Raquel Gillette, Teddy Nichols, or Heather Endresen.

REQUEST FOR PRODUCTION NO. 71:

All DOCUMENTS which refer, reflect, or relate to any searches performed by the BOARDS or individual BOARD members of Sugarman's emails, hard drives, phones, phone records, or any other materials.

REQUEST FOR PRODUCTION NO. 72:

All COMMUNICATIONS between Michelman & Robinson and YOU, members of YOUR BOARDS, the SPECIAL COMMITTEE, WILMERHALE, and Wachtell, Lipton, Rosen, & Katz.

REQUEST FOR PRODUCTION NO. 73:

All notebooks and notes in YOUR possession authored by Hugh Boyle.

REQUEST FOR PRODUCTION NO. 74:

All notebooks and notes in YOUR possession authored by James McKinney.

REQUEST FOR PRODUCTION NO. 75:

All DOCUMENTS which refer, reflect or relate to audits, reports or work performed by YOUR Internal Audit function from October 1, 2016 to present.

REQUEST FOR PRODUCTION NO. 76:

All DOCUMENTS which refer, reflect or relate to COMMUNICATIONS with the OCC regarding the INVESTIGATIONS, MR. SUGARMAN, the GOVERNANCE COMMITTEE, WORKPLACE MISCONDUCT, the SPECIAL COMMITTEE, employee departures, hirings, accounting, corporate governance,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

21

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 219

1   tone at the top, financial statements, internal audit, disclosure, from October 1,

2   2016 to present.

3   REQUEST FOR PRODUCTION NO. 77:

4       All DOCUMENTS which refer, reflect or relate to COMMUNICATIONS

5   with the FRB regarding the INVESTIGATIONS, MR. SUGARMAN, the

6   GOVERNANCE COMMITTEE, the Audit Committee of YOUR BOARDs,

7   WORKPLACE MISCONDUCT, the SPECIAL COMMITTEE, employee

8   departures, hirings, accounting, corporate governance, tone at the top, financial

9   statements, internal audit, disclosure, from October 1, 2016 to present.  Included

10  without limitation in this request are any DOCUMENTS concerning concerns by

11  the FRB that non-employee BOARD members (including Mr. Szewajs) were not

12  reading meeting materials or paying sufficient attention to Internal Audit matters.

13  REQUEST FOR PRODUCTION NO. 78:

14      All DOCUMENTS which refer, reflect or relate to COMMUNICATIONS

15  with Protiviti.

16  REQUEST FOR PRODUCTION NO. 79:

17      All DOCUMENTS which refer, reflect or relate to COMMUNICATIONS

18  with PricewaterhouseCoopers.

19  REQUEST FOR PRODUCTION NO. 80:

20      All DOCUMENTS which refer, reflect or relate to COMMUNICATIONS

21  with KPMG regarding the INVESTIGATIONS, MR. SUGARMAN,

22  WORKPLACE MISCONDUCT, the PCAOB, and disclosures.

23  REQUEST FOR PRODUCTION NO. 81:

24      All DOCUMENTS which refer, reflect or relate to any disclosures regarding

25  Matthew Begley or any AFFILIATE of Matthew Begley.

26  REQUEST FOR PRODUCTION NO. 82:

27      All DOCUMENTS which refer, reflect or relate to any disclosures regarding

28  Michael Santulli or any AFFILIATE of Michael Santulli.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

22

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 220

1    REQUEST FOR PRODUCTION NO. 83:

2         All DOCUMENTS which refer, reflect or relate to any disclosures regarding

3    ICA Risk Management Consultants or any AFFILIATE of ICA Risk Management

4    Consultants.

5    REQUEST FOR PRODUCTION NO. 84:

6         All DOCUMENTS which refer, reflect or relate to any agreements with

7    Michael Urtel, including signature on any Non-Disclosure Agreement.

8

9    Dated:  October 31, 2017                    LATHAM & WATKINS LLP
                                                 Manuel A. Abascal
10                                               Michele D. Johnson
                                                 Andrew R. Gray
11

12                                          By:  */s/ Manuel A. Abascal*
13                                               Manuel A. Abascal

14                                               *Attorneys for Defendant, Steven A.*
15                                               *Sugarman*

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

23

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 221

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California.  I am over the age of 18 years and not a party to this action.  My business address is Latham & Watkins LLP, 650 Town Center Drive, 20th Floor, Costa Mesa, CA 92626-1925.

On **October 31, 2017**, I served the following document described as:

**DEFENDANT STEVEN A. SUGARMAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT BANC OF CALIFORNIA**

by serving a true copy of the above-described document in the following manner:

**BY EMAIL AND FEDERAL EXPRESS**

The above-described document was sent via FedEx to the following parties on October 31, 2017:

Laurie L. Largent (llargent@rgrdlaw.com)
Matthew I. Alpert (malpert@rgrdlaw.com)
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel:  619.231.7423 / Fax:  619.231.1058

Mark R. McDonald (mmcdonald@mofo.com)
Robert B. Hubbell (rhubbell@mofo.com)
Matthew J. Cave (mcave@mofo.com)
Joseph R. Rosner (jrosner@mofo.com)
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, California 90017-3543
Telephone: 213.892.5200/Facsimile: 213.892.5454

I declare that I am employed in the office of a member of the Bar of California, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **October 31, 2017**, at Costa Mesa, California.

_____
Everett Bulthuis

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\95332007.3

24

CASE NO. SACV 17-00118 AG (DFMx)
DEFENDANT SUGARMAN'S FIRST SET OF RFPS
TO DEFENDANT BANC OF CALIFORNIA

EXHIBIT 9
PAGE 222