ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (147029)
LAURIE L. LARGENT (153493)
ROBERT R. HENSSLER JR. (216165)
MATTHEW I. ALPERT (238024)
ERIKA OLIVER (306614)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
llargent@rgrdlaw.com
bhenssler@rgrdlaw.com
malpert@rgrdlaw.com
eoliver@rgrdlaw.com

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re BANC OF CALIFORNIA SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | No. SACV 17-00118 AG (DFMx) consolidated with SACV 17-00138 AG (DFMx)<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) APPROVAL OF PLAN OF ALLOCATION; (3) AWARD OF ATTORNEYS' FEES AND EXPENSES; AND (4) AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)<br><br>DATE:  March 16, 2020<br>TIME:  10:00 a.m.<br>CTRM:  10D<br>JUDGE:  Hon. Andrew J. Guilford |

4846-0789-4449.v2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................... 1

II.   PROCEDURAL AND FACTUAL BACKGROUND ..................................... 3

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ............................................................. 4

    A.   The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2) .......................................................... 6

        1.   Plaintiff and Its Counsel Have Adequately Represented the Class ............................................... 6

        2.   The Proposed Settlement Was Negotiated at Arm's-Length and Was Not the Product of Collusion ............................ 7

        3.   The Proposed Settlement Is Adequate in Light of the Costs, Risk and Delay of Trial and Appeal ............................... 8

            a.   The Risks of Proving Falsity and Scienter ...................... 9

            b.   Risks Related to Proving Loss Causation and Damages ............................................................. 10

            c.   The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation ...... 11

        4.   The Proposed Method for Distributing Relief Is Effective ...... 12

        5.   Attorneys' Fees ........................................................ 13

        6.   Other Agreements ..................................................... 13

        7.   The Proposed Plan of Allocation Treats Class Members Equitably ............................................................. 14

    B.   The Remaining Ninth Circuit Factors Are Satisfied ........................... 15

        1.   Discovery Completed and Stage of the Proceedings ................ 15

        2.   Counsel View This Good-Faith Settlement as Fair, Reasonable, and Adequate .......................................... 15

        3.   The Reaction of Class Members to the Settlement .................. 16

        4.   The Settlement Amount ............................................... 17

IV.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ....... 18

V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS ........................... 19

4846-0789-4449.v2

1

2

**Page**

VI.   AWARD OF ATTORNEYS' FEES ........................................................21

    A.    A Reasonable Percentage of the Fund Is the Appropriate
        Method for Awarding Attorneys' Fees in Common Fund Cases .......21

    B.    Factors Considered by Courts in the Ninth Circuit Support
        Approval of the 33% Fee in This Case ...............................................23

        1.    Counsel Achieved a Favorable Result for the Class ...............23

        2.    The Litigation Was Risky and Complex .................................24

        3.    The Skill Required and Quality of Work .................................25

        4.    The Contingent Nature of the Fee and the Financial
            Burden Carried by Lead Counsel .............................................26

        5.    The 33% Fee Award Is Within the Range Awarded in
            Similar Complex, Contingent Litigation .................................27

        6.    Reaction of the Class Supports Approval of the
            Attorneys' Fees Requested ......................................................28

        7.    The Requested Fee Is Reasonable Under a Lodestar
            Cross-Check Analysis ...............................................................29

VII.   LEAD COUNSEL'S LITIGATION EXPENSES ARE
       REASONABLE ......................................................................................30

VIII.   PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15
      U.S.C. §78u-4(a)(4) IS REASONABLE ...............................................32

IX.   CONCLUSION .........................................................................................33

4846-0789-4449.v2

1

## TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Alaska Elec. Pension Fund v. Flowserve Corp.*,

5

    572 F.3d 221 (5th Cir. 2009) ................................................................. 24

6

*Blum v. Stenson*,

7

    465 U.S. 886 (1984) ............................................................................... 21

8

*Boeing Co. v. Van Gemert*,

9

    444 U.S. 472 (1980) ............................................................................... 21

10

*Boyd v. Bank of Am. Corp.*,

    No. SACV 13-0561-DOC, 2014 WL 6473804

11

    (C.D. Cal. Nov. 18, 2014) ..................................................................... 28

12

*Buccellato v. AT&T Operations, Inc.*,

13

    No. C10-00463-LHK, 2011 WL 4526673

14

    (N.D. Cal. June 30, 2011) ...................................................................... 32

15

*Castro v. Sanofi Pasteur Inc.*,

    No. 11-7178 (JMV) (MAH), 2017 WL 4776626

16

    (D.N.J. Oct. 23, 2017) ........................................................................... 30

17

*Cheng Jiangchen v. Rentech, Inc.*,

18

    No. CV 17-1490-GW-FFMx, 2019 WL 6001562

19

    (C.D. Cal. Nov. 8, 2019) ....................................................................... 28

20

*Churchill Vill., L.L.C. v. Gen. Elec.*,

    361 F.3d 566 (9th Cir. 2004) .......................................................... 4, 5, 8

21

*Class Plaintiffs v. City of Seattle*,

22

    955 F.2d 1268 (9th Cir. 1992) ............................................................... 18

23

*de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*,

24

    No. SACV 18-00236 AG (JCGx), 2018 WL 6003560

25

    (C.D. Cal. Nov. 5, 2018) ......................................................................... 7

26

*Dusek v. Mattel, Inc.*,

    No. CV 99-10864-MRP, 2003 WL 27380801

27

    (C.D. Cal. Sept. 29, 2003) ..................................................................... 32

28

- iii -

1

2

Page

3   *Figueroa v. Allied Bldg. Prods. Corp.*,

4        No. SACV 16-02249 AG (KESx), 2018 WL 4860034
         (C.D. Cal. Sept. 24, 2018) ................................................................ 27

5

6   *Glass v. UBS Fin. Servs., Inc.*,
         331 F. App'x 452 (9th Cir. 2009) ..................................................... 22

7

8   *Gribble v. Cool Transps. Inc.*,
         No. CV 06-04863 GAF, 2008 WL 5281665

9        (C.D. Cal. Dec. 15, 2008) .................................................................. 16

10  *Grivas v. Metagenics, Inc.*,
         No. SACV 15-01838-CJC-DFM, 2019 WL 2005792

11       (C.D. Cal. May 6, 2019) ..................................................................... 30

12
    *Hanlon v. Chrysler Corp.*,
13       150 F.3d 1011 (9th Cir. 1998) ........................................................... 17

14
    *Hefler v. Wells Fargo & Co.*,
15       No. 16-cv-05479-JST, 2018 WL 6619983
         (N.D. Cal. Dec. 18, 2018) ........................................................... 14, 24
16

17  *Hensley v. Eckerhart*,
         461 U.S. 424 (1983) .......................................................................... 23
18

19  *Herman v. Andrus Transp. Servs., Inc.*,
         No. EDCV 16-02365 AG (DTBx), 2018 WL 6307902

20       (C.D. Cal. May 30, 2018) ..................................................................... 5

21  *In re Am. Apparel, Inc. S'holder Litig.*,
         No. CV 10-06352 MMM, 2014 WL 10212865
22       (C.D. Cal. July 28, 2014) ................................................................... 22

23
    *In re Amgen Inc. Sec. Litig.*,
24       No. CV 7-2536 PSG, 2016 WL 10571773
         (C.D. Cal. Oct. 25, 2016) ............................................................. 18, 19
25

26  *In re Audioeye, Inc., Sec. Litig.*,
         No. CV-15-00163-TUC-DCB, 2017 WL 5514690
27       (D. Ariz. May 8, 2017) ....................................................................... 28

28

- iv -

**Page**

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ........................................................................ 22

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales
    Practices & Prods. Liab. Litig.*,
    No. 17-md-02777-EMC, 2019 WL 2554232
    (N.D. Cal. May 3, 2019) .................................................................................. 6

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15-cv-04883-BLF, 2019 WL 3290770
    (N.D. Cal. July 22, 2019) .............................................................................. 14

*In re Galena Biopharma, Inc. Sec. Litig.*,
    No. 3:14-cv-00367-SI, 2016 WL 3457165
    (D. Or. June 24, 2016) .................................................................................. 22

