HARDER STONEROCK LLP
DILAN A. ESPER (CA Bar No. 178293)
EMMANUEL FUA (CA Bar No. 284563)
8383 Wilshire Blvd., Suite 526
Beverly Hills, California 90211
Telephone:  (424) 203-1600
Facsimile:   (424) 203-1601
Email:  DEsper@HarderLLP.com
Email:  EFua@HarderLLP.com

*Attorneys for Nonparty*
*Muddy Waters Capital LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re BANC OF CALIFORNIA SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Case No. 8:17-cv-00118-DMG (DFMx)<br><br>CLASS ACTION<br><br>**NONPARTY MUDDY WATERS CAPITAL LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT ORDER AGAINST DEFENDANT STEVE A. SUGARMAN AND LATHAM & WATKINS LLP**<br><br>Date:      December 1, 2023<br>Time:      9:30 A.M.<br>Judge:    Hon. Dolly M. Gee<br>Courtroom:  8C |

1

# <u>TABLE OF CONTENTS</u>

2   TABLES OF AUTHORITIES ............................................................................... iii

3   I.      INTRODUCTION .........................................................................................1

4   II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ..................2

5
6           A. The Complaint ....................................................................................2

7           B. The Order Granting in Part and Denying in Part Muddy Waters' Motion to
8              Quash Sugarman's Subpoena...............................................................4

9           C. The Protective Order ...........................................................................5

10
11              1. Purpose and Limits of Order...................................................5

12              2. Designating Protected Material ..............................................5

13              3. Access to Designated Material ................................................6

14
15              4. Agreement to Be Bound .........................................................7

16              5. Unauthorized Disclosure of Designated Material ...............7

17              6. Final Disposition ....................................................................8

18
19          D. Muddy Waters Produces Documents to Sugarman and Designates All Such
               Documents AEO In Reliance On Judge McCormick's Order .......................8

20
21          E. The Expert Report of Charles Lee is Derived in Significant Part From
               Muddy Waters' AEO Information ...............................................9

22
23          F. Sugarman's Willful Disclosure of Muddy Waters' Highly Confidential
               Information, Facilitated by Latham, in Violation of the Protective Order ...10

24   III.   LEGAL ARGUMENT ............................................................................13
25
26          A. Legal Standard ...............................................................................13

27              1. Rule 37 Sanctions ...............................................................13

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

2. Civil Contempt ....................................................................................14

B. Sugarman Violated the Protective Order ...............................................15

C. Latham Violated the Protective Order ...................................................17

D. Sugarman and Latham Should Be Held in Contempt and Sanctioned....18

E. The Court Should Also, or in the Alternative, Permit Discovery...........21

IV. CONCLUSION .......................................................................................22

CERTIFICATE OF COMPLIANCE.............................................................................23

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Beam System, Inc. v. Checkpoint Systems, Inc.*,
5    1997 WL 364081 (C.D. Cal. Feb. 6, 1997) .................................................. 13, 14

6
*Beebe v. Nutribullet, L.L.C.*,
7    No. CV 17-0828, 2019 WL 4261876 (C.D. Cal. July 3, 2019) ......................... 13

8
*Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*,
9    2012 WL 12932049 (S.D.N.Y. July 17, 2012) ................................................. 21

10  *Clarke v. First Transit, Inc.*,
11    2012 WL 12877865 (C.D. Cal. Nov. 2, 2012) .......................... 13, 14, 15, 18, 20

12  *Eastman v. Thompson*,
      2022 WL 11030550 (C.D. Cal. Oct. 19, 2022) ................................................. 22
13

14  *Elkharwily v. Mayo Holding Co.*,
      No. CV 12-3062, 2017 WL 1373256 (D. Minn. Apr. 13, 2017) ........... 13, 19, 20
15

16  *F.T.C. v. Affordable Media*,
      179 F.3d 1228 (9th Cir. 1999) .......................................................................... 14
17

18  *Fuentes v. Maxim Healthcare Servs., Inc.*,
      2019 WL 1751822 (C.D. Cal. Feb. 8, 2019) ..................................................... 13

19
*Gonzales v. Charter Commc'ns, LLC*,
20    2022 WL 570003 (C.D. Cal. Jan. 26, 2022) .................................. 13, 14, 18, 19

21  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
22    10 F.3d 693 (9th Cir. 1993) ........................................................................ 15, 19

23  *In re Subpoenas to Produce Documents, Information, or Objects to*
        *Muddy Waters, et al.*,
24    No. 2:18-mc-00148-AG, Dkt. 31 (C.D. Cal. Jan. 18, 2019) (Block
25    Decl., Ex. A) ....................................................................................................... 4

26  *OmniGen Research, LLC v. Wang*,
27    2018 WL 11512767 (D. Or. Nov. 6, 2018) ........................................... 19, 20, 22

28

iii

*Parson v. Ryan*,
    949 F.3d 443 (9th Cir. 2020) ................................................................ 15

*Pub. Citizen v. Liggett Grp., Inc.*,
    858 F.2d 775 (1st Cir. 1988) ................................................................ 13

*Sanchez v. Rodriguez*,
    298 F.R.D. 460 (C.D. Cal. 2014) .......................................................... 14

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
    2012 WL 12882012 (C.D. Cal. Feb. 13, 2012) .................................... 20

*Steven A. Sugarman et al. v. Muddy Waters Capital, LLC et al.*,
    No. CV 21-1453-DMG, Dkt. 190 (C.D. Cal. Sept. 30, 2021) ........ 12, 21

*Sugarman v. Muddy Waters Capital, LLC*,
    No. 27-cv-21-11850, Order for Dismissal (Oct 18, 2023) .................... 12

*Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*,
    Case No. 19-cv-4248 (N.D. Cal.) .......................................................... 12

*Systemic Formulas, Inc. v. Kim*,
    2009 WL 5205995 (D. Utah Dec. 23, 2009) ........................................ 20

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ................................................................ 22

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.*,
    256 F. Supp. 2d 228 (D. Del. 2003) ...................................................... 21

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ........................................................ 14, 19

**Other Authorities**

Fed. R. Civ. P. 16 ...................................................................................... 13

Fed. R. Civ. P. 16(f) .................................................................................. 13

Fed. R. Civ. P. 37(b)(2)(a) ........................................................................ 14

Fed. R. Civ. P. 37(b)(2)(C) ....................................................................... 14

iv

1   Nonparty movant Muddy Waters Capital LLC ("Muddy Waters") respectfully
2   submits this memorandum of points and authorities in support of its Motion for
3   Sanctions and Contempt Order against Defendant Steven A. Sugarman ("Sugarman")
4   and his counsel Latham & Watkins LLP ("Latham") for violation of this Court's
5   Protective Order (Dkt. 83).

