1  LATHAM & WATKINS LLP
   Manuel A. Abascal (Bar No. 171301)
2      manny.abascal@lw.com
3  355 South Grand Avenue, Suite 100
   Los Angeles, CA 90071
4  Telephone: (213) 485-1234
   Facsimile: (213) 891-8763
5

6  *Attorneys for Respondent Latham & Watkins LLP*

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

| In re BANC OF CALIFORNIA SECURITIES LITIGATION | CASE NO. 8:17-cv-00118-DMG (DFMx) |
|---|---|
| | CLASS ACTION |
| This Document Relates To: ALL ACTIONS. | **LATHAM & WATKINS LLP'S OPPOSITION TO NONPARTY MUDDY WATERS CAPITAL LLC'S MOTION FOR SANCTIONS AND CONTEMPT ORDER AGAINST DEFENDANT STEVEN A. SUGARMAN AND LATHAM & WATKINS LLP** |
| | Hearing Date: December 15, 2023 Time: 9:30 A.M. Judge: Hon. Dolly M. Gee Courtroom: 8C |
| | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

1

## <u>TABLE OF CONTENTS</u>

**Page**

I.            INTRODUCTION ................................................................................... 1

II.           BACKGROUND ................................................................................... 4

      A.    The Record Demonstrates Latham's Extensive Efforts To Comply With The Protective Order In This Complex and Intensely Litigated Case ........................................................................ 4

      B.    Muddy Waters Never Produced the Key Documents Sought by Mr. Sugarman, and Instead Produced Largely Duplicative Trading Data of Little Relevance ..................................... 5

      C.    The Lee Report Was Not Derived From Muddy Waters' Document Production ............................................................................ 8

      D.    Subsequent Events Following Termination of the Action Reflect Ongoing Litigation Between Mr. Sugarman, Muddy Waters and Adam Levine ...................................................... 10

III.          LEGAL STANDARD ...................................................................... 11

      A.    Substantial Compliance and Contempt ........................................... 11

      B.    Rule 37 Sanctions ............................................................................ 12

IV.          ARGUMENT ...................................................................................... 12

      A.    Latham Substantially Complied with the Protective Order in its Designation of the Lee Report as Confidential ......................... 12

      B.    Contempt, Sanctions And Discovery Are Also Not Warranted In Light of The Totality of The Circumstances ............... 15

V.           CONCLUSION ................................................................................... 21

i

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

1

2

3

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

4

5

6

*Adam Levine v. The Change Company CDFI LLC*,
   No. 30-2023-01331710 (Superior Court of California, Orange
   County) ........................................................................................................ 11

7

*Aristocrat Techs. v. Int'l Game Tech.*,
   2009 WL 3573327 (N.D. Cal. Oct. 30, 2009) ..................................................... 12

8

9

*In re Banc of Cal. Sec. Litig.*,
   No. SACV 17-00118 (C.D. Cal. Jan. 23, 2017) ................................................... 1

10

11

*Beam Sys., Inc. v. Checkpoint Sys., Inc.*,
   1997 WL 364081 (C.D. Cal. Feb. 6, 1997) ....................................................... 17

12

13

*Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*,
   2012 WL 12932049 (S.D.N.Y. July 17, 2012) ................................................. 19

14

15

*Clark v. Superior Ct.*,
   196 Cal. App. 4th 37 (2011) ............................................................................ 11

16

17

*Clarke v. First Transit, Inc.*,
   2012 WL 12877865 (C.D. Cal. Nov. 2, 2012) .......................................... 17, 21

18

19

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ............................................................. 1, 11, 12, 15

20

*Elkharwily v. Mayo Holding Co.*,
   2017 WL 1373256 (D. Minn. Apr. 13, 2017) ................................................... 17

21

22

*Finjan, Inc. v. Eset, LLC*,
   2019 WL 1429596 (S.D. Cal. Mar. 29, 2019) ................................................... 16

23

24

*Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*,
   2021 WL 1324435 (C.D. Cal. Mar. 12, 2021) .................................... 12, 15, 19

25

26

*Gonzales v. Charter Commc'ns, LLC*,
   2022 WL 570003 (C.D. Cal. Jan. 26, 2022) ..................................................... 16

27

28

*In re Grand Jury Investigation*,
   810 F.3d 1110 (9th Cir. 2016) ........................................................................... 20

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

*Kilopass Tech. Inc. v. Sidense Corp.*,
   2012 WL 1144290 (N.D. Cal. Apr. 4, 2012) ............................................. 15, 19

*Lakes v. Bath & Body Works, LLC*,
   2020 WL 4350243 (E.D. Cal. July 29, 2020) ................................................ 20

*Lambright v. Ryan*,
   698 F.3d 808 (9th Cir. 2012) ......................................................................... 12

*MediciNova, Inc. v. Genzyme Corp.*,
   2018 WL 318468 (S.D. Cal. Jan. 5, 2018) ..................................................... 15

*Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locs.
   21 & 4*, 721 F.3d 1122 (9th Cir. 2013) ......................................................... 21

*O'M & Assocs., LLC v. Ozanne*,
   2011 WL 2160938 (S.D. Cal. June 1, 2011) .................................................. 15

*OmniGen Rsch., LLC v. Wang*,
   2018 WL 11512767 (D. Or. Nov. 6, 2018) ............................................... 17, 21

*Oppenhiemer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ....................................................................................... 21

*In re Refco Sec. Litig.*,
   759 F. Supp. 2d 342 (S.D.N.Y. 2011) ........................................................... 21

*Sanders v. Broomfield*,
   2022 WL 17542683 (E.D. Cal. Nov. 7, 2022) ............................................ 1, 12

*Soukhaphonh v. Hot Topic, Inc.*,
   2017 WL 10378493 (C.D. Cal. Sept. 14, 2017).............................................. 20

*Spin Master, Ltd. v. Zobmondo Ent., LLC*,
   2012 WL 12882012 (C.D. Cal. Feb. 13, 2012)............................................... 17

*Steven A Sugarman et al. v. Muddy Waters Capital LLC et al.*,
   No. 2:21-cv-01453 (C.D. Cal.) ....................................................................... 10

*Steven A. Sugarman, et al. v. Muddy Waters Capital, LLC, et al.*,
   No. 27-cv-21-11850 (Hennepin County District Court) .................................. 10

*Steven Sugarman, et al. v. Muddy Waters Capital LLC et al.*,
   No. 3:19-cv-04248 (N.D. Cal.)........................................................................ 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

*In re Subpoenas to Produce Documents, Information, or Objects to Muddy Waters Capital LLC*, No. 18-mc-80175 (N.D. Cal. October 17, 2018) .................................................................................. 6

*Teksystems, Inc. v. Siminipour*,
2008 WL 11343027 (C.D. Cal. July 1, 2008) ..................................... 20

*The Change Company CDFI LLC v. Adam Levine*,
No. 23SMCV04879 (Superior Court of California, Los Angeles County) .............................................................................. 10

*The Change Company CDFI LLC v. Adam Levine*,
No. 23STRO01946 (Superior Court of California, County of Los Angeles) .............................................................................. 10

*United States v. HVI Cat Canyon, Inc.*,
2017 WL 11532929 (C.D. Cal. Jan. 5, 2017) .................................... 20

*United States v. Sanmina Corp.*,
968 F.3d 1107 (9th Cir. 2020) ....................................................... 19

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
689 F.2d 885 (9th Cir.1982) .................................................. 12, 14

*Youngevity International v. Smith*,
2019 WL 157269 (S.D. Cal. Jan. 10, 2019) ............................. 3, 17, 18

*Zucchella v. Olympusat, Inc.*,
2021 WL 4785939 (C.D. Cal. June 16, 2021) ................................... 20

**RULES**

California Rules of Professional Conduct 4.4 ....................................... 11

Fed. R. Civ. P. 37(b)(2)(A) ........................................................... 12

Fed. R. Civ. P. 37(b)(2)(C) ........................................................... 12

# I.    INTRODUCTION

Muddy Waters Capital LLC ("Muddy Waters") alleges that on February 22, 2019 Latham & Watkins LLP ("Latham") violated the Protective Order (the "Protective Order" or "Order") issued in *In re Banc of California Securities Litigation*, No. 17-cv-00118 (November 13, 2017 C.D. Cal.), Dkt. 83 (the "Underlying Action" or the "Action")[1] by designating the expert report of Professor Charles Lee (the "Lee Report" or "Report") as "Confidential" instead of "Highly Confidential - Attorneys' Eyes Only" ("AEO"). Muddy Waters also alleges that years later after the Action was dismissed, Mr. Sugarman violated the Protective Order by causing a former employee to send the Report to a news reporter and by Mr. Sugarman disclosing information derived from the Report in a recorded interview. Latham submits this Opposition solely on its own behalf and defers to Mr. Sugarman and his separate counsel to respond to his alleged conduct.

Sanctions, contempt, and discovery are not appropriate here because Latham substantially complied with the Protective Order by designating the Lee Report as "Confidential." *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (substantial compliance is a defense to contempt action). Under the Protective Order, information that is "derived from" AEO-designated information also constitutes AEO information "to the extent the derived information embodies, contains, or discloses" AEO-designated information. Order, II.2. The entire Lee Report is not "derived from" Muddy Waters' small and largely cumulative document production. Rather, it expresses an opinion that was formed from documents independent of and received prior to Muddy Waters' production; in fact, the opinion in the Report was disclosed in court months before Muddy Waters' small and incomplete document production. In addition, the Muddy Waters documents contain little more than trading data that were largely duplicative of data

---

[1] All Dkt. citations refer to the Docket in *In re Banc of Cal. Sec. Litig.*, No. SACV 17-00118 (DFMx) (C.D. Cal. Jan. 23, 2017), unless otherwise indicated.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

1 Lee obtained from other sources (which Muddy Waters itself conceded), ████████



9 For these reasons, the Lee Report is not "derived from" and

10 does not "embody, contain, or disclose" the Muddy Waters AEO-designated

11 documents sufficient to warrant designating the entire Report as AEO as Muddy

12 Waters contends. *See infra* Section IV.A.

13 Latham's substantial compliance is also demonstrated by its effort to comply

14 with the Protective Order throughout the entire complex Action, which involved 120

15 document productions from 56 entities totaling over 1.2 million pages of documents,

16 a substantial portion of which were designated as "Confidential" or "AEO" under

17 the Protective Order, and during which Latham filed over 100 documents in

18 connection with sealing requests pursuant to the Protective Order.

19 Sanctions, contempt, and discovery are also inappropriate even if the

20 designation of the Lee Report as "Confidential" technically fell short of full

21 compliance. An alleged technical violation of a protective order in an incredibly

22 complex litigation requiring near-daily application of the Protective Order does not

23 fail to satisfy the substantial compliance standard in a manner sufficient to warrant

24 civil contempt or other sanctions. *See, e.g.*, *Youngevity International v. Smith*, 2019

25 WL 157269, at *1-2 (S.D. Cal. Jan. 10, 2019) (denying sanctions for a few improper

26 disclosures in a case with voluminous discovery and otherwise adherence to

27 Protective Order). The cases imposing such sanctions and contempt involve much

28 more egregious conduct. *See infra* Section IV.B.1.

Furthermore, when Latham received Muddy Waters' objection to the designation, Latham offered to follow the procedures in the Protective Order designed for circumstances involving inadvertent or other disclosure of designated material:

> If a receiving party learns that, by inadvertence or otherwise, it has disclosed designated material to any person or in any circumstance not authorized under this Order, it must immediately (i) notify in writing the designator of the unauthorized disclosures, (ii) use its best efforts to retrieve all unauthorized copies of the designated material, (iii) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (iv) use reasonable efforts to have such person or persons execute the Agreement to Be Bound (Exhibit A).

Protective Order, VI.[2]

The request for discovery also should be denied because such discovery is disfavored, unduly burdensome, and raises complex issues relating to attorney-client privilege and work product. The requested discovery also appears at least in part if not wholly intended to allow Muddy Waters to obtain information for parallel legal disputes with Mr. Sugarman. *See infra* Section IV.B.3. Finally, Muddy Waters has made public much of the information it claims was "derived from" AEO-designated documents, including for example by publicly filing as an exhibit to their Motion the transcript of a recorded conversation that they claim contains "derived from" information and distributing the Lee Report itself to persons without confirming they were subject to the Protective Order. Muddy Waters' own failure to treat this information as "derived from" AEO-designated documents discredits their claim that the Protective Order was violated and their requests for contempt, sanctions, and discovery. *See infra* Section IV.B.2.

---

[2] Latham makes this offer in an effort to resolve this matter and without conceding any violation of the Protective Order.

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

## II.    BACKGROUND

### A.    The Record Demonstrates Latham's Extensive Efforts To Comply With The Protective Order In This Complex and Intensely Litigated Case

Just prior to October 18, 2016, Muddy Waters and certain other traders ███ ████████████████████████████████████████████████████████████ ██████████████████████████████████████  On October 18, 2016, an anonymous blogger published a report on a website ("Blog") called "Seeking Alpha" falsely and misleadingly suggesting that Banc could be controlled by a notorious criminal. The misleading Blog caused the stock to plummet ████████████ ████████████████████████████████████████  After the stock dropped, the Action was brought against Banc and its then-Chief Executive Officer Steven Sugarman by a class of Banc shareholders.

The Parties to the Action agreed to a Protective Order which allowed them to designate "confidential, proprietary, personal and/or trade secret" information as "Confidential," and "extremely sensitive" information "disclosure of which" would "create a substantial risk of serious harm" as AEO. *See* Protective Order, II.1 & 2. The Order states that information "derived from" designated material also constituted designated material "to the extent the derived information embodies, contains, or discloses" designated material. *Id*. Material made public could not be designated under the Order. *Id*., II.3. A "receiving party" was allowed to disclose documents designated as Confidential to certain entities including their officers, directors and employees, and documents designated as AEO to a more limited set of entities that did not include officers, directors, and employees. *Id*., IV.2 & 3.

A substantial portion of the 1.2 million pages of discovery produced in 120 productions by 56 entities appeared to have been designated either "Confidential" or "AEO." Declaration of Manny Abascal ("Abascal Decl.") ¶ 3. The Action was intensely litigated, with over 1,200 documents filed over 600 docket entries. Latham

alone prepared and submitted over 100 court filings in connection with more than 30 motions to seal in compliance with the Protective Order. *Id*. ¶ 4. The high volume of designated materials and case activity required Latham to make hundreds of decisions interpreting and applying the Protective Order, such as what materials could be disclosed, redacted, or withheld in correspondence, court filings, depositions, expert reports, witness meetings, or other communications.

In September 2019, Banc agreed to settle, *see* Dkt. 592, and the case was dismissed in 2020. Dkt. 614. Mr. Sugarman did not contribute money to that settlement; rather, Plaintiffs dismissed him with prejudice and publicly acknowledged that the Blog was unsupported by evidence. Dkt. 617. Latham spent over 100 hours complying with the terms of the Protective Order regarding the return or destruction of designated material upon termination of the litigation. Abascal Decl. ¶ 5.

### B. Muddy Waters Never Produced the Key Documents Sought by Mr. Sugarman, and Instead Produced Largely Duplicative Trading Data of Little Relevance

A key issue in the Action was the cause of the October 18, 2016 drop in Banc's stock price. Plaintiffs contended the stock dropped because Defendants failed to make certain required disclosures to investors, while Defendants argued that it dropped because certain traders manipulated the market by shorting the stock prior to the misleading Blog, publishing the Blog to create a panic and stock drop, and then closing their positions for immense profits before the investing public realized the Blog was false. Defendants called this a scheme to "short and distort" the stock.

To support this "short and distort" theory, Mr. Sugarman and his experts obtained and reviewed, months before Muddy Waters produced any documents, public information and data from FINRA, Bloomberg, and other sources which revealed that █████████████████████████████████████



1   ████████   On September 11, 2018, Mr. Sugarman issued a third party subpoena to

2   Muddy Waters to produce documents regarding the reasons for their trades in Banc

3   stock, communications with other traders and the anonymous blogger, and other

4   evidence ████████████████████   On October 3, 2018, Muddy Waters

5   filed publicly a motion to quash the subpoena that attached the subpoena as an

6   exhibit, thus alerting the public of its involvement in the Action. *See* Motion to

7   Quash, *In re Subpoenas to Produce Documents, Information, or Objects to Muddy*

8   *Waters Capital LLC, et al.*, Case No. 18-mc-80175 (N.D. Cal. October 17, 2018),

9   Dkts. 1 & 1-1.[3] In his October 17, 2018 opposition to the motion, Mr. Sugarman

10  outlined in detail ████████████   *See* MW Dkt. 6-4 at 1 & 5-9 (sealed

11  Opposition to Motion to Quash). The Opposition identified Muddy Waters █████

12  ████████████████████████

13

14

15

16

17

18  *Id.* at 1; *see also id.* at 5-9 (describing in further detail the trading data gathered). At

19  the same time, Mr. Sugarman filed under seal a declaration by a colleague of

20  Professor Lee ████████████████████

21  ████████████████████████████

22  ████████████████████████████

23  ██

24

25

26

27  _____

28  [3] "MW Dkt." refers to the motion to quash proceedings which were filed in N.D. Cal. No. 18-mc-80175 and then transferred to C.D. Cal. No. 18-mc-00147.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

1

2

3   MW Dkt. 9-1 at 6 (sealed Declaration of Torben Voetmann filed in support of the

4   Opposition); *see also id*. at 4-6 (describing trading data).

5          Muddy Waters filed its Reply publicly and admitted that it short sold Banc

6   stock: "MWC was never net long in Banc securities, and any equity purchases were

7   made to cover short positions." MW Dkt. 11 at 1 n.1. Muddy Waters also

8   acknowledged that Mr. Sugarman already possessed Muddy Waters' trading data—

9   "Sugarman already has the relevant trading data" and should not be permitted to seek

10  production of Muddy Waters' "largely duplicative information." *Id*. at 8.

11         On January 8, 2019, the Court granted in part and denied in part the motion to

12  quash and ordered Muddy Waters to produce documents reflecting (a) transactions

13  in Banc stock and related profits, and (b) the bases for the decision to engage in those

14  transactions. MW Dkt. 31 (Order) at 3-5. The Court also ordered in advance, and

15  without seeing the actual documents Muddy Waters would ultimately produce, that

16  the documents be designated AEO pursuant to the Protective Order. *Id*. at 5. Weeks

17  later on January 30, 2019, Muddy Waters produced a small set of documents (61

18  total) that

19         but lacked any meaningful documents regarding the new information

20  Mr. Sugarman was seeking—such as the reasons why Muddy Waters made the

21  trades. Declaration of Andrew Gray ("Gray Decl.") ¶ 2.

22

23

24

25         On February 11th, Mr. Sugarman filed a partially sealed brief contending that

26  Muddy Waters failed to comply with the Court's order, and on February 15th the

27  Court agreed and ordered Muddy Waters to produce the withheld documents. MW

28  Dkts. 37-1, 43. On February 19th, the author of the Blog appeared anonymously and

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

requested among other things that the Court reconsider its ruling, prompting Muddy Waters to refuse to produce documents until that request was heard. *See* MW Dkt. 45 at 1. On March 6th, the Court granted the blogger's request to protect its identity from production but did not reconsider its order that Muddy Waters produce documents. MW Dkt. 67. On that same day, however, the District Court ordered a moratorium on all court filings. Dkt. 551 at 2. Muddy Waters never produced any additional documents and thus their one production, referenced in the Lee Report, included only largely duplicative trading data and not the key, new information Mr. Sugarman had sought multiple times in Court.[4]

**C.     The Lee Report Was Not Derived From Muddy Waters' Document Production**

Professor Lee issued his expert report on February 22, 2019. The Report is 82 pages long, with 52 pages of text and a 30-page Appendix. *See* Block Ex. B, Dkt. 629 (Lee Report). Professor Lee's opinion is summarized in paragraph 16 of the Report:

[4] Muddy Waters appears to claim to have made two productions of documents. *See* Motion at 8; Block Decl. ¶ 10. Latham has been unable to find any record of a second production, beyond the potential transmission in February 2019 of the native version of a spreadsheet included in the original production.

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

Latham filed two oppositions to discovery motions and produced another expert report the day Professor Lee issued his Report, and defended a deposition the day before, illustrating the intensity of the litigation at the time. *See* MW Dkts. 54-1; 58-1; Abascal Decl. ¶ 6. As noted, twelve days later on March 6, 2019, the Court

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

imposed a moratorium on future filings and ordered the parties to mediate. Dkt. 551. On September 19, 2019, the parties reached a settlement in principle and the Court stayed the proceedings to facilitate approval of the settlement by the class. Dkt. 588. The case was dismissed in March 2020. Dkt. 614. Professor Lee was never deposed.

### D. Subsequent Events Following Termination of the Action Reflect Ongoing Litigation Between Mr. Sugarman, Muddy Waters and Adam Levine

Muddy Waters' Motion for Sanctions (the "Motion") is brought in the context of ongoing subsequent litigation between Mr. Sugarman, Muddy Waters, and the declarant to the Motion, Adam Levine. Latham is not counsel of record in any of these matters. Abascal Decl. ¶ 9.

In 2019 and 2021, Mr. Sugarman sued Muddy Waters and other short sellers. *See Steven A Sugarman v. Muddy Waters Capital LLC*, No. 2:21-cv-01453 (C.D. Cal.); *Steven Sugarman v. Muddy Waters Capital LLC*, No. 3:19-cv-04248 (N.D. Cal.); *Steven A. Sugarman v. Muddy Waters Capital, LLC*, No. 27-cv-21-11850 (Hennepin County District Court). According to public reports, in or around 2021, a company associated with Mr. Sugarman hired Adam Levine and in 2023 terminated him. On April 21, 2023, Mr. Sugarman sought and obtained a restraining order against Mr. Levine for harassment, and now claims that he violated it. *See generally The Change Company CDFI LLC v. Adam Levine*, No. 23STRO01946 (Superior Court of California, County of Los Angeles). In August 2023, Mr. Levine was reportedly arrested near Mr. Sugarman's office for impersonating a police officer. *See* Statement Regarding the Arrest of Adam Levine for Impersonating a Police Officer, The Change Company (August 28, 2023), available at https://www.thechangecompany.com/post/statement-regarding-the-arrest-of-adam-levine-for-impersonating-a-police-officer. In October 2023, Mr. Sugarman sued Mr. Levine for fraud, alleging extortion and theft of documents. *See The Change Company CDFI LLC v. Adam Levine*, No. 23SMCV04879 (Superior Court of

California, Los Angeles County). Mr. Levine has also sued Mr. Sugarman for wrongful termination. *Adam Levine v. The Change Company CDFI LLC*, No. 30-2023-01331710 (Superior Court of California, Orange County).

According to evidence in the Motion, in April 2023 after Levine was terminated and served with a restraining order, he shared with Muddy Waters documents Mr. Sugarman claims were stolen, including a February 2022 email Mr. Sugarman had sent to Mr. Levine that was marked attorney-client privileged and included the Lee Report. *See* Levine Decl. Ex. D; Block Decl. ¶ 16. Mr. Sugarman contends Muddy Waters and their counsel violated California Rule of Professional Conduct 4.4 by failing promptly to inform Mr. Sugarman of this unauthorized disclosure of his privileged information. *See* California Rule of Prof. Conduct 4.4; *see also Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 52 (2011) (attorney that comes into possession of privilege documents is obligated "not to review these documents more than was reasonably necessary to make the determination that they were privileged and to immediately notify [the applicable party] that [it was] in possession of [its] privileged documents."). Between April and August 2023, Muddy Waters appears to have read and studied the Lee Report and other documents stolen by Mr. Levine. In August, counsel for Muddy Waters alerted Latham and Mr. Sugarman that it intended to file the Motion, and the parties then met and conferred. Abascal Decl. ¶ 7. In an effort to resolve this matter, Latham offered to follow the procedures in the Protective Order relating to inadvertent or other disclosure of designated information but Muddy Waters rejected the offer and instead filed its motion seeking sanctions, contempt, and discovery. *Id.* ¶ 8.

## III.   LEGAL STANDARD

### A.   Substantial Compliance and Contempt

"[A] person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'" *In re Dual-Deck*, 10 F.3d at 695 (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,

689 F.2d 885, 889 (9th Cir.1982)). "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *Id.* (quoting *Vertex,* 689 F.2d at 891). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *Id.* (quoting *Vertex*, 689 F.2d at 889).

### B.    Rule 37 Sanctions

"Federal courts have discretion whether to impose sanctions for violation of a protective order. Such violations may, but do not necessarily, constitute sanctionable conduct . . . a court must look to the totality of the circumstances surrounding each violation." *Sanders*, 2022 WL 17542683, at *2 (citing Fed. R. Civ. P. 37(b)(2)(A)); *see also* Fed. R. Civ. P. 37(b)(2)(C) (court has discretion in awarding expenses including where "other circumstances make an award of expenses unjust"). "Although Rule 37 permits district courts to impose sanctions . . . this power must be exercised with restraint." *Aristocrat Techs. v. Int'l Game Tech.*, 2009 WL 3573327, at *4 (N.D. Cal. Oct. 30, 2009). "In order to determine whether or not a protective order has been violated, courts focus on the terms of the order itself." *Sanders*, 2022 WL 17542683, at *2. The court may consider the good faith of a party when considering sanctions. *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 2021 WL 1324435, at *2 (C.D. Cal. Mar. 12, 2021); *Lambright v. Ryan*, 698 F.3d 808, 826 (9th Cir. 2012) (finding no error in district court's decision not to hold evidentiary hearing or impose severe sanction because of finding that party's conduct was inadvertent).

## IV.    ARGUMENT

### A.    Latham Substantially Complied With The Protective Order In Its Designation of the Lee Report As Confidential

Latham substantially complied with the Protective Order in its handling of the Lee Report. The initial designation of the Report as "Confidential" was in substantial

1  compliance because the Report and its opinion are not "derived from" the limited

2  and largely cumulative documents produced by Muddy Waters. Section II.2 of the

3  Protective Order makes clear that information "derived from" AEO information also

4  constitutes AEO information only "to the extent the derived information embodies,

5  contains or discloses" AEO information. The Report does not meet this standard

6  because its opinion does not depend upon and was not derived from the few Muddy

7  Waters documents. Rather, the opinion was formed from evidence obtained well

8  before Muddy Waters' production, ██████████████████████████

9  ████████████████████████████████████████

10  ███████████████████ and many other sources, and was disclosed in court

11  several months before Muddy Waters' production. As admitted by Muddy Waters

12  itself, Muddy Waters' production ████████████████████████

13  ██████████████████████ *See* MW Dkt. 11 at 8. ████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ████████████████████████████████████████

17  ████████████████████████████████████████

18  ██████████

19      The Court designated Muddy Waters' anticipated document production as

20  AEO in the context of Mr. Sugarman's request for new information beyond the

21  trading data Professor Lee already had, but Muddy Waters never produced any

22  meaningfully new information. The incomplete document production was only 1 out

23  of ████████████████████████████████████████

24  ████████████████████ *See* Block Ex. B (Lee Report) at 81.

25  Further, the Report ██████████████████████████████

26  ████████████████████████████████████████

27  ███████████████████████ For the Court's convenience, we have prepared an

28  exhibit that highlights the portions of the Lee Report that describe information in

1   Muddy Waters' production. *See* Abascal Decl. Ex. 1; ¶ 2. These portions ██████

2   ██████████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████████████████

7   ████████████

8   In its argument that the entire Lee Report was "derived from" their documents,

9   Muddy Waters misquotes Professor Lee out of context to suggest that he identified

10  Muddy Waters as a short seller from their documents. Motion at 9-10. In fact,

11  Professor Lee makes abundantly clear in his Report that ████████████████

12  ██████████████████████████████████████████████████ *See* Block Ex. B (Lee

13  Report) at n.50. In October 2018, months prior to Muddy Waters' production,

14  Professor Lee's colleague also described in detail in a declaration how they

15  discovered Muddy Waters' identity from other sources. MW Dkt. 9-1 at 4-5. Even

16  Muddy Waters itself acknowledged this fact in its publicly filed Motion to Quash.

17  MW Dkt. 1 at 17 ("[I]t is Movants' understanding that Defendant Sugarman

18  obtained their identities and information about their trading activity in Banc

19  securities from discovery produced by another nonparty, ACS Execution Services

20  LLC . . ."). Indeed, this independent data is what prompted Mr. Sugarman to

21  subpoena Muddy Waters in the first place.

22  For these reasons, we disagree that the Report and its opinion were "[d]erived

23  in [s]ignificant [p]art [f]rom Muddy Waters' AEO [information]" to warrant a

24  finding of non-compliance. Motion at 9. The very minor portions of the Report that

25  ██████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████████████

27  ████████ And Latham's offer to follow the procedures in the Protective Order for

28  inadvertent or other disclosures further demonstrates its substantial compliance. *See*

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1  *Vertex*, 689 F.2d at 892 (noting "defendants had made every reasonable effort to

2  comply with the court's order" where defendants had taken steps to correct the

3  violation before the application for an order of contempt).

4  **B.    Contempt, Sanctions, And Discovery Are Also Not Warranted In**

5  **Light of The Totality of The Circumstances**

6  **1.    Technical Violations Do Not Preclude a Finding of**

  **Substantial Compliance Nor Do They Warrant Contempt or**

7  **Sanctions**

8  Even if Latham's failure to designate all or portions of the Lee Report as AEO

9  technically violated the Protective Order, a technical error during a years-long,

10  incredibly complex litigation requiring near-daily application of the Protective Order

11  does not preclude a finding of substantial compliance or warrant imposition of civil

12  contempt. *See Kilopass Tech. Inc. v. Sidense Corp.*, 2012 WL 1144290, at *4 (N.D.

13  Cal. Apr. 4, 2012) (denying motion for contempt and finding substantial compliance

14  where counsel provided client with list based largely on information known to client

15  but which was supplemented in part using AEO information); *O'M & Assocs., LLC*

16  *v. Ozanne*, 2011 WL 2160938, at *5 (S.D. Cal. June 1, 2011) (finding substantial

17  compliance with the protective order because, "[a]lthough much financial

18  information has been produced to Plaintiffs, Hilger wrongfully disclosed one item

19  of confidential information"); *In re Dual-Deck*, 10 F.3d at 695-96 (party accused of

20  violating a protective order "went to great lengths to avoid revealing in the public

21  filings anything it had learned in discovery").

22  Sanctions are particularly inappropriate here where there is no evidence of

23  bad faith, the "absence [of which] may be considered when deciding whether to

24  impose sanctions." *Glob. Master*, 2021 WL 1324435, at *2 (denying Rule 37

25  sanctions against party that publicly filed designated documents, finding no

26  willfulness or bad faith and that counsel "promptly remedied the situation as soon as

27  he learned of the mistake"); *see also MediciNova, Inc. v. Genzyme Corp.*, 2018 WL

28  318468, at *7 (S.D. Cal. Jan. 5, 2018) (denying monetary sanctions, noting as

relevant that "the record indicates that the subject disclosure was inadvertent and not egregious"); *Finjan, Inc. v. Eset*, *LLC*, 2019 WL 1429596, at *7 (S.D. Cal. Mar. 29, 2019) (finding attorney's fees and expenses not warranted because the violations were not willful or in bad faith, and "seem to be the result of an erroneous, but not unreasonable interpretation of the Protective Order"). The full record amply demonstrates Latham's extensive efforts to comply with the Protective Order.

Muddy Waters argues that Latham acted intentionally because it "conceded" that it "sought guidance from this Court" on the issue. Motion at 2, 18. That misrepresents both what was said in the meet and confer process and what actually occurred. Latham did not seek guidance from Magistrate Judge McCormick on Muddy Waters' production or the designation of the Lee Report. Rather, in February 2019, Latham informed Magistrate Judge McCormick that the *Parties* in the case had over-designated thousands of pages as AEO, that Latham was not showing such material to Mr. Sugarman out of an abundance of caution, and this was depriving him of access to evidence needed to provide adequate representation. Gray Decl. ¶ 3. Latham argued that the Protective Order appeared to be drafted for inanimate clients (i.e., corporations or a class) and was thus ambiguous as to whether Mr. Sugarman, an individual, could review AEO materials. Latham sought guidance from the court on what AEO documents could be shown to Mr. Sugarman and Magistrate Judge McCormick said he would consider the issue, but it was mooted shortly thereafter when the District Court issued its moratorium. *Id*. These facts illustrate that Latham conscientiously and proactively sought judicial guidance on the Protective Order.

The cases cited by Muddy Waters do not support sanctions here because they involve much more egregious conduct and bad faith. *See Gonzales v. Charter Commc'ns, LLC*, 2022 WL 570003, at *5-6 (C.D. Cal. Jan. 26, 2022) (declining to hold in contempt, but sanctioning, attorneys found to have acted in bad faith by using confidential information shared by defendants to solicit new clients); *Spin Master,*

*Ltd. v. Zobmondo Ent., LLC*, 2012 WL 12882012, at \*4-7 (C.D. Cal. Feb. 13, 2012) (declining to hold in contempt, but sanctioning, attorney who shared opposing party's expert reports containing confidential sales and financial information marked AEO with client who was a direct competitor); *Clarke v. First Transit, Inc.*, 2012 WL 12877865, at \*14 (C.D. Cal. Nov. 2, 2012) (issuing contempt and sanctions against who used confidential information for the "improper purposes of pursuing claims outside the [] action"); *Beam Sys., Inc. v. Checkpoint Sys., Inc.*, 1997 WL 364081, at \*5-6 (C.D. Cal. Feb. 6, 1997) (disqualifying expert and imposing attorneys' fees for sharing "restricted" information with an expert misleadingly presented as independent, who was "for all practical purposes an employee of [the party]"); *OmniGen Rsch., LLC v. Wang*, 2018 WL 11512767, at \*10 (D. Or. Nov. 6, 2018) (in action for theft of confidential information by clients, holding attorney in contempt for sharing with clients seven productions of opposing party's documents marked AEO, knowing he was violating protective order); *Elkharwily v. Mayo Holding Co*., 2017 WL 1373256, at \*1-2 (D. Minn. Apr. 13, 2017) (holding in contempt party who contacted patients and families of patients identified in confidential discovery by defendant healthcare company); *Systemic Formulas, Inc. v. Kim*, 2009 WL 5205995, at \*1-2, 4 (D. Utah Dec. 23, 2009) (holding in contempt attorney who made misrepresentations to the Court and provided client with identity of opposing parties' clients which had been marked AEO).

The opinion in *Youngevity International v. Smith* is instructive. There, a party's attorneys allegedly disclosed AEO information in public filings, to witnesses, and through the disclosure of certain data contained in an expert report. 2019 WL 157269, at \*1. The court found no sanctions were warranted based on the volume of confidential data produced and designated in the case:

> Here, Wakaya produced about 116,000 documents and designated about 114,000 as confidential under the protective order. Even if Youngevity did make improper disclosures in the few instances . . . the circumstances are not sufficiently extreme as to warrant sanctions.

> Indeed, the sheer volume of documents produced, ninety-eight percent of which was deemed confidential, relative to the very minimal alleged disclosures . . . constitutes precisely the kind of circumstance provided for in Rule 37(b)(2)(C) that would make an award of attorney's fees unjust. Moreover, there is no showing of bad faith or prejudice. Given Youngevity's adherence to the protective order otherwise, sanctions in the form of attorney's fees would not be just.

*Id.*, at *2. This holding is equally appropriate here given the ten-fold greater amount of discovery.

### 2. Muddy Waters Has Published The Information It Contends Was Derived From AEO-Designated Documents, Discrediting Their Request for Relief

The Protective Order is solely intended to protect "nonpublic and competitively-sensitive" information, Protective Order at 1, and makes clear that "[m]aterial may not be designated if it has been made public." *Id.*, II.3. Here, Muddy Waters has repeatedly failed to treat the Lee Report and information therein as if it were "derived from" AEO-designated documents, including by repeatedly filing in public the information they claim was "derived from" its AEO-designated documents. For example, Muddy Waters filed its 2018 Motion to Quash and Reply publicly, and admitted therein that it shorted Banc stock before the publication of the Blog, ███████████████████████████████████████████ ███████████████████████████████████ *See* MW Dkt. 11 at 1 n.1 ("any equity purchases were made to cover short positions"). Muddy Waters also has publicly disclosed in its present motion ████████████████████████████████ ████████████████████ "Lee makes a series of speculative arguments around a theory that certain traders were . . . responsible for the 29% decline in Banc's stock price on October 18, 2016." Motion at 9; *see also id.* (describing the contents of the Lee Report and stating "all of this information was obtained from the trading documents Muddy Waters produced"). More importantly, Muddy Waters also filed publicly as

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

an exhibit to their Motion a document that purports to be a transcript of a recorded conversation between Mr. Sugarman and a reporter that Muddy Waters claims disclosed "confidential information contained in and derived from" the Lee Report. Levine Declaration ¶ 19 & Ex. B. If the transcript did contain "derived from" information, Muddy Waters should have filed it under seal. In addition, Muddy Waters served the Lee Report upon Mr. Sugarman's counsel, Michelman & Robinson, without asking them to sign Exhibit A to the Protective Order or otherwise acknowledge that they agree to comply with the Order. If this information about trades made over 7 years ago were truly "extremely sensitive" information that would "create a substantial risk of serious harm" meriting the "derived from" AEO designation, then Muddy Waters should and would have filed all of this information (and its entire motion for that matter) under seal and otherwise followed the Protective Order. Their failure to do so discredits their "derived from" arguments and their requests for contempt, sanctions and additional discovery. *Kilopass Tech.*, 2012 WL 1144290, at *4 (party's public filing of its own AEO information "weighs in favor of denying [its] application" for contempt based on opposing party's alleged unauthorized disclosure); *Glob. Master*, 2021 WL 1324435, at *2 (considering the lack of prejudice in finding that an imposition of sanctions would be unjust). Indeed, we note that none of the reporters who received purportedly "derived from" AEO information ever mentioned the Lee Report in their subsequent articles. *See* Motion at 11 n.4, 12 nn.6-7. Thus, the only public descriptions of the contents of the Lee Report were published by Muddy Waters.

### 3. The Case Law Does Not Support Muddy Waters' Broad Request For Discovery, Which Appears Intended For Another Purpose

Muddy Waters requests broad discovery, including that Latham and Mr. Sugarman engage in a substantial document review and production as well as depositions. This request is inappropriate for several reasons. Muddy Waters has not

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**

made a "prima facie showing" of contempt against Latham. *See Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at \*58-60 (S.D.N.Y. July 17, 2012) (explaining that a "prima facie" showing is made where the movant's "proffer, if credited, would justify a finding of contempt"). In addition, the discovery sought is covered by the attorney-client privilege and work product protections. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (attorney's thought processes and analysis are protected work product). It is disfavored to seek discovery from counsel. *See Zucchella v. Olympusat, Inc.*, 2021 WL 4785939, at \*3 (C.D. Cal. June 16, 2021) (granting protective order and denying deposition of attorney, noting "[i]t is undisputed that depositions of opposing counsel are disfavored"); *Teksystems, Inc. v. Siminipour*, 2008 WL 11343027, at \*3 (C.D. Cal. July 1, 2008) (denying written discovery on and deposition of in house counsel); *Soukhaphonh v. Hot Topic, Inc.*, 2017 WL 10378493, at \*6-7 (C.D. Cal. Sept. 14, 2017) (denying deposition of general counsel).

Muddy Waters appears to argue that privilege and work product protections should not apply because "evidence of a willful violation of the Protective Order" is "not privileged under the crime-fraud exception." Declaration of Dilan Esper at ¶ 10, Dkt. 625; *see also* Motion at 22 (citing several cases discussing the crime-fraud exception to privilege and work product). This suggestion of "crime-fraud" is totally unfounded and baseless. The crime-fraud exception applies only to documents and communications that were themselves in furtherance of illegal or fraudulent conduct, *see In re Grand Jury Investigation*, 810 F.3d 1110, 1113-14 (9th Cir. 2016), and it is frivolous to suggest in this complex case involving over a million of pages of discovery that the designation of the Lee Report as Confidential instead of AEO was in furtherance of a criminal act. *Cf. United States v. HVI Cat Canyon, Inc.*, 2017 WL 11532929, at \*9 (C.D. Cal. Jan. 5, 2017) (party must show client was engaged in criminal or fraudulent scheme and attorney-client communications were sufficiently related to and in furtherance of illegality). The requested discovery is also unduly

1   burdensome given the conclusion of the case, the age of the data, the lack of

2   prejudice, Muddy Waters' own publication of the contested information and other

3   attending circumstances. *See, e.g., Lakes v. Bath & Body Works, LLC*, 2020 WL

4   4350243, at \*4 (E.D. Cal. July 29, 2020) (rejecting discovery where "the motion

5   *seeks* the information that plaintiff hopes will reveal the existence of a prima facie

6   case") (emphasis in original); *Ahearn ex rel. N.L.R.B. v. Int'l Longshore &*

7   *Warehouse Union, Locs. 21 & 4*, 721 F.3d 1122, 1130 (9th Cir. 2013) (affirming

8   denial of request for discovery in civil contempt proceedings). Muddy Waters' cited

9   cases are not to the contrary because they did not approve the broad discovery sought

10  here. *See Clarke*, 2012 WL 12877865, at \*16 (requiring attorneys to submit to the

11  court a list of the names to whom the contested information was sent); *OmniGen*,

12  2018 WL 11512767, at \*12 (requiring attorney to provide a declaration describing

13  each instance in which clients were provided with access to AEO materials and

14  related transmittal emails).

15      The discovery appears intended to further Muddy Waters', and perhaps their

16  declarant Levine's, interests in significant, ongoing parallel legal disputes. The case

17  law is clear that it is improper to pursue discovery in one proceeding for the purpose

18  of assisting in another proceeding. *See Oppenhiemer Fund, Inc. v. Sanders*, 437 U.S.

19  340, 352 n.17 (1978); *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y.

20  2011) (denying discovery after concluding "the true purpose of the . . . request for

21  the [document] is to bolster claims in the arbitration").

## V.   CONCLUSION

23      For the foregoing reasons, Latham respectfully requests that the Court deny

24  the Motion for Sanctions and Contempt Order.

25

26

27

28

1    Dated: November 24, 2023                    Respectfully Submitted,

2                                                LATHAM & WATKINS LLP

3                                                By: */s/ Manuel A. Abascal*

4                                                Manuel A. Abascal (Bar No. 171301)
                                                 manny.abascal@lw.com

5                                                355 South Grand Avenue, Suite 100
                                                 Los Angeles, CA 90071

6                                                Telephone: (213) 485-1234
                                                 Facsimile: (213) 891-8763

7
                                                 *Attorneys for Latham & Watkins LLP*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2 **CERTIFICATE OF COMPLIANCE**

3   The undersigned, counsel of record for Latham & Watkins LLP, certifies that

4 this brief contains 6,974 words and 21 pages, which complies with the word limit of

5 L.R. 11-6.1 and the Initial Standing Order of the Hon. Dolly M. Gee.

6

7 Dated: November 24, 2023   LATHAM & WATKINS LLP

8           By: */s/ Manuel A. Abascal*

9            Manuel A. Abascal (Bar No. 171301)
           *Attorneys for Latham & Watkins LLP*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION FOR SANCTIONS AND CONTEMPT ORDER**