HARDER STONEROCK LLP
DILAN A. ESPER (CA Bar No. 178293)
EMMANUEL FUA (CA Bar No. 284563)
8383 Wilshire Blvd., Suite 526
Beverly Hills, California 90211
Telephone:  (424) 203-1600
Facsimile:   (424) 203-1601
Email:  DEsper@HarderLLP.com
Email:  EFua@HarderLLP.com

*Attorneys for Nonparty*
*Muddy Waters Capital LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re BANC OF CALIFORNIA SECURITIES LITIGATION | Case No. 8:17-cv-00118-DMG (DFMx) |
| | CLASS ACTION |
| This Document Relates To: | **NONPARTY MUDDY WATERS CAPITAL LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT ORDER AGAINST DEFENDANT STEVE A. SUGARMAN AND LATHAM & WATKINS LLP** |
| ALL ACTIONS. | |
| | Date:     December 15, 2023 Time:     9:30 A.M. Judge:   Hon. Dolly M. Gee Courtroom:  8C |

# **TABLE OF CONTENTS**

TABLES OF AUTHORITIES ................................................................ ii

I.      INTRODUCTION.................................................................... 1

II.     ARGUMENT ........................................................................ 8

        A. Latham Violated the Protective Order ................................. 8

        B. Latham Should Be Held in Contempt and Sanctioned ...................... 12

        C. Sugarman Violated the Protective Order ........................................ 14

        D. Sugarman Should Be Held in Contempt and Sanctioned ................. 17

        E. The Court Should Also, or in the Alternative, Permit Discovery ...... 19

III.    CONCLUSION ................................................................... 20

CERTIFICATE OF COMPLIANCE.................................................................. 21

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Cardell Fin. Corp. v. Suchodolski Assocs., Inc.,*
     2012 WL 12932049 (S.D.N.Y. July 17, 2012) ........................................................ 19

5

6

*Clarke v. First Transit, Inc.,*
     2012 WL 12877865 (C.D. Cal. Nov. 2, 2012)..................................................... 8, 17

7

8

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation,*
     10 F.3d 693 (9th Cir. 1993).......................................................................... 11, 18

9

*Elkharwily v. Mayo Holding Co.,*
     2017 WL 1373256 (D. Minn. Apr. 13, 2017) .................................................... 17

10

11

*Gonzalez v. Charter Commc'ns, LLC,*
     2022 WL 570003 (C.D. Cal. Jan. 26, 2022) ...................................................... 17

12

13

*Kilopass Technology, Inc. v. Sidense Corp.,*
     2012 WL 1144290 (N.D. Cal. Apr. 4, 2012) ................................................ 11, 12

14

15

*Nothrop Grumman Corp. v. Factory Mut. Ins. Co.,*
     563, F.3d 777 (9th Cir. 2009).............................................................................. 8

16

17

*O'M & Assocs. v. Ozanne*
     2011 WL 2160938 (S.D. Cal. June 1, 2011) ...................................................... 12

18

*OmniGen Research, LLC v. Wang,*
     2018 WL 11512767 (D. Or. Nov. 6, 2018)................................................... 12, 19

19

20

*Revitch v. DIRECTV, LLC,*
     799 F.3d 713 (9th Cir. 2020).............................................................................. 9

21

22

*Spin Master, Ltd. v. Zobmondo Entm't, LLC,*
     2012 WL 12882012 (C.D. Cal. Feb. 13, 2012).................................................. 12

23

24

*Systemic Formulas, Inc. v. Kim,*
     2009 WL 5205995 (D. Utah Dec. 23, 2009)...................................................... 12

25

26

*United States v. Christensen,*
     828 F.3d 763 (9th Cir. 2015)............................................................................. 19

27

*Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.,*
     689 F.2d 885 (9th Cir. 1982)............................................................................. 11

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001)......................................................................... 12

*Youngevity Int'l v. Smith*,
    2019 WL 157269 (S.D. Cal. Jan. 10, 2019)........................................... 13, 14

**Other Authorities**

L.R. 79-5.2.2(b) ..................................................................................................... 5

1    Nonparty movant Muddy Waters Capital LLC ("Muddy Waters") respectfully

2 submits this reply memorandum in further support of its Motion for Sanctions and

3 Contempt Order against Defendant Steven A. Sugarman ("Sugarman") and his

4 counsel Latham & Watkins LLP ("Latham").

5 **I.      <u>INTRODUCTION</u>**

6    Sugarman and Latham both take the same tack:  they hope that by flooding this

7 Court with irrelevant details, they can turn a simple issue into a complex one.  But

8 what they do not do is deny the central truth—the Court ordered that the information

9 turned over by Muddy Waters be under an "Attorneys' Eyes Only" ("AEO")

10 restriction, Latham then laundered it through their expert into a document that they

11 conveniently labeled "Confidential" so they could give it to their client, and their

12 client then turned it over to third-party, Adam Levine, to disseminate to the press.

13 Nowhere in any of their voluminous papers do either Sugarman or Levine rebut those

14 facts, because they are true.  Everything else is deflection or distraction.

15    Judge McCormick ruled that the entirety of Muddy Waters' document

16 production was subject to the heightened protection of the AEO designation from the

17 Protective Order, and Muddy Waters produced documents in reliance on Judge

18 McCormick's ruling and the Protective Order.  Latham, however, decided Judge

19 McCormick's order was wrong.  And rather than waiting for guidance that it admits it

20 requested from Judge McCormick as to the treatment of AEO documents in this case,

21 Latham simply ignored the order.  Latham took Muddy Waters' AEO document

22 production, gave the production to its expert, Charles Lee, and designated Lee's

23 report (the "Expert Report") "Confidential," rather than AEO, notwithstanding the

24 fact that Lee's report is littered with references to and summaries of Muddy Waters'

25 AEO production and otherwise discloses the essence of the production: *i.e.*, Muddy

26 Waters' trading activity in Banc stock over 19-month period, the precise dollar

27 amount and timing of that activity, Muddy Waters' estimated profits in connection

28 with that activity, and internal emails and documents related to that activity.  Latham

portrays this as a mere technicality, but it wasn't, because Latham then gave the Expert Report to its client, Sugarman, who flipped the report to the press through his employee, Levine, in an effort to damage the reputation of Muddy Waters and Carson Block, whom he views as his enemies.  Sugarman and Latham's conduct was egregious and fully warrants sanctions and a contempt order.

Sugarman and Latham's Oppositions either concede or do not contest material facts that support granting Muddy Waters' motion.  These facts include:  (i) the Protective Order remains in effect and the Court retains jurisdiction to enforce it; (ii) Judge McCormick issued an order that Muddy Waters' entire document production must be designated "Attorneys' Eyes Only"[1]; (iii) Muddy Waters indeed designated its entire document production AEO under the terms of the Protective Order[2]; (iv) the Expert Report references and relies upon Muddy Waters' AEO document production[3]; (v) Latham sought guidance from the Court in the same month that the Expert Report was issued as to whether it could show Sugarman AEO material but never received such guidance[4]; (vi) Latham designated the Expert Report as

---

[1] Dkt. 623-3 (Block Decl., Ex. A (McCormick Order)) at 5; Latham Opp. at 7.

[2] Sugarman Opp. at 5; Dkt. 623-2 (Block Decl.) ¶¶ 10-11.

[3] Dkt. 629 (Block Decl., Ex. B (sealed)) (the "Expert Report") ¶¶ 13, 37, 43-53, 59-61, 74, 81, 83, 90-93, nn.47-68, 103 & Figure 6.  Sugarman and Latham, with zero credibility, quibble with the extent of Mr. Lee's reliance on Muddy Waters' document production, but the Expert Report speaks for itself: its central thesis was to shift the blame for Sugarman's alleged securities fraud to Muddy Waters, and Lee espoused this opinion in significant and express reliance on Muddy Waters' AEO document production.  **Indeed, an entire section of the report (II.B) is dedicated to Lee's analysis of trading data and internal emails that Muddy Waters produced.**  Given that the report expressly references this data, Sugarman's claim that he did not realize that Muddy Waters' AEO information was contained in the Lee Report can only be characterized as a blatant lie.

[4] Dkt. 641-3 (Gray Decl.) ¶ 3.

"Confidential" rather than "AEO" anyway[5]; (vii) Latham gave the Expert Report to Sugarman[6]; (viii) if the Expert Report were designated as "AEO" rather than "Confidential," Sugarman would never have been permitted to possess a copy under the terms of the Protective Order[7]; (ix) Sugarman gave the Expert Report to Levine, who Sugarman concedes was never an officer, director, or employee of Banc, for a purpose unrelated to the underlying litigation[8]; and (x) Levine, in turn, disseminated the Expert Report to the media.[9]

The remaining issues before the Court are therefore fairly narrow. As to Sugarman, he has now admitted to violating Section IV.1 of the Protective Order, which requires that designated material—whether Confidential or AEO—may be used "only for this litigation." Dkt. 83 at 4. In his declaration, Sugarman readily admits that he gave the Confidential Expert Report to Levine in or around February 2022, despite this case having concluded in August 2020, and that he did so to allow Levine to respond to a media inquiry unrelated to this litigation. Dkt. 637-13 (Sugarman Decl.) ¶¶ 13-16; *see also* Dkt. 630 (Levine Decl., Ex. D (sealed)). Muddy Waters has presented evidence that the extent of Sugarman's violation of the Protective Order was much greater in that he instructed Levine and a colleague, Lindsay Valdeon, to disseminate the Expert Report to the media for the purpose of damaging Muddy Waters' reputation. Dkt. 623-6 (Levine Decl.) ¶¶ 13-21. Muddy Waters has also demonstrated that the Expert Report should have been designated as AEO, and therefore Sugarman violated other sections of the Protective Order relating to the

_____

[5] Sugarman Opp. at 2-3; Latham Opp. at 1.

[6] Sugarman Opp. at 3.

[7] Sugarman Opp. at 1; Latham Opp. at 16.

[8] Sugarman Decl. ¶¶ 14-17; *see also* Dkt. 630 (Levine Decl., Ex. D (sealed email from Sugarman to Levine transmitting Expert Report)).

[9] Dkt. 623-7 (Levine Decl., Ex. A (email from Levine to reporter transmitting Expert Report)).

disclosure of AEO information as well.  Regardless, the Court now has before it an admitted Protective Order violation warranting sanctions and contempt, or, at minimum, warranting discovery on the ground that Muddy Waters has made a *prima facie* showing of sanctionable conduct.

Sugarman's only defense is a frivolous interpretation of the Protective Order that he could purportedly do whatever he wanted with the Expert Report because it was "his confidential document" authored by "his expert."  Sugarman Opp. at 2.  This argument, of course, ignores Section II.1 and II.2 of the Protective Order, which provide that Confidential or AEO material belonging to one party (Muddy Waters) does not lose its protection just because another party (Sugarman) uses that information in one of its own documents.  Sugarman's alternative interpretation—that he can publicly disseminate a third-party's highly confidential information just because he hired an expert to write about that information—is absurd on its face.  The same absurdity is evident in Sugarman's transparently false averment that he had "no reason to know or suspect" that the Expert Report contained any information from Muddy Waters' AEO production, given Lee dedicates an entire section of the report (II.B) to his analysis of Muddy Waters' trading data and internal emails (with citations to Muddy Waters' MWC-BANC bates stamp) and expressly states twice in that section (¶ 45, n.52) that he reviewed Muddy Waters' production.  As to the improper designation of the Expert Report as Confidential rather than AEO, Sugarman lays the blame solely with Latham.  Sugarman Opp. at 1, 3.

Latham, for its part, effectively argues that, despite being a "3500+" attorney law firm,[10] it was overwhelmed at the time and too busy to properly designate the Expert Report.  Latham Opp. at 4-5, 9.  It further argues that, in any event, it "substantially complied" with the Protective Order because (i) Muddy Waters' AEO document production did not actually warrant AEO-designation, notwithstanding

---

[10] https://www.lw.com/en/about-us (last accessed Nov. 27, 2023).

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT

Judge McCormick's order that it did; (ii) Professor Lee did not actually need Muddy Waters' AEO document production to form his opinions, notwithstanding the fact that he referenced, summarized, and relied on Muddy Waters' AEO document production in at least 18 paragraphs, 9 footnotes, one figure, and an entire subsection in his report[11]; (iii) the Expert Report was neither "derived from" nor "embodies, contains, or discloses any [AEO] information" despite these extensive references; and (iv) Muddy Waters occupied only "274 out of a total of over 27,000 words" in the Expert Report, also despite these extensive references and the central thesis of the report being that Muddy Waters was to blame for Sugarman's alleged securities fraud. Latham Opp. at 1-2, 13-15.  Latham did not substantially comply with any order of this Court; it ignored both of them wholesale.  Latham makes a series of other nonsensical and unsupported arguments as well, including that Muddy Waters waived its right to relief by providing *Sugarman's counsel* with a copy of the Expert Report (which Sugarman *already had*) in connection with its sealing application and in compliance with L.R. 79-5.2.2(b).  Latham Opp. at 3, 19.  Latham's arguments are meritless.  It should be sanctioned and held in contempt as well.

Importantly, the two parties, Sugarman and Latham, should not be permitted to point fingers at each other to avoid responsibility.  The entire point of Judge McCormick's order was to ensure that Muddy Waters' sensitive information not go beyond the confines of a lawyer's office.  It was to keep it out of the hands of clients and out of the hands of the public.  Instead, the information went out to a client and then out to the press.  For Latham to say "oops, we didn't mean to only stamp it confidential and to give it to Sugarman" (even though they specifically sought and did not obtain the right to give attorney's eyes only information to Sugarman), and then for Sugarman to say "oops, I didn't realize it was actually attorney's eyes only and I

---

[11] *See, e.g.*, Expert Report ¶¶ 13, 37, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 59, 60, 61, 74, and 81, footnotes 52, 53, 58, 59 60, 61, 62, 64, and 103, and figure 6.

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT

wasn't supposed to have it or disseminate it" (even though he admitted to Levine that he was not supposed to have possession of it and it was perfectly clear that the report relied upon the attorney's eyes only information from Muddy Waters) is insulting to the judicial process. Both of them are responsible for what ultimately happened, which was a clear violation of a direct and unambiguous court order.

To the extent the Court believes it requires additional information to render a decision in this matter, it should order that the parties conduct discovery. Neither Sugarman nor Latham makes any meritorious arguments to the contrary. Sugarman's resistance to discovery (Sugarman Opp. at 20-21) is wholly disingenuous given that he has already attempted to conduct unilateral discovery against Muddy Waters and Harder Stonerock LLP by issuing facially improper subpoenas under a state court wrongful termination caption seeking, *inter alia*, all communications with Levine and all documents provided by Levine. Reply Declaration of Dilan Esper ("Esper Reply Decl.") ¶¶ 3-13, Ex. A. His issuance of these subpoenas is a plain concession that discovery is necessary. Moreover, Sugarman's opposition only underscores the need for discovery because his primary arguments rest on contested factual issues and other facts for which he has provided *zero* documentary support. For example, Sugarman claims he only ever shared the Expert Report with Levine and did so to allow him to respond to a media inquiry (Sugarman Decl. ¶¶ 13-17); Levine, however, claims Sugarman shared the Expert Report with both he and a colleague, Lindsay Valdeon, and instructed both of them to use the report to smear Muddy Waters in the media (Levine Decl. ¶¶ 13-21). Unlike Sugarman, Levine provides documentary support for his claims. Levine Decl., Exs. A-G.

It's worth noting that Sugarman's contumacious conduct extends to the very proceedings that gave rise to this motion. In the meet and confer process, knowing full well that he, Sugarman, gave the Expert Report to Levine, but not knowing what Muddy Waters knew, Sugarman instructed his lawyer to lie and claim that the Expert Report was most likely "stolen" by Levine. Esper Reply Decl., Ex. C at 1-2. This

1  willingness to lie, of course, is probative of whether this Court should believe
2  anything Sugarman now claims about this matter.

3  As for Latham, it ignores the proposed discovery topics and relevant case law
4  in reflexively waiving the privilege banner, and makes the inflammatory and utterly
5  unsupported argument that Muddy Waters is seeking discovery in this matter to assist
6  Muddy Waters or Levine in completely unrelated litigations against Sugarman. *Id.* at
7  3, 21.  Nowhere does Latham identify which lawsuits and which claims or defenses in
8  such lawsuits Muddy Waters' narrowly drawn discovery requests could possibly
9  relate to (Mot. at 21-22).  This is unsurprising because Muddy Waters' discovery
10  requests relate solely to the issues it has presented to this Court.  In any event,
11  Latham's Opposition, too, underscores the need for the discovery to the extent the
12  Court is not prepared to grant the motion on the current record.  One of Latham's
13  primary arguments is that Muddy Waters' AEO document production was redundant
14  of other non-AEO documents Sugarman already had from other sources, and yet,
15  Latham has not shared those documents with Muddy Waters or the Court.  Latham
16  Opp. at 1-2, 5-8, 13-15.[12]

17  In sum, both Sugarman and Latham should be sanctioned and held in contempt,
18  and the Court should order discovery.
19  / / /

20

21  _____

22  [12] Muddy Waters disputes the relevance of this argument given that (i) Judge
   McCormick ruled Muddy Waters' entire production warranted AEO production; (ii)
23  Professor Lee plainly used and disclosed the substance of Muddy Waters' AEO
   production in his report (*see, e.g.*, the entire Section II.B of the report); and (iii)
24  Latham elsewhere admits that Sugarman's independent data was not even half correct
   (Latham Opp. at 9).  What matters is that Muddy Waters' AEO information was
25  disclosed in the report, not whether its AEO information is duplicative of other
   information Sugarman possesses, but has not disclosed.  But if the Court finds any
26  merit in this argument, Latham cannot be permitted to prevail based merely on its
27  attorneys' say-so: it must provide the supposedly "duplicative" documents to Muddy
28  Waters to allow it to respond fully.

7

## II.    <u>ARGUMENT</u>

### A.    Latham Violated the Protective Order

Latham violated the Protective Order by designating the Expert Report as "Confidential" rather than "Attorneys' Eyes Only."  Under the section II.2 of the Protective Order, "Any information that is ***derived from*** HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY also constitutions HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY information to the extent the derived information ***embodies, contains, or discloses any*** HIGHLY CONFIDENTIAL ATTORNEY EYES ONLY information."  Dkt. 83 at 2 (emphasis added).  Despite Judge McCormick ordering that Muddy Waters' entire production be designated AEO, and despite the Expert Report referencing, summarizing, and relying upon Muddy Waters' AEO document production in paragraphs 13, 37, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 59, 60, 61, 74, and 81; footnotes 52, 53, 58, 59 60, 61, 62, 64, and 103, and figure 6, Latham argues that it properly designated the Expert Report as "Confidential," and not AEO.  Latham Opp. at 12-15.  Latham's contrary arguments are meritless.

*First*, the terms "derived," "embody," "contain," and "disclose" are not defined in the Protective Order; accordingly, the Court should interpret them pursuant to their ordinary meanings.  *See Nothrop Grumman Corp. v. Factory Mut. Ins. Co.*, 563, F.3d 777, 784 n.4 (9th Cir. 2009).  "Derive" means "to take, receive, or obtain especially from a specified source."[13]  "Embody" means "to cause or to become a body or party of a body: incorporate."[14]  "Contain" means "to have within."[15]  And "disclose" means "to make known or public" or "to expose to view."[16]  Applying these definitions, the Expert Report is plainly derived from, embodies, contains, and

---

[13] https://www.merriam-webster.com/dictionary/derive.

[14] https://www.merriam-webster.com/dictionary/embody.

[15] https://www.merriam-webster.com/dictionary/contain.

[16] https://www.merriam-webster.com/dictionary/disclose.

discloses Muddy Waters' AEO production.  Any alternative interpretation would lead
to absurd and dangerous results, including a law firm's ability—as exercised by
Latham here—to freely disregard a court order such as Judge McCormick's order that
specific documents are entitled to heightened AEO protection.  *See Revitch v.
DIRECTV, LLC*, 799 F.3d 713, 717 (9th Cir. 2020).[17]

*Second*, Latham's argument that Lee's ultimate "opinion" is not "derived from"
Muddy Waters' documents, and therefore the Report is not subject to AEO
production, finds no support in the Protective Order itself, or the Expert Report itself
for that matter.[18]  Latham Opp. at 12-13.  In any event, what matters is whether any
AEO information is contained or disclosed within the Expert Report or whether the
Expert Report embodies or is derived from any AEO information.  Dkt. 83 at 1-2.
The Expert Report's extensive citations to Muddy Waters' AEO production easily
satisfy this standard.

*Third*, Latham's argument that Muddy Waters' AEO documents were "largely
duplicative" of other information that Sugarman already had, and therefore did not
warrant AEO protection, is nonsensical.  Latham Opp. at 13.  Judge McCormick ruled
that Muddy Waters' entire production was subject to AEO production; Latham was
not free to disregard that order based on its own conclusion that Muddy Waters'
documents did not in fact warrant AEO protection because they were purportedly
duplicative of other documents it already had.  Latham's recourse was seeking
reconsideration or an appeal of Judge McCormick's order, not unilaterally ignoring it.
In any event, Latham's argument is wholly unsupported and should therefore be

---

[17] Indeed, even Latham tacitly admits it should have designated at least part of
the Expert Report as AEO by only going as far as stating that "the *entire* Lee Report
is not 'derived from' Muddy Waters'…production."  Latham Opp. at 1 (emphasis
added).

[18] The entirety of Section II.B (paragraphs 43-53, footnotes 47-68, and figure 6)
of the Expert Report (Dkt. 629) is based almost entirely on trading data and internal
emails that Muddy Waters produced.

disregarded: it does not provide the supposedly redundant documents to Muddy Waters or the Court with its opposition.

*Fourth*, Latham attempts to argue that Muddy Waters somehow publicly admitted the contents of its production when it stated in a filing that it "was never net long in Banc securities, and any equity purchases were made to cover short positions" and that Sugarman already possessed relevant trading data. Latham Opp. at 7. This is plainly not equivalent to Muddy Waters revealing the precise trading data and internal emails from its AEO production that Lee expressly cited and relied upon.

*Fifth*, Latham and Sugarman's reliance on a declaration filed by a purported expert (Torben Voetmann) in opposition to Muddy Waters' motion to quash Sugarman's subpoenas is highly misleading.[19] Both contend that Lee did not need Muddy Waters' AEO documents because Voetmann already provided the same opinion as Lee. Sugarman Opp. at 2, 5-6; Latham Opp. at 6-8. But Voetmann's conclusion in his declaration was that Muddy Waters' documents were necessary for Sugarman's defense: "due to the *limitations* of the FINRA Oats and FINRA transaction data, having access to the transaction data of Muddy Waters, along with their communications and analysis regarding those transactions would *help* the court analyze and understand how their *specific* trading behavior might have impacted the stock price of Banc." MW Dkt.[20] 9-1 at 7 (emphases added). Additionally, Latham admits that Sugarman's data independent of Muddy Waters' document production was not even half correct. Latham Opp. at 9. Regardless, Lee extensively cites to Muddy Waters' document production, states he reviewed it, and sets forth his analysis of the entire production in Section II.B of his report. Whether he "needed" to do so to

---

[19] Sugarman erroneously states that Voetmann's declaration was "publicly filed." That is incorrect; only a heavily redacted version of the declaration was publicly filed. Muddy Waters has quoted only from the publicly filed version.

[20] "MW Dkt." refers to the motion to quash proceedings filed in N.D. Cal. Case No. 18-mc-80175, thereafter transferred to C.D. Cal. Case No. 18-mc-00147.

1    arrive at his ultimate opinions is irrelevant; what matters is that the information is

2    contained in his report and the report was disseminated to individuals other than

3    attorneys of record in this case.  It was, and Latham should be sanctioned and held in

4    contempt.

5          *Finally*, Latham's argument that it "substantially complied" with the Protective

6    Order and Judge McCormick's order borders on the frivolous.  There is not

7    "substantial compliance" here; there is no compliance.  It is not as if Latham

8    designated part of the Expert Report as AEO—it designated none of it as AEO.

9          The cases on "substantial compliance" bear no relationship to what happened

10   here.  For instance, *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d

11   885, 892 (9th Cir. 1982), involved two listings in a phone book that violated a prior

12   court order.  The defendant removed the listings as soon as they were discovered and

13   before the plaintiff moved for contempt.  That is not at all comparable to what

14   happened here.

15         In *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693,

16   697 (9th Cir. 1993), the original order was "written by defendants' lawyers, not the

17   judge, to throw the biggest possible blanket over every kind of knowledge which

18   might be obtained in the lawsuit" and "if taken literally, the order would be absurd."

19   The court construed the order narrowly as only prohibiting the use of proprietary

20   information, which the party did not use.  Accordingly, substantial compliance was

21   found.  Again, the order in this case was written by Judge McCormick, not by the

22   parties, and it was in no way absurd—a third party (Muddy Waters) was being

23   required to produce its confidences, and the Court wished to ensure that nobody but

24   lawyers would have access to them.  In no way did Latham "substantially comply".

25         The other "substantial compliance" cases Latham cites are no more applicable.

26   *Kilopass Technology, Inc. v. Sidense Corp.*, 2012 WL 1144290, at *4 (N.D.

27   / / /

28   / / /

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT

1  Cal. Apr. 4, 2012) (disclosure of customer list that was known to plaintiff before

2  litigation and thus was not protected by protective order)[21]; *O'M & Assocs.*

3  *v. Ozanne*, 2011 WL 2160938, at *5 (S.D. Cal. June 1, 2011) (disclosure of only a

4  single item of confidential information still constituted substantial compliance).

5       **B.    Latham Should Be Held in Contempt and Sanctioned**

6       Consistent with case law arising from similar facts, Latham should be

7  sanctioned and held in contempt for wrongly designating the Expert Report as

8  "Confidential" despite knowing it contained extensive references to Muddy Waters'

9  AEO document production, and sharing the report with their client, Sugarman, who

10  was not permitted to view AEO material or AEO-derived material under the

11  Protective Order.  *See OmniGen Research, LLC v. Wang*, 2018 WL 11512767, at *10-

12  13 (D. Or. Nov. 6, 2018); *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 2012 WL

13  12882012, at *4-7 (C.D. Cal. Feb. 13, 2012); *Systemic Formulas, Inc. v. Kim*, 2009

14  WL 5205995, at *1-2, 4 (D. Utah Dec. 23, 2009).  Latham's arguments to the contrary

15  fail.

16       Latham argues that the "full record amply demonstrates" that it did not act in

17  bad faith and therefore should not be sanctioned.  Latham Opp. at 15-16.  As an initial

18  matter, bad faith and willfulness are not required for the issuance of sanctions "less

19  than dismissal," as is requested here.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,

20  259 F.3d 1101, 1106 (9th Cir. 2001).  Additionally, there is no "full record."  There

21  has been no discovery, and Latham is resisting discovery.  The Court should therefore

22  reject Latham's attorney's *ipse dixit* that it acted in good faith.

23       Moreover, the admitted facts that (i) Latham sought guidance from Judge

---

[21] Latham mischaracterizes this case as involving information "supplemented" by attorney's eyes only information; in fact, there is nothing in the opinion in *Kilopass Technology* that indicates that any of the information disclosed by the plaintiff was not already known to them before the litigation and was only learned through discovery.

McCormick on whether it could show Sugarman AEO documents under the Protective Order but never received such guidance, and (ii) Latham sought such guidance *in the same month that the Expert Report was issued*, demonstrates Latham's willfulness and bad faith. *See* Dkt. 641-3 (Gray Decl.) ¶ 3 (referencing Feb. 1, 2019 teleconference); Expert Report at 1 (showing issuance date of Feb. 22, 2019). Latham's tortured spin on these events, *i.e.*, that it did not ask Judge McCormick about Muddy Waters' AEO documents or the Expert Report specifically, should be rejected. Latham Opp. at 16. Latham admits it knew that it could not show Sugarman Muddy Waters' AEO documents under the Protective Order, and yet it revealed the contents of those documents to Sugarman anyway by designating the Expert Report "Confidential" in violation of the Protective Order and Judge McCormick's motion to quash order. This misconduct warrants sanctions and a finding of contempt.

Latham's primary authority, *Youngevity Int'l v. Smith*, 2019 WL 157269 (S.D. Cal. Jan. 10, 2019), is distinguishable. In that case, the court determined there was "no showing of bad faith or prejudice" and that the attorneys in the case, who had taxed the court's resources and patience by filing over 110 motions, were merely playing a game of "*gotcha*." *Id.* at *2. Contrary to the facts in *Youngevity*, Muddy Waters believed that its sensitive business information was protected from public disclosure pursuant to Judge McCormick's motion to quash order and the Protective Order, but instead, Sugarman was able to forward its AEO information to the press following Latham and Sugarman's utter disregard for both of those court orders. Far from a game of "gotcha," Muddy Waters filed its motion because it had no choice but to do so to protect its sensitive and confidential business information and internal emails. Moreover, the court in *Youngevity* observed that 114,000 of the 116,000 documents produced (98%) were designated confidential under the protective order, and therefore the mere disclosure of two employee start dates, a distributor start date, and certain sales data was "relatively minimal." *Id.* Latham admittedly does not know what percentage of the documents produced in this matter were designated

1   "Confidential" or AEO, Dkt. 641-1 (Abascal Decl.) ¶ 3, and the Expert Report

2   disclosed the very essence of Muddy Waters' AEO production (*i.e.*, precise trading

3   data including amounts, timing, profits, and related documents and communications).

4   This case is nothing like *Youngevity*.

5         **C.**    **Sugarman Violated the Protective Order**

6         Sugarman violated the Protective Order by providing the Expert Report to

7   Levine and Lindsay Valdeon years after the conclusion of this litigation and

8   instructing them to disseminate it to the media in an attempt to damage the reputation

9   of Muddy Waters and its principal, Carson Block.  Dkt. 623-6 (Levine Decl.) ¶¶ 13-

10  21; Dkt. 630 (Levine Decl., Ex. D (sealed)); *see also* Levine Decl., Ex. A.[22]

11  Sugarman only partially denies Levine's testimony.  Sugarman admits that he gave

12  Levine the Expert Report in or around February 2022, despite this litigation having

13  concluded in 2020.  Sugarman Decl. ¶¶ 13-16; *see also* Sugarman Opp. at 21

14  ("Sugarman … provided the report to Levine ….").  He states, however, that he did so

15  to provide Levine with background information to respond to a reporter on his behalf

16  who was asking questions about "short sellers and Banc of California, the related

17  litigation, and a probe by the Department of Justice …."  Dkt. 637-13 (Sugarman

18  Decl.) ¶ 13-14.  Regardless of the reason *why* he provided Levine with the Expert

19  Report, Sugarman now admits that he did provide Levine with the report and did so

20  for a purpose other than "this litigation" in direct violation of Section IV.1 of the

21  Protective Order (as well as Judge McCormick's order, and Sections IV.2, IV.3, VI,

22  and IX of the Protective Order for the reasons stated in the Motion).  Dkt. 83 at 4;

23

24  ―――――――――――――

25      [22] Sugarman and Latham make much of Muddy Waters' filing of a transcript of
Sugarman's interview with a reporter.  As should be clear from Muddy Waters'
26  motion, the protective order violation it is alleging relates to the Expert Report.
Neither Sugarman nor Latham have made any showing as to how Sugarman's
27  statements in the interview transcript are equivalent to the disclosures of Muddy
Waters' AEO information in the Expert Report.
28

14

1   Mot. 15-17.

2        As Levine was not an officer, director, or employee of Banc, and as disclosure

3   to Levine was not "reasonably necessary" for the purposes of the underlying

4   litigation, he was not entitled to receive even Confidential documents under the

5   Protective Order, regardless of any NDA or consultancy agreement he may have

6   signed after the conclusion of the litigation.  Dkt. 83 at 4-5.

7        Moreover, Sugarman's argument that he could do whatever he wanted with the

8   Expert Report because it was "*his* Confidential document" authored by "*his* expert" is

9   frivolous.  Sugarman Opp. at 3.  Section II.1 and II.2 of the Protective Order grant

10  protection not only to "Confidential" and AEO documents themselves, but also other

11  documents that are "derived from," "embody, "contain," or "disclose" the information

12  contained in those "Confidential" or AEO documents.  Dkt. 83 at 1-2.  Were it

13  otherwise, the Protective Order as a whole would be illusory: a party such as

14  Sugarman could hire an expert or attorney to summarize AEO documents for him,

15  thereby giving him full access to the AEO documents he was otherwise prohibited by

16  court order from seeing.  No reasonable interpretation of the Protective Order permits

17  such an absurdity.

18        Given Sugarman's admissions and the language of the Protective Order,

19  Sugarman's extensive attempts to attack Levine's credibility are a sideshow.  As

20  stated in its motion, Muddy Waters takes no position on Sugarman's allegations or

21  Levine's allegations of wrongful termination and whistleblower retaliation against

22  Sugarman.  What matters for these purposes is the documentary record, which plainly

23  shows Sugarman transmitting the Expert Report to Levine, and then Levine

24  transmitting the Expert Report to a reporter, Dkts. 623-7, 630 (Levine Decl., Exs. A,

25  D (sealed)), which is wholly consistent with Levine's testimony that Sugarman gave

26  him the report with instructions to disseminate it to the media, Dkt. 623-6 (Levine

27  Decl.) ¶¶ 14-15.  Levine also provides text messages and other documents showing

28  Sugarman's preoccupation with Muddy Waters and Carson Block, supporting his

testimony that Sugarman's overarching purpose in mishandling the report was to damage Muddy Waters' and Carson Block's reputations through the press.  Dkt. 623-8, 9, 11, 13 (Levine Decl., Exs. B, C, E, G).[23]  Additionally, Levine provides an email showing that he scheduled a call between Sugarman and Evan Hughes, a reporter he gave the Expert Report to on Sugarman's instructions, which contradicts Sugarman's testimony that "Levine was acting independently" and without his authorization in corresponding with Hughes about the Expert Report.  Dkt. 623-12 (Levine Decl., Ex. F); Sugarman Decl. ¶ 17.[24]  Sugarman provides no documentary support for his partial denials of Levine's testimony, but instead attempts to turn this motion into a credibility contest.  If the Court believes it needs to make a credibility determination to rule on this motion (Muddy Waters respectfully submits this is not necessary given the documentary record), then it should allow discovery and hold an evidentiary hearing at which both Sugarman and Levine (as well as Lindsay Valdeon and others) may be cross-examined.  As noted above, Sugarman has already been caught in a lie in these proceedings by having his counsel deny that he sent Levine the Expert Report and claim that Levine probably stole it.  Esper Reply Decl., Ex. C at 1-2 ("For purposes of clarity and ease, Mr. Sugarman ***never*** disseminated the [Expert Report] to

---

[23] Sugarman attempts strained interpretations of these documents to argue they are innocuous, but none of his spins are persuasive in light of the text within the documents themselves.

[24] Sugarman curiously claims that Levine stole attorney-client communications from him, but all of the documents that Levine attaches to his declaration are communications that Levine himself sent, received, or during which he was present (the Reuters interview).  Sugarman's baseless claim in his Opposition that "the basis for Muddy Waters' position [is] based upon Levine's theft of documentation from Sugarman (including attorney client communications)" should be disregarded as false and unsupported.  Sugarman Opp. at 13; *see also* Latham Opp. at 11 (recklessly making the same false claim).  Notably, in the meet and confer process and before knowing what the evidence showed, Sugarman, who knew full well that he gave Levine the Expert Report, claimed through his counsel that Levine likely stole the Expert Report.  Esper Reply Decl., Ex. C at 1-2.

16

1  the public, media, and/or third parties.") (emphasis added).  Confronted with evidence

2  that he indeed transmitted the Expert Report to Levine, he now admits this to be the

3  case but for the first time offers a purported explanation for his conduct.  Sugarman

4  Decl. ¶¶ 13-16; Sugarman Opp. at 21 ("Sugarman provided the report to Levine ….").

5  Sugarman's request for a determination that he is credible and Levine is not is

6  therefore not possible on this record.

7         **D.    Sugarman Should Be Held in Contempt and Sanctioned**

8         Sugarman should be sanctioned and held in contempt for willfully and blatantly

9  violating Judge McCormick's Order and several provisions of the Protective Order by

10  disseminating the Expert Report, which plainly contains Muddy Waters' AEO

11  information, to the media through two of his employees.  *See Clarke v. First Transit,*

12  *Inc.*, 2012 WL 12877865, at *14-16 (C.D. Cal. Nov. 2, 2012); *Elkharwily v. Mayo*

13  *Holding Co.*, 2017 WL 1373256, at *1-2 (D. Minn. Apr. 13, 2017); *Gonzalez v.*

14  *Charter Commc'ns, LLC*, 2022 WL 570003, at *3 (C.D. Cal. Jan. 26, 2022).

15  Sugarman's arguments to contrary fail.

16         Sugarman did not substantially comply with the Protective Order as he claims.

17  Sugarman Opp. at 17-18.  In response to *his* subpoenas, Judge McCormick issued an

18  order holding that all of Muddy Waters' documents were subject to AEO protection;

19  the Expert Report plainly references Muddy Waters' AEO production numerous times

20  (*see, e.g.*, *supra* at Argument Section III.A); and he admits he gave the Expert Report

21  to Levine for a purpose unrelated to the underlying litigation (Sugarman Decl. ¶¶ 13-

22  16).  Thus, based on his own admissions, he did not comply, let alone "substantially

23  comply," with two of the Court's orders.  Further, Levine testified that Sugarman

24  "specifically told [him] that he (Mr. Sugarman) was not supposed to have a copy of

25  the Expert Report," but instructed him and Lindsay Valdeon to disseminate it to

26  reporters anyway to help "plant negative articles about [Carson] Block and Muddy

27  Waters."  Levine Decl. ¶¶ 14-15, 20.  Thus, not only did Sugarman fail to comply

28  with the Court's orders, he knowingly violated them.

1        Accordingly, this case is nothing like *Dual-Deck*, 10 F.3d 693, upon which

2    Sugarman relies.  Sugarman Opp. at 17.  In that case, the Ninth Circuit reversed

3    sanctions against lawyers who "learne[d] from and use[d] their experience obtained in

4    discovery" in one case in bringing another case, and failed to "achieve total amnesia."

5    *Id.* at 697.  Unlike in *Dual-Deck*, Sugarman revealed the contents of Muddy Waters'

6    AEO production, as summarized and analyzed in the Expert Report, to Levine and

7    Lindsay Valdeon and instructed them to disseminate the report to the media to harm

8    the reputation of personal enemies of his.  Levine Decl. ¶¶ 13-21, Exs. A-G.  These

9    facts bear no resemblance to those in *Dual-Deck*.

10       Sugarman's and Latham's offers to comply with the clawback provisions of

11   Section VI of the Protective Order are hollow, meaningless, and do not moot Muddy

12   Waters' motion as both parties claim.  This section requires that if a party learns that

13   it disclosed designated material to a person not authorized to receive it under the

14   Protective Order, it must inform the person of the Protective Order, retrieve the

15   material, and ask the person to sign the Protective Order.  Dkt. 83 at 7.  Sugarman

16   claims he owns the Expert Report and only ever disclosed the Expert Report to

17   Levine, so his "compliance" would mean asking Levine to return the report to *him*

18   and to sign the Protective Order.  Sugarman Opp. at 16-17.  Latham claims it only

19   ever gave the Expert Report to Sugarman, so its "compliance" would be to tell its own

20   former client (who claims he owns the Expert Report) to return it and sign the

21   Protective Order.  Both parties' arguments that these meaningless gestures would

22   somehow make Muddy Waters whole are beyond comprehension.  Muddy Waters

23   seeks seven separate sanctions, which have been authorized by other courts in similar

24   circumstances, and which are not duplicative of Section VI of the Protective Order as

25   interpreted by Sugarman and Latham.  *See* Mot. at 20-21.  Sugarman's argument that

26   the motion "seek[s] the exact same relief that Latham and Sugarman offered" is

27   therefore false.  Sugarman Opp. at 19.

28   / / /

**E.      The Court Should Also, or in the Alternative, Permit Discovery**

Discovery is warranted in contempt proceedings where the movant makes a "prima facie showing" of contempt, *i.e.*, where the movant makes a "proffer [of evidence that], if credited, would justify a finding of contempt."  *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at *60 (S.D.N.Y. July 17, 2012). Muddy Waters has satisfied this standard through the Block and Levine declarations and the documentary evidence attached to those declarations.  Dkts. 623-2 to 623-13, 629, 630.  Sugarman and Latham's concessions and the various factual issues that their Oppositions raise, *see supra* Introduction, only support an order granting discovery.

Latham's argument that the discovery sought is categorically privileged fails. As an initial matter, courts in the sanctions and contempt context have ordered attorneys to produce precisely the types of documents Muddy Waters is seeking, including emails to clients enclosing AEO materials.  *See, e.g.*, *OmniGen Research*, 2018 WL 11512767, at *12 (ordering law firm to produce emails transmitting movants' AEO information to clients and to identify in a sworn declaration all recipients of the movants' AEO documents).  Additionally, the "crime-fraud exception" to the attorney-client privilege is not limited to the commission of "criminal acts" as Latham disingenuously insists (Latham Opp. at 20).  *See, e.g.*, *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015) ("[C]onduct by an attorney that is merely unethical, as opposed to illegal, may be enough to vitiate the work product doctrine").  A willful violation of a court order would suffice.  *See OmniGen Research*, 2018 WL 11512767, at *12.

Sugarman's opposition to discovery is baffling.  Sugarman does not even attempt to argue that Muddy Waters has failed to satisfy the "prima facie" showing standard, but instead argues that any discovery would be a "fishing expedition" that *will not reveal anything new*.  Sugarman Opp. 19-21.  For example, Sugarman argues discovery should be denied because he "did not instruct anyone to disseminate the

19

report and only provided the report to Levine." *Id.* at 21. This is not the standard for discovery in the contempt context, or any context. If Sugarman were correct, then no defendant who denies wrongdoing would ever have to participate in discovery. That is not the law.

Notably, at the same time Sugarman claims in this proceeding that no discovery is necessary, Sugarman has attempted to serve discovery on Muddy Waters and its lawyers, concerning issues raised by this motion, in one of his many other cases: specifically, a case in which Muddy Waters and his lawyers are third parties and have no reciprocal right to serve discovery on Sugarman. Esper Reply Decl. ¶¶ 3-13 & Exs. A, B. In addition to being a gross and hypocritical abuse of process, Sugarman's conduct demonstrates the he in fact has no principled objection to discovery—he just wants to make sure that only he can take it.

### III. **CONCLUSION**

For the foregoing reasons, Muddy Waters requests that the Court sanction Sugarman and Latham and hold both in contempt of Court for violating the Protective Order and Judge McCormick's motion to quash orer. Also, or in the alternative, Muddy Waters requests leave to conduct discovery in aid of these proceedings.


Dated: December 1, 2023        HARDER STONEROCK LLP

By: */s/ Dilan A. Esper*
     DILAN A. ESPER
     *Attorneys for Nonparty*
     *Muddy Waters Capital LLC*

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Muddy Waters Capital LLC, certifies that this brief contains 6,643 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 1, 2023                    HARDER STONEROCK LLP

By:/s/ *Dilan A. Esper*
                                           DILAN A. ESPER
                                           *Attorneys for Nonparty*
                                           *Muddy Waters Capital LLC*

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT