UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | | Date | September 30, 2024 |
|---|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | | Page | 1 of 15 |
|---|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| DEREK DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   [IN CHAMBERS] ORDER GRANTING MOTION FOR SANCTIONS [623] [UNDER SEAL]**

During class action litigation by shareholders of Banc of California, Inc. ("Banc") against former CEO Steven A. Sugarman, Sugarman's law firm, Latham & Watkins LLP ("Latham"), provided Sugarman with an expert report written by defense expert Charles Lee (the "Lee Report"). The Report relied upon documents produced and designated "attorney's eyes only" by third party Muddy Waters Capital LLC, which documents underpin Lee's theory that Muddy Waters had schemed to devalue Banc stock and profit therefrom. Sugarman, according to Muddy Waters, later disseminated the Report to third parties to implicate Muddy Waters in the Banc stock's price dip.

Muddy Waters brings this motion for sanctions against Latham and Sugarman. Latham and Sugarman have filed their Oppositions (*see* Latham Opp. [Doc. # 640-1] (filed under seal); Sugarman Opp. [Doc. # 637]), Muddy Waters has filed its Reply [Doc. # 645], and the Court took the sanctions motion under submission.

As set forth below, the Court **GRANTS** the Motion, finds Latham and Sugarman in civil contempt, and requires them to pay Muddy Waters' reasonable costs and attorney's fees incurred to bring the Motion and to take the remedial measures outlined in this Order.

## I.
## BACKGROUND

### A.    Discovery Related to this Litigation

In January 2017, Banc shareholders brought this securities fraud class action against Sugarman,[1] Banc, and other former officers for an alleged failure to disclose harmful information.

---

[1] According to the California State Bar website, Sugarman has been an active attorney in California since 2012, although he has been represented by counsel throughout the relevant actions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SA CV 17-118-DMG (DFMx)** | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 2 of 15 |
|---|---|---|---|

Consolidated Complaint [Doc. # 41 ¶ 4]. The shareholders alleged that Banc stock traded at artificially inflated prices until October 18, 2016, when an anonymous blog on the website SeekingAlpha.com by "Aurelius" revealed the information. *Id.* ¶ 5. Banc's stock plummeted 29% in response. *Id.* ¶ 7. Several lawsuits were filed against Banc and Sugarman, which the Court consolidated under this case number. *See id.*

Sugarman subpoenaed Muddy Waters, an entity not referenced in the Consolidated Complaint, on September 11, 2018. *See* Doc. # 1, *In re Subpoenas to Produce Documents, Information, or Objects to Muddy Waters and SS&C Techs., Inc.* ["*In re Subpoenas*"], MC 18-0147-AG (DFM) (C.D. Cal. Oct. 13, 2018).[2] He claimed that information he obtained from the Financial Industry Regulatory Authority ("FINRA") indicated a significant build-up in short sales and put options in Banc stock in the days preceding the Blog. Doc. # 31 at 1, *In re Subpoenas*, MC 18-147-AG (DFM). Sugarman believed this suggested that market participants including Muddy Waters were aware of the Blog before it was published.[3] *Id.* at 2. Sugarman sought four categories of information from Muddy Waters: "communications with Banc; communications with third parties about purchasing Banc securities; documents reflecting transactions in Banc securities; and documents related to several core issues, including . . . Aurelius." *Id.* Muddy Waters moved to quash the subpoenas. *Id.*

On January 8, 2019, the Honorable Douglas F. McCormick, United States Magistrate Judge, issued an order that granted in part and denied in part the motion to quash. *Id.* at 1. Magistrate Judge McCormick ordered the following to be disclosed: "all documents reflecting Muddy Waters' transactions in securities of Banc" and "all documents reflecting Muddy Waters' decision to enter into any" such transactions. *Id.* at 3. Notably, Magistrate Judge McCormick ordered that documents "be designated attorneys' eyes only ["AEO"] pursuant to the existing protective order in the underlying case." *Id.* at 5; *see also* Prot. Order [Doc. # 83].

**B.    The Protective Order**

The Protective Order bound Sugarman and the other parties in this action and their counsel, such as Latham. Prot. Order at 2. It restricted the use of "designated material" to this litigation, although it did not restrict a designating party's use of its own confidential or AEO information.

---

[2] Except as noted, citations to the record are to filings in CV 17-118-DMG (DFMx). Citations are to the CM/ECF pagination.

[3] In the course of the litigation, Muddy Waters acknowledged that it held a short position on Banc stock. Doc. # 11 at 5, *In re Subpoenas*, MC 18-147-AG (DFM).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | | Date | September 30, 2024 |
|---|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | | Page | 3 of 15 |
|---|---|---|---|---|

*Id.* at 5.  The Protective Order did not expire after the end of the litigation.  *See id.* at 12 (Agreement to be Bound).

AEO[4] material included information derived from AEO "to the extent the derived information embodies, contains, or discloses any [AEO] information."  *Id.* at 2.  The Protective Order bound a party receiving another's AEO to disclose it to only (as relevant here) the receiving party's "outside counsel of record in this action and employees of outside of counsel of record to whom disclosure is reasonably necessary" and "[e]xperts retained by the receiving party's outside counsel of record to whom disclosure[] is reasonably necessary, and who have signed the Agreement to Be Bound."  *Id.* at 6.  By contrast, information designated "Confidential" could be shared with these individuals as well as the "officers, directors, and employees of the receiving party to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound."  *Id.* at 5.

Inadvertent disclosure of designated information required the receiving party to immediately notify the designator, use best efforts to retrieve the material and to inform the person to whom information was disclosed of the Protective Order's terms, and to use reasonable efforts to have that person execute the Agreement to Be Bound.  *Id.* at 8.  Finally, within 60 days of the conclusion of this action (September 31, 2020 [*see* Doc. # 617]), both Confidential and AEO materials had to be returned or destroyed.  Prot. Order at 9.  This included returning or destroying material in "any other format reproducing or capturing any designated material."  *Id.*  Counsel was allowed, however, to retain archival copies of case-related materials.  *Id.*

C.     **Document Production**

Muddy Waters' founder and principal owner, Carson Block, asserts that in response to Magistrate Judge McCormick's order, it produced documents "includ[ing] extremely sensitive and proprietary business and financial documents, and similarly sensitive internal communications" to Latham in January and February 2019.  Declaration of Carson Block ¶ 10 [Doc. # 623-2].  Consistent with Magistrate Judge McCormick's order and the Protective Order, it "stamp[ed] each document" AEO.  *Id.* ¶ 11.

Latham, for its part, claims that it received 61 documents on January 30, 2019 and that it has no record of a second production.  Declaration of Andrew Gray ¶ 2; Latham Opp. at 16 n.4.  Latham asserts that this was during a period of "intens[e]" litigation and that overall, it spent more

---

[4] As defined in the Protective Order, AEO was "extremely sensitive 'CONFIDENTIAL' information disclosure of which to another party or non-party would create a substantial risk of serious harm that could not be avoided by less restrictive means."  Prot. Order at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 4 of 15 |
|---|---|---|---|

than 100 hours complying with the Protective Order in this action, in which discovery was prodigious. Latham Opp. at 14; Abascal Decl. ¶ 5. In addition, at a February 1, 2019 hearing, Latham argued to Magistrate Judge McCormick that the parties had over-designated information as AEO and Latham should be able to show such material to Sugarman. Gray Decl. ¶ 3. This argument was based on Latham's assertion that the Protective Order was drafted for corporations and was ambiguous as to whether Sugarman, an individual, was a "receiving party" who could also review AEO. *Id.* This issue was never ruled upon, as the District Court issued a moratorium on filings afterward. *Id.*

Banc agreed to settle in September 2019, and the Court dismissed the action in March 2020. [Doc. ## 592, 614.] The claims against Sugarman were dismissed with prejudice in August 2020.[5] [Doc. # 617 at 2.]

**D.      The Lee Report and Adam Levine**

The Lee Report [Doc. # 629], at the core of this dispute, is an 82-page report prepared by Professor Charles M.C. Lee. As described in his Report, Latham retained Lee as an expert for this litigation "to provide an opinion about what caused the stock price decline on October 18, 2016" and "loss causation related to the alleged corrective disclosure on October 18, 2016." Lee Report at 6. The introduction to the Report refers to an appendix with a list of documents Lee considered, which cites Muddy Waters' document production in response to the subpoenas. *See id.* at 82 (Item 246). Overall, Lee opines that (1) the evidence does not support the Class Plaintiffs' allegations about the reason for the stock decline, (2) the decline was likely due to "the well-timed trading activity of certain traders" including Muddy Waters, (3) evidence including Muddy Waters' possession of blog drafts and the timing and net profit of its trading indicated it knew of the blog release in advance, and (4) traders including Muddy Waters appeared to have engaged in a "short-and-distort" trading scheme. *Id.* at 8–9.

According to Block, in April 2023, an individual named Adam Levine—a then-former Sugarman employee—contacted him. Block Decl. ¶ 14.[6] It was from Levine that Block ultimately

---

[5] Latham claims that Muddy Waters publicly acknowledged that the Blog was unsupported by evidence but does not cite to a portion of the record that supports this claim. [Doc. # 640-1 at 10.]

[6] Sugarman objects to portions of the Block and Adam Levine Declarations [*see* Doc. # 637-20], and Muddy Waters objects to Sugarman's Declaration [Doc. # 645-5]. To the extent the Court does not rely on the objected-to portions of the Declarations or otherwise specifically address the objections, they are **OVERRULED as moot**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 5 of 15 |
|---|---|---|---|

learned of the existence of the Lee Report, on April 25, 2023, which Block reviewed and found cited to the documents Muddy Waters had produced as "AEO" in 2019.[7] *Id.* ¶¶ 16–17.

Levine has submitted a declaration in support of the Motion in which he states that he was the Chief of Staff for Sugarman's company The Change Company CDFI LLC between March 2021 and May 2023, where he worked closely with Sugarman. Levine Decl. ¶ 5 [Doc. # 623-6]. In that capacity, not only did he learn that Sugarman had a copy of the Lee Report, but Sugarman affirmatively directed Levine to leak the Report. *Id.* ¶ 14.[8] Levine states that he knew Sugarman was not supposed to have the Lee Report but that he believed at that time Sugarman's actions were justified as a counterattack against Block for targeting Banc and other companies' stock prices. *Id.* ¶¶ 11, 15.

According to Levine, Sugarman exhibited a "seeming preoccupation—if not downright obsession—with Muddy Waters and particularly its principal, Carson Block . . . and took and instructed me to take various measures to harm Mr. Block and his businesses." *Id.* ¶ 7. This included, beginning in 2020, directing Levine to "shop" potential negative press stories about Muddy Waters and Block to news reporters. *Id.* ¶ 9. Levine began contacting reporters with negative information about Block in or about May 2020. *Id.* ¶ 10.

"[I]n or around 2022," according to Levine, Sugarman instructed him verbally to leak complete, unredacted copies of the Report to reporters and news organizations with whom Levine was in contact. *Id.* ¶ 14. Levine states that Sugarman "specifically told me that he . . . was not supposed to have a copy of the Expert Report." *Id.* ¶ 15. On June 15, 2022, Levine emailed the Lee Report to a journalist writing a potential profile of Block for *The Atlantic. Id.* ¶ 16; *see also* Doc. # 623-7 (email with Report as an attachment). Levine states that in February 2023, following the profile's publication, Sugarman admonished him for not doing a better job of having the journalist write about the Report. *Id.* ¶ 17. Levine states that based on his own conduct "as well as my personal observation of Mr. Sugarman, at least six publications received copies of the Expert Report from either me or Mr. Sugarman." *Id.* ¶ 18.

---

[7] Sugarman objects to Block's statements about when and how he learned of the Report and that the Report referenced Muddy Water's AEO production, but the objections lack merit and are **OVERRULED**. [*See* Doc. # 637-20 at 4.]

[8] Sugarman objects generally on the basis of hearsay, but to the extent Levine recounts Sugarman's own statements, those are not hearsay (Fed. R. Evid. 801(d)(2)(A)). Levine recounts working closely with Sugarman at The Change Company and indicates his personal knowledge, and the Court does not rely on any speculation or inappropriate conclusions. [*See* Doc. # 637-20.] The objections to the cited portions of Levine's declaration are **OVERRULED**.

---

CIVIL MINUTES—GENERAL                    Initials of Deputy Clerk <u>DD</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 6 of 15 |
|---|---|---|---|

Notably, Levine attaches to his declaration (and in support of his statement that he witnessed Sugarman disclose confidential information from the Report to third parties) a rough transcript of an interview with a person identified as "Reuters Reporter" in February 2022. [Doc. # 623-8 at 2.] In that transcript, he discussed what he described as a scheme to manipulate Banc stock through the release of the anonymous blog and specifically referenced the AEO production, which he stated was "under a protective order that [Muddy Waters] labeled attorney's eyes only" and included drafts of the blog. *Id.* at 3, 5–6.

Levine also provides a text message exchange with Sugarman about a *Wall Street Journal* article concerning Block (and noting Sugarman and Levin were not mentioned as sources), an email from Sugarman on February 5, 2022 transmitting the Lee Report, Levine's emails to the journalist writing *The Atlantic* profile, and an email from Sugarman on September 27, 2022 referencing Muddy Waters' statements about Banc of California. *Id.* ¶¶ 22–26.

## E.    Sugarman's Account

For his part, Sugarman acknowledges the Muddy Waters document production and asserts that he believed all of that production was AEO, so that he never saw any of it or disseminated any of the documents. Sugarman Decl. ¶ 2 [Doc. # 637-13]. He claims, however, that he did not have any reason to believe the Lee Report, marked "confidential" by Latham, contained any AEO information. *Id.* ¶ 3. Moreover, Sugarman claims that he did not review the entire report, he believed the report derived from publicly available information, and he understood the report to be consistent with the Declaration of Torben Voetmann he had previously filed.[9] *Id.* ¶ 4. Sugarman, who states he was aware of and attempted to comply with the Protective Order, contends that he did not believe the Protective Order applied to the Lee Report, since he believed it was his *own* confidential document. *Id.* ¶ 5.

Sugarman also paints Levine as a disgruntled former employee, who worked as a consultant with his law firm to assist with his legal representation starting in 2020[10] and later for

---

[9] Muddy Waters' objections to this paragraph of Sugarman's declaration are **OVERRULED**. While the Lee Report speaks for itself as to its discussion of AEO-designated information from Muddy Waters' production, Sugarman may discuss his own impressions of the Report. He may also discuss his own understanding of whether attorney-client privilege extended to his communications with Levine, and the relevant objection is also **OVERRULED**. [Doc. # 645-5 at 4–5.]

[10] Sugarman sued Muddy Waters and other short sellers in 2019 and 2021. *See Sugarman v. Muddy Waters Capital LLC*, CV 21-1453 (C.D. Cal.); *Sugarman v. Muddy Waters Capital LLC*, CV 19-4248 (N.D. Cal.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 7 of 15 |
|---|---|---|---|

The Change Company, while still a consultant to Sugarman's legal team. *Id.* ¶¶ 7, 10–12. He had formerly been provided access to Sugarman's confidential information. *See id.* ¶ 8.

Sugarman states that his "memory is that [he] did not authorize or permit Levine to disseminate the Lee Report" and Levine acted independently to the extent he did so. *Id.* ¶¶ 16–17. As for the February 5, 2022 email he sent to Levine attaching the Lee Report, he states that he provided Levine the Report at Levine's request for background information to respond to a reporter who was writing a story about the litigation. *Id.* ¶¶ 13–17.

Sugarman asserts that Levine has harassed and threatened him and The Change Company employees beginning in December 2022, when Levine made comments such as that he would "blow the f[]g building up" and screamed, used profanity, and engaged in altercations with other employees. Sugarman Decl. ¶ 19. The company ultimately obtained a restraining order against him and terminated him. *Id.* ¶¶ 21–23. Sugarman claims Levine threatened to make false reports and to destroy the company if he did not receive $10 million and that Sugarman confirmed from a computer report that Levine used his access to download confidential information from Sugarman's account. *Id.* ¶¶ 24–25.

Muddy Waters acknowledges that "Levine and Sugarman's separation was acrimonious, and [they] have since been involved in legal disputes in which Sugarman has made serious allegations of criminal conduct against Levine." Motion at 17 n.8. This includes litigation Levine brought against The Change Company in June 2023, in which he alleged he was terminated for reporting illegal activity that occurred at the company.[11] [Doc. # 623-5 at 4–7.]

## II.
## DISCUSSION

Muddy Waters requests the following sanctions against Latham and Sugarman:

(1) that they be held in civil contempt;
(2) the Court award Muddy Waters its attorney's fees and costs;
(3) the Court order Latham and Sugarman to—
    (a) destroy all copies and be enjoined from further use of any document from or derived from Muddy Waters' AEO production,
    (b) destroy all copies and be enjoined from further use of the Lee Report,

---

[11] Sugarman has also sued Levine for fraud. *See The Change Company CDFI LLC v. Adam Levine*, No. 23SMCV04879 (L.A. Cnty. Sup. Ct.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | | Date | September 30, 2024 |
|---|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | | Page | 8 of 15 |
|---|---|---|---|---|

        (c) comply with the written certification of destruction requirements in the
Protective Order for the Document Production and the Lee Report,

        (d) provide Muddy Waters and the Court with a list of all parties who received
unauthorized copies of the Document Production and/or the Lee Report,

        (e) produce to Muddy Waters and the Court all transmittal emails or letters
enclosing the Lee Report and/or the Document production to any party not authorized
under the Protective Order to receive the same, and

        (f) comply with the remedial steps in the Protective Order for each party who
received unauthorized copies of the Lee Report and/or the Document Production;
(4) award any further relief the Court deems just and proper; and
(5) permit Muddy Waters to take discovery to establish the conduct of Sugarman and
Latham and the extent of the damage done by that conduct.

Motion at 2.[12]

**A.     Legal Standard**

        Muddy Waters moves for sanctions under Fed. R. Civ. P. 16 and 37 as well as the Court's
"inherent power to enforce compliance . . . through civil contempt."  Motion at 23–24 (internal
quotation marks and citation omitted).  Because the Court finds an award of sanctions under Rule
37 and its contempt powers appropriate, it need not address whether Rule 16 also authorizes the
same sanctions imposed herein.

**1.     Rule 37 Sanctions**

        Rule 37(b)(2) authorizes the Court to impose sanctions if a party fails to obey a court order,
such as a protective order.  This rule authorizes a wide range of sanctions.  *United States v. Nat'l
Med. Enterprises, Inc.*, 792 F.2d 906, 910 (9th Cir. 1986).  But such sanctions *must* include
ordering the disobedient party, the attorney advising the party, or both "to pay the reasonable
expenses, including attorney's fees, caused by the failure, unless the failure was substantially
justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

        The Court's authority to award sanctions under Rule 37(b) is subject to the following
limitations:  "(1) the sanction must be just; and (2) the sanction must specifically relate to the

---

      [12] Sugarman's and Latham's attorneys state that during the meet and confer process, they offered "to follow
the procedures specified in Section VI of the Protective Order" but Muddy Waters "rejected this offer and instead
brought this motion."  Decl. of Mona Hanan ¶ 5 [Doc. # 637-1]; *see also* Abascal Decl. ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 9 of 15 |
|---|---|---|---|

particular claim at issue in the order. . . .  Furthermore, a compensatory award is limited to the actual losses sustained as a result of the contumacy."  *Nat'l Med. Enterprises, Inc.*, 792 F.2d at 910 (internal quotation marks and citations omitted).

    **2.**    **Civil Contempt**

    A court may also impose civil contempt sanctions against individuals who violate protective orders:

> Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. . . .  [A] person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the [court's order]. . . .  "Substantial compliance" with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply.

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (internal citations and quotation marks omitted).

    "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence, not merely a preponderance of the evidence." *Id.* (internal citation and quotation marks omitted).  "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both."  *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).

**B.**    **Latham**

    Latham clearly violated the Protective Order when it designated the Lee Report as "confidential" rather than "AEO" and shared it with Sugarman.[13]  The crux of Latham's opposition is that it substantially complied with the Order because it designated the Report as confidential. *See* Latham Opp. at 18.

    In support of its opposition, Latham first argues the Lee Report neither is nor contains "information that is derived from [AEO]."  As noted above, that Order extends its protections "to

---

[13] There is also no evidence in the record that Sugarman signed the Agreement to Be Bound, as required before sharing confidential information.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SA CV 17-118-DMG (DFMx)** | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 10 of 15 |
|---|---|---|---|

the extent the derived information embodies, contains, or discloses any [AEO] information." Prot. Order at 3.

Latham's argument is obviously wrong. Even a cursory review indicates multiple references in the Lee Report to the substance of the AEO-designated production. The Report cites five sources from the Document Production in support of its conclusions: (1) data about all of Muddy Waters' transactions in Banc stock between October 1, 2015 to April 30, 2017 ("2015 to 2017 Trading Data") (Lee Report ¶ 46); (2) an internal email that highlighted favorable information about Banc (*id.* ¶ 47 & n.58, ¶ 48 & n.59); (3) an October 13, 2016 third-party analyst report lowering the price target on Banc (*id.* ¶ 48 n.60); (4) an internal email that indicated the Muddy Waters' transaction was fully completed by 1:30 p.m. October 18, 2016 (*id.* ¶ 48 & n.61, ¶ 59 n.62, ¶ 81 n.103); and (5) redlined drafts of the October 18, 2016 blog ("Blog Drafts"). *Id.* ¶ 51 & n.64.

The Lee Report did not merely reference this information in passing—in particular, the 2015 to 2017 Trading Data and the possession of the Blog Drafts were at the heart of Lee's implication of Muddy Waters in a "short and distort" scheme. The 2015 to 2017 Trading Data (taken in context with the internal email expressing a favorable opinion about Banc stock) formed the basis for Lee to conclude that Muddy Waters engaged in significant short sale transactions in Banc stock two days before the Blog posting, despite no trading activities in Banc securities for more than a year and internally favorable views on Banc stock performance. *Id.* ¶¶ 46–47. Both internal emails formed the basis for Lee's conclusion that Muddy Waters' quick exit of its short position after the Blog's release was abnormal. *See id.* ¶ 48. Lee cited the Trading Data as the basis for his conclusion about Muddy Waters' unusually high profit from this activity. *Id.* ¶ 81. And Lee repeatedly cited the Blog Drafts as evidence Muddy Waters timed its trading around the Blog's posting. *See id.* ¶¶ 13, 49, 51, 53, 81. These findings formed the basis for Lee's ultimate conclusion implicating Muddy Waters. The Lee Report also conveyed substantive information derived from these AEO documents, including the precise dollar amount and timing of Muddy Waters' trading activity and its estimated profits.

Latham alternatively argues that "a technical error during a years-long, incredibly complex litigation requiring near-daily application of the Protective Order does not preclude a finding of substantial compliance or warrant imposition of civil contempt." Motion at 23. This argument undermines the critical importance of complying with protective orders in civil litigation—and minimizes the degree of care that must be exercised in ensuring compliance. Latham's actions in this case exceed the relatively minor violations in its cited cases[14]: Latham gave its expert 255

---

[14] *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2012 WL 1144290, at *5 (N.D. Cal. Apr. 4, 2012) (finding the information provided was "not confidential" and contained information already known to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SA CV 17-118-DMG (DFMx)** | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 11 of 15 |
|---|---|---|---|

pages of information stamped "AEO," then took the expert's report that repeatedly cited to information from that production as the basis for key conclusions, and effectively handed it to its client. This is a serious violation of the Protective Order that could have been avoided by simply designating the Report "AEO." Moreover, as discussed in more detail below, Latham's actions allowed Sugarman, in turn, to use the Lee Report to implicate Muddy Waters publicly. *Cf. Youngevity Int'l v. Smith*, No. 16-CV-704-BTM-JLB, 2019 WL 157269, at *2 (S.D. Cal. Jan. 10, 2019) ("[T]here is no showing of bad faith *or prejudice*." (emphasis added)).

Latham also argues that the AEO-designated documents contain only information already available from other sources (citing publicly available trading data and Muddy Waters' identity as a short seller). Not so: as to the 2015 to 2017 Trading Data, Latham itself acknowledges by simply the Data "showed slightly higher short selling in Banc stock . . . than what was reflected [in] documents produced by other parties." Latham Opp. at 14. In fact, the Trading Data showed double the shares reflected in other productions—hardly "slightly" higher short selling. *See id.* And Latham does not offer any evidence or argument that Lee or Sugarman was otherwise aware of the Blog Drafts (a key revelation from the Document Production) or the internal emails noted above.

Latham's violation of the Protective Order was not substantially justified. The Court takes such flagrant violations of a Protective Order seriously and finds that an award of attorney's fees and costs is just under the circumstances. The evidence is clear and convincing that Latham violated the Order and that the violation was not based on a good faith and reasonable interpretation of the Protective Order. This conduct justifies a finding of civil contempt as well. *See Dual-Deck*, 10 F.3d at 695.

Although a lack of bad faith does not insulate a party from contempt, a party's "good faith . . . may help to determine an appropriate sanction." *Taggart v. Lorenzen*, 587 U.S. 554, 562 (2019); *see also US Philips Corp. v. KXD Tech., Inc.*, No. CV 05-08953-DMG (PLAx), 2014 WL 12567518, at *2 (C.D. Cal. Aug. 26, 2014) ("The parties spill much ink debating whether KBC Bank acted in bad faith. The parties do not point to any authority requiring the Court to find that KBC Bank acted in bad faith in order to justify an award of attorney's fees upon a finding of civil contempt, and the Court has found none."). Here, there is insufficient evidence to suggest that Latham acted in bad faith as opposed to in serious error. Indeed, it did, in February 2019, seek guidance from Magistrate Judge McCormick as to whether Sugarman could review AEO

---

client); *O'M & Assocs., LLC v. Ozanne*, No. 10CV2130 AJB RBB, 2011 WL 2160938, at *5 (S.D. Cal. June 1, 2011) ("Although much financial information has been produced to Plaintiffs, Hilger wrongfully disclosed one item of confidential information."); *see Dual-Deck*, 10 F.3d at 695–96 ("Go-Video went to great lengths to avoid revealing in the public filings anything it had learned in discovery.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 12 of 15 |
|---|---|---|---|

information, although Judge McCormick did not rule on this issue before the litigation ended. The Court therefore finds that an award of costs and fees and the limited remedial sanctions outlined below adequately address the conduct at issue.[15]

The Court finds Latham in contempt, awards Muddy Waters its attorney's fees and costs incurred to bring the Motion, and orders Latham to comply with the Protective Order's provisions (specifically, those regarding written certification of destruction of confidential information [section IX] and remediating unauthorized disclosures of confidential information [section VI]) within 60 days of entry of this Order.

## C.   Sugarman

Sugarman also violated the Protective Order when he took the Lee Report and shared it with his employee Levine—which he did, even by his own admission, at least once (in February 2022). Sugarman Decl. ¶¶ 13–16. This was well after the conclusion of the underlying litigation. But the Protective Order, of which Sugarman also acknowledges he was aware (*id.* ¶ 5), required Sugarman to return or destroy "Confidential" information (as the Lee Report was then incorrectly designated) within 60 days of the conclusion of the litigation. Prot. Order at 9. It further forbade him from using such information for purposes other than the underlying litigation. *Id.* at 5. His possession and distribution of the Lee Report well after the conclusion of this litigation, at the very least, violated the Protective Order's provisions for "Confidential" information.

Sugarman, like Latham, argues that his failure to comply with the Protective Order was substantially justified. He claims that because *his* expert authored the Report, he believed it was his own confidential information that he could use as he wished. He further claims never to have reviewed the entire Report, so that he did not know it derived from Muddy Waters' AEO production. Sugarman Decl. ¶¶ 2–5.

This explanation is patently not credible. As the Court explained above, even the most cursory review of the Lee Report reveals it relies in part upon Muddy Waters' AEO production for key conclusions that implicated Muddy Waters. *See also id.* ¶ 2 (claiming Sugarman knew Muddy

---

[15] In particular, the Court observes that Muddy Waters has since publicly disclosed certain information it claims the Lee Report conveyed, including Muddy Waters' possession of Blog Drafts, which is in the transcript that Muddy Waters filed on the docket in this action. It is no secret that Sugarman maintains that Muddy Waters engaged in a short-and-distort scheme that led to the stock decline at issue in this litigation. *See* Motion at 14 (Muddy Waters' publicly filed sanctions motion discussing the contents of the Lee Report and that it derived from Muddy Waters' document production).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | Date | September 30, 2024 |

| Title | *In re Banc of California Securities Litigation* | Page | 13 of 15 |

Waters' production was "100[%] AEO"). Not only this, but in February 2022, Sugarman told a reporter about Muddy Waters' AEO-designated document production in the interview transcript Muddy Waters relies on:

> **Steve Sugarman**: . . . So we subpoenaed Muddy Waters and asked for every investment committee memo and analysis they've ever done on Banc of California. And they've confirmed to the court that they don't have any.
> . . .
> . . . But what they had, which is in some of the public records, but they're still keeping under a protective order. So it's probably the one thing I can't, you know, *that's under a protective order that they labeled attorney's eyes only is.   [sic] Correspondence where they've red lined the blog that happens before the blog is issued. And on a draft of the blog, which is not the final draft.*
> . . .
> . . . *And it looked like if you had a Google Docs and different people made different edits to the same document[.]*

[Doc. # 623-8 at 6, 9 (emphasis added).]  This commentary (itself a Protective Order violation) makes clear that Sugarman knew of the Drafts, their significance, and their AEO designation.[16] His claim that he never read the Lee Report and did not know it contained AEO information defies logic and lacks credibility.  *See* Sugarman Decl. ¶ 4 ("I believed that much of the information within the Lee report was derived from information not designated under the protective order[.]").  The Court finds—by clear and convincing evidence—that Sugarman knowingly shared AEO-designated information by sending the Lee Report to Levine.

The Court further observes that Levine not only attests that Sugarman directed him to further disseminate the Report but provides examples of when Levine sent the Report to reporters.[17]  Sugarman's claim that Levine did this independently, of his own initiative, and not at

---

[16] To the extent Sugarman claims he was already aware of this information from expert Torben Voetmann's report [Doc. # 6-6, *In re Subpoenas*, MC 18-147], that Report, dated October 17, 2018, merely summarizes FINRA and Bloomberg data that indicates short traders engaged in a "short and distort" trading strategy around the date of the Banc stock dip and identifies Muddy Waters.  Indeed, Voetmann recommended "due to the limitation of the FINRA . . . data, having access to the transaction data of Muddy Waters, along with their communications and analysis regarding those transactions[.]"  *Id.* at 7.

[17] Sugarman makes much of the deterioration of his and Levine's relationship after Levine's termination.  He paints Levine as a disgruntled former employee with an ax to grind.  The Court has focused on Levine's allegations to the extent they are corroborated by other evidence and does not merely take Levine's statements at face value.  While Sugarman claims the relationship with Levine began to deteriorate no earlier than December 2022, Levine's

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SA CV 17-118-DMG (DFMx)** | Date | September 30, 2024 |
|---|---|---|---|

| Title | ***In re Banc of California Securities Litigation*** | Page | 14 of 15 |
|---|---|---|---|

Sugarman's behest is simply not credible. *See, e.g.*, Doc. # 623-12 (Levine's August 9, 2022 email scheduling a call between a reporter he had given the Report to and Sugarman).

The Court finds no substantial compliance with the Protective Order on these facts. The Court finds that an award of attorney's fees and costs is just under the circumstances, as required by Fed. R. Civ. P. 37. The Court further finds by clear and convincing evidence that Sugarman violated the Protective Order, did not substantially comply, and his conduct was not based on a good faith and reasonable interpretation of the Protective Order, such that a finding of civil contempt is appropriate. *See Dual-Deck*, 10 F.3d at 695. The Court finds Sugarman in contempt, awards Muddy Waters its attorney's fees and costs incurred to bring the Motion, and orders Sugarman to comply with the Protective Order's provisions (specifically, those regarding written certification of destruction of confidential information [section IX] and remediating unauthorized disclosures of confidential information [section VI]) within 60 days of entry of this Order.

In light of the Court's conclusion to grant the motion and award sanctions, further discovery in aid of the proceedings is unnecessary, and the Court denies Muddy Waters' request for leave to conduct discovery. *See* Motion at 31.

**III.**
**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Motion and finds Latham and Sugarman in civil contempt for their violation of the Protective Order in this action. The Court also **GRANTS** the request for payment of all reasonable fees and costs incurred to investigate and litigate the motion for contempt. Latham and Sugarman are jointly and severally liable for such fees and costs. Within 14 days of entry of this Order, Muddy Waters shall file a declaration of its reasonable attorney's fees and costs with an itemized accounting and a proposed order. Any response to the declaration shall be filed within 14 days thereafter.

Further, within 60 days of entry of this Order, Sugarman and Latham shall comply with the Protective Order, sections VI and IX, as outlined above, and file a declaration certifying compliance has been completed.

Finally, within seven days of the entry of this Order, the parties shall file a joint status report with their positions as to whether this Order may be unsealed and whether any portions of

---

relevant documentary evidence predates this time, including his email transmitting the Lee Report to the *The Atlantic* reporter in June 2022.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | SA CV 17-118-DMG (DFMx) | Date | September 30, 2024 |
|---|---|---|---|

| Title | *In re Banc of California Securities Litigation* | Page | 15 of 15 |
|---|---|---|---|

the Order should be redacted.  Failure to timely file the report will result in the entire Order being unsealed.

**IT IS SO ORDERED**.

**CIVIL MINUTES—GENERAL**   Initials of Deputy Clerk <u>DD</u>