*In re Heritage Bond Litig.*,
    No. 02-ML-1475-DT, 2005 WL 1594389
    (C.D. Cal. June 10, 2005) ........................................................................ 24, 28

*In re Hewlett–Packard Co. Sec. Litig.*,
    No. SACV 11-1404-AG, 2014 WL 12656737
    (C.D. Cal. Sept. 15, 2014) ............................................................................ 13

*In re Hyundai and Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...................................................................... 4, 5

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) .................................................................... 24

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................... 20, 29

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C-02-1486 CW (EDL), 2007 WL 4788556
    (N.D. Cal. Nov. 27, 2007) ............................................................................ 27

*In re K12 Inc. Sec. Litig.*,
    No. 4:16-cv-04069-PJH, 2019 WL 3766420
    (N.D. Cal. July 10, 2019) .............................................................................. 28

**Page**

*In re Korean Air Lines Co., Antitrust Litig.*,
  No. CV 07-05107 SJO, 2013 WL 7985367
  (C.D. Cal. Dec. 23, 2013) ................................................................ 21

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ........................................................... 17

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................... *passim*

*In re Omnivision Techs. Inc. Sec. Litig.*,
  No. 5:11-cv-05235-RMW, 2015 WL 3542413
  (N.D. Cal. June 5, 2015) .................................................................. 21

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................... 14

*In re Oracle Corp. Sec. Litig.*,
  No. C01-00988 SI, 2009 WL 1709050
  (N.D. Cal. June 19, 2009),
  *aff'd*, 627 F.3d 376 (9th Cir. 2010) ................................................ 26

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ....................................................... 24, 28

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ............................................................ 22

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................................... 4

*In re Veritas Software Corp. Sec. Litig.*,
  396 F. App'x 815 (3d Cir. 2010) ...................................................... 32

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices,
  and Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018),
  *cert. denied*, 139 S. Ct. 2645 (2019) ............................................... 5

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................... 26

4846-0789-4449.v2

**Page**

*In re Wells Fargo Collateral Prot. Ins. Litig.*,
  No. SAML 17-02797 AG (UESx), 2019 WL 6219875
  (C.D. Cal. Nov. 4, 2019) ........................................................................ 16

*In re Wireless Facilities, Inc. Sec. Litig.*,
  253 F.R.D. 630 (S.D. Cal. 2008) ............................................................ 20

*In re Xcel Energy, Inc. Sec., Derivative, & ERISA Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) .................................................... 32

*Jimenez v. O'Reilly Automotive Inc.*,
  No. SACV 12-00310 AG (JPRx), 2018 WL 6137591
  (C.D. Cal. June 18, 2018) ...................................................................... 27

*Kamakana v. City & Cty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ............................................................... 14

*Kmiec v. Powerwave Techs., Inc.*,
  No. SACV 12-00222-CJC, 2016 WL 5938709
  (C.D. Cal. July 11, 2016) ................................................................. 15, 29

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367
  (N.D. Cal. Feb. 2, 2009) ........................................................................ 31

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................. 5

*Lopez v. Youngblood*,
  No. CV-F-07-0474 DLB, 2011 WL 10483569
  (E.D. Cal. Sept. 2, 2011) ....................................................................... 22

*Luna v. Marvell Tech. Grp.*,
  No. C 15-05447 WHA, 2018 WL 1900150
  (N.D. Cal. Apr. 20, 2018) ...................................................................... 29

*Morgan v. Childtime Childcare, Inc.*,
  No. SACV 17-01641 AG (UESx), 2020 WL 218515
  (C.D. Cal. Jan. 6, 2020) ................................................................... 17, 27

4846-0789-4449.v2

**Page**

*Morris v. Lifescan, Inc.*,
    54 F. App'x 663 (9th Cir. 2003)................................................................28

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................12, 16, 29

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982)..................................................................8

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989)................................................................22

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)................................................5, 15, 20

*Schulein v. Petroleum Dev. Corp.*,
    No. SACV 11-1891 AG (ANx), 2015 WL 12698312
    (C.D. Cal. Mar. 16, 2015) .....................................................5, 18, 28

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 C 8461, 2019 WL 2103379
    (N.D. Ill. May 14, 2019).......................................................................6

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)................................................................32

*Sudunagunta v. NantKwest, Inc.*,
    No. CV 16-1947-MWF, 2019 WL 2183451
    (C.D. Cal. May 13, 2019).......................................................................7

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)................................................................19

*Tawfilis v. Allergan, Inc.*,
    No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716
    (C.D. Cal. Aug. 27, 2018) ...................................................................28

*Taylor v. Shippers Transp. Express, Inc.*,
    No. CV 13-02092-BRO, 2015 WL 12658458
    (C.D. Cal. May 14, 2015).......................................................................7

4846-0789-4449.v2

**Page**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...................................................................................... 21

*Todd v. STARR Surgical Co.*,
    No. CV 14-5263 MWF, 2017 WL 4877417
    (C.D. Cal. Oct. 24, 2017) .......................................................................... 32

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...................................................................... 22

*van Wingerden v. Cadiz, Inc.*,
    No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263
    (C.D. Cal. Feb. 8, 2017) ............................................................................ 26

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ..................................................................... 21

*Vincent v. Reser*,
    No. C 11-03572 CRB, 2013 WL 621865
    (N.D. Cal. Feb. 19, 2013) .......................................................................... 31

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293
    (C.D. Cal. May 6, 2014) ..................................................................... 17, 19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................ *passim*

*Wing v. Asarco Inc.*,
    114 F.3d 986 (9th Cir. 1997) ..................................................................... 26

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4 ................................................................................................ *passim*
    §78u-4(a)(4) ................................................................................ 1, 3, 29, 32
    §78u-4(a)(6) ............................................................................................... 22
    §78u-4(a)(7) ............................................................................................... 20

- ix -

**Page**

Federal Rules of Civil Procedure
  Rule 23................................................................................................. 18, 20
  Rule 23(e) .............................................................................................. 1, 4
  Rule 23(e)(1)(B) ......................................................................................... 20
  Rule 23(e)(2).......................................................................................... 4, 5, 6
  Rule 23(e)(2)(A) ......................................................................................... 6, 7
  Rule 23(e)(2)(C) ........................................................................................... 8
  Rule 23(e)(2)(C)(i) ....................................................................................... 8
  Rule 23(e)(2)(C)(ii) ..................................................................................... 12
  Rule 23(e)(2)(C)(iii) .................................................................................... 13
  Rule 23(e)(3)............................................................................................... 4

**SECONDARY AUTHORITIES**

Janeen McIntosh & Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*
  (NERA Jan. 21, 2020) ............................................................................. 18

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
  *Securities Class Action Settlements: 2018 Review and Analysis*
  (Cornerstone Research 2018) .................................................................. 18

*Manual for Complex Litigation* (4th ed. 2004)
  §14.121 ................................................................................................. 23

Richard Posner,
  *Economic Analysis of Law* (3d ed. 1986)
  §21.9 .................................................................................................... 26

## I.    INTRODUCTION

Pursuant to Federal Rules of Civil Procedure Rule 23(e), Lead Plaintiff Iron Workers Local No. 25 Pension Fund ("Plaintiff") submits this memorandum in support of its motion for: (1) final approval of the Settlement of this securities class action for $19.75 million in cash, (2) approval of the Plan of Allocation; (3) award of attorneys' fees and expenses; and (4) award to Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).    The terms of the Settlement are set forth in the Stipulation of Settlement, dated October 28, 2019 ("Stipulation"), which was previously filed with the Court.[1]  ECF No. 592.

The Settlement comes after nearly three years of hard-fought litigation, including extensive motion practice, the completion of fact discovery, exchange of expert reports and protracted arm's-length settlement negotiations.   During fact discovery, among other things, Lead Counsel deposed 17 fact witnesses and reviewed and analyzed nearly 1.2 million pages of documents produced by Defendants and third parties.   The parties reached an agreement-in-principle to settle the Litigation just before the deadline to file summary judgment motions.  There is no question that as a result of extensive litigation efforts and arm's-length settlement negotiations, Plaintiff and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the Class' claims and the propriety of settlement.[2]

While Lead Counsel believes that the Class' claims have significant merit based on the evidence adduced, from the outset Defendants adamantly denied liability and asserted they possessed absolute defenses to the Class' claims.  During extensive

---

[1]    All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

[2]    The efforts of Lead Counsel in obtaining this favorable result are set forth in greater detail in the accompanying Declaration of Matthew I. Alpert in Support of Lead Plaintiff's Motion for (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Alpert Decl.").

- 1 -

settlement negotiations, including two mediations with two different mediators, Lead Counsel made it clear that while it was prepared to fairly assess the strengths and weaknesses of this case, it would continue to litigate (and, in fact, did) rather than settle for less than fair value.  Indeed, Plaintiff and its counsel persisted for almost a year from the initial mediation until they achieved an amount they believe is in the best interest of the Class.

Lead Counsel, who is highly experienced in prosecuting securities class actions, has concluded that the Settlement is a very good result and in the best interest of the Class based on an analysis of all the relevant factors present here, including, *inter alia*: (a) the substantial risk, expense, and uncertainty in continuing the Litigation through summary judgment and *Daubert* motions, trial, probable post-trial motion(s), and appeal(s); (b) the relative strengths and weaknesses of the claims and defenses asserted; (c) a complete analysis of the evidence obtained and the legal and factual issues presented; (d) past experience in litigating complex actions similar to this Litigation; and (e) the serious disputes between the parties concerning the merits and damages.  Importantly, the Settlement is fully supported by Plaintiff, who is the type of institutional investor favored to serve as lead plaintiff by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA").[3]

The reaction of the Class thus far also supports the Settlement and Plan of Allocation.  Pursuant to the Order Regarding Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (ECF No. 595), over 35,000 copies of the Notice were sent to potential Class Members and nominees, and notice was published over *Business Wire* and in *The Wall Street Journal*.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, dated February 7, 2020 ("Murray Decl."), ¶¶11, 14,

---

[3]  *See* Declaration of Paula Johnson in Support of Settlement ("Johnson Decl."), ¶¶1-2, submitted herewith.

4846-0789-4449.v2

1   submitted herewith.   To date, there have been no objections to the Settlement, or

2   requests for exclusion from the Class.

3       Lead Plaintiff also requests that the Court approve the proposed Plan of

4   Allocation, which was set forth in the Notice sent to Class Members.   The Plan of

5   Allocation governs how claims will be calculated and how settlement proceeds will be

6   distributed among Authorized Claimants.   It was prepared in consultation with

7   Plaintiff's damages expert, and is based on the out-of-pocket measure of damages, *i.e.*,

8   the difference between what Class Members paid for their Banc of California Inc.

9   ("Banc" or the "Company") common stock during the Class Period and what they

10   would have paid had the alleged misstatements and omissions not been made.   It is

11   fair, reasonable, and adequate, and should be approved.

12       Lead Counsel also respectfully applies for an award of attorneys' fees in the

13   amount of 33% of the Settlement Amount and litigation expenses of $1,575,210.83,

14   plus interest on both amounts.   Lead Counsel's fee request, approved by Plaintiff (*see*

15   Johnson Decl., ¶5), is in-line with fees awarded in securities class actions in this

16   District.   It is also reasonable when viewed against the result achieved here and the

17   many risks Lead Counsel was able to overcome.   Finally, Plaintiff applies for an

18   award of $1,444, pursuant to 15 U.S.C. §78u-4(a)(4), for its out of pocket expenses

19   incurred in prosecuting this Litigation.   *See id.*, ¶6.

20   **II.   PROCEDURAL AND FACTUAL BACKGROUND**

21       To avoid repetition, the Court is respectfully referred to the accompanying

22   Alpert Declaration for a full discussion of the factual background and procedural

23   history of the Litigation, the extensive efforts undertaken by Plaintiff and Lead

24   Counsel over the course of the Litigation, the negotiations leading to this Settlement

25   and the risks of continued litigation.

26

27

28

4846-0789-4449.v2

### III. STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims brought as a class action. The Court may approve a proposed settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Ninth Circuit recognized there is a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (same).[4]

Rule 23(e)(2) (amended as of December 1, 2018), sets forth the factors to be considered in determining whether a settlement warrants final approval:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)   the class representatives and class counsel have adequately represented the class;
> >
> > (B)   the proposal was negotiated at arm's length;
> >
> > (C)   the relief provided for the class is adequate, taking into account:
> >
> > > (i)   the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)   any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)   the proposal treats class members equitably relative to each other.

---

[4]   All citations are omitted and emphasis added throughout unless otherwise stated.

In addition, courts in the Ninth Circuit consider the following factors, most of which overlap with Rule 23(e)(2): "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; . . . and (8) the reaction of the class members to the proposed settlement." *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANx), 2015 WL 12698312, at *2 (C.D. Cal. Mar. 16, 2015) (quoting *Churchill*, 361 F.3d at 575); *see also* ECF No. 595 at 2.

As the Ninth Circuit recently emphasized:

> Deciding whether a settlement is fair is ultimately "an amalgam of delicate balancing, gross approximations and rough justice," best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings – the whole gestalt of the case. Accordingly, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge."

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2645 (2019).

Therefore, approval of a class action settlement will be reversed only if "the district court clearly abused its discretion." *Hyundai*, 926 F.3d at 556. However, because "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements,'" courts should not convert settlement approval into an inquiry into the merits. *Herman v. Andrus Transp. Servs., Inc.*, No. EDCV 16-02365 AG (DTBx), 2018 WL 6307902, at *2 (C.D. Cal. May 30, 2018) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (the Ninth Circuit "has long deferred to the private consensual decision of the parties").

This Court's Preliminary Approval Order considered the Rule 23(e)(2) and Ninth Circuit factors in assessing the Settlement and found that "at this stage, the settlement is overall fair, reasonable and appropriate." ECF No. 595 at 3. The

- 5 -

Court's conclusion on preliminary approval is equally true now as little, if anything, has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

Plaintiff respectfully submits that the proposed Settlement satisfies both Rule 23(e)(2) and the relevant Ninth Circuit factors and warrants approval as fair, reasonable and adequate.

**A.   The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)**

**1.   Plaintiff and Its Counsel Have Adequately Represented the Class**

As described in the Alpert Declaration, Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation on behalf of the Class for almost three years, including, among other things, investigating and drafting the complaint, successfully opposing Defendants' motion to dismiss, obtaining, reviewing and analyzing over 1.2 million pages of documents, participating in 17 fact depositions, obtaining class certification over Defendants' vigorous opposition, working with experts on complex loss causation and damages issues, and engaging in mediation with two well qualified mediation firms to resolve the Litigation. Alpert Decl., ¶¶4-8. Plaintiff and Lead Counsel stood ready to, and at all times did, advocate for the best interests of the Class, and were actively preparing for expert depositions and summary judgment

- 6 -

motions at the time the proposed Settlement was reached.  Thus, Plaintiff satisfies Rule 23(e)(2)(A).

### 2. The Proposed Settlement Was Negotiated at Arm's-Length and Was Not the Product of Collusion

In the Ninth Circuit, a "'strong presumption of fairness'" attaches to a class action settlement reached through arm's-length negotiations between "experienced and well-informed counsel." *de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, No. SACV 18-00236 AG (JCGx), 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018); *Taylor v. Shippers Transp. Express, Inc.*, No. CV 13-02092-BRO (PLAx), 2015 WL 12658458, at *10 (C.D. Cal. May 14, 2015) ("'A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.'"); *see also* ECF No. 595 at 3 ("One important factor is that the parties reached the settlement after significant arms-length negotiations with a third-party mediator.").

As detailed in the Alpert Declaration, over the course of the Litigation the parties attended two all-day, in-person mediation sessions, with highly experienced mediators. *See* Alpert Decl., ¶¶6-7, 98-100.  The first mediation, in August 2018 with Fairbank ADR, was unsuccessful and the parties continued to aggressively litigate the case. *Id.*, ¶96.  The second mediation, on June 21, 2019 with Judge Layn Phillips (Ret.) and Michele Yoshida, was initially unsuccessful but the parties continued settlement discussions with the mediators' oversight. *Id.*, ¶¶99-100.  After nearly three months of extensive and contentious negotiations (that included numerous near-breakdowns), the parties reached a resolution on September 15, 2019 when they accepted Judge Phillips' mediators' proposal. *Id.*, ¶100.

Also of relevance is the fact that this Settlement was reached after nearly three years of vigorous prosecution by Plaintiff and Lead Counsel and the settlement negotiations were undertaken by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of their respective claims and defenses. *See Sudunagunta v. NantKwest, Inc.*, No. CV 16-1947-MWF (JEMx),

- 7 -

2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("'The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery [has] taken place create a presumption that the agreement is fair.'").

Lead Counsel has many years of experience in litigating securities class actions like this one and has negotiated hundreds of settlements of these types of cases, which have been approved by courts across the country. *See* www.rgrdlaw.com. Defendants are also represented by two well-respected defense firms, Morrison & Foerster LLP and Latham & Watkins LLP, who zealously represented their respective clients.

Collectively, these facts demonstrate that the Settlement is entitled to a presumption of fairness and is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risk and Delay of Trial and Appeal

Both Rule 23(e)(2)(C) and district courts in the Ninth Circuit consider the substantive adequacy of the proposed Settlement in determining final approval. Rule 23(e)(2)(C)(i) considers "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of plaintiffs' case; [and] the risk, expense, complexity, and likely duration of further litigation." *Churchill*, 361 F.3d at 575.

While Plaintiff believes its claims have significant merit and the Class would survive Defendants' summary judgment motions, it recognizes the numerous risks and uncertainties in proceeding to trial. As discussed below, and in the Alpert Declaration, (¶¶11-18, 108-125) the risks of continued litigation, when weighed against the substantial and certain recovery for the Class, confirm the reasonableness of the Settlement.

### a.     The Risks of Proving Falsity and Scienter

Throughout the Litigation, Defendants asserted that nothing about defendant Sugarman's Proxy biography was materially misleading.  Defendants argued that there was nothing to disclose about Galanis anywhere in the Proxy, and the fact that Sugarman's biography listed his various COR entities did not create a duty to disclose anything about Galanis.  Defendants further asserted that Sugarman did not have any material connections to Galanis, and to the extent the two individuals knew each other and had friends or business associates in common, did not mean that Banc's Proxy needed to disclose such information.

Defendants also repeatedly took the position that Banc's two internal investigations into Sugarman's ties to Galanis, which found that Sugarman did not have any connections that required public disclosure, negated both falsity and scienter. Defendants also argued "truth on the market" throughout the Litigation.  Defendants argued that if the author of the Blog relied on publicly available information (some of it dated prior to Banc's filing of its April 2016 Proxy) to allegedly link Galanis and Sugarman in its October 18, 2016 *SeekingAlpha.com* blog publication (the "Blog"), then the market must have already been aware of any purported connections between the two men, and therefore such information would have been immaterial by the time the Proxy and Blog were published.

In addition to the risks Plaintiff faced proving falsity, Defendants also challenged scienter.  For instance, defendant Sugarman was prepared to argue that because he allegedly had no material connections to Galanis, he could not have made allegedly misleading statements in the Banc Proxy with scienter.  Additionally, Sugarman argued that by the time Banc filed the Proxy in April 2016, the Company and its attorneys had received full disclosure from Sugarman and were well aware of his purported Galanis ties, and that Banc's counsel decided that such information did not need to be disclosed in the 2016 Proxy.  Defendants also argued that documentary evidence and deposition testimony demonstrates that Sugarman's resignation in

January 2017 was unrelated to the alleged failure to disclose links between the former Banc Chief Executive Officer ("CEO") and Galanis.  Moreover, the testimony of the currently incarcerated Galanis would have been a primary piece of evidence upon which Plaintiff would have relied in proving the ties between defendant Sugarman and Galanis.  While Plaintiff believes Galanis gave truthful, sworn testimony during his more than seven hour deposition, there is no question that relying on the testimony of someone who has pled guilty to two multi-million dollar securities frauds is fraught with risks.

As a result of these challenges, Plaintiff faced the very real risk that the Court or the jury could have accepted Defendants' arguments that it had failed to establish the elements of falsity and scienter.

### b.    Risks Related to Proving Loss Causation and Damages

Plaintiff also faced risk in proving loss causation and damages.  To establish these elements, Plaintiff would have to prove that the revelation of the alleged fraud proximately caused the declines in Banc's stock price during the Class Period and that those fraud-related causes could be parsed out from any potential non-fraud related news or publicly released information.  Plaintiff believed that it would bring forth sufficient evidence to support both the finding of loss causation and damages at summary judgment and trial.  However, Defendants would argue (with the help of three experts) that Banc stock price declines alleged in the Complaint were not due (even in part) to the revelation of the alleged fraud.

Defendants would argue that the decline in Banc's stock price following the publication of the Blog on October 18, 2016 could not have been caused by the alleged fraud because the alleged disclosure (the *SeekingAlpha.com* Blog post) was based on public information and thus already known to investors.  According to Defendants, anything purportedly "disclosed" by the Blog was not new and could not have proximately caused the nearly 30% stock price drop.

- 10 -

4846-0789-4449.v2

Defendants would also argue that based on documentary evidence and their expert analysis leading up to and following the publication of the October 18, 2016 Blog, short sellers were manipulating the price of Banc's stock through various unlawful tactics referred to as "spoofing" or "layering," thus rebutting any loss causation. Defendants' assertions that a group of short sellers manipulated the price of Banc's stock and did so, at least in part, through publishing the Blog, if supported with sufficient evidence, could convince the Court to grant summary judgment in favor of Defendants or influence a jury to find that Plaintiff has insufficiently proven loss causation and damages.

Defendants were also sure to challenge Plaintiff's alleged January 23, 2017 disclosure, which announced the SEC's investigation into Banc's public response to the *SeekingAlpha.com* Blog post and Sugarman's resignation as chairman and CEO. Throughout the Litigation, Banc asserted that its January 23, 2017 disclosures did not cause any losses to Plaintiff or the Class because neither disclosure contained any information about the ties between Sugarman and Galanis. To the contrary, Banc would argue that the January 23, 2017 disclosure announced that one of its independent investigations had found no evidence that Galanis had control over Banc.

Because the determination of loss causation and damages is a complicated process requiring expert testimony (for which five experts total were designated in this case), compounding the above factors was a risk that the Court would grant, in whole or in part, Defendants' motion(s) to exclude the opinion and testimony of Plaintiff's loss causation and damages experts at trial. Even if Plaintiff prevailed on these motions, the jury's loss causation and damage assessments of the expert evidence could vary substantially at trial, reducing this crucial element to a "battle of experts."

### c. The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation

This action settled on the eve of Defendants' deadline for filing motions for summary judgement. Though the Litigation was at an advanced stage, there still

- 11 -

remained much work to do.  For instance, if the Settlement was not reached, the parties would be faced with taking and/or defending 12 expert depositions, filing summary judgment motions and motions to exclude, trying the case before a jury, and litigating the inevitable appeals.  Each of these steps is both complex and expensive and the case likely would not be resolved until several years down the road. Moreover, many hours of the Court's time and resources have also been spared as a result of the Settlement, which is potentially considerable given the number of docket entries so far entered in this case.

The $19.75 million Settlement, at this juncture, results in an immediate, substantial and tangible recovery, without the considerable risk, expense and delay of summary judgment motions, trial and post-trial litigation.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("'[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'").

### 4.    The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Plaintiff and Lead Counsel have taken substantial efforts to insure that the Class is notified about the proposed Settlement. Pursuant to the Preliminary Approval Order, more than 35,000 copies of the Notice and Proof of Claim were mailed to potential Class Members; the Summary Notice was published in *The Wall Street Journal* and over the *Business Wire* on December 24, 2019; and a settlement-specific website was created where key documents are posted, including the Stipulation, Notice, Proof of Claim and Preliminary Approval Order. Murray Decl., ¶¶11, 12, 14.

The claims process, which is similar to that commonly used in securities class action settlements, is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  (*See* §IV below for a more detailed discussion of the Plan of

- 12 -

Allocation.)  The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. Thus, this factor supports final approval for the same reason that it supported preliminary approval.

### 5.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  As discussed in §VI below, Lead Counsel seek an award of attorneys' fees of 33% of the Settlement Amount and expenses of $1,575,210.83, plus interest on both amounts.  This fee request was fully disclosed in the Notice, approved by Plaintiff and is in line with other settlements approved in the Ninth Circuit.  *See* Murray Decl., Ex. A, ¶46; Johnson Decl., ¶5; §VI.B.5 (discussion of case law supporting a 33% fee award).  As the Court noted at preliminary approval, the 33% fee requested by Lead Counsel "is likely reasonable" as it "reflects fair compensation for undertaking this complex, risky, expensive, and time-consuming class action, particularly since both parties have been actively litigating this case for nearly three years."  ECF No. 595 at 3.

In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.  *See In re Hewlett–Packard Co. Sec. Litig.*, No. SACV 11-1404-AG (RNBx), 2014 WL 12656737, at *2 (C.D. Cal. Sept. 15, 2014) (ordering that "attorneys' fees and litigation expenses shall be paid to [Lead Counsel] from the Settlement Fund immediately upon entry of this Order").

### 6.    Other Agreements

As discussed in Plaintiff's preliminary approval brief, defendant Banc and Plaintiff have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of shares of Banc publicly traded common stock represented by such opt outs equals or exceeds a certain amount, defendant Banc shall have the option to terminate the Settlement.  *See*

4846-0789-4449.v2

ECF No. 590 at 20; ECF No. 592, ¶7.3.  Such agreements are common and do not undermine the propriety of the Settlement.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.") (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015)).  While the Supplemental Agreement is identified in the Stipulation (ECF No. 592, ¶7.3), the terms are confidential.  *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

Also, as part of the global resolution of this action, Plaintiff has agreed to dismiss defendant Sugarman with prejudice pursuant to the terms and conditions described in Plaintiff's preliminary approval brief.  ECF No. 590, Ex. A.  There are no other agreements between Plaintiff and defendant  Sugarman.  Defendants Banc and Sugarman have also entered into an agreement as part of the global resolution of this case.  *See id.*, Ex. B.

### 7.     The Proposed Plan of Allocation Treats Class Members Equitably

The Plan of Allocation, discussed in more detail in §IV below, and which is set out in the Notice, details how the settlement proceeds will be distributed among Authorized Claimants.  It provides formulas for calculating the recognized claim of each Class Member, based on each such person's purchases or acquisitions of Banc common stock on the open market during the Class Period and when they sold.  It is fair, reasonable and adequate because it does not treat Plaintiff or any other Class Member preferentially.  *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) ("Under the Agreement, class members who have submitted timely claims will receive payments on a *pro rata* basis based on the value of their original claim and the number of claims filed.  In granting preliminary approval, the Court found that this proposed allocation did not constitute

4846-0789-4449.v2

improper preferential treatment. The Court adheres to its view that the allocation plan is equitable."). Each eligible Class Member, including Plaintiff, will receive a distribution pursuant to the Plan. Plaintiff, just like all other Class Members, will be subject to the same formulas for distribution of the Settlement.

## B. The Remaining Ninth Circuit Factors Are Satisfied

### 1. Discovery Completed and Stage of the Proceedings

That the parties reached the Settlement on the eve of the summary judgment motion filing deadline, after fact discovery closed and after exchanging expert reports, shows that Plaintiff and Lead Counsel had sufficient information to evaluate the case and properly assess the value of the Settlement. *See Kmiec v. Powerwave Techs., Inc.*, No. SACV 12-00222-CJC (JPRx), 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016) ("[T]he fact that the parties did not settle until after the conclusion of fact discovery indicates that Plaintiffs were well aware of the merits of their case and the difficulties awaiting them at trial."). Before reaching the Settlement, Plaintiff deposed more than 15 witnesses, including federally incarcerated Jason Galanis, defendant Sugarman, and several former and current Banc directors, executives and employees, reviewed and analyzed more than 1.2 million pages of documents, and exchanged over a dozen detailed expert reports with Defendants pertaining to liability and damages issues. Thus, at the time the Settlement was reached, the parties' respective positions were clear and known, as was the evidence they would use to prove their case. This factor strongly weighs in favor of this Court's approval of the Settlement.

### 2. Counsel View This Good-Faith Settlement as Fair, Reasonable, and Adequate

As the Ninth Circuit observed in *Rodriguez*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. 563 F.3d at 965. Courts have recognized that "'"[g]reat weight" is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

4846-0789-4449.v2

underlying litigation.'" *DIRECTV*, 221 F.R.D. at 528; *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"). Indeed, in a case like this which has progressed almost to summary judgment, "'[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *Gribble v. Cool Transps. Inc.*, No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008).

Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") has many years of experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* www.rgrdlaw.com. Having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and likely duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Plaintiff did prevail against Defendants at trial, Lead Counsel has concluded that the Settlement is a very good result for the Class. *See* Alpert Decl., ¶¶11-18, 108-125. Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043. Importantly, Plaintiff, who was active in the Litigation, authorized counsel to settle it and supports the reasonableness of the Settlement. *See* Johnson Decl., ¶4.

### 3.    The Reaction of Class Members to the Settlement

The reaction of the Class to the Settlement also supports approving the Settlement. *See In re Wells Fargo Collateral Prot. Ins. Litig.*, No. SAML 17-02797 AG (UESx), 2019 WL 6219875, at *4 (C.D. Cal. Nov. 4, 2019) ("Together, the requests for exclusion and objections represents slightly more than 0.0037% of the total class. This small percentage shows a positive class reaction to the settlement agreement and further supports a finding that the settlement is fair, reasonable, and

adequate."); *Omnivision*, 559 F. Supp. 2d at 1043 ("'The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'"). Pursuant to the Court's Preliminary Approval Order, over 35,000 Notice and Proof of Claim forms were mailed to potential Class Members and nominees and the Summary Notice was published in the national edition of *The Wall Street Journal* and electronically via *Business Wire.* Murray Decl., ¶¶11, 14. The deadline to object to any aspect of the Settlement or to exclude oneself from the Settlement is February 24, 2020. *Id.*, ¶¶15-16. To date, no objections have been received, and there have been no requests for exclusion. *Id.*; *see also Morgan v. Childtime Childcare, Inc.*, No. SACV 17-01641 AG (UESx), 2020 WL 218515, at *2 (C.D. Cal. Jan. 6, 2020) ("Lack of objection speaks volumes for a positive class reaction to the settlement."). Plaintiff will address any objections, if any, in their reply.

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (that there was only one opt out supports upholding district court's approval of settlement); *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *4 (C.D. Cal. May 6, 2014) ("There have been no objections to the Settlement itself, and so the Court finds this factor weighs in favor of the Settlement.").

### 4.   The Settlement Amount

Defendant's payment of $19.75 million in cash provides an immediate, tangible, significant recovery to the Class and eliminates the risk that the Class could recover less than the Settlement Amount, or nothing at all, if the Litigation continued. Importantly, this recovery far exceeds the median securities settlement as a percentage

4846-0789-4449.v2

of estimated damages.  Specifically, the Settlement represents approximately 25% of the Class' reasonably recoverable damages supported by a more traditional theory of damages.  *Cf. Schulein*, 2015 WL 12698312, at *5 ("As discussed, Plaintiffs' counsel got a sizeable recovery, representing 16% to 20% of the alleged damages, for the class.").  This percentage greatly exceeds the median settlement as a percentage of estimated damages in the Ninth Circuit of 5.1% from 2009 through 2018.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2018 Review and Analysis* at 19, Appendix 3 (Cornerstone Research 2018).  And according to NERA, in 2019 the median ratio of settlements to NERA-defined Investor Losses was 2.1%, which further supports that the Settlement here is a very good recovery for the Class.  *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* at 20 (NERA Jan. 21, 2020).[5]  *See Omnivision*, 559 F. Supp. 2d at 1042 (finding that settlement amount was reasonable in part because it was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

## IV.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

Plaintiff also seeks approval of the Plan of Allocation.  The Plan of Allocation is set forth in full in the Notice mailed to potential Class Members.  Murray Decl., Ex. A at ¶¶29-34.

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536

---

[5]   NERA is an economic consulting firm that, among other things, applies statistical analysis to examine trends in securities class action resolutions.  "NERA-defined Investor Losses is a proprietary variable used as a proxy to measure the aggregate loss to investors from the purchase of a defendant's stock using publicly available data."  *Id.* at 11.

PSG (PLAX), 2016 WL 10571773, at *7 (C.D. Cal. Oct. 25, 2016). District courts enjoy "'broad supervisory powers over the administration of class action settlements to allocate the proceeds among the claiming class members equitably.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011). An allocation formula need only have a "'reasonable, rational basis, particularly if recommended by experienced and competent counsel.'" *Radient*, 2014 WL 1802293, at *5.

The Plan of Allocation here provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants (Class Members who submit an acceptable Proof of Claim and who have a recognized loss under the Plan of Allocation). The Plan of Allocation was developed by Lead Counsel with the assistance of Plaintiff's damages expert and is "grounded in a formula that will compensate class members for the losses related to their" purchases of Banc common stock. *Amgen*, 2016 WL 10571773, at *8. Individual claimants' recoveries will depend upon when during the Class Period they bought Banc stock, and whether and when they sold their shares. Authorized Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund based on their recognized loss, calculated under the Plan of Allocation using the transactional information provided by claimants in their claim forms. As a result, the Plan of Allocation will result in a fair distribution of the available proceeds among Class Members who submit valid claims. There have been no objections to the Plan of Allocation filed by Class Members. The Plan of Allocation is fair and reasonable and should be approved.

## V. NOTICE TO THE CLASS SATISFIES DUE PROCESS

Plaintiff has provided the Class with adequate notice of the Settlement. Plaintiff, through their counsel and the Claims Administrator, have disseminated more than 35,000 copies of the Court-approved Notice to potential Class Members and their nominees who could be identified with reasonable effort, from multiple sources. *See* Murray Decl., ¶11. In addition, the Court-approved Summary Notice was published in the national edition of *The Wall Street Journal*, and published electronically over

- 19 -

4846-0789-4449.v2

the *Business Wire* on December 24, 2019.  *Id.*, ¶12.  The Claims Administrator also provided all information regarding the Settlement online through the Settlement website.  *Id.*, ¶14.  This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides the necessary information for Class Members to make an informed decision regarding the proposed Settlement.  It informs the Class of, among other things: (1) the amount of the Settlement; (2) the reasons why the parties propose the Settlement; (3) the estimated average recovery per damaged share of Banc stock; (4) the maximum amount of attorneys' fees and expenses that will be sought; (5) the name, telephone number, and address of representatives of Plaintiff's Counsel who will be reasonably available to answer questions from Class Members concerning matters contained in the Notice; (6) the right of Class Members to object to the Settlement or seek exclusion from the Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events.  *See* 15 U.S.C. §78u-4(a)(7).  The Notice further explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proof of Claim forms under the Plan as described in the Notice.

Accordingly, the Notice is sufficient because it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Rodriguez*, 563 F.3d at 962; *see also In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008).  In sum, the notice program here fairly apprises Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.  *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007).

4846-0789-4449.v2

## VI.    AWARD OF ATTORNEYS' FEES

### A.    A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For its efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks a reasonable percentage of the fund recovered as attorneys' fees. The percentage method of awarding fees has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the United States.

The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[6] Likewise, it has long been recognized in the Ninth Circuit that "'a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'" *In re Omnivision Techs. Inc. Sec. Litig.*, No. 5:11-cv-05235-RMW, 2015 WL 3542413, at *1 (N.D. Cal. June 5, 2015) (citing *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)).

In *Blum v. Stenson*, the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n.16 (1984). While courts have discretion to employ either a percentage-of-recovery or lodestar method in determining an attorneys' fee award, "[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Antitrust Litig.*,

---

[6]    The Supreme Court has emphasized that private securities actions, like this action, are "'a most effective weapon'" and "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 318 (2007).

- 21 -

4846-0789-4449.v2

No. CV 07-05107 SJO (AGRx), 2013 WL 7985367, at *1, (C.D. Cal. Dec. 23, 2013). Thus, the Ninth Circuit has expressly and consistently approved the use of the percentage method in common fund cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Other circuits are in accord.

The PSLRA also authorizes courts to award attorneys' fees and expenses to counsel for the plaintiff class provided the award does not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA].").

The percentage-of-recovery method is particularly appropriate in common fund cases like this because "the benefit to the class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach); *In re Galena Biopharma, Inc. Sec. Litig.*, No. 3:14-cv-00367-SI, 2016 WL 3457165, at *5 (D. Or. June 24, 2016) (percentage-of-recovery method preferred over lodestar method in cash settlement); *Omnivision*, 559 F. Supp. 2d at 1046 (recognizing that the "use of the percentage method in common fund cases appears to be [the] dominant" method for determining attorneys' fees). Among other benefits, the percentage-of-recovery method decreases the burden imposed on courts by eliminating a detailed and "more time-consuming" lodestar analysis. *Bluetooth*, 654 F.3d at 942; *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("'In practice, the

- 22 -

lodestar method is difficult to apply [and] time consuming to administer.'") (quoting *Manual for Complex Litigation* §14.121 (4th ed. 2004)).

## B.   Factors Considered by Courts in the Ninth Circuit Support Approval of the 33% Fee in This Case

Courts in this Circuit consider the following factors when determining whether a fee is fair and reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class; and (7) the amount of a lodestar cross-check. *See Omnivision*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048-50).

Application of each of these factors confirms that the requested 33% fee is fair and reasonable.

### 1.   Counsel Achieved a Favorable Result for the Class

Courts have consistently recognized that the result achieved is "the most critical factor" they must consider in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord Omnivision*, 559 F. Supp. 2d at 1046 (applying *Hensley* to common fund case).   Here, Lead Counsel obtained a sizeable recovery for the members of the Class Plaintiff successfully certified.  As discussed above in §II.A.3, the $19.75 million Settlement represents 25% of the estimated recoverable damages in this case, which is five times the median percentage recovery for cases in the Ninth Circuit from 2009 to 2018 and almost ten times the median ratio of settlements to investor losses in 2019.  *See* §II.A.3.  *See also, Omnivision*, 559 F. Supp. 2d at 1046 ("As previously discussed, the Settlement creates a total award of 9% of the possible damages, which is more than triple the average recovery in securities class action settlements.").  Therefore, this factor weighs in favor of final approval.

## 2.    The Litigation Was Risky and Complex

The risks of the Litigation, as well as the complexity and difficulty of the issues presented, are also important factors in determining a fee award.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (holding fees justified "because of the complexity of the issues and the risks"); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance.").  Securities class actions are notoriously complex, difficult to prove, and risky.  *See In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005) (noting that class actions, and particularly securities class actions, are typically complex); *Hefler*, 2018 WL 6619983, at *13 ("'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'").  Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).  For these reasons, in securities class actions, fee awards typically exceed the 25% benchmark recognized in the Ninth Circuit.  *Omnivision*, 559 F. Supp. 2d at 1047.

As discussed above in §III.A.3, and in the Alpert Declaration (¶¶11-18, 108-125), Plaintiff faced significant risks and uncertainties at summary judgment and trial in proving falsity and that Defendants acted with the requisite scienter.  At summary judgment and trial, Defendants were sure to take the position there was no direct evidence that Galanis controlled Banc or Sugarman's COR entities and therefore falsity could not be established.  Defendant Sugarman also repeatedly denied any material ties to Galanis, which he claimed would rebut scienter.  Plaintiff also faced challenges in proving loss causation.  Defendants' experts opined that the stock drop

following the October 18, 2016 *SeekingAlpha.com* Blog post was caused by spoofing, layering and cross-market derivatives and not new information; and to the extent the *SeekingAlpha.com* Blog post did cause a decline in Banc's stock price, the Blog post contained substantial non-fraud related information that could not be disaggregated from the alleged fraud related information.  Defendants also claimed that Plaintiff could not prove loss causation with regard to Banc's January 23, 2017 press release, which announced the SEC's investigation into the Company's October 2018 public response to the Blog as well as Sugarman's resignation as Chairman and CEO, because neither announcement was related to the Complaint's allegations that Galanis had material, undisclosed ties to the former Banc CEO and his COR entities.

While Plaintiff believes it had sufficient evidence to prove the elements of its claims, Defendants' arguments created significant uncertainties at summary judgment and trial.  That a $19.75 million recovery was achieved in the face of these risks supports a 33% fee award.

### 3.    The Skill Required and Quality of Work

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee.  This case involved unique and complex issues, which were successfully prosecuted and managed by Lead Counsel. *Omnivision*, 559 F. Supp. 2d at 1047 ("Prosecution and management of a complex national class action requires unique legal skills and abilities.").  Robbins Geller is a nationally recognized firm in securities class actions and complex litigation.  *See* www.rgrdlaw.com.  The highly favorable recovery obtained for the Class reflects the substantial skill and experience of Lead Counsel, who have vigorously prosecuted this case for nearly three years.

Moreover, Defendants were represented by two respected defense firms, Morrison & Foerster LLP and Latham & Watkins LLP, who contested Plaintiff's claims throughout the Litigation.  Courts recognize that the quality of opposing

4846-0789-4449.v2

counsel should be considered in assessing the requested fee.  *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (affirming fee award and noting that the court's evaluation of class counsel's work considered "the quality of opposition counsel and [defendant's] record of success in this type of litigation").

This factor weighs in favor of granting Lead Counsel's request for a 33% fee award.

### 4.    The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  Indeed, "[c]ourts 'routinely' enhance multipliers to reflect the risk of non-payment in common fund cases." *van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) (citing *Vizcaino*, 290 F.3d at 1051).

The risk of no recovery for a class and its counsel in complex cases of this type is very real.  There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise.  For example, in *In re Oracle Corp. Sec. Litig.*, No. C01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Lead Counsel prosecuted, the court granted summary judgment to defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately

- 26 -

$40 million.  In another PSLRA case, after a lengthy trial involving securities claims against JDS Uniphase Corporation, the jury reached a verdict in defendants' favor. *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable effort.  Nevertheless, Robbins Geller committed significant resources of both time and money to vigorously and successfully prosecute this action for the Class' benefit.  *See generally*, Declaration of Laurie L. Largent Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Award of Attorneys' Fees and Expenses ("RGRD Decl.").  The contingent nature of counsel's representation supports approval of the requested fee.

### 5.   The 33% Fee Award Is Within the Range Awarded in Similar Complex, Contingent Litigation

District courts may adjust the Ninth Circuit's 25% benchmark "'when special circumstances indicate that the percentage recovery would either be too small or too large in light of the hours devoted to the case and other relevant factors.'" *Childtime Childcare*, 2020 WL 218515, at \*4; *see also Jimenez v. O'Reilly Automotive Inc.*, No. SACV 12-00310 AG (JPRx), 2018 WL 6137591, at \*3 (C.D. Cal. June 18, 2018) (upward departure from the 25% benchmark to a 33.33% award was justified because of "complicated nature" of the case and "class counsel's success in achieving class certification"); *Figueroa v. Allied Bldg. Prods. Corp.*, No. SACV 16-02249 AG (KESx), 2018 WL 4860034, at \*3 (C.D. Cal. Sept. 24, 2018) (awarding 33% fee award in complex class action wage and hour case).

At preliminary approval, the Court noted that the 33% fee requested by Lead Counsel "is likely reasonable" as it "reflects fair compensation for undertaking this complex, risky, expensive, and time-consuming class action, particularly since both parties have been actively litigating this case for nearly three years." ECF No. 595 at

3.   Indeed, like this Court, the Ninth Circuit and numerous district courts have awarded fees in excess of 25% in complex class action cases.  *See Schulein*, 2015 WL 12698312, at *6 (awarding attorneys' fees in the amount of 30% of a $37.5 million cash settlement in class action merger case); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash settlement in consumer class action); *Pac. Enters.*, 47 F.3d at 379 (approving a fee award of one-third of a $12 million settlement fund in derivative and securities class actions); *Heritage Bond*, 2005 WL 1594389, at *9 (awarding one-third of a $27.78 million settlement fund in securities class action); *Tawfilis v. Allergan, Inc.*, No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716, at *7 (C.D. Cal. Aug. 27, 2018) (awarding one-third of $13.45 million settlement fund in antitrust class action); *In re K12 Inc. Sec. Litig.*, No. 4:16-cv-04069-PJH, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (approving 33% fee award on settlement of $3.5 million in securities class action); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW-FFMx, 2019 WL 6001562, at *1 (C.D. Cal. Nov. 8, 2019) (approving 33.3% fee award on settlement of $2.05 million in securities class action); *In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (approving 33.3% fee award on settlement of $1.525 million in securities class action); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (awarding one-third of $5,800,000 in FLSA case).

6.   **Reaction of the Class Supports Approval of the Attorneys' Fees Requested**

District courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee.  *Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award.").  While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a

4846-0789-4449.v2

Case 8:17-cv-00118-DMG-DFM   Document 599   Filed 02/10/20   Page 40 of 47   Page ID
#:24416

1   proposed class action settlement raises a strong presumption that the terms of a

2   proposed class action settlement are favorable to the class members." *DIRECTV, Inc.*,

3   221 F.R.D. at 529; *see also Kmiec*, 2016 WL 5938709, at *4 (a "small number of

4   objections and requests for exclusion supports final approval").

5         Class Members were informed in the Notice that Lead Counsel would move the

6   Court for an award of attorneys' fees in an amount of 33% of the Settlement Amount

7   and for payment of litigation expenses and for an award to Plaintiff not to exceed

8   $10,000.  Class Members were also advised of their right to object to the fee and

9   expense request and to Plaintiff's request for an award pursuant to 15 U.S.C.

10  §78u-4(a)(4) based on its representation of the Class, and that such objections are

11  required to be filed with the Court and served on counsel no later than February 24,

12  2020.

13        While the time to object to the fee and expense application has not expired, to

14  date, not a single objection has been received.  Should any objections be received,

15  Lead Counsel will address them in its reply papers.  "[T]he lack of objection from any

16  Class Member supports the attorneys' fees award." *Immune Response*, 497 F. Supp.

17  2d at 1177.  Finally, Lead Plaintiff supports Lead Counsel's fee and expense request.

18  Johnson Decl., ¶5.

19        **7.    The Requested Fee Is Reasonable Under a Lodestar**
20        **       Cross-Check Analysis**

21        Although Lead Counsel seek approval of a fee based on a percentage of the

22  recovery, "[a]s a final check on the reasonableness of the requested fees, courts often

23  compare the fee counsel seeks as a percentage with what their hourly bills would

24  amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also*

25  *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D.

26  Cal. Apr. 20, 2018).  In *Vizcaino*, the Ninth Circuit noted that an analysis of the

27  "lodestar method is merely a cross-check on the reasonableness of a percentage

28  figure."  290 F.3d at 1050 n.5.

- 29 -

Here, Lead Counsel spent 11,048.97 hours of attorney and paraprofessional time prosecuting this action on the Class' behalf.  RGRD Decl., ¶4.  The resulting lodestar is $7,561,131.30, representing a *negative* multiplier of .86, which underscores the reasonableness of the fee request.  *Id.*; *see, e.g.*, *Castro v. Sanofi Pasteur Inc.*, No. 11-7178 (JMV) (MAH), 2017 WL 4776626, at *9 (D.N.J. Oct. 23, 2017) ("Because the lodestar cross-check results in a negative multiplier, it provides strong evidence that the requested fee is reasonable."); *Grivas v. Metagenics, Inc.*, No. SACV 15-01838-CJC-DFM, 2019 WL 2005792, at *2 (C.D. Cal. May 6, 2019) ("[T]his Court has cross-checked the fee award against Class Counsel's combined lodestar and finds that the fee award represents a fee reduction in their lodestar, or a negative multiplier, further speaking to the reasonableness of the request.").

## VII.  LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

Lead Counsel also requests an award of its litigation expenses in the amount of $1,575,210.83 incurred in prosecuting and resolving the action on behalf of the Class.  Attorneys who create a common fund for the benefit of a class are entitled to an award of their expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action.  *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the outset, Lead Counsel was aware that it might not recover any of its expenses or, at the very least, would not recover anything until the action was successfully resolved.  Lead Counsel also understood that, even if the case was ultimately successful, payment of its expenses would not compensate it for the lost use of funds advanced to prosecute the action.  Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action.

- 30 -

4846-0789-4449.v2

Lead Counsel's litigation expenses are detailed in the accompanying fee and expense declaration setting forth the specific categories of expenses incurred and the amounts.  These expenses were necessarily incurred in this Litigation and are the type of expenses routinely charged to clients billed by the hour.  These include expenses associated with, among other things, experts and consultants, service of process, online legal and factual research, travel, and mediation.  *See, e.g.*, *Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (granting award of costs and expenses for "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses"); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (granting award because "[a]ttorneys routinely bill clients for all of these expenses").

A large component of Lead Counsel's expenses is for the costs of experts and consultants, all of whom were qualified and necessary to litigate this action.  The RGRD Declaration explains each experts' qualifications and role in the Litigation. *See* RGRD Decl., ¶6(e).

The expenses also include the costs of online research.  These are the charges for computerized factual and legal research services such as *LexisNexis*, *Westlaw*, and PACER.  It is standard practice for attorneys to use these resources to assist them in researching legal and factual issues, and, indeed, these tools create efficiencies in litigation and, ultimately, save clients and the class money.  *See id.*, ¶6(g).

The Notice informed potential Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $1,700,000.  *See* Murray Decl., Ex. A.  The amount of expenses for which payment is now sought, $1,575,210.83 and to date, no Class Member has objected.

- 31 -

4846-0789-4449.v2

## VIII.   PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Plaintiff seeks an award of $1,444 pursuant to §78u-4(a)(4) in connection with their representation of the Class, as detailed in the accompanying Johnson Declaration.   Under the PSLRA, a class representative may seek an award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class. *See* 15 U.S.C. §78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of a class action settlement).   Thus, courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class. *See, e.g.*, *Dusek v. Mattel, Inc.*, No. CV 99-10864-MRP (CWx), 2003 WL 27380801, at *1 (C.D. Cal. Sept. 29, 2003) (awarding $117,426 to three lead plaintiffs).

When evaluating the reasonableness of a lead plaintiff award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation'" among others. *Staton*, 327 F.3d at 977.   As detailed in the Johnson Declaration, Plaintiff devoted time and effort to monitoring the Litigation and directing Lead Counsel, including reviewing and commenting on case filings, providing input on litigation strategy in connection with discovery, and the parties' mediation.   Courts have approved as reasonable awards for class representatives sums that are far greater than what Plaintiff is requesting here. *See, e.g.*, *Todd v. STARR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) (awarding $10,000 award); *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 816 (3d Cir. 2010) ($15,000 awarded to each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 award); *In re Xcel Energy, Inc. Sec., Derivative, & ERISA Litig.*, 364

4846-0789-4449.v2

1  F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 to lead plaintiffs because

2  of "the important policy role [lead plaintiffs] play in the enforcement of the federal

3  securities laws on behalf of persons other than themselves").  The requested $1,444

4  award is reasonable in light of the out of pocket expenses Plaintiff expended to

5  support this Litigation and protect the interests of absent Class Members.

6  **IX.    CONCLUSION**

7       Based on the foregoing and the entire record, Plaintiff and Lead Counsel

8  respectfully request that the Court approve: the Settlement and the Plan of Allocation;

9  Lead Counsel's request for an award of attorneys' fees of 33% of the Settlement

10 Amount and payment of $1,575,210.83 in expenses; and an award of $1,444 to Lead

11 Plaintiff, as allowed by the PSLRA.

12 DATED:  February 10, 2020          Respectfully submitted,

13                                     ROBBINS GELLER RUDMAN
                                        & DOWD LLP
14                                     SPENCER A. BURKHOLZ
                                       LAURIE L. LARGENT
15                                     ROBERT R. HENSSLER JR.
                                       MATTHEW I. ALPERT
16                                     ERIKA OLIVER

17

18                                          s/ Laurie L. Largent
                                         LAURIE L. LARGENT
19
                                       655 West Broadway, Suite 1900
20                                     San Diego, CA  92101
                                       Telephone:  619/231-1058
21                                     619/231-7423 (fax)

22                                     Lead Counsel for Plaintiff

23

24

25

26

27

28

- 33 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 10, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ LAURIE L. LARGENT
LAURIE L. LARGENT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  llargent@rgrdlaw.com

# Mailing Information for a Case 8:17-cv-00118-AG-DFM In re Banc of California Securities Litigation,

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Manuel A Abascal**
  manny.abascal@lw.com,manuel-abascal-7112@ecf.pacerpro.com

- **Zainab Anna Ali**
  zali@mofo.com

- **Matthew Isaac Alpert**
  malpert@rgrdlaw.com,kathyj@rgrdlaw.com,e_file_sd@rgrdlaw.com,MAlpert@ecf.courtdrive.com

- **Joel M Athey**
  joel.athey@dlapiper.com,joel-athey-7389@ecf.pacerpro.com

- **Margaret Nicole Buckles**
  mbuckles@mofo.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jordan Davisson Cook**
  jordan.cook@lw.com,#ocecf@lw.com,jordan-cook-5273@ecf.pacerpro.com

- **Roman E Darmer , II**
  rdarmer@jonesday.com,lmatson@jonesday.com,jthakur@jonesday.com,ECFIrvineNotifications@jonesday.com,epete@jonesday.com

- **Joseph De Leon**
  joseph.deleon@lw.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com,lionel-glancy-2522@ecf.pacerpro.com,info@glancylaw.com

- **Brian T Glennon**
  brian.glennon@lw.com,shirin.behrooz@lw.com,brian-glennon-0505@ecf.pacerpro.com

- **Andrew R Gray**
  andrew.gray@lw.com,andrew-gray-3541@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com,jordan.cook@lw.com,CLAUDIA.BARBERENA@lw.com,jana.roach@lw.com

- **Robert Russell Henssler , Jr**
  bhenssler@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **William C Herbert**
  wherbert@mofo.com

- **Robert B Hubbell**
  rhubbell@mofo.com,docket-la@mofo.com,dawn-millner-4650@ecf.pacerpro.com,robert-hubbell-7718@ecf.pacerpro.com,dmillner@mofo.com

- **Michele D Johnson**
  michele.johnson@lw.com,michele-johnson-7426@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com,jana.roach@lw.com

- **Laurie L Largent**
  llargent@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Mark R McDonald**
  mmcdonald@mofo.com,docket-la@mofo.com,mmendoza@mofo.com,melissa-mendoza-4207@ecf.pacerpro.com,mark-mcdonald-0458@ecf.pacerpro.com

- **Erika Limpin Oliver**
  eoliver@rgrdlaw.com,crosini@rgrdlaw.com,kmccormack@rgrdlaw.com,CRosini@rgrdlaw.com

- **Steven J Olson**
  solson@omm.com,steven-j-olson-2026@ecf.pacerpro.com

- **Lesley F Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com,clinehan@glancylaw.com,lesley-portnoy-3007@ecf.pacerpro.com,charles-linehan-8383@ecf.pacerpro.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Nicholas Gray Purcell**
  nick.purcell@wilmerhale.com

- **Joseph Roth Rosner**
  jrosner@mofo.com

- **Carlos Salas**
  ecoff@ecofflaw.com

- **Nathan Matthew Saper**
  nathan.saper@lw.com

- **Robert Moss Tiefenbrun**
  rtiefenbrun@jonesday.com,lmatson@jonesday.com,ecfirvinenotifications@jonesday.com,ynomiyama@jonesday.com

- **Kristen Meredith Tuey**
  kristen.tuey@lw.com,kristen-tuey-6684@ecf.pacerpro.com

- **Ryan Arber Walsh**
  ryan.walsh@lw.com,ryan--walsh-0031@ecf.pacerpro.com,#ocecf@lw.com

- **Whitney Bruder Weber**
  whitney.weber@lw.com,whitney-weber-2642@ecf.pacerpro.com,#sflitigationservices@lw.com

- **Meryl L Young**
  myoung@gibsondunn.com,pmclean@gibsondunn.com

- **Mazamir Yousefi**
  mazamir.yousefi@lw.com,mazamir-yousefi-1016@ecf.pacerpro.com,#ocecf@lw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)