6   ## I.   **INTRODUCTION**

7   As part of a long-running personal vendetta and retaliation campaign against
8   Muddy Waters and its principal Carson Block, Sugarman—a party to this case and an
9   active member of the State Bar of California—released to members of the media an
10   expert report.  The conclusions of, and primary basis for, the expert report was
11   information that came from Muddy Waters in response to a subpoena, which the
12   Court specifically ruled Sugarman's lawyers may only access if it was designated
13   "Attorneys' Eyes Only," and which is designated as "Attorneys' Eyes Only" under
14   the Protective Order entered by the Court in this case.  Sugarman's conduct is a
15   blatant and willful violation of the Protective Order issued by this Court (Dkt. 83),
16   which, by its terms, protects Muddy Waters' confidentiality rights even after the
17   termination of this action.

18   The Protective Order is clear and definite: Sugarman's disclosure of the expert
19   report to reporters was unauthorized.  Moreover, the expert report should have been
20   returned or destroyed 60 days after the termination of this matter in August 2020.
21   And yet, years later, Sugarman still not only possessed the expert report, but has been
22   disseminating it to reporters through a former employee.  *See* Declaration of Adam A.
23   Levine ¶¶ 13–19; Declaration of Carson Block ¶¶ 15–16.  Sugarman has therefore
24   violated numerous sections of the Protective Order and he should be held in contempt
25   and subjected to monetary sanctions.

26   Latham, Sugarman's counsel, is to blame as well.  Sugarman should have never
27   obtained a copy of the expert report at issue because it "derive[s] from," "contains,
28   embodies, [and] discloses" Muddy Waters' "Attorneys' Eyes Only" documents.  Dkt.

83 at 2.  For this reason, Latham should have designated the expert report "Attorneys' Eyes Only" and was obligated to ensure that information ordered by this Court to be "Attorneys' Eyes Only" remained just that, no matter how Latham designated the document.  Instead, in violation of the clear terms of the Protective Order, Latham designated the report as merely "Confidential," thereby allowing the firm's client, Sugarman, to possess a copy.  Latham did this having already sought to obtain an order from this Court permitting it to disseminate "Attorney's Eyes Only" documents to Sugarman; however, as Latham admits, it never obtained that order.

Additionally, under the Protective Order, Latham should have ensured that Sugarman returned or destroyed the expert report 60 days after the termination of this action because the Protective Order only allows counsel of record to retain an expert report after the conclusion of the case, and to do so only for "archival purposes."  Dkt. 83 at 8.  Latham's violations of the Protective Order facilitated Sugarman's unauthorized disclosure of the expert report.  Latham should therefore be held in contempt and sanctioned as well.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.    The Complaint

This was a securities fraud class action brought by investors against Banc of California, Inc. ("Banc"), its former president and CEO, Sugarman, and Banc's CFO. The plaintiffs' claims arose in connection with a 29% decline in Banc's stock price from $15.87 to $11.26 on a volume of 17.2 million shares on October 18, 2016.  Dkt. 41 ("Compl.") ¶ 7.

The plaintiffs alleged, among other things, that the defendants made misstatements and omissions concealing Sugarman's ties to a convicted felon named Jason Galanis, who pled guilty to defrauding investors out of millions of dollars, was sentenced to six years in prison and, while out on bail, orchestrated and was criminally and civilly charged by the United States Department of Justice and U.S. Securities and Exchange Commission in connection with a Ponzi scheme.  *See*, *e.g.*,

*id.* ¶¶ 31–32.  Galanis also allegedly had a history of gaining secret control of banks and looting their assets, "leaving unsuspected investors and taxpayers with hundreds of millions in losses."  *Id.* ¶ 5.

The Complaint further alleged Banc engaged in improper related-party transactions involving Sugarman's brother, Jason Sugarman, who was recently ordered to pay over $10.2 million to the SEC for his role in a pension fraud scheme orchestrated in concert with Galanis.  *Id.* ¶¶ 33, 41, 42, 56, 57.[1]

The Complaint also alleged that, as a result of the defendants' misstatements and omissions regarding Sugarman's (and thus Banc's) ties to Galanis, Banc's stock price was artificially inflated during the class period.  *Id.* ¶ 4.  The stock price then plummeted on October 18, 2016 in response to an article published on *SeekingAlpha.com*, which purported to lay out "an intricate web of ties between Galanis … and Banc's senior most officers and directors, including CEO Sugarman."  *Id.* ¶ 5.  The article was entitled, "BANC: Extensive Undisclosed Ties To Notorious Fraudster Jason Galanis Makes Shares Un-investible" (the "Article").

Following the revelations in the Article and related misconduct alleged in the Complaint, investors brought securities fraud claims against the defendants for violation of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

Neither Muddy Waters nor any individual associated with Muddy Waters is referenced in the Complaint.

/ / /

/ / /

/ / /

---

[1] *See* Sec. & Exch. Comm'n, *SEC Obtains Final Judgment Against Defendant Charged in $43 Million Tribal Bonds Scheme*, Litigation Release No. 25611 (Jan. 11, 2023), *available* at https://www.sec.gov/litigation/litreleases/2023/lr25611.htm.

**B.**    **The Order Granting in Part and Denying in Part Muddy Waters'**
          **Motion to Quash Sugarman's Subpoena**

In an attempt to shift blame away from himself relative to the allegations in the Complaint, on September 11, 2018, Sugarman served Muddy Waters and its related entities with substantially identical subpoenas seeking a wide range of documents and data, most of which had nothing to do with the securities fraud claims alleged against Sugarman.

Muddy Waters and its related entities moved to quash the subpoenas.  They argued that (1) the subpoenas were overbroad, sought irrelevant information, and were unduly burdensome, and (2) the subpoenas sought privileged and highly confidential and sensitive information.  Hon. Douglas F. McCormick, U.S.M.J., found Muddy Waters' concerns to be well grounded and granted the motion in large part and denied it only in part, requiring Muddy Waters to respond to only two of Sugarman's 10 requests.  *See In re Subpoenas to Produce Documents, Information, or Objects to Muddy Waters, et al.*, No. 2:18-mc-00148-AG (DFMx), Dkt. 31 (C.D. Cal. Jan. 18, 2019) (Block Decl., Ex. A).  The two requests that Judge McCormick required Muddy Waters to produce documents in response to sought "all documents reflecting Muddy Waters' transactions in securities of Banc" (hereinafter, "Request 2") and "all documents reflecting Muddy Waters' decision to enter into any transactions in the securities of Banc" (hereinafter, "Request 3").  *Id.* at 3.

Significant to the issues in this Motion, Judge McCormick held: "The Court is sensitive to the fact that Requests 2 and 3 touch on proprietary and sensitive business information.  The Court thus ORDERS the documents be designated attorneys' eyes only pursuant to the existing protective order in the underlying case."  *Id.* at 5.  In other words, Judge McCormick ordered that *all* documents Muddy Waters produced in this matter would be considered "Attorney's Eyes Only," under the Court's Protective Order in the case.

/ / /

1    Thus, this motion concerns specific information that was not merely given a
2 designation by parties under an existing protective order (as often happens in cases),
3 but which the Magistrate Judge specifically ordered could **only** be ordered produced
4 if access was limited to those who fell within the definition of "Attorneys' Eyes
5 Only."

6    **C.    The Protective Order**

7    This Court issued the Protective Order on November 13, 2017.  Dkt. 83.  The
8 stipulated order was drafted by the parties, which included Sugarman, a named
9 defendant.  *Id.* at 1 ("the parties to this action respectfully request that the Court issue
10 this Protective Order").  In the Protective Order's preamble, Sugarman agreed to be
11 bound by its terms.  *Id.* ("The parties … hereby stipulate to the following terms ….").
12 Sugarman's counsel, Latham, signed the Protective Order.  *Id.* at 9.

13    On its face, the Protective Order has no expiration date and thus remains in
14 effect today.  *See id.* at 11 ("I further agree to submit to the jurisdiction of the United
15 States District Court for the Central District of California for the purpose of enforcing
16 this Order, even if such enforcement proceedings occur after termination of this
17 action.").

18    **1.    Purpose and Limits of Order**

19    In Section I, the Protective Order recognizes that "this action is likely to
20 involve confidential, proprietary, or private information requiring special protection
21 from public disclosure and from use for any purpose other than this litigation."  *Id.* at
22 1.  Accordingly, the Protective Order affords numerous protections to discovery
23 material designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only
24 Information."  *See generally id.*

25    **2.    Designating Protected Material**

26    Section II of the Protective Order permits non-parties, (which would eventually
27 include Muddy Waters), to designate discovery material as "Confidential" or "Highly
28 Confidential – Attorneys' Eyes Only Information" (hereinafter, "AEO"), and to

1   receive all of the protections set forth in the Protective Order. *See id.* at 1–2.

2       The Confidential designation is appropriate for "confidential, proprietary,

3   personal and/or trade secret technical, scientific, business, or financial information

4   that is not generally known and that the producing party would normally maintain in

5   confidence and not reveal to a third party or would cause third parties to maintain in

6   confidence." *Id.* at 1.

7       The AEO designation is appropriate for "extremely sensitive

8   'CONFIDENTIAL' information disclosure of which to another party or non-party

9   would create a substantial risk of serious harm that could not be avoided by less

10  restrictive means." *Id.* at 2.  Significantly, any AEO designation applies not only to

11  materials that are specifically designated as AEO, but also to "[a]ny information that

12  is derived from" AEO material, "to the extent that the derived information embodies,

13  contains, or discloses any [AEO] information." *Id.* at 2.  Accordingly, an expert

14  report derived from AEO material is itself AEO material.

### 3.     Access to Designated Material

16      Section IV.1 of the Protective Order provides that a party receiving either AEO

17  or Confidential-designated material may not use such material for any purpose other

18  than "this litigation." *Id.* at 4.

19      Sections IV.2 and IV.3 of the Protective Order limit the individuals who may

20  receive Confidential and AEO-designated materials.  In particular, a party receiving

21  AEO material may not disclose such material to anyone except for a limited set of

22  individuals, most of whom are required to sign the "Agreement to Be Bound"

23  appended as Exhibit A to the Protective Order.  This limited set of individuals

24  includes *only*: (a) the receiving party's outside counsel of record in this action[2] and

25  counsel's employees to whom disclosure is reasonably necessary; (b) experts retained

26

27  _____

28      [2] Although Sugarman is a licensed attorney (State Bar of California No.
    220315), he was not counsel of record in this case.

by the receiving party's outside counsel of record to whom disclosure is reasonably necessary; (c) the Court and its personnel; (d) outside court reporters and their staff, professional jury or trial consultants, mock jurors, and professional vendors to whom disclosure is reasonably necessary; (e) during their depositions, witnesses and their attorneys to whom disclosure is reasonably necessary; and (f) the author or recipient of the document, or a custodian or other person who otherwise possessed or knew the information. *Id.* at 5–6. If a person is not on this list, he or she may not view AEO material under the Protective Order. *Id.*

By contrast, documents designated as Confidential may be shared with the same set of individuals as well as "officers, directors, and employees of the receiving party to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A)" and "[a]ny mediator or settlement officer, and their supporting personnel." *Id.* at 5.

### 4.      Agreement to Be Bound

The Protective Order's Agreement to Be Bound requires the signatory to "solemnly promise that [he or she] will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with this Order." *Id.* at 11. It also provides that signatory "understand[s] and acknowledge[s] that failure to … comply" with the Protective Order "could expose [him or her] to sanctions and punishment for contempt." *Id.*

### 5.      Unauthorized Disclosure of Designated Material

Section VI of the Protective Order sets forth a series of steps that a party must take in the event of the unauthorized disclosure of designated material, whether "by inadvertence or otherwise." *Id.* at 7. These steps include notifying the designator in writing of the unauthorized disclosures, using one's best efforts to retrieve all unauthorized copies of the designated material, informing the persons who received the material of the Protective Order, and using reasonable efforts to have those persons execute the Agreement to Be Bound. *Id.*

1       **6.      Final Disposition**

2          Finally, Section IX of the Protective Order requires that within 60 days after the

3   final disposition of this action—which in this case was August 31, 2020 (Dkt. 617)—

4   any party receiving either Confidential or AEO material must return or destroy it.  *Id.*

5   at 8.

6          The obligation to return or destroy designated material extends not only to the

7   designated material itself, but also to "all copies, abstracts, compilations, summaries,

8   and any other format reproducing or capturing any designated material."  *Id.*  This

9   means that an expert report containing AEO material must also be returned or

10  destroyed.

11         The only exception to these return and destruction obligations applies to

12  counsel of record, who may maintain certain case files for archival purposes.  *Id.*

13      **D.    <u>Muddy Waters Produces Documents to Sugarman and Designates</u>**

14          **<u>All Such Documents AEO In Reliance On Judge McCormick's</u>**

15          **<u>Order</u>**

16         Following Judge McCormick's ruling on the motion to quash, Muddy Waters,

17  in reliance on the protections in the Protective Order and the Magistrate Judge's

18  specific order that its production would be "Attorneys' Eyes Only," produced

19  documents to Sugarman's counsel, Latham.  Block Decl. ¶ 10.  The production was

20  made in two parts in January and February 2019, and, consistent with Judge

21  McCormick's order, was limited to documents responsive to Sugarman's Requests 2

22  and 3.  *Id.*

23         Pursuant to the Protective Order—and as specifically ordered by Judge

24  McCormick—Muddy Waters designated *all* of the documents it produced as AEO,

25  stamping each document in the bottom-left-hand corner, "ATTORNEY'S EYES

26  ONLY."  *Id.* ¶ 11.  The documents included extremely sensitive and proprietary

27  financial and transaction data and similarly sensitive communications.  *Id.* ¶¶ 10, 18.

28  / / /

### E.     The Expert Report of Charles Lee is Derived in Significant Part From Muddy Waters' AEO Information

On February 22, 2019, an individual named Charles Lee, retained by Latham on behalf of Sugarman, authored an expert report (the "Expert Report") in this action. In the Expert Report, Lee makes a series of speculative arguments around a theory that certain traders were supposedly responsible for the 29% decline in Banc's stock price on October 18, 2016, rather than Banc, Sugarman, and Banc's CFO, as alleged in the Complaint.  Block Ex. B (Sealed Expert Report) ¶ 16.

In so doing, Lee focuses specifically and extensively on Muddy Waters, attacking Muddy Waters and attempting to paint Muddy Waters in a negative light. *See, e.g.*, *id.* ¶¶ 13, 37, 43–53, 59–61, 74, 81, 83, 90-93, nn.47–68, 103.  In asserting his opinions (which Muddy Waters disputes), Lee expressly relies upon and reveals the contents of Muddy Waters' AEO-designed document production.  He specifically references Muddy Waters' trading activity in Banc over a 19-month period, the precise dollar amount and timing of that activity, Muddy Waters' estimated profits in connection with such trading, and Muddy Waters' emails and documents that he concedes are "internal" to Muddy Waters; all of this information was obtained from the trading documents Muddy Waters produced and designated "Attorney's Eyes Only."  *See, e.g.*, *id.* ¶¶ 13, 47, 48, 51, 81 & nn.54–55, 59–61, 64, 103 & Figure 6.

Additionally, Lee cites numerous documents from Muddy Waters' production by specific bates number and summarizes those documents.  *See*, *e.g.*, *id.* nn.52, 53, 59–62, 64, 103 (citing, *inter alia*, MWC-BANC 0001–10, 0039, 00125, 00148, 00159, 00164, 00197, 00205, 00216).  He also admits that he reviewed and considered Muddy Waters' *entire* document production, MWC-BANC 0001 – 00255, in forming his opinions.  *See id.* ¶ 45, n.52, & Appendix § B, item [246].

Furthermore, Lee admits that none of Muddy Waters' information contained in the Expert Report was publicly available.  Although he references certain FINRA data, which apparently were subpoenaed from FINRA, he admits the data only

9

identify traders by a "Customer ID." *Id.* ¶ 44.  He also concedes that it was only through "information [Lee] obtained in the underlying litigation" that he was able to learn that trades conducted by one specific "Customer ID" were, according to Lee, "mainly by Muddy Waters." *Id.* ¶ 45.

Despite the ubiquity of Muddy Waters' AEO documents and information throughout the Expert Report and the central role they played in supporting Lee's thesis, Latham designated the Expert Report only as "Confidential" under the Protective Order, and not AEO, thereby allowing its client, Sugarman, to possess a copy.

F.    **Sugarman's Willful Disclosure of Muddy Waters' Highly Confidential Information, Facilitated by Latham, in Violation of the Protective Order**

As a nonparty to the case, Muddy Waters never received a copy of the Expert Report while this case was still pending.  Block Decl. ¶ 16.  It only first received the Expert Report in April 2023 through an individual named Adam Levine ("Levine") who, until recently, was the Chief of Staff to Sugarman in his current venture, The Change Company CDFI LLC.  *Id.*

Levine is a former Assistant White House Press Secretary under President George W. Bush, a former senior aide to a U.S. senator, and a former vice president at Goldman Sachs.  Levine Decl. ¶ 3.  He worked under Sugarman as his Chief of Staff at Sugarman's company, The Change Company, from 2021 to May 2023.  *Id.* ¶ 5.[3]

---

[3] On June 20, 2023, Levine filed a lawsuit against The Change Company CDFI LLC for whistleblower retaliation and wrongful termination, among other causes of action.  Block Decl., Ex. C ("Levine Compl.").  Levine alleges that TCC engaged in a number of illegal activities and that he reported these activities to Sugarman and the company's general counsel.  Levine Compl. ¶¶ 12–20.  Levine further alleges that, rather than investigate his claims—which included illegal recordings, a potential violation of an SEC order relating to Sugarman's brother, Jason Sugarman (whom the SEC had fined and barred from any association with the securities industry "for his

Sugarman directed Levine to attempt to cause other news organizations to write negative articles about Mr. Block and Muddy Waters. *Id.* ¶¶ 9–12.[4]

Like Sugarman, Levine should have never received a copy of the Expert Report because he is not among the parties listed in the Protective Order entitled to receive AEO documents. Levine was also never entitled to receive even Confidential documents because he was never an officer, employee, or director of Banc. *Id.* ¶ 3.

Nevertheless, because Latham breached the Protective Order by improperly designating the Expert Report as "Confidential," Sugarman obtained a copy of the Expert Report and was able to further breach the Protective Order by giving it to Levine to disseminate to the media on his behalf. *Id.* ¶ 13 & Levine Ex. A & Sealed Ex. D. Sugarman told Levine to send it to reporters with the intention that reporters would then write negative articles about Muddy Waters and Block. *Id.* ¶ 14. Sugarman personally directed the smear campaign against Muddy Waters and Block, including text messages regarding a *Wall Street Journal* article about Block celebrating the fact that Sugarman and Levine were not mentioned as sources. Levine Ex. C.

Sugarman also instructed Levine and Lindsay Valdeon, another senior Change Co. employee, to inform reporters of a purported call that Sugarman claims to have had with the Department of Justice in which the DOJ allegedly said told Sugarman it

_____

role in a scheme to defraud Native American pension funds"), potential CDFI regulatory violations, and potential securities fraud—Sugarman "became extremely hostile towards" Levine and the company fired him. *Id.* ¶¶ 20–25.

[4] *See, e.g.*, Liz Hoffman et al., *Justice Department Targets 'Spoofing' and 'Scalping' in Short Seller Investigation*, THE WALL STREET JOURNAL (Feb. 16, 2022), https://www.wsj.com/articles/justice-department-is-pursuing-wide-ranging-investigation-of-short-sellers-sources-say-11645019122; Jody Godoy et al., *Carson Block's Muddy Waters among short sellers being probed by U.S. Justice Dept.*, REUTERS (Feb. 16, 2022), https://www.reuters.com/business/finance/federal-prosecutors-probing-short-sellers-wsj-2022-02-16/.

was considering RICO charges against Muddy Waters. *Id.* ¶ 21. Not coincidentally, Sugarman had previously brought a frivolous civil RICO lawsuit against Muddy Waters and Block, which was dismissed with prejudice.[5] Block Decl. ¶ 20.

Reuters subsequently published an article parroting Sugarman's misrepresentation, writing, "While prosecutors haven't made any decisions yet, potential charges under the Racketeer Influenced and Corrupt Organizations Act (RICO) were an option on the table, the sources said."[6] *Business Insider* reported on this misinformation from Sugarman as well.[7]

Sugarman did all this knowing full well that he was "not supposed to have a copy of the Expert Report" (because it was Attorneys' Eyes Only), Levine Decl. ¶ 15, let alone that it could be permissibly distributed to the media.[8]

---

[5] *Steven A. Sugarman et al. v. Muddy Waters Capital, LLC et al.*, No. CV 21-1453-DMG (DFMx), Dkt. 190 (C.D. Cal. Sept. 30, 2021). Sugarman has also filed additional meritless state and federal suits against Muddy Waters. *See Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*, Case No. 19-cv-4248 (N.D. Cal.), later transferred to the Central District of California as Case No. 2:21-cv-1453; *Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*, Court File No. 27-cv-21-11850 (Fourth Judicial Dist., Hennepin Cty., Minn. 2021). The Minnesota case was dismissed on forum non conveniens grounds on October 18, 2023. *See Sugarman v. Muddy Waters Capital, LLC*, No. 27-cv-21-11850, Order for Dismissal (Oct 18, 2023).

[6] Megan Davies et al., *U.S. prosecutors explore racketeering charges in short-seller probe –sources*, REUTERS (Feb. 22, 2022), https://www.reuters.com/world/us/us-prosecutors-explore-racketeering-charges-short-seller-probe-sources-2022-02-18/.

[7] Matthew Fox, *The Department of Justice is reportedly exploring if they can charge stock market short-sellers with the same law used to take down the mafia*, BUSINESS INSIDER (Feb. 23, 2022), *available at* https://markets.businessinsider.com/news/stocks/stock-market-short-sellers-doj-investigation-mafia-law-rico-racketeering-2022-2.

[8] In the interest of full disclosure, Levine and Sugarman's separation was acrimonious, and Levine and Sugarman have since been involved in legal disputes in which Sugarman has made serious allegations of criminal conduct against Levine. Muddy Waters takes no position on those disputes and has no information about who

1  **III.   LEGAL ARGUMENT**

2  **A.   Legal Standard**

3  "As a general matter, the court that issues a protective order retains jurisdiction

4 to enforce it, even after the case has closed."  *Beebe v. Nutribullet, L.L.C.*, No. CV 17-

5 0828, 2019 WL 4261876, at *8 (C.D. Cal. July 3, 2019) (collecting authorities); *see*

6 *also Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 781–82 (1st Cir. 1988) ("[T]he

7 district court necessarily had the power to enforce the [protective] order, at any point

8 while the order was in effect, including periods after judgment."); *Elkharwily v. Mayo*

9 *Holding Co.*, No. CV 12-3062, 2017 WL 1373256, at *2 (D. Minn. Apr. 13, 2017)

10 (holding party in contempt, ordering payment of attorneys' fees, and granting other

11 relief where party violated protective order in closed case).

12  **1.   Rule 37 Sanctions**

13  Courts are authorized under Federal Rule of Civil Procedure 37 to impose

14 sanctions against litigants and their attorneys for violating protective orders.  *See*

15 *Gonzales v. Charter Commc'ns, LLC*, 2022 WL 570003, at *3 (C.D. Cal. Jan. 26,

16 2022); *Fuentes v. Maxim Healthcare Servs., Inc.*, 2019 WL 1751822, at *3 (C.D. Cal.

17 Feb. 8, 2019) (citing Fed. R. Civ. P. 37(b)(2)(a)); *Clarke v. First Transit, Inc.*, 2012

18 WL 12877865, at *12 (C.D. Cal. Nov. 2, 2012) (same).

19  Federal Rule of Civil Procedure 16, which references Rule 37, also provides

20 courts with such authority.  Fed. R. Civ. P. 16(f) (authorizing courts to "issue any just

21 orders … if a party or its attorney … fails to obey a scheduling *or other* pretrial order"

22 (emphasis added)).

23  "Because of the important interests at stake, it is essential that protective orders

24 

25  _____

26 is telling the truth in those matters or even if anyone is.  However, Levine's
allegations regarding Sugarman's violation of this Court's protective order are
27 corroborated by the documentary evidence.  Whatever the truth is concerning
Levine's other disputes with Sugarman; he is clearly telling the truth regarding the
28 issues herein.

be respected." *Beam System, Inc. v. Checkpoint Systems, Inc.*, 1997 WL 364081, at *2 (C.D. Cal. Feb. 6, 1997). Accordingly, the sanctions that courts impose for violating protective orders "may be severe." *Id.* Moreover, such "'[s]anctions are permissible under Rule 37 when a party fails to comply with a court order, regardless of the reasons.'" *Clarke*, 2012 WL 12877865, at *12 (citation omitted).

Where the requested sanction is "less than dismissal" (as is the case here), the moving party is not required to prove "bad faith or willfulness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see also Sanchez v. Rodriguez*, 298 F.R.D. 460, 469 (C.D. Cal. 2014) (same).

If the Court finds that a party or their attorney violated a protective order without substantial justification, then the payment of attorneys' fees and costs is a mandatory part of any sanctions award. Fed. R. Civ. P. 37(b)(2)(C).

Other sanctions are within the Court's discretion and include "treating as contempt of court the failure to obey any order." Fed. R. Civ. P. 37(b)(2)(A) (permitting "just orders" for violation of protective order).

### 2.     Civil Contempt

Courts also have the "'inherent power to enforce compliance with their lawful orders through civil contempt.'" *Clarke*, 2012 WL 12877865, at *13 (citation omitted). An order of civil contempt is warranted where, as here, "'(1) [the party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence.'" *Gonzales*, 2022 WL 570003, at *3 (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). Once the moving party has shown by "clear and convincing evidence that the contemnors violated a specific and definite order of the court," then "[t]he burden … shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted).

A court has "wide latitude in determining whether there has been contemptuous

1  defiance of its order." *Id.* citation omitted) (cleaned up).  Moreover, "[t]he contempt

2  'need not be willful,' and there is no good faith exception to the requirement of

3  obedience to a court order."  *In re Dual-Deck*, 10 F.3d at 695.

4       Upon holding a party in civil contempt, the court may impose sanctions that

5  "coerce[] compliance with a court order" and/or "compensate the complainant for

6  actual losses."  *Parson v. Ryan*, 949 F.3d 443, 455 (9th Cir. 2020).

7       **B.    Sugarman Violated the Protective Order**

8       As stated in the preamble of the Protective Order, Sugarman was bound by the

9  Protective Order's terms.  Dkt. 83 at 1.  As a party to the case, he also helped draft it

10 and proposed that the Court enter it.  *Id.*; *see Clarke*, 2012 WL 12877865, at *12

11 ("Courts are particularly unsympathetic to purported excuses for less-than-substantial

12 compliance when the contemnor participated in drafting the order against which

13 compliance is measured…." (citation omitted)).

14      As a recipient of "Confidential" designated information, Sugarman also should

15 presumably have signed the Agreement to Be Bound, which contains the statement,

16 among others, that "I solemnly promise that I will not disclose in any manner any

17 information or item that is subject to this Protective Order to any person or entity

18 except in strict compliance with this Order," and failure to abide by this promise

19 "could expose me to sanctions and punishment for contempt."  Dkt. 83 at 4, 11.

20      By disseminating the Expert Report to the media directly and through Levine,

21 Sugarman (again, a member of The State Bar of California) violated the Magistrate

22 Judge's Order and several provisions of the Protective Order, each of which are clear

23 and definite:

24      First, Sugarman violated the Magistrate Judge's Order, which ordered the

25 production of Muddy Waters documents under the express condition that they be

26 restricted to Attorneys' Eyes Only.

27      Second, Section IV.1 of the Protective Order states, "A receiving party may use

28 designated material only for this litigation."  *Id.* at 4.  The Expert Report is

"designated material" because it was designated "Confidential."[9]  Moreover, this litigation has been over for years; Sugarman was dismissed with prejudice in August 2020.  Dkt. 617.  Disseminating the Expert Report to the media to smear Muddy Waters and Block in the press thus cannot possibly constitute "use … for this litigation."  *Id.* The same would be true even if the litigation were ongoing.

Third, Sections IV.2 and IV.3 of the Protective Order restrict the parties who may receive material designated Confidential or AEO to a list of discrete individuals. *Id.* at 4–6.  Nonparty members of the media as well as Levine, who never worked for Banc, are nowhere on these lists and there is no possible interpretation of these lists that would carve out an exception for them.  *Id.* Accordingly, dissemination of the Expert Report to the media through Levine constitutes a violation of Sections IV.2 and IV.3 of the Protective Order.

Fourth, Section VI of the Protective Order requires that, "[i]f a receiving party learns that, by inadvertence or otherwise, it has disclosed designated material to any person or in any circumstance not authorized under this Order, it must immediately" take a series of remedial steps.  *Id.* at 7.  Sugarman purposefully disclosed unauthorized copies of the Expert Report to the media through Levine and took none of these remedial steps.  For example, Muddy Waters never received any notification in writing of the unauthorized disclosures.  *Id.*; Block Decl. ¶ 16.  Accordingly, Sugarman violated Section VI of the Protective Order.

/ / /

---

[9] As discussed herein, the Expert Report should have been designated as "Highly Confidential – Attorneys' Eyes Only" because contains and is derived from AEO material.  Regardless, Sugarman violated the Protective Order even though the Expert Report was wrongly designated "Confidential" because Section IV.1 of the Protective Order does not distinguish between Confidential and AEO material in limiting such material's use to "this litigation."  Dkt. 83 at 4.  Importantly, Sugarman admitted to Levine he was not supposed to have the Lee Report at the time he instructed Levine to disseminate it.

1       Fifth, Section IX of the Protective Order requires the return or destruction of

2  designated material 60 days after the final disposition of this action and delivery of a

3  written certification confirming the return or destruction.  *Id.* at 8.  The final

4  disposition of this action occurred on August 31, 2020 when Sugarman was dismissed

5  with prejudice.  Dkt. 617.  Sixty days thereafter was October 30, 2020.  Sugarman

6  began instructing Levine to disseminate the Expert Report to the media around in or

7  around 2022, long after the 60-day deadline to return or destroy the Expert Report and

8  material derived from or disclosing Muddy Waters' AEO document production.

9  Levine Decl. ¶ 14.  Sugarman therefore violated Section IX of the Protective Order.[10]

10      **C.    Latham Violated the Protective Order**

11      Latham also violated the Magistrate Judge's Order and several clear and

12  definite provisions of the Protective Order.

13      Because the Expert Report is "derived from" Muddy Waters' AEO document

14  production and otherwise "embodies, contains, [and] discloses" the same, Latham

15  should have designated the Expert Report as AEO under Section II.2 of the Protective

16  Order.  *See supra*, at Section II.E.  Instead, Latham intentionally designated the

17  Expert Report as "Confidential," thereby violating Section II.2 of the Protective

18  Order.  Dkt. 83 at 2.  Latham's misconduct in this regard allowed Sugarman to

19  possess a copy of the Expert Report and therefore facilitated his unauthorized

20  disclosure of the Expert Report.  Had Latham properly designated the Expert Report

21

22  _____

23      [10] In the meet and confer process, Sugarman's lawyer told an alternate tale,
    claiming that Levine "stole" documents from Sugarman, including presumably the
24  Lee Report, and Sugarman had nothing to do with Levine's dissemination of these
    documents to journalists.  However, this is clearly a lie that Sugarman concocted
25  because he is in blatant violation of this Court's orders:  first, the documentary
    evidence shows that Sugarman in fact gave the Lee Report to Levine, and second, it
26  would make no sense for Levine to be disseminating the Lee Report to journalists to
    disparage a personal enemy of Sugarman if Levine had in fact stolen the document
27  against Sugarman's wishes.
28

as AEO, Sugarman would have been barred from ever receiving a copy of it.

Latham did this with full knowledge of what it was doing.  Indeed, as Latham conceded in the meet and confer process, Latham sought guidance from this Court in a February 1, 2019 court call on whether documents designated AEO could be shown to Mr. Sugarman.  However, as Latham also admitted, the Court never provided Latham with such guidance or any related order.  Latham thus knew it was not supposed to give AEO information to Sugarman, knew it needed to get this Court's permission to do so, did not obtain the Court's permission, and then went ahead and did it anyway.

Additionally, Section IX of the Protective Order is clear that only counsel of record may maintain a copy of an expert report 60 days after termination of the litigation, and may only maintain such a copy for "archival purposes." *Id.* at 8.  It was therefore incumbent upon Latham to ensure that Sugarman returned or destroyed the Expert Report and other designated material that it allowed him to possess.  Latham failed in this regard because Sugarman was able to disseminate the Expert Report to the press after this litigation ended.  Latham therefore violated Section IX of the Protective Order as well.

**D.     Sugarman and Latham Should Be Held in Contempt and Sanctioned**

Both Sugarman and Latham should be sanctioned for their violations of the Protective Order.

None of Sugarman's misconduct in purposefully causing the Expert Report to be disseminated to the media with the intent to harm Muddy Waters' reputation can be viewed as "substantial compliance" with the Protective Order or a "good faith and reasonable interpretation" of the Protective Order.  *Gonzales*, 2022 WL 570003, at *3.

Rather, he blatantly and willfully violated the Protective Order.  An order of contempt and sanctions is therefore warranted.  *See Clarke*, 2012 WL 12877865, at *14–16 (holding that a party's "sole act of using the confidential information" for a purpose outside of the underlying litigation "constituted a sanctionable violation of

the [protective order]," warranting a finding of contempt and issuance of sanctions); *Elkharwily*, 2017 WL 1373526, at *1–2 (holding party in contempt and issuing sanctions for contacting third parties and "disclosing information from confidential documents produced by [the moving party] in the litigation").

Moreover, whether Latham's failure to properly designate the Expert Report as AEO under the Protective Order or to ensure Sugarman returned or destroyed the Expert Report was willful or negligent is irrelevant to whether the firm should be sanctioned or held in contempt. *See Yeti by Molly*, 259 F.3d at 1106; *In re Dual-Deck*, 10 F.3d at 695. Like Sugarman, Latham violated the clear and definite terms of the Protective Order and cannot be deemed to have "substantially complied"; nor can its conduct be deemed a "good faith and reasonable interpretation" of the Protective Order. *Gonzales*, 2022 WL 570003, at *3.

The Protective Order is not ambiguous; it states, "[a]ny information that is derived from [AEO information] also constitutes [AEO] information to the extent the derived information embodies, contains, or discloses any [AEO] information." Dkt. 83 at 3. Any cursory review of the Expert Report, its footnotes, and its list of documents considered will reveal that it is littered with numerous references to, summaries of, and other disclosures of Muddy Waters' AEO document production. *See supra*, at Section II.E. Muddy Waters' document production was also clearly stamped AEO in the bottom-left-hand corner of each page. Block Decl. ¶ 11.

Significantly, there is also a court order stating that all documents produced by Muddy Waters in this case would be AEO. Block Decl., Ex. A at 5 ("The Court thus ORDERS the documents be designated attorneys' eyes only pursuant to the existing protective order in the underlying case.").

Latham therefore had no good faith basis to wrongly designate the Expert Report as only "Confidential," and should be held in contempt and sanctioned as well. *See OmniGen Research, LLC v. Wang*, 2018 WL 11512767, at *10–13 (D. Or. Nov. 6, 2018) (holding attorney in contempt for violating protective order by sharing AEO

documents with client); *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 2012 WL

12882012, at *4–7 (C.D. Cal. Feb. 13, 2012) (sanctioning attorney for sharing AEO

expert report with client); *Systemic Formulas, Inc. v. Kim*, 2009 WL 5205995, at *1–

2, 4 (D. Utah Dec. 23, 2009) (issuing finding of contempt against attorney for

providing client with information derived from AEO information).

At a minimum, Sugarman and Latham should be ordered to: (1) pay Muddy

Waters a monetary award sufficient to punish and deter their contumacious conduct,

which should be at least the amount of Muddy Waters' attorneys' fees and costs

herein; (2) destroy or return to Muddy Waters all copies of and be enjoined from any

further use of Muddy Waters' document production in this matter; (3) destroy or turn

over to Muddy Waters all copies of and be enjoined from further use of the Expert

Report; (4) comply with the written certification of destruction requirement in Section

IX of the Protective Order for both Muddy Waters' document production and the

Expert Report; (5) provide the Court and Muddy Waters with a list of all who

received unauthorized copies of the Expert Report or any other document from or

derived from Muddy Waters' document production; (6) produce to the Court and

Muddy Waters all transmittal emails or letters enclosing the Expert Report or any

documents from or derived from Muddy Waters' document production, including

transmittal emails or letters to Sugarman and any other unauthorized recipient; and (7)

comply with the remedial steps set forth in Section IV of the Protective Order for each

of these parties. *See, e.g.*, *Clarke*, 2012 WL 12877865, at *16 (ordering, *inter alia*,

payment of attorneys' fees and costs and that contemnor provide a list of names of

individuals who received confidential information to the moving party and court);

*Elkharwily*, 2017 WL 1373256, at *2 (ordering, *inter alia*, payment of attorneys' fees

and costs, that contemnor return and/or destroy confidential records and provide a

written certification of the same, and that contemnor refrain from using confidential

records or the information contained in them for any purpose); *OmniGen*, 2018 WL

11512767, at *12 (requiring attorney who violated protective order to "provide a

declaration describing each instance in which [clients] or any authorized person was provided with access to [movant's] Attorneys' Eyes Only Documents," produce transmittal emails, and pay monetary sanctions).

      **E.**      **The Court Should Also, or in the Alternative, Permit Discovery**

Muddy Waters respectfully requests leave to conduct discovery in aid of these sanction and contempt proceedings.

Courts permit discovery in contempt proceedings where the movant has made a "prima facie showing" of contempt. *See Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at *58–60 (S.D.N.Y. July 17, 2012); *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 229–30, 235 (D. Del. 2003). Muddy Waters has made such a showing through the accompanying Declarations of Carson Block and especially Adam Levine, who provides concrete information identifying Sugarman as the source for the leak. Levine Decl. ¶¶ 13–19.

Simply put, there is no way for Muddy Waters to have obtained a copy of the Expert Report (as Muddy Waters did in April of this year) without Sugarman and Latham having violated the Protective Order. The Expert Report was never filed on the public docket[11] and was never provided to Muddy Waters, a nonparty, during the course of this litigation. Block Decl. ¶ 16. Additionally, Levine's testimony as to the dissemination of the Lee Report requires discovery as to the extent of Sugarman's dissemination of the report, as well as if there is any other AEO information that he received, or any confidential information he disseminated.

If the Court permits discovery, then Muddy Waters would request, at minimum, documents and communications referring or relating to (i) Sugarman obtaining from Latham or any other party a copy of the Expert Report and/or any other document from, or deriving from, Muddy Waters' document production in this case; (ii)

---

[11] Indeed, the Court previously granted a request by *Sugarman* to file the Expert Report completely under seal. Dkts. 533, 545.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

Latham's decision to designate the Expert Report as "Confidential" instead of "AEO" and to provide it to Sugarman; (iii) Sugarman and Latham transmitting or otherwise revealing the contents of the Expert Report and/or any other Muddy Waters document to any third party not authorized to receive such documents or information under the Protective Order; (iv) Sugarman instructing any third party to transmit or otherwise reveal the contents of the Expert Report and/or any other Muddy Waters document to another third party.

Muddy Waters would also seek depositions of Sugarman and one or more Latham attorneys on these topics and other relevant matters, along with other potentially relevant witnesses.  *See United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015); *Eastman v. Thompson*, 2022 WL 11030550, at *8 (C.D. Cal. Oct. 19, 2022); *OmniGen*, 2018 WL 11512767, at *12.

## IV.    CONCLUSION

For the foregoing reasons, Muddy Waters requests that the Court sanction Sugarman and Latham and hold both in contempt of Court for violating the Protective Order.  Also, or in the alternative, Muddy Waters requests leave to conduct discovery in aid of these proceedings.

Dated: October 20, 2023            HARDER STONEROCK LLP

By: */s/ Dilan A. Esper*
    DILAN A. ESPER
    *Attorneys for Nonparty*
    *Muddy Waters Capital LLC*

## <u>**CERTIFICATE OF COMPLIANCE**</u>

The undersigned, counsel of record for Muddy Waters Capital LLC, certifies that this brief contains 6,978 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 20, 2023          HARDER STONEROCK LLP

By: */s/ Dilan A. Esper*
          DILAN A. ESPER
          *Attorneys for Nonparty*
          *Muddy Waters Capital LLC*